1  Sonya D. Winner, SB # 200348
   David M. Jolley, SB # 191164
2  Margaret G. May, SB # 234910
   COVINGTON & BURLING LLP
3  One Front Street
   San Francisco, CA 94111
4  Telephone:  (415) 591-6000
   Facsimile:  (415) 591-6091
5  E-mail:  mmay@cov.com

6  Attorneys for Defendant
   WELLS FARGO BANK, N.A.
7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | VERONICA GUTIERREZ, *et al.*, | Civil Case No.:  CV-07-5923 WHA (JCSx) |

11                                    **OPPOSITION OF DEFENDANT WELLS**
                  Plaintiffs,         **FARGO BANK, N.A. TO PLAINTIFFS'**
12                                    **MOTION FOR CLASS**
           v.                         **CERTIFICATION**
13
   WELLS FARGO & COMPANY, *et al.*,
14                                    Date:        August 21, 2008
                  Defendants.         Time:        8:00 a.m.
15                                    Courtroom:   9

16                                    Honorable William H. Alsup

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2    I.     INTRODUCTION ................................................................................................. 1

3    II.    FACTUAL BACKGROUND.................................................................................. 2

4           A.    The Bank's Processing of Debit-Card Transactions.................................. 2

5           B.    The Ways a Bank Customer Can Incur an Overdraft Fee on a Debit-
                  Card Transaction....................................................................................... 4

6
            C.    Information Provided to Customers About Their Accounts and
7                 Balances .................................................................................................... 5

8           D.    Plaintiffs' Claims and Proposed Classes ................................................. 6

9           E.    The Proposed Class Representatives ........................................................ 7

10          F.    Data Available on the Transactions of Class Members.......................... 10

11   III.   ARGUMENT........................................................................................................ 10

12          A.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)..................... 11

13                1.    The Claims of the Proposed Class Representatives Are Not
                        Typical. .......................................................................................... 11
14
                  2.    The Proposed Class Representatives Cannot Adequately
15                      Represent the Class. ....................................................................... 13

16          B.    Plaintiffs' Proposed Classes Are Not Defined So As to Make
                  Identification of Class Members Reasonably Ascertainable. ................ 15
17
                  1.    The Sufficient Funds Class Is Not Reasonably Ascertainable. ...... 15
18
                  2.    The Available Balance Class Also Fails the Ascertainability
19                      Test. ............................................................................................... 16

20          C.    Class Certification is Inappropriate Under Rule 23(b)(3), Because
                  Individual Issues Predominate Over Common Issues. .......................... 17
21
                  1.    The Claims of the Sufficient Funds Class Require Analysis of
22                      Predominantly Individualized Issues On Both Liability and
                        Injury............................................................................................. 18
23
                  2.    The Claims of Available Balance Class Members Also Require
24                      Extensive Analysis of Individualized Issues. ............................... 22

25          D.    The Certification of a Class in a Different Case Involving Different
                  Claims Does Not Support Certification of a Class in This Case. .......... 24
26
     IV.    CONCLUSION.................................................................................................... 25

27

28

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

4
*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.,*
   247 F.R.D. 156 (C.D. Cal. 2007) ..................................................................................13, 19

5
*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)...............................................................................................................17

6

7
*Atari Corp. v. Ernst & Whinney,*
   981 F.2d 1025 (9th Cir. 1992) ...............................................................................................12

8
*Bodner v. Oreck Direct, LLC,*
   2007 WL 1223777 (N.D. Cal. 2007) .....................................................................................15

9

10
*Butt v. Allegheny Pepsi-Cola Bottling, Co.,*
   116 F.R.D. 486 (E.D. Va. 1987)......................................................................................20, 21

11

12
*Casey v. Lewis,*
   4 F.3d 1516 (9th Cir. 1993) ...................................................................................................12

13
*Deitz v. Comcast Corp.,*
   2007 WL 2015440 (N.D. Cal. 2007) ............................................................12, 15, 16, 23, 24

14

15
*Dukes v. Wal-Mart, Inc.,*
   509 F.3d 1168 (9th Cir. 2007) ...............................................................................................10

16
*Endres v. Wells Fargo Bank,*
   2008 WL 344204 (N.D. Cal. 2008) ..................................................................19, 21, 22, 23, 24

17

18
*Guidroz-Brault v. Missouri Pacific Railroad Co.,*
   254 F.3d 825 (9th Cir. 2001) .................................................................................................20

19
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................................13

20

21
*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ...........................................................................................11, 12

22
*Heerwagen v. Clear Channel Communications,*
   435 F.3d 219 (2d Cir. 2006) ..................................................................................................18

23

24
*In re Graphics Processing Units Antitrust Litigation,*
   2008 WL 2788089 (N.D. Cal. 2008) ...............................................................................11, 20

25
*In re Hotel Telephone Charges,*
   500 F.2d 86 (9th Cir. 1974) ...................................................................................................21

26

27
*In re Initial Public Offering Securities Litigation,*
   471 F.3d 24 (2d Cir. 2006) ..............................................................................................11, 23

28
*In re Paxil Litigation,*
   212 F.R.D. 539 (C.D. Cal. 2003)...........................................................................................19

*Jefferson v. Chase Home Finance*,
  2008 WL 1883484 (N.D. Cal. 2008) ................................................................... 24

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .......................................................................... 19

*Lopez v. Washington Mutual Bank, FA*,
  302 F.3d 900 (9th Cir. 2002) ............................................................................. 22

*Lamumba Corp. v. City of Oakland*,
  2007 WL 3245282 (N.D. Cal. 2007) ............................................................ 15, 17

*Lyon v. Arizona*,
  80 F.R.D. 665 (D. Ariz. 1978) ........................................................................... 14

*Negrete v. Allianz Life Insurance Co.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ....................................................................... 19

*Newman v. RCN Telecommunications Services, Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ......................................................................... 22

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ......................................................................... 19, 24

*Pickett v. Iowa Beef Processors*,
  209 F.3d 1276 (11th Cir. 2000) .......................................................................... 14

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) ......................................................................... 23, 24

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (C.D. Cal. 1999) ........................................................... 10, 17, 18

*Shroder v. Suburban Coastal Corp.*,
  729 F.2d 1371 (11th Cir. 1984) .......................................................................... 14

*Susman v. Lincoln American Corp.*,
  561 F.2d 86 (7th Cir. 1977) ............................................................................... 14

*Whiteway v. FedEx Kinko's Office & Print Services, Inc.*,
  2006 WL 2642528 (N.D. Cal. 2006) ................................................................... 15

*Wooden v. Board of Regents of University System of Georgia*,
  247 F.3d 1262 (11th Cir. 2001) .......................................................................... 12

*Wright v. Schock*,
  742 F.2d 541 (9th Cir. 1984) ............................................................................. 11

*Yokoyama v. Midland National Life Insurance Co.*,
  243 F.R.D. 400 (D. Haw. 2007) ......................................................................... 23

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180, *amended*, 273 F.3d 1266 (9th Cir. 2001)...................................... 18

1

## FEDERAL STATUTES

2    Fed. R. Civ. P. 23 ................................................................................................................... 1, 11, 17, 24

3    Fed. R. Evid. 702 ........................................................................................................................... 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs have brought this suit against defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") to challenge the assessment of overdraft fees against the accounts of customers who have in fact overdrawn their accounts.  Plaintiffs assert that such a customer should be excused for the overdraft, and charged no fee, if the particular transaction for which the overdraft fee was charged was initiated at a time when there were sufficient funds in the account to cover it, even if the customer thereafter spent down the account before the transaction came into the Bank for payment.  Alternatively, plaintiffs claim that the Bank acts wrongfully in charging overdraft fees if an "available balance" that it communicates to a customer does not reflect all of the transactions the customer has initiated, even though it is in fact impossible for the Bank to take account of all such transactions in this manner and even though it tells customers in multiple ways that the "available balance" does *not* always include all pending transactions.

Plaintiffs' Motion for Class Certification ("Class Motion" or "CM") does not, of course, require the Court to address the merits of these claims.  But the Motion contains numerous flaws that require certification to be denied.  To begin with, neither typicality nor adequacy of representation, two threshold requirements under Fed. R. Civ. P. 23(a), can be shown here. None of the three plaintiffs is typical of the class; indeed, as shown in the Bank's pending Motion for Summary Judgment, none of the three has a valid individual claim.  Further, plaintiffs' theory – essentially a challenge to the existence of a "float" on debit-card transactions – is at odds with the interests of the many class members who actually benefit from this float; this conflict of interest precludes plaintiffs from adequately representing the class as a whole.

Further, neither of plaintiffs' proposed classes is reasonably ascertainable, as merely identifying class members (much less determining which ones have viable claims) would require a customer-by-customer analysis of account activity and other factors (including, for one proposed class, each customer's individual state of mind).  For the same reasons, the predominance requirement of Rule 23(b)(3) cannot be met here, as plaintiffs' claims present myriad complex issues that can be analyzed and decided only on an individualized basis.

Plaintiffs' conclusory assertion that an "algorithm" could be developed to address some of these concerns – on the others plaintiffs are simply silent – falls far short of satisfying their burden under Rule 23.

## II.     FACTUAL BACKGROUND

### A.     The Bank's Processing of Debit-Card Transactions

When a consumer writes a check, the amount of the check is not immediately deducted from his bank account.  Rather, the consumer has continued use of the funds until the check is presented to the Bank for payment and is posted to his account.  If by that time the customer has spent down the account so that there are insufficient funds to cover the check, and if the Bank nonetheless chooses to pay it, an overdraft occurs and the customer is charged a fee.  Conversely, if there are insufficient funds in the account at the time the check is written, but a covering deposit is made before the check is presented for payment, there will be no overdraft and no overdraft fee.

The same thing can happen when a consumer uses his bank debit card to make a purchase using funds in his checking account.[1]  As with a check, the transaction typically does not settle immediately.  Accordingly, as with checks, customers sometimes enjoy a "float" with debit-card transactions, and a customer will not incur an overdraft fee if there are insufficient funds to cover a debit-card purchase at the time the purchase is made if he makes a covering deposit before the transaction is submitted for settlement.  Thus, for example, if a customer uses his debit card on Saturday morning for a $100 purchase but has only $90 in his account *at that time*, he will not be charged an overdraft fee if he makes a deposit of $10 or more on Monday to cure the insufficiency.  Conversely, if there are sufficient funds in the account at the time a customer initiates a debit-card purchase but he then withdraws funds or otherwise reduces the

---

[1]      Wells Fargo's procedures for processing debit-card transactions are described in detail in the Declaration of Kenneth A. Zimmerman ("Zimmerman Dec."), filed on July 10, 2008, in support of Wells Fargo's Motion for Summary Judgment.  That motion is noticed to be heard at the same time as plaintiffs' Class Motion.  This Opposition also cites to the Declarations of David Jolley and John Ahrendt filed with Wells Fargo's Motion for Summary Judgment.  Additional evidence cited herein is supplied with the Declarations of Mark Lentz and Margaret G. May, filed herewith.

1   account balance, he will incur an overdraft fee if there are insufficient funds in the account when

2   the transaction settles.  *See* Zimmerman Dec. ¶¶ 13, 25-34; Lentz Dec. ¶¶ 38-39.

3           Plaintiffs' Class Motion – and their entire theory of this case – is premised on the

4   assumption that Wells Fargo always knows about a customer's debit-card transactions and is

5   able to adjust a customer's account balance in real time to reflect them.  *See, e.g.*, CM at 2.   In

6   fact, as plaintiffs are well aware (*see* McCune Dec. Ex. 1 at 20-23), that is not the case.  The

7   Bank usually has some information about a debit-card transaction before settlement, but

8   sometimes it does not, and the information it does have is often incomplete.  Most debit-card

9   transactions are submitted by the merchant for electronic "authorization," but such authorization

10  requests typically do not include the full information needed to settle the transaction.  In many

11  cases, the Bank does not even know at the time of authorization whether the transaction will be

12  completed at all – or, if it is completed, what the final amount will be.  Some merchants seek

13  authorization of only a token amount and do not inform the Bank of the final transaction amount

14  until settlement.  Other merchants seek authorization in amounts that *exceed* the final amount.

15  Some do not seek authorization at all.  *See* Zimmerman Dec. ¶¶ 11, 14.

16          If a merchant submits a debit-card purchase for authorization and the Bank

17  knows the final amount of the transaction, it will usually place a "memo hold" on the customer's

18  account.  Such holds are then used by the Bank to calculate the customer's "available balance."[2]

19  However, memo holds cannot be maintained for transactions that are not submitted for

20  authorization or for which the Bank does not know the final transaction amount.  Nor can they

21  be kept in place indefinitely if a merchant does not submit the transaction for payment in a

22  timely manner.  Zimmerman Dec. ¶¶ 16-17.   Accordingly, the Bank's calculation of a

---

[2]      Zimmerman Dec. ¶ 15.  The Bank considers the available balance in determining whether to authorize a transaction, but it will sometimes authorize a transaction that exceeds the available balance (a fact that is fully disclosed in the Account Agreement and elsewhere).  *Id.* ¶¶ 28-30.  This practice was the subject of previous litigation, and plaintiffs have disclaimed any intention to seek to re-litigate those issues.  *See* CM at 8 (characterizing the practice as part of the bank's "overall business strategy" that is "not directly at issue").  Plaintiffs instead focus on transactions authorized when they had *sufficient* funds.

customer's "available balance" at any given time will not always reflect all transactions the

customer has initiated (a fact that, as discussed below, the Bank discloses in myriad ways).

**B.   The Ways a Bank Customer Can Incur an Overdraft Fee on a Debit-Card Transaction.**

There are numerous scenarios under which a Wells Fargo customer can incur an

overdraft fee on a debit-card transaction.  In many of these scenarios, the Bank has no advance

knowledge of the facts that cause the overdraft to occur.  In nearly all such cases, in contrast, the

customer *does* know the full facts.  Some of these scenarios are discussed in detail (with

examples drawn from the experiences of plaintiffs and other class members they have

identified) in the accompanying Declaration of Mark Lentz.  They include the following:

- There are insufficient funds in the account at the time of the transaction, and the customer does not make an intervening deposit.  Lentz Dec. ¶ 38(A).[3]

- A previous deposit is reversed for non-payment of a deposited check or other instrument, leaving insufficient funds to pay the challenged transaction at the time of settlement.  *Id*. ¶ 38(B).

- A later-occurring transaction authorized by the bank notwithstanding an insufficient "available" balance settles before the transaction at issue, depleting account funds, so that an overdraft fee is incurred for the earlier-initiated transaction instead of the later one.  *Id.* ¶ 38(C).[4]

- The merchant does not obtain authorization for the transaction at issue (and the Bank is therefore unaware of it), and a later-initiated transaction settles first, depleting account funds.  *Id.* ¶ 38(D).

- The merchant seeks authorization in only a token amount (or seeks authorization in the approximate amount of the transaction, but the final transaction amount then changes), and a later-initiated transaction settles first.  *Id.* ¶¶ 38(E), (F).

- The merchant is in a category that routinely seeks authorization in an amount in excess of the final transaction amount (so that the Bank cannot maintain a hold

---

[3]     Plaintiffs' claims, which focus on situations in which the customer has sufficient funds at the time of the transaction, exclude this scenario.  *See* note 2 above.  It is unclear to what extent each of the other scenarios listed here are encompassed within plaintiffs' claims.

[4]     In this situation, the other transaction would have resulted in an overdraft fee instead had both transactions posted to the account in "real time."  Thus, the total number of overdraft fees incurred may be the same regardless of the order in which transactions are posted.  *See* Lentz Dec. ¶ 38(C).  Indeed, there are many situations where the only impact of the practice plaintiffs challenge is on the identification of which specific transaction is assigned an overdraft fee; the total number of overdraft fees is often unaffected.   And when the number of fees *is* affected, the result can be positive for the customer.  *See, e.g.*, *id.* ¶¶ 38(I), 40.

without risking a significant over-holding of account funds), and a later-initiated transaction settles first.  *Id.* ¶ 38(G).

- A check or ACH transaction of which the Bank is previously unaware comes in before the debit-card transaction settles.  *Id.* ¶¶ 38(H), (I).

- The merchant delays for an unusual period of time in settling the transaction at issue, and later-occurring transactions settle first.  *Id.* ¶ 38(J).

**C.      Information Provided to Customers About Their Accounts and Balances**

Wells Fargo provides information to customers about their accounts in many forms.  Every customer receives a monthly statement that shows his account activity during the previous month and the resulting ledger balances (*i.e.*, the balances resulting after transactions have actually posted to the account).  Also, a customer who views his "Account Activity" page online can see (a) a list of all transactions the Bank has posted to the account, as well as "pending" transactions of which the Bank is aware, (b) the Bank's most recent calculation of the customer's ledger balance, and (c) the Bank's current calculation of the account's available balance.  Zimmerman Dec. ¶ 6 & Ex. H.  This information can also be obtained from a branch teller, by calling Wells Fargo's phone bank, or at an ATM.  *Id.* ¶ 6.

When a customer checks his available balance online, he will see a link on the webpage saying "What's this?"  That link takes him to a definition that reads as follows:

> "**Available balance**: The most current picture of funds you have available for withdrawal.  It reflects the latest balance based on transactions recorded to your account today including deposited funds, paid checks, withdrawals and point-of-sale purchases. (*Please note that some transaction activity may not be immediately recorded to your account and will then not be reflected in the available balance*….)"

Zimmerman Dec. ¶ 43 & Ex. H (emphasis added).  (This definition is provided in other locations as well.  *Id.*  ¶ 43 & Exs. F, I. )  Notably, the quotation of this disclosure in plaintiffs' Class Motion (at 2) includes only the first two sentences, neglecting to include the third sentence italicized above.

The Consumer Account Agreement provided to each customer upon account opening includes disclosures on how the Bank processes transactions and how overdraft fees may be incurred.  Zimmerman Dec. ¶ 35 & Ex. A. Customers are warned that they must:

> "Keep accurate records.  You can avoid many fees to your
> Account by keeping an accurate record of your Account
> Balance….  Remember to record any transaction you make at an
> ATM, or by telephone or online.  Also remember to record any
> POS transaction or automatic payment from your Account."[5]

The Agreement states that the Bank reserves the discretion to cover overdraft items and that the customer agrees to pay the applicable overdraft fees.[6]

In a separate section addressing ATM and POS/debit-card transactions, the Account Agreement reminds the customer that the Bank retains discretion in authorizing such transactions that exceed the customer's available balance; it also discusses the fact that holds placed on the account for pending electronic transactions may vary, "depending on the merchant's practice."  *Id.* at 50-51.  Customers are explicitly warned that "[t]he time required to debit or credit your Account after the [debit card] is used will depend on the location of the ATM or POS and the type of transaction."  *Id.* at 49.

Plaintiffs Smith and Walker did not read any of these disclosures.  *See* Jolley Dec. Exs. 2 at 23-24, 3 at 26-27.   Gutierrez read and understood the definition of "available balance"; she did not read any of the other specific disclosures discussed above, although she did review other sections of her Account Agreement.  *Id.* Ex. 1 at 31-32, 51-53.

### D.    Plaintiffs' Claims and Proposed Classes

Because debit-card transactions do not settle instantaneously, a customer who spends in excess of his "available balance" at any given point in time will not necessarily incur an overdraft fee.[7]  Conversely, however, a customer who makes a transaction that is within his

---

[5]     Zimmerman Dec. Ex. A at 14; *see also id.* at 11 (discussing customers' obligation to review account-related information).  The language quoted here is from the 2004 version; the pertinent sections of subsequent versions are substantially the same.  *Id.* ¶ 35.

[6]     *Id.* at 30.  A fee schedule is provided to customers at account opening and updated through notices provided on monthly account statements.  *See* Zimmerman Dec. ¶ 40 & Ex. B.  Plaintiffs make much of the revenues that Wells Fargo receives from overdraft fees (*see, e.g.*, CM at 9) but neglect to mention that such revenues would in many situations be higher if transactions were posted in real time, eliminating customers' ability to cover potential overdrafts with intervening deposits.  In any event, the Bank's fee revenues are irrelevant to any issue presented on class certification (or on the merits, for that matter).

[7]     While the Bank could treat as fee-eligible overdrafts any transaction that exceeds the customer's "available" balance (thus eliminating the customers' ability to take advantage of the "float" for pending transactions for which memo holds are in place), it does not currently do so. (continued…)

available balance at the time he initiates the transaction may nonetheless incur an overdraft fee if there are no longer sufficient funds in his account when the transaction settles.

Plaintiffs challenge both the substance of the Bank's practice in not posting debit-card transactions immediately and the adequacy of the Bank's disclosures about account balances in light of this fact.  Thus, in Paragraph 3 of the [Adjusted] First Amended Complaint ("FAC"), plaintiffs accuse Wells Fargo of (a) "wrongfully taking overdraft fees from Wells Fargo customers' checking accounts after debit transactions and ATM withdrawals when customers had sufficient funds in their checking accounts to cover these transactions at the time they were made," and (b) of "increasingly (sic) the likelihood of assessing these charges by identifying and publishing inaccurate 'available balance' information to customers" and "fail[ing] to adequately notify Customers of this practice."  Plaintiffs assert causes of action under the California Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL"), as well as claims for fraud, negligent misrepresentation, and conversion.

Plaintiffs seek certification of two classes of California consumer checking account customers:  a Sufficient Funds class for plaintiffs' challenge to the fact that a customer can incur an overdraft fee for a debit-card transaction when he has sufficient funds at the time he initiates the transaction, and (b) an Available Balance class that plaintiffs claim was injured through reliance on "available balance" figures that did not reflect all pending transactions.

### E.     The Proposed Class Representatives

The facts relating to each of the three plaintiffs are set out in detail in Wells Fargo's Motion for Summary Judgment.  The key facts for current purposes are as follows:

---

The Bank classifies any transaction that exceeds the available balance as an "overdraft," but no overdraft fees are charged for such transactions if there would be sufficient funds absent holds for debits that have been authorized but not yet settled.  Zimmerman Dec. ¶ 33.

1         *Veronica Gutierrez.*  Gutierrez challenges overdraft fees on transactions she

2    made during October 5-9, 2006.  She does not recall whether she checked her available balance

3    during that period.  Jolley Dec. Ex. 1 at 91.[8]

4         Plaintiffs now admit that Gutierrez made an "error" in managing her account.

5    CM at 7.  The overdraft fees she challenges were caused by a check she wrote in September

6    2006 for which she failed to leave sufficient funds in her account.  *See* Zimmerman Dec. ¶¶ 46-

7    48.   Had Gutierrez checked her available balance, it would have reflected all of her pending

8    transactions *except* this check.  Jolley Dec. Ex. 1 at 41; *see* Zimmerman Dec. ¶ 46.   The Bank

9    received the check on October 10, 2006, along with a transfer that Gutierrez made out of her

10   account that day and several of the transactions from October 5-9.  The sum of these debits

11   exceeded the funds in her account, and several overdrafts resulted.[9]

12        *Erin Walker.*  Walker challenges the overdraft fee assessed for a $9.66 debit-card

13   purchase on May 29, 2007.  She alleges that her available balance was sufficient to cover that

14   purchase when she made it.  FAC ¶ 19.  However, she then made more purchases over the

15   following days.  The Bank put memo holds in place for most of them (although one was not

16   submitted for authorization, so the Bank did not know about it).  By June 1, Walker's pending

17   debits were more than her account balance, but she incurred no overdraft fees that day, because

18   some of the transactions had not yet settled.  Had she made a covering deposit on or before June

19        [8]    Plaintiffs offer no citation for their assertion that Gutierrez "will be able to establish that

20   she obtained and relied upon 'available balance' (sic) through the 800 telephone number before
     making her purchases that resulted in overdraft charges."  CM at 16.  Gutierrez's deposition

21   testimony was to the contrary.  Moreover, Gutierrez admitted (a) that she read the definition of
     "available balance" provided by Wells Fargo and (b) that she knew that her available balance

22   did not always reflect all pending transactions and that she had an independent responsibility to
     keep track of her transactions.  Jolley Dec. Ex. 1 at 39-44, 51-52.

23        [9]    Zimmerman Dec. ¶¶ 46-48.   Gutierrez incurred four overdraft fees on October 10

24   because her transactions were posted from highest dollar amount to lowest in accordance with
     the bank's standard practice; the payment of her largest items left insufficient funds to cover all

25   the others.  Neither the FAC nor plaintiffs' interrogatory answers identifies this as a challenged
     practice.  Instead, plaintiffs identify this as an aspect of Wells Fargo's "overall business

26   strategy" that is "not directly at issue" in this case.  CM at 8-9.  The Bank fully discloses this
     posting procedure (and its potential impact on overdraft fees) in the Account Agreement.  *See*

27   Zimmerman Dec. ¶ 38 & Ex. A at 23.  In any event, it is entirely serendipitous as to whether a
     customer would incur more or fewer overdraft fees on a given occasion as a result of this

28   procedure under the "same day posting" sought by plaintiffs.  *See* Lentz Dec. ¶ 40.

1  4, she would have incurred no overdraft fees, even though she had already spent more money

2  than she had in the account.  But she did not do so and, on June 4, several items posted into

3  overdraft, including the $9.66 purchase.  Zimmerman Dec. ¶¶ 51-52.

4          Walker claims she frequently checked her available balance online but admits

5  she does not specifically recall checking it during this period, Jolley Dec. Ex. 2 at 76-77, and

6  Wells Fargo's records show that she did not do so.  *See* Ahrendt Dec. ¶ 3.  Moreover, Walker,

7  like Gutierrez, was aware that the Bank's online listing of her transactions (and the available

8  balance shown) did not always include all of her pending transactions and that she needed to

9  adjust that available balance for transactions that were not listed.  Jolley Dec. Ex. 2 at 27-29.

10         Overall during this period, Walker was a net beneficiary of the "float" on her

11  debit-card transactions.  Had the Bank had the ability to post each of Walker's transactions on

12  the day of the transaction, and had it done so, she would have incurred six more overdraft fees

13  than she was in fact assessed.   Zimmerman Dec. ¶ 54 & Ex. M.

14         *William Smith.*  Smith, the husband of the long-time assistant to plaintiffs'

15  counsel, Mr. McCune (*see* May Dec. Ex. 1 at 49-51), challenges an overdraft fee he was

16  assessed on a purchase made on July 3, 2007.  He claims he had sufficient funds in his account

17  that day to cover it.  However, the merchant did not submit the transaction for settlement until

18  July 12, by which time the hold on the funds had been removed in accordance with Visa rules.

19  *See* Zimmerman Dec. ¶¶ 16, 57.  As a result of Smith's additional transactions in the interim,

20  two transactions posted into overdraft on July 12, including the July 3 purchase.

21         Smith knew in July 2007 that the Bank did not keep holds in place indefinitely

22  and that he needed to adjust the available balance he saw online to take into account any

23  purchases that were not listed.  A few months earlier, Smith had had a similar experience with a

24  purchase made on his business account (which is not at issue in this case and which he does not

25  challenge).  *See* Jolley Dec. Ex. 3 at 51-56.  In that case, a purchase similarly did not post for an

26  unusually long time, was not reflected in his available balance after three days, and later resulted

27  in an overdraft fee.  *Id.* at 51-53.  On that occasion, he called Wells Fargo and was told that

28  "sometimes after I do the electronic transaction, that sometimes it will fall off because they are

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS          9
CERTIFICATION
Civil Case No.:  CV-07-5923 WHA

1   waiting for the receipt to show up." *Id.* at 52-53; *see also id.* at 88.  Accordingly, Smith knew

2   when he made his purchases in July 2007 that the Bank's available balance would not always

3   reflect all of his transactions and that he had to keep track of them independently.

4          Had Wells Fargo had the ability to post all of Smith's transactions during this

5   period on the original transaction date, and had it done so, Smith would have incurred a total of

6   three overdraft fees for the period rather than two.  *See* Zimmerman Dec. ¶ 58 & Ex. N.

7          **F.      Data Available on the Transactions of Class Members**

8          Wells Fargo maintains a database on the transactions posted to its customers'

9   accounts.  *See* Lentz Dec. ¶ 7.  This database does not, however, include information about

10  interim processing of transactions; nor is data maintained on interim "available" balances.

11  Lentz  Dec. ¶¶ 4-14.   Plaintiffs have offered a declaration from an expert, Professor Mandell,

12  who opines that an "algorithm" could be created to reconstruct some of this information based

13  on other information available to the Bank.  Professor Mandell does not identify any such

14  algorithm; nor does he offer guidance on how it might be derived.[10]  As explained in the Lentz

15  Declaration (and discussed further below), Professor Mandell is wrong, as much of the

16  necessary information is either not maintained in a form that permits aggregate analysis through

17  any kind of computer algorithm or, in some instances, does not exist at all.

18  **III.    ARGUMENT**

19         Plaintiffs have the burden of demonstrating that the requirements of Rule 23 are

20  satisfied.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007).  "In contrast to a Rule

21  12(b)(6) analysis, the Court will not rely on the cursory allegations of Plaintiffs."  *Schwartz v.*

22  *Upper Deck Co.*, 183 F.R.D. 672, 681 (C.D. Cal. 1999).  Although the Court does not assess the

23  merits in addressing class certification, it "*must* consider evidence which goes to the

24  requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to

25  the underlying merits of the case." *Dukes*, 509 F.3d at 1178 n.2 (emphasis in original; quoting

26  _____

27  [10]      Professor Mandell's opinions were not disclosed to Wells Fargo before plaintiffs filed
         their Class Motion, and Wells Fargo has had access to no discovery from him.  The response
28       provided here and in the Lentz Declaration accordingly focuses solely on his declaration.

1    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).  The court "must receive

2    enough evidence, by affidavits, documents or testimony, to be satisfied that each Rule 23

3    requirement has been met."  *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.

4    2006); *see also In re Graphics Processing Units Antitrust Litig.*, 2008 WL 2788089, at *16

5    (N.D. Cal. 2008).

6            Plaintiffs' Class Motion is extremely thin on evidence on most of the Rule 23

7    requirements.  Indeed, plaintiffs' papers are replete with bare assertions for which they offer no

8    evidentiary support – and in several instances the undisputed record shows precisely the

9    opposite of what plaintiffs assert.  In the end, plaintiffs fail to show an ability to satisfy at least

10   two of the requirements of Fed. R. Civ. P. 23(a).  Nor have they demonstrated that their classes

11   are ascertainable or satisfy the predominance requirement of Rule 23(b)(3).

12       **A.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(a).**

13           Rule 23(a) establishes four threshold requirements for class actions:  numerosity,

14   commonality, typicality, and adequacy of representation.  Although there are serious issues with

15   plaintiffs' class definitions and the ascertainability of their proposed classes (*see* pp. 15-17

16   below), Wells Fargo does not dispute that the numerosity requirement is satisfied.  And there is

17   at least one critical legal issue common to all class members:  the federal preemption of all

18   claims presented here.  This issue is presented in Wells Fargo's pending Motion for Summary

19   Judgment.  Should the Court grant that motion, it may then simply deny the motion for class

20   certification as moot.  *See Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) (defense motion for

21   summary judgment may be granted before consideration of class certification to conserve

22   judicial resources).

23           The other two requirements of Rule 23(a) – typicality and adequacy of

24   representation – are not satisfied here.

25       **1.    The Claims of the Proposed Class Representatives Are Not Typical.**

26           To satisfy the typicality requirement, plaintiffs must show that they suffered the

27   same injury as other class members, caused by "the same course of conduct."  *Hanon*, 976 F.2d

28   at 508 (citation omitted).  At the threshold, typicality is absent if a plaintiff lacks standing to

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS      11
CERTIFICATION
Civil Case No.:  CV-07-5923 WHA

bring his own claim.  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-88 (11th Cir. 2001); *Casey v. Lewis*, 4 F.3d 1516, 1524 (9th Cir. 1993).  Typicality is also absent if there are significant issues unique to that individual that could become a major focus of the litigation.  *Hanon*, 976 F.2d at 508-09; *Deitz v. Comcast Corp.*, 2007 WL 2015440, at *5 (N.D. Cal. 2007).  None of the three plaintiffs is typical of the classes they seek to represent.

                **a)**      **Plaintiffs Are Not Typical of the Available Balance Class.**

        None of the plaintiffs is typical of the Available Balance class.  Gutierrez and Walker are not even members of this class.  Neither can demonstrate that she checked her available balance in connection with the transactions she challenges; accordingly, neither can claim that her overdrafts were caused by misleading available balance information.[11]

        Smith does claim to have checked his balance at the pertinent time, but he knew at that time that his available balance could not be relied upon to include all of his pending transactions.  *See* pp. 9-10 above.  If he claims he nonetheless did rely on it for that purpose, any such reliance would not be reasonable.  *See Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1031 (9th Cir. 1992) (reliance not reasonable when plaintiff possessed facts demonstrating that challenged representations were not true).  His claim certainly cannot be characterized as "typical" of a class whose claim rests on reasonable reliance.  *Deitz*, 2007 WL 2015440, at *4-5.

                **b)**      **Plaintiffs Are Not Typical of the Sufficient Funds Class.**

        There are many different avenues through which a customer can incur an overdraft fee for a debit-card transaction even when he has sufficient funds in his account at the moment in time when he initiates that transaction, and each involves different Bank practices and fact patterns.  (*See* pp. 4-5 above.)  Accordingly, there is no single "course of conduct" that led to the alleged injuries of these plaintiffs and the other members of the Sufficient Funds class.  Plaintiffs single out Gutierrez as the "typical" representative for this class.  (CM at 7.)  But they

---

[11]    Contrary assertions in plaintiffs' Class Motion are belied by Walker's and Gutierrez's own deposition testimony, as well as the Bank's records.  Moreover, both were aware that the Bank's calculation of their available balances did not always include all pending transactions.  *See* pp. 7-9 above.  At a minimum, these individualized issues preclude these plaintiffs from serving as class representatives.  *See Hanon*, 976 F.2d at 508; *Deitz*, 2007 WL 2015440 at *4-5.

1  fail to explain how a customer who incurred overdraft fees because she made a mistake and

2  forgot she had written a check is "typical" of a class that includes customers whose fees resulted

3  from a reversal of a deposit, from a transaction for which the merchant failed to seek

4  authorization, from a transaction for which the merchant sought authorization for less than the

5  actual transaction amount, from a merchant's failure to settle a transaction in a timely manner –

6  or any of the other events that could lead a customer to incur an overdraft fee.[12]

7              Nor are the claims of either of the other two plaintiffs "typical" of the class; each

8  similarly presents unique factual and legal questions.  Moreover, at least with respect to the

9  statement periods in which they had their challenged transactions, Walker and Smith suffered no

10 injury at all:  each would have incurred *more* overdraft fees, not fewer, had all of their

11 transactions posted on the day they were initiated.  This cannot be "typical" of a class that

12 (plaintiffs claim) suffered actual injury.

13              **2.       The Proposed Class Representatives Cannot Adequately Represent
14                         the Class.**

15              The "adequacy of representation" requirement of Rule 23(a) cannot be satisfied if

16 there is a conflict of interest between the named plaintiffs and other class members.  *Hanlon v.*

17 *Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998).  Plaintiffs' theory in this case is in

18 fundamental conflict with the interests of at least some members of the classes they seek to

19 represent.  And plaintiff Smith has a further conflict of interest stemming from his personal and

20 financial connection to plaintiffs' counsel.

21              **a)       The Theory Plaintiffs Seek to Promote Here Is Fundamentally
                           Adverse to the Interests of Many Class Members.**

22              Class certification is inappropriate if fundamental conflicts of interest exist

23 among the proposed class members.  *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare*

24 *Group, L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007).  A conflict is "fundamental" when "some

25 plaintiffs claim to have been harmed by the same conduct that benefited other members of the

26 _____

27 [12]      For the same reasons, common issues do not predominate for this class in general.  That
            issue is discussed further in Section III.C. below.
28

1    class." *Id.*  As one court has observed, "no circuit approves of class certification where some

2    members of the class derive a net economic benefit from the very same conduct alleged to be

3    wrongful by the named representatives of the class."  *Id.*; *see also Pickett v. Iowa Beef*

4    *Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("a class cannot be certified when its

5    members have opposing interests or when it consists of members who benefit from the same

6    acts alleged to be harmful to other class members").

7            Plaintiffs' core theory is that class members are harmed when Wells Fargo does

8    not immediately adjust its customers' balances to reflect transactions that have not yet settled.

9    Yet it is beyond reasonable dispute that some customers benefit from this practice, which gives

10   them flexibility to make covering deposits after a transaction is initiated but before it posts to

11   the account.  *See* Lentz Dec. ¶ 39.  Moreover, depending on a customer's pattern of account

12   activity, there will be occasions when posting all transactions on the day initiated would yield

13   more, rather than fewer, overdraft fees than the customer in fact incurred.  *Id.* ¶¶ 38(E), (J) , 40.

14           Because there is an actual adversity of interest among class members, the

15   adequacy of representation requirement of Rule 23(a) cannot be satisfied.

16           **b)    Plaintiff Smith Has a Personal Conflict of Interest.**

17           Plaintiff William Smith has a further conflict of interest with the class in that he

18   is the husband of the long-time assistant to plaintiffs' counsel, Mr. McCune.  May Dec. Ex. 1 at

19   49-51.  This relationship inherently interferes with his ability to exercise independent

20   supervision over Mr. McCune as counsel for the class, while at the same time giving him a

21   financial interest in this litigation that is, on balance, more closely attuned to that of counsel

22   than to that of other class members.  This conflict of interest precludes him for serving as an

23   independent representative of the class.  *See Susman v. Lincoln American Corp.*, 561 F.2d 86,

24   95 (7th Cir. 1977); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1376 (11th Cir. 1984);

25   *Lyon v. Arizona*, 80 F.R.D. 665, 668-69 (D. Ariz. 1978).[13]

---

26   [13]    Significantly, two of the original plaintiffs in this action were Smith and Claudia
27   Sanchez, Mr. McCune's housekeeper (who has since been dismissed as a named plaintiff).  *See*
     May Dec. ¶ 3.   Plaintiffs Gutierrez and Tim Fox (who has also since been dismissed) were
28   added later, following publication of a radio advertisement by counsel.  *Id.* ¶ 4 & Ex. 2 at 110-
     (continued…)

**B.    Plaintiffs' Proposed Classes Are Not Defined So As to Make Identification of Class Members Reasonably Ascertainable.**

"[A]n implied prerequisite to certification is that the class must be sufficiently definite." *Lamumba Corp. v. City of Oakland*, 2007 WL 3245282, at *3 (N.D. Cal. 2007) (quoting *Whiteway v. FedEx Kinko's Office & Print Servs., Inc*., 2006 WL 2642528, at *3 (N.D. Cal. 2006)).  The class definition must be "precise, objective and presently ascertainable." *Id.* (internal marks and citation omitted).  Accordingly, a class may not be certified where determination of class membership would require "answer[ing] numerous individualized fact-intensive questions." *Deitz*, 2007 WL 2015440, at *8.  Neither of plaintiffs' proposed classes satisfies the ascertainability requirement.

**1.    The Sufficient Funds Class Is Not Reasonably Ascertainable.**

Plaintiffs' Sufficient Funds class is not ascertainable, for several reasons.  First, the class definition provided by plaintiffs is inherently ambiguous.  It refers to overdraft fees incurred "on debit card transactions when there was sufficient funds at the end of the day the transaction occurred to cover the transaction amount." CM at 11.  But it is not clear what is meant by "sufficient funds at the end of the day."  Plaintiffs fail to specify whether they mean sufficient funds in the Bank's calculation of "available balance" at the end of the day, in the customer's ledger balance after the Bank's posting that night, in the balance the customer could have calculated in her check register based on her complete knowledge of all of her transactions, or something else.  Pinning this down is critical to determining who is in the class.[14]

---

112.  Walker's involvement in this case was arranged by her mother, and she has little or no understanding of her responsibilities as a class representative.  *See id.* Ex. 3 at 56-60.  All of this calls into further question the adequacy of any of these plaintiffs as class representatives.  *See Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *3 (N.D. Cal. 2007).

[14]    Take, for example, a customer whose opening ledger balance on a given day is $100, with a pending debit-card transaction from the previous day of $20.  The customer makes a debit-card purchase for $80 that the Bank authorizes and another for $30 for which the merchant does not seek authorization; she also writes a check for $65.  If the old $20 transaction posts that night, her ending ledger balance is reduced to $80.  At that point, the Bank believes her "available balance" is $0 (taking into account the $80 purchase), and the balance shown in her check register is -$95.  It is not clear from plaintiffs' definition whether or not she will be a member of the "sufficient funds" class if she subsequently incurs an overdraft fee for the $30 purchase, for the $80 purchase, or for both – or if it matters if the check settles first.

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Civil Case No.:  CV-07-5923 WHA

15

1    The reference in the definition to sufficient funds "at the end of the day" (a

2    phrase that is itself ambiguous; *see* Zimmerman Dec. ¶ 16 n.2) adds another layer of confusion,

3    because plaintiffs' underlying claims relate to a customer's balance *at the time the transaction is*

4    *initiated*.  *See* FAC ¶ 3.  In some cases, there will be sufficient funds in the available balance at

5    the time of the transaction but not at the end of the day, due to other intervening transactions.

6    Conversely, there could be sufficient funds at the end of the day but not at the time of the

7    transaction, because the customer made a covering deposit in the interim.  *See* Lentz Dec. ¶ 39.

8    As a result, plaintiffs' class definition, which aims to identify a class of people who had the

9    particular experience plaintiffs seek to challenge, will include people who did not have that

10   experience while excluding others who did.  *See generally* 2 Newberg on Class Actions § 6:14

11   (4th ed. 2008) (class definition should not exclude substantial number of persons with claims

12   similar to those of class members).

13   Even if the class definition were revised to clarify these points, an

14   insurmountable issue of ascertainability would still remain, because no practicable method

15   exists to identify the members of this class.  Plaintiffs' only offering on this subject is the

16   conclusory declaration of Professor Mandell, who lists certain information he has been told

17   Wells Fargo possesses and then opines that it would be possible to develop an "algorithm" to

18   identify customers who, at the end of the day, had a positive "available balance" and a positive

19   "real" balance.  He does not explain what he means by "real" balance, but whatever he intends,

20   his opinion on both points is utterly lacking in foundation and is, moreover, wrong.  As

21   explained in the Lentz Declaration (and discussed in further detail in Section III.C. below),

22   identifying individuals who fall into these categories would require an extensive and detailed

23   individualized review that would take literally years to complete.  Plaintiffs have accordingly

24   failed to satisfy the ascertainability requirement.  *Deitz*, 2007 WL 2015440, at *8.

25   **2.    The Available Balance Class Also Fails the Ascertainability Test.**

26   Plaintiffs' proposed Available Balance class fails the ascertainability test on its

27   face.  To belong to this class, a customer must have "incurred overdraft fees on debit card

28   transactions *as a result of* being provided inaccurate "available balance" information by Wells

1   Fargo."  CM at 11 (emphasis added).  Thus, ascertaining who belongs to this class will require

2   determining (among many other things) which customers were actually provided inaccurate

3   "available balance" information and incurred overdraft fees *as a result*.

4          Even leaving aside the analytical issues discussed above with respect to the

5   Sufficient Funds class (many of which exist for this class as well), this class definition

6   inherently requires an individualized analysis of causation – i.e., a determination of whether a

7   customer relied on "inaccurate" available balance information in making a purchase, thinking

8   that she had more money in her account than she had.  *See* CM at 14 ("each member of the

9   'Available Balance' Class … relied on inaccurate 'available balance' information provided by

10   Wells Fargo ….").  Identifying members of this class thus requires examination of the state of

11   mind of each class member.  *See Lamumba*, 2007 WL 3245282, at *4 (holding inadequate class

12   definition based on class members' state of mind); *Schwartz*, 183 F.R.D. at 679-80 (same).

13          Moreover, simply identifying which customers actually *received* a

14   communication from Wells Fargo of information about their available balances, determining

15   whether that information was "inaccurate," and then whether the customer incurred a

16   subsequent overdraft fee that even *could* have been causally related would require intensive

17   individualized analysis for which no computerized methodology has been identified, or can

18   practicably be developed and performed.  (*See* Section III.C. below.)  Indeed, to a large extent

19   no such analysis is possible at all, since no records exist of many "available balance"

20   communications.  Lentz Dec. ¶¶ 32-37.  For this reason also, this class fails the ascertainability

21   requirement.

22   **C.    Class Certification Is Inappropriate Under Rule 23(b)(3), Because**
        **Individual Issues Predominate Over Common Issues.**

23          Rule 23(b)(3) requires the Court to find that "questions of law or fact common to

24   the members of the class predominate over any questions affecting only individual members…."

25   Fed. R. Civ. P. 23(b)(3).  This inquiry focuses on whether the proposed class is "sufficiently

26   cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

27   591, 623 (1997).  Accordingly, a court must determine whether the evidence about the class

28   representatives' circumstances and the opposing evidence from the defense will permit across-

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS      17
CERTIFICATION
Civil Case No.:  CV-07-5923 WHA

the-board "yes" or "no" determinations that fairly resolve the claims of the entire class.  Where "the main issues in a case require the separate adjudication of each class member's individual claim or defense," class treatment is inappropriate.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189, *amended*, 273 F.3d 1266 (9th Cir. 2001); *see also Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006) (plaintiff must show that issues subject to generalized proof outweigh those subject to individualized proof); *Schwartz*, 183 F.R.D. at 680.

In this case, there are multiple individualized issues that would require resolution before the claim of any class member could be determined.

> **1.    The Claims of the Sufficient Funds Class Require Analysis of Predominantly Individualized Issues On Both Liability and Injury.**

Plaintiffs identify few issues of fact or law that are common to the Sufficient Funds class, for which they seek to pursue a claim that Wells Fargo may not charge an overdraft fee on a debit-card transaction when there are sufficient funds in the customer's account to cover that transaction at the time it is initiated.  *See* CM at 14.  The individualized issues for this class swamp any common issues.

*First*, plaintiffs do not identify, either in their FAC or in their motion, any single coherent factual or legal theory to support this claim.  It is beyond dispute that there are a variety of reasons why a customer may incur an overdraft fee for such a transaction.  *See* pp. 4-5 above.[15]  And at least some of these reasons could not reasonably be challenged.  Plaintiffs do not appear, for example, to dispute the Bank's right to reverse a customer's deposit of a fraudulent check and then to treat as an overdraft any interim debit-card transaction made against funds that appeared to be "available" because of that deposit.  Any such claim – a blanket invitation to fraud – would be ludicrous.

Plaintiffs accordingly cannot prove their case on a class-wide basis by resting solely on the proposition that a bank may *never* properly charge an overdraft fee for a debit-card

---

[15]    The customer complaints about which plaintiffs make so much (CM at 10, 20) underscore this fact.  Plaintiffs asked Wells Fargo to produce all customer complaints about overdraft fees (May Dec. Ex. 4 at 3), so it did so.  But most of the complaints produced have nothing to do with the issues presented here.  *See, e.g., id.* Ex. 5.

1   transaction for which there were sufficient funds in the account at the instant in time when the

2   customer initiated it.  Nor can plaintiffs rest on an assertion that Wells Fargo "programs its

3   computer" the same way for all customers.  CM at 14.  This begs the question of *which* specific

4   aspect of this "computer programming" caused each fee charged to each class member, *whether*

5   that specific practice is challenged here, and, if so, *on what basis* plaintiffs claim that particular

6   practice to be unlawful – and, of course, whether each such claimed basis has merit.

7           Recognizing this, the Court should reject certification of this class at the

8   threshold on the ground that plaintiffs have failed to identify any basis for resolving even the

9   *legal* claims of this varied assortment of customers on a class-wide basis.  *See In re Paxil Litig.*

10  212 F.R.D. 539, 551 (C.D. Cal. 2003).

11          *Second*, plaintiffs have not shown that it is possible to show even fact of injury

12  (much less quantification of damages) on a class-wide basis.  While the existence of

13  individualized *damages* issues do not necessarily preclude class certification, a plaintiff must

14  nonetheless establish the availability of class-wide proof as to *fact of injury*.  *Newton v. Merrill*

15  *Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-88 (3d Cir. 2001); *Allied Orthopedic*

16  *Appliances, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156, 165 (C.D. Cal. 2007).  Even

17  as to damages, a plaintiff must be able to demonstrate that damages can be computed through

18  some plausible "formula, statistical analysis, or other easy or essentially mechanical methods."

19  *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 494-95 (C.D. Cal. 2006) (quoting *Klay v.*

20  *Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004)).  It is not sufficient to "merely promise

21  to develop in the future some unspecified workable damage formula."  *Allied Orthopedic*

22  *Appliances,* 247 F.R.D. at 176 (internal marks and citation omitted).  Rather, a "concrete

23  workable formula must be described."  *Id.*; *see also Endres v. Wells Fargo Bank*, 2008 WL

24  344204, at *12 (N.D. Cal. 2008).

25          Here, plaintiffs have failed to identify *any* formula or method – much less a

26  plausible one – for proving either injury *or* damages.  The most they offer is Professor

27  Mandell's conclusory opinion that it should be possible to develop a methodology to identify

28  members of the Sufficient Funds class (as plaintiffs have defined it) and to count the number of

overdraft fees they incurred.  Such a conclusory prediction that a methodology *could* be created is insufficient to satisfy plaintiffs' burden.  *Id.; see also In re Graphics Processing Units Antitrust Litig.*, 2008 WL 2788089, at *31-33; *Butt v. Allegheny Pepsi-Cola Bottling, Co.*, 116 F.R.D. 486, 492 (E.D. Va. 1987).

Even if conclusory predictions were enough, Professor Mandell's opinions do not purport to address key showings that would be required to prove injury-in-fact and damages. He opines only on the possibility of identifying customers whose balances were positive *at the end of the day*.  But plaintiffs' claims focus on balances that were positive *at the time of the transaction*.  The two are not the same thing (*see* Lentz Dec. ¶ 22), so the "algorithm" to which he refers would not determine which customers incurred overdraft fees under the conditions plaintiffs challenge – much less the specific causes of those fees.

Moreover, Professor Mandell's "opinion" is based on factual assumptions about the nature and content of available data that are demonstrably wrong.  *See* Lentz Dec. ¶¶ 3-14.[16] With only limited exceptions, Wells Fargo maintains no data on past calculations of "available balances"; nor can those balances be reconstructed on an aggregate computerized basis using any databases currently in existence.  Professor Mandell's reliance on demonstrably incorrect factual assumptions about the content and nature of available data renders his opinions of no value.  *See Guidroz-Brault v. Mo. Pac. R. Co.,* 254 F.3d 825, 830-32 (9th Cir. 2001) (expert testimony properly excluded for lack of factual basis); Fed. R. Evid. 702.

In fact, any analysis seeking to reconstruct end-of-day available balances would require painstaking individualized review and comparison of several separate sets of fixed

---

[16]     Although he does not specifically say so, Professor Mandell apparently means to suggest that one could reconstruct an end-of-day available balance for a given date by taking the recorded ledger balance for that date and then adjusting for transactions that were initiated on or before that date but not yet settled and posted to the account.  However, the Bank's database does not record in a searchable format the dates when customers initiate transactions; that information must instead be derived manually from a non-searchable string of text in the merchant's settlement message.  Lentz Dec. ¶¶ 17-18.  Further adjustments, requiring a manual review of another set of reports, would then be required to estimate the available balance that the Bank probably would have recorded on the date in question.  *Id.* ¶¶ 19-21.  Even then, the resulting figures would not always accurately reflect the available balance the Bank would have calculated at the time.  *Id.*

1    reports that are not susceptible to analysis on any kind of aggregate basis.  Lentz Dec. ¶¶ 19-21.

2    Such an analysis would take literally years to conduct (*id.* ¶¶ 30-31), a fact that alone provides

3    sufficient basis to deny certification.  *See In re Hotel Tel. Charges*, 500 F.2d 86, 89-91 (9th Cir.

4    1974); *see also Butt*, 116 F.R.D. at 490-91 (denying certification where proof of injury required

5    "customer-by-customer examination" of facts for which computerized records not available).

6    And that analysis would still fall short of answering the key questions on which plaintiffs'

7    claims rest.  No answer would be provided, for example, as to what the available balance was at

8    the time of each challenged transaction.  *See* Lentz Dec. ¶¶ 22-23.

9            *Third*, even if plaintiffs could articulate a common legal theory to resolve the

10   claims of this class, and even if it were practicable to identify all of the specific transactions

11   subject to that theory, to classify those transactions according to the actual "cause" of the

12   overdraft, and then to analyze whether that type of cause presented a situation in which

13   assessment of an overdraft fee was improper, one would still need to ascertain whether each

14   individual customer in fact suffered injury *overall* as a result of the challenged practice.

15           There are some situations in which the fact that transactions are not posted in real

16   time results in a customer incurring an overdraft fee that he would not have incurred had the

17   transaction been deducted from his account immediately.  However, the opposite is also often

18   the case.  For example, Walker would have incurred *more* overdraft fees, not fewer, had all of

19   her transactions been reflected on her account on the dates they occurred.  Customers like her

20   accordingly cannot claim actual injury from the "practice" plaintiffs challenge.  There are also

21   instances in which customers are able to avoid overdraft fees for debit-card transactions by

22   making covering deposits before the transactions post.  *See, e.g.*, Lentz Dec. ¶¶ 38(D), 39.

23   Those customers also suffered no injury to the extent the overdraft fees they were "saved" in

24   this way were greater than those incurred as a result of the challenged practice.  *See Endres*,

25   2008 WL 344204, at *12 (individualized analysis required to determine whether excess fees

26   incurred were offset by savings on interest charges).

27           To determine whether any given class member suffered "injury," therefore, one

28   must examine the totality of that customer's transactions over time to see if, on balance, he

incurred more overdraft fees or fewer than in plaintiffs' "but for" world.  This would require a detailed review of years of transaction history for every class member.  *See* Lentz Dec. ¶ 28. Plaintiffs offer no evidence of an ability to address this issue on a class-wide basis either.[17]

### 2. The Claims of Available Balance Class Members Also Require Extensive Analysis of Individualized Issues.

A similar Herculean effort would be required to analyze the claims of the Available Balance class, for which plaintiffs assert a theory of harm based on overdrafts allegedly caused by reliance on "inaccurate" information about available balances.  (CM at 14.) Individualized fact questions for this class include the following:

1. Was each class member provided available balance information before making a challenged transaction?  Plaintiffs have offered no class-wide methodology for resolving this threshold question.[18]  The bank's information on communications about balance information is extremely limited, *see* Lentz Dec. ¶¶ 32-36, and there are no databases linking such communications to transaction activity.  *Id.* ¶ 37.   Professor Mandell does not offer even a conclusory opinion that any "algorithm" could be used to determine this on a class-wide basis.

2. What knowledge did the customer have about what was and was not included in his available balance?   Was the customer someone like Gutierrez, who read the Bank's definition of "available balance," understanding that it would not provide an authoritative accounting of all pending transactions?  Or was the customer like Smith, to whom that fact had been orally explained?  Or was it instead plaintiffs' hypothetical ignorant consumer who read none of the bank's disclosures and understood none of this?  It is well established that

---

[17]     Certification of this class is improper for the additional reason that individualized issues exist on the applicability of the "voluntary payment" doctrine.  *Endres*, 2008 WL 344204, at *12; *Newman v. RCN Telecomm. Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006).  Class members who repeatedly incurred and voluntarily paid overdraft fees under the challenged circumstance have implicitly consented to the fees through their conduct and therefore lack standing to challenge them.  *See Lopez v. Wash. Mut. Bank, FA*, 302 F.3d 900, 904 (9th Cir. 2002).

[18]     Plaintiffs do not even explain which available balance communications they contend are relevant.  Does viewing of a webpage containing an available balance figure one hour before a debit-card transaction "count"?  Two hours?  One day?  And how is the finder of fact to determine whether the customer was specifically looking at the available balance rather than other portions of the webpage?  *See* Zimmerman Dec. ¶ 43.  Plaintiffs ignore these questions.

1    when members of a proposed class have been exposed to widely varying mixes of information

2    and have very different levels of actual knowledge, class certification is inappropriate.  *See, e.g.*,

3    *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004); *In re Initial Public Offering*

4    *Sec. Litig.* 471 F.3d at 43; *Endres*, 2008 WL 344204, at *12; *Deitz,* 2007 WL 2015440, at *5-7;

5    *Yokoyama v. Midland Nat'l Life Ins. Co.*, 243 F.R.D. 400, 411-12 (D. Haw. 2007).

6                    3.    <u>What was the available balance provided to the customer, and was it</u>

7    <u>inaccurate</u>?  Plaintiffs all but acknowledge that they cannot prove this on a class-wide basis.

8    Professor Mandell claims only a (theoretical) ability to reconstruct what a customer's available

9    balance would have been at the *end* of a given day; even he does not claim that it is possible to

10   determine what the available balance would have been at the specific moment when a customer

11   checked it.  The two may be very different.  *See* Lentz Dec. ¶ 22.

12                    Even if it were possible to determine what the available balance was at the time

13   the customer checked it, individualized analysis would still be required to determine whether

14   that available balance reflected all pending debit-card transactions.  The alleged "inaccuracies"

15   of which plaintiffs complain would exist only where memo holds either did not exist or

16   understated the final transaction amount.  Identifying when this was the case and then

17   ascertaining the difference between the available balance that the customer saw and the figure

18   he would have seen in plaintiffs' but-for world would require an additional complex analysis.

19   Lentz Dec. ¶ 23.

20                    4.    <u>Were any inaccuracies material</u>?  For example, if the communicated

21   available balance failed to include a $5 purchase, that discrepancy could not possibly have been

22   material to the customer's subsequent decision to use her debit card for a transaction that

23   overdrew the account by $100.   Individualized analysis of the customer's balances and

24   transaction activity would be required even to begin to answer this question.  Lentz Dec. ¶ 26.

25                    5.    <u>Did the customer actually rely on the available balance in initiating</u>

26   <u>subsequent transactions</u>?  A mere proximity in time between a customer looking at his account

27   activity page online and a subsequent debit-card purchase cannot alone prove reliance; that can

28   only be shown by examining the state of mind of each customer individually.  Such a need for

individualized examination of reliance precludes class certification. *Endres*, 2008 WL 344204, at *12; *Deitz*, 2007 WL 2015440, at *5-7; *see also* Fed. R. Civ. P. 23 Advisory Committee's Note ("[A] fraud case may be unsuited for treatment as class action if there was material variation … in the kinds or degrees of reliance…."); *Poulos*, 379 F.3d at 664-66.[19]

6.   Was the overdraft fee caused by the transaction that was initiated after communication of the available balance? A transaction initiated after communication of an allegedly inaccurate available balance might not be the actual *cause* of an overdraft, even if an overdraft fee is assessed when that transaction posts to the account. *See* Lentz Dec. ¶¶ 38(A)-(J). Many unrelated events can occur between the time a transaction is initiated by the customer and its subsequent posting, such as reversal of a deposit or settlement of a check. *See* Lentz Dec. ¶¶ 38(B)-(J). Each challenged transaction would need to be analyzed to determine whether it "caused" a fee that would not have been incurred otherwise.

**D.   The Certification of a Class in a Different Case Involving Different Claims Does Not Support Certification of a Class in This Case.**

Plaintiffs' argument (CM at 11) that a class should be certified here because one was certified in *Smith v. Wells Fargo Bank, N.A.*, Case No. GIC 802664 (San Diego Super. Ct.) is easily dismissed. Plaintiffs do not – and cannot – argue that the certification in *Smith* has any kind of binding or preclusive effect here, and the mere fact that a court certified a different class in a different case involving different claims does not relieve plaintiffs here of the need to satisfy all applicable elements of Rule 23.[20]   Plaintiffs must affirmatively demonstrate that Rule

---

[19]   Plaintiffs' assertion that the "reasonable consumer" standard eliminates the need to prove reliance under the CLRA (CM at 18-19) makes no sense. The cases plaintiffs cite for that proposition merely confirm that a claim of reliance must be reasonable, not that actual reliance need not be shown. *See, e.g., Jefferson v. Chase Home Finance*, 2008 WL 1883484, at *15-16 (N.D. Cal. 2008) (plaintiff must show *both* that challenged misrepresentation was likely to deceive a reasonable consumer *and* actual reliance).

[20]   The *Smith* class consisted of "[a]ll persons and entities who, while a California resident, have been charged an overdraft fee as a result of using a Wells Fargo Check Card issued by defendants or an entity owned or controlled by them." *See* Plaintiffs' Request for Judicial Notice ("Plaintiffs' RJN") Ex. 1. This class definition corresponded to a simpler underlying claim than that presented here. *See id.* Ex. 3 at 2. Moreover, the former lead plaintiff in this case, Claudia Sanchez (represented by plaintiffs' counsel here), sought relief from the settlement and release in *Smith* to avoid preclusion of the claims here. The *Smith* court found such relief unnecessary, observing that Sanchez's claims (which she had by that time already (continued…)

1   23 is satisfied in *this* case.  Given their failure to do so, their certification motion must be denied

2   regardless of what another court did in a different case involving different issues.

3   **IV.      CONCLUSION**

4               Through this lawsuit, plaintiffs seek to shift their obligation to keep accurate

5   records of the transactions they initiate in their own checking accounts entirely onto the Bank –

6   even for transactions they know about and the Bank does not.  Even if there were merit to

7   plaintiffs' theory, their claims would nonetheless be inappropriate for class treatment for the

8   multiple reasons stated above.  Plaintiffs' motion for class certification should therefore be

9   denied.

10  DATED:   July 31, 2008                               COVINGTON & BURLING LLP

11

12

13                                                        By:   ___/s/_____
                                                               Sonya D. Winner
14                                                             Attorneys for Defendant
                                                               WELLS FARGO BANK, N.A.

15

16

17

18

19

20

21

22

23

24

25

26  ————————————————

27  presented to this Court in the complaint in this case) were different from those in *Smith*.
    Plaintiffs' RJN Ex. 3 at 2; *see also* CM at 12 (describing *Smith* as involving "different
28  allegations of wrongdoing").

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS              25
CERTIFICATION
Civil Case No.:  CV-07-5923 WHA