1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3

4    VERONICA GUTIERREZ; TIM FOX;    )
     ERIN WALKER AND WILLIAM         )
5    SMITH, as individuals and on    )
     behalf of all others similarly )
6    situated,                       )
                                     )
7              Plaintiffs,           )
                                     )
8    vs.                             )   Case No.
                                     )   C07-05923 WHA
9    WELLS FARGO AND COMPANY;        )
     WELLS FARGO BANK, N.A.          )
10   and DOES 1 - 125,               )
                                     )
11             Defendants.           )
                                     )
12   _____)

13

14

15

16            C O N F I D E N T I A L

17         DEPOSITION OF DEBBIE CHACON

18

19        Date:          June 25, 2008

20        Time:          9:00 a.m.

21        Location:      One Front Street
                         Suite 3500
22                       San Francisco, California

23

24        Reported by:   Jan W. Serra
                         CSR No. 8207
25

2

BARKLEY
Court Reporters

1          MR. MCCUNE:  I can tell you, you'll spend a

2     lot of time correcting me on terminology today.  Please

3     do that.

4          THE WITNESS:  Okay.

5     BY MR. MCCUNE:

6          Q    The mainframe is located where?

7          MR. JOLLEY:  Same objection.

8          THE WITNESS:  The mainframe computers are

9     located in Minneapolis.

10    BY MR. MCCUNE:

11         Q    Are there backup systems located in a

12    different location?

13         A    Yes.

14         Q    Where are they located?

15         A    Tempe and Shore View.

16         Q    Let me start with getting an understanding of

17    what happens with the data.  As you can tell from the

18    notice, it's what we are interested in.

19         An authorization request -- let's just assume

20    for a check card purchase -- comes in from a vendor and

21    comes into the Hogan system.  I kind of want to figure

22    out what happens within the Hogan system on that.

23         Does the Hogan system record the time when

24    that requested authorization first enters the system?

25         MR. JOLLEY:  Objection.  Assumes facts, vague

18

BARKLEY
Court Reporters

```
 1   and ambiguous.

 2            THE WITNESS:  No.

 3   BY MR. MCCUNE:

 4       Q    When we talk about "record," my limited

 5   understanding of computers is everything that happens,

 6   it's imprinted somewhere what the computer did.  Is

 7   that incorrect?

 8            MR. JOLLEY:  Objection, vague and ambiguous.

 9            THE WITNESS:  I'm not sure I understand.  I

10   would say yes, that's incorrect, if I understood your

11   question literally.

12   BY MR. MCCUNE:

13       Q    When an authorization request comes into the

14   system and Hogan does its series of analysis with it,

15   is there a recording of the analysis that was performed

16   by Hogan on the request?

17            MR. JOLLEY:  Objection, vague and ambiguous.

18            THE WITNESS:  No.

19   BY MR. MCCUNE:

20       Q    When Hogan makes the determination as to

21   whether to decline or authorize a transaction, does the

22   Hogan system send some sort of prompt back to the

23   vendor?

24            MR. JOLLEY:  Objection, vague and ambiguous.

25            THE WITNESS:  Not to the vendor, to the
```

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1    system requesting the authorization.

2    BY MR. MCCUNE:

3        Q    So for the check card illustration, what

4    system would that be?

5        A    RDS.

6        Q    Does the Hogan system record the fact that it

7    has authorized a transaction?

8        A    In the posting of a memo on the account.

9        Q    When you say "posting a memo," what do you

10   mean?

11    .   A    An actual debit XR memo debit transaction is

12   posted to the DA checking account.  That is a pending

13   debit.  So we know we posted the debit.

14       Q    Does Hogan record when it posts the memo?

15       A    The memo post is placed and there is a log of

16   that memo post.  Which is one of the reports you have;

17   XR memo.

18       Q    Then there is the memo post, and then at some

19   later time the transaction is posted to the account, is

20   that how this works?

21       A    Right.  But the settlement, it's a settlement

22   system that then delivers the hard post.  So the

23   authorization system and the settlement system are not

24   the same system, and the data passed to us is not the

25   same.

20

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1     Q    So it was an authorization system and the

2  what system?

3     A    Settlement system.

4     Q    Are they both systems within Hogan?

5     A    No, they are both systems within Wells Fargo,

6  within TIG, but not within Hogan.  They are both

7  systems within the ATM and point-of-sale application.

8     Q    Is the memo posting information retained

9  beyond the day that it occurs?

10         MR. JOLLEY:  Objection, vague and ambiguous.

11         THE WITNESS:  Yes.

12 BY MR. MCCUNE:

13    Q    If I wanted to run a report on one of my

14 clients as to any one particular transaction and find

15 out the date in which it, the transaction had a memo

16 post on it, the system would be able to do that?

17         MR. JOLLEY:  Objection, vague and ambiguous.

18         THE WITNESS:  Sixty days worth of transaction

19 data is available.

20 BY MR. MCCUNE:

21    Q    Then what happens to the data?

22    A    Rolls off.  We can't afford to store more

23 data than that.  It's expensive to store data.

24         Reports are available after that still,

25 but data files are not.

21

BARKLEY
Court Reporters

1       Q     What data do the reports use then?

2       A     The reports are created when the memo post is

3   placed and logged.  So the reports go out to the report

4   archive system and are stored there.  That's why you

5   can look for reports for an extended period of time.

6   The data used to create those reports is not saved for

7   extended periods of time.

8       Q     Is there a report created for every

9   transaction?

10      A     Every transaction is -- every memo post

11  transaction is on that XR memo file on the day posted.

12      Q     Let's take a look at 73.  Is that the

13  document we are talking about?

14      A     The XR memo report, yes.

15      Q     The one at the top?

16      A     The one at the top.

17      Q     What does XR stands for?

18      A     XR is custom.  So Hogan delivered as one

19  naming convention and Wells Fargo enhanced has another.

20  X tells me it's a custom report.

21      Q     Start at the top line, left to right,

22  "Company 114."  That refers to California?

23      A     Yes.

24      Q     Then "PROCGRP."  What does that refer to?

25      A     Refers to the processing group.  And the PGG4

22

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1    is the processing group, which refers to the idea that

2    this is, these are retail accounts.  Tells me

3    something.  Doesn't really tell you anything.

4        Q    Then the run date of "1:08.06-16," what does

5    that tell you?

6        A    That's exactly when the report was produced.

7    So the job that ran to produce this report ran at that

8    date and time.  It was produced 6/16 at 5:44.

9             Is that what that says?  Whatever time

10   that is, that's the date and time that the report

11   was produced.

12       Q    It was 6/16.  And where do you get the year?

13       A    So, this is a Hogan formatted year.  One is

14   the century, "08" is the year.  So the date is in

15   century, year, month, day format is the date of this

16   report.

17       Q    Then below that there is an effective date.

18   How is that different than the run date?

19       A    If the data on the report were being produced

20   as of a date, that could be different.  These -- this

21   data is not.  So that the effective date and the run

22   date should always be the same.

23       Q    Then underneath that we have what?

24       A    The title of the report, and then you have

25   basically the information that tells you the period of

23

BARKLEY
Court Reporters

1    time that the memo data was collected.

2            So, from 2008 06/15, at 5:01:22 -- in

3    milliseconds I guess -- through 2008, 06/16 at

4    5:35:05, all memo post transactions posted within

5    that range of time and dates is what is reflected on

6    this report.  So it's telling you the time period we

7    collected memos for this report.

8        Q    Is this a report that's already in existence,

.9    or was this a report on the run date somebody had put

10   parameters and it generated a report?

11           MR. JOLLEY:  Objection, vague.

12           THE WITNESS:  Ask the question again.

13   BY MR. MCCUNE:

14       Q    Sure.

15           The time period that's identified from and

16   through, is that something that's already in place

17   or is that something that the user inputted that

18   generated this report?

19       A    It's generated based on the grouping of

20   transactions pooled.  So from transaction 1 through

21   transaction 10,000, however many were pooled, the

22   date/time stamp for the first one through the date/time

23   stamp of the last one.

24       Q    If in this example instead of wanting just

25   from 6/15 to 6/16 -- I want 6/15 to 6/20/08 -- do I

24

BARKLEY
Court Reporters

1  have the ability to do that?

2      A    Yeah.  But you have to go cross days.  So you

3  would have to take the report from this date, report

4  from the next date, report from the next date through.

5           If you want to go 6/15 through 6/20 then

6  you potentially have to pool reports for four or

7  five days, whatever that comes up to.

8      Q    Then the information that's contained within

9  the report, it has the account numbers -- I assume

10  that's for the customer account number.  Is that what

11  that is?

12      A    Yeah.  That's the customer account number.

13  DD account number.

14      Q    Then the "post date," what does that refer

15  to, the memo post?

16      A    The date the transaction was posted to the

17  system.

18      Q    Not the date that it was posted to the

19  account?  Am I correct?

20      A    It is a memo posted to the account, but it

21  does not reflect the actual hard post to account.  The

22  hard post, that you will ultimately feed the customer's

23  statement, if you will.

24      Q    What is the effective date, the same as

25  what's listed up above, or what is the effective date

25

BARKLEY
Court Reporters

1 for a transaction?

2  A The effective date for a transaction is, it

3 can be a date less than the current date if the

4 transaction needs to be back-dated.  Memo post activity

5 is not effective dated.

6  Q Then the timestamp date, what does that refer

7 to?

8  A The timestamp date is actually the computer

9 system date that the transaction posted.  So if I

10 memo-post a transaction on Saturday, I'm going to have

11 a Saturday system date and time.  But the post-date

12 would be Monday because we are on Monday's business,

13 for example.  So it's the actual computer system date

14 and system time that the memo post hits.  And because

15 we run in Minneapolis, that's a central time zone

16 stamp.

17  Q What is "TC?"

18  A Tran code.

19  Q What is the "5701 tran code?"

20  A That is an ATM or point-of-sale

21 authorization; transaction memo post transaction.  The

22 tran code is what tells me a little bit about where it

23 came from.

24  Q Then the "transaction amount" slash what's

25 that bottom part?

26

BARKLEY
Court Reporters

1        A    "Restricted deposit."

2        Q    What does that mean?

3        A    If it's a credit transaction, a portion of

4    that credit can be restricted.  Or made unavailable.

5    So if you make a deposit at the ATM you only get, a

6    hundred dollars is available.  So the restricted

7    deposit tells you how much of the CR is unavailable.

8        Q    Then the "trace ID."  What is that?

9        A    It's a calculated trace that's sent to us

10    from the authorizing system that tells them some

11    information about what they sent.

12        Q    Is there an ID number associated with this

13    particular transaction as part of this memo?

14            MR. JOLLEY:  Objection, vague and ambiguous.

15            THE WITNESS:  There is always a trace.  It

16    doesn't mean anything to Hogan, so I'm not sure what

17    your question is.

18    BY MR. MCCUNE:

19        Q    Once a transaction comes into the system, is

20    it assigned some number that sticks with it through the

21    Wells Fargo process?

22        A    Not from the memo post to the hard post.

23        Q    When the system goes from a memo post to a

24    hard post, how does it know which transaction is what?

25            MR. JOLLEY:  Objection, vague and ambiguous.

27

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1          THE WITNESS:  It doesn't.  We don't go from

2    memo post to hard post.  The system, being Hogan, does

3    not go from memo post to hard post.

4          There is two pieces to the memo post/hard

5    post process.  There is the memo post authorization,

6    and there is the settlement system that delivers the

7    hard post.  We don't match them on Hogan.  The memo

8    post falls off the hard post.

9          Q     Then next is the "operator" I assume.

10         A     Yes.

11         Q     What does that refer to?

12         A     That's typically some type of ID that

13   identifies who did it.  So in the case of ATM

14   point-of-sale, this is probably always the same coming

15   from the RDS system.  If it were coming from the teller

16   line it may actually have a teller operator ID, for

17   example.

18         Q     Then the "source," what is that?

19         A     That's the source system that sent the memo

20   post to Hogan.  So you'll see POS versus ATM versus

21   TMS, because these are all systems that deliver

22   authorization requests and memo posts to Hogan.

23         Q     Then the next part of the description is

24   partially, I think it's cut off.  Maybe it's not.

25               What is that?

28

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1     A    The description?

2     Q    Yes.

3     A    It's just the transaction description that's

4 placed on each memo post.  It's about a 47-character

5 description.  It's not identical to what hits the hard

6 post and the statement.

7     Q    It is not identical?

8     A    It's not identical to the description

9 provided on the hard post.

10     MR. JOLLEY:  Just for the record, this is how

11 it prints out.  There is nothing cut off.  This is how

12 it would show on the screen.

13 BY MR. MCCUNE:

14     Q    Are there any other fields associated with

15 this XR memo that didn't print out on the screen?

16     A    I don't know.

17     Q    Where does the description come from?  How

18 does the computer know how to describe the transaction?

19     MR. JOLLEY:  Objection, vague and ambiguous.

20 Compound.

21     THE WITNESS:  The system, the authorizing

22 system, sends it.  So ATM sends it.  Point-of-sale

23 sends it.  We don't build it.  Hogan doesn't build it.

24 BY MR. MCCUNE:

25     Q    So do I understand correctly that all of the

29

BARKLEY

1  information, the data that supports this report is kept

2  for 60 days on an ongoing basis?

3      A    Yes.

4      Q    And then at the end of the 60 days new data

5  is written over the old data?

6      A    No, it's not written over.  We just only keep

7  60 days.  After 60 days it drops off.

8      Q    When you say "drops off," I guess I don't

9  quite understand what that means.  What do you mean by

10 "drops off?"

11     A    We create a file that has this data, and once

12 that data is 60 days old it, I guess you would think of

13 it as getting written over.  But -- I'm not sure in

14 this case whether this is a -- I don't want to get too

15 technical.

16          I'm not sure whether this is a generation

17 data file where we keep 60 generations, once you get

18 60 it falls off, or whether he's adding onto it up

19 to 60 days.  So I don't know if it's one big file at

20 this point or whether it's 60 daily files.  But

21 Chuck provided that information and told me he only

22 keeps 60 days, so I guess whether it's written over

23 or whether it falls off doesn't really matter.  It's

24 gone after 60 days.

25     Q    So if I wanted to check on a particular

30

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1    transaction that occurred three years ago on my account

2    through the memo process, a report would be generated

3    for that day, that's the only way we could check that?

4        A    This report is a fairly new report and only

5    started being generated in January of 2006.  I looked

6    that up yesterday.

7        Q    What was done before that?

8        A    Nothing.

9        Q    So was it your understanding before that it

10   would be kept for 60 days and it would drop off?

11       A    Before that there was no log of the memo

12   activity.  The way the memos worked, systematically, is

13   the same, but we didn't log and report memo activity

14   before that.

15            MR. MCCUNE:  Let's take a few minutes break.

16            (Recess taken.)

17   BY MR. MCCUNE:

18       Q    Let's assume that sometime after January of

19   '06 I have an overdraft, and I know the amount, I know

20   where, what type of transaction it was, I know the date

21   the transaction occurred.  How would you go about --

22   and I wanted to know when it posted, memo posted, how

23   would I go about doing that?

24            MR. JOLLEY:  Objection, vague and ambiguous.

25   Incomplete hypothetical.

31

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1          THE WITNESS:  Are you suggesting that

2     overdraft was caused by a specific transaction?

3     BY MR. MCCUNE:

4          Q    I'm assuming that I received a notice in the

5     mail saying I got an overdraft fee for specific

6     transaction A.

7          MR. JOLLEY:  Same objections.  Assumes facts.

8          THE WITNESS:  So what's the question?

9     BY MR. MCCUNE:

10         Q    My question is I want to go back a year and a

11    half ago, when I got one of those little notices saying

12    my ten dollar Starbucks resulted in an overdraft fee

13    and I want to know when that transaction was memo

14    posted.

15         MR. JOLLEY:  Same objections.

16         THE WITNESS:  So within the time frame I have

17    this report available?

18    BY MR. MCCUNE:

19         Q    Which is after January of '06; right?

20         A    Right.

21         Q    Yes?

22         A    I would have to go to the BR-14 report to

23    find the day you overdraft to find the item that you're

24    suggesting caused the overdraft, and then I have to try

25    and trace that item back to the CR-1 report, and/or the

32

BARKLEY
Court Reporters

1    XR memo report, to identify where it posted, what the

2    balance was, where it posted, to determine why it

3    caused the overdraft.

4        Q    Why would you need to pull the BR-14 report?

5        A    That's the report that's going to tell me a

6    year ago that you overdrafted.

7        Q    It's going to identify the specific

8    transactions?

9            MR. JOLLEY:  Objection, vague and ambiguous.

10           THE WITNESS:  Yes.  The BR-14, yes, is going

11   to identify the overdraft condition and the items that

12   fed into that overdraft condition.

13   BY MR. MCCUNE:

14       Q    Then what do you need the CR-1 for?

15       A    That tells me everything that -- well, I

16   guess I don't really need the CR-1; the BR-14 should

17   tell me everything that posted.

18       Q    Is one of these documents, one of these two

19   documents, the BR-14?

20       A    Yeah, that one is the BR-14.  Exhibit 70 is

21   the BR-14.

22       Q    So, for this example, it shows the last four

23   credit card purchases posting into overdraft?

24           MR. JOLLEY:  Objection.  "Credit card

25   purchases?"

33

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1          MR. MCCUNE:  The check card.  Thank you.

2          THE WITNESS:  Yes.

3     BY MR. MCCUNE:

4          Q     So if, in our example, I wanted to go find

5     these four transactions to determine when they were

6     memo posted, what would be the process that determined

7     that?

8          MR. JOLLEY:  Objection, vague and ambiguous.

9     You can answer.

10         THE WITNESS:  The process would be to take

11    these four transactions on this report and look them up

12    on the XR memo report to identify when they memo

13    posted.

14    BY MR. MCCUNE:

15         Q     Physically, how would you go about doing

16    that?  Is that running a query, is that printing up?

17         A     I would have to go to the report archive

18    system and look up the report.

19         Q     How would you look up the report; what

20    parameters would you use to look up the report?

21         MR. JOLLEY:  Objection.  Assumes facts.

22         THE WITNESS:  I would look up the report for

23    the date that I see in this description.  So this

24    account was overdraft on October 10th.  That's when

25    the actual transaction's posted, on October 10th.


                              34

BARKLEY

1   But if I look at this description information, it tells

2   me when it was actually authorized.  That's the date I

3   would go look up the memo post.

4   BY MR. MCCUNE:

5        Q    So the authorization date is part of the

6   description field?

7             MR. JOLLEY:  Objection, vague and ambiguous.

8   Objection to the term "description field."  You can

9   answer.

10             THE WITNESS:  Yes, on these transactions, it

11   is.

12   BY MR. MCCUNE:

13        Q    On this BR-14 it has "trace ID" above the

14   numbers.  Those trace ID numbers are the settlement

15   system ID numbers?

16        A    Yes.  That trace ID tells me which system

17   sent it to me, Hogan, and the trace or items sequence

18   number that's assigned to that.

19        Q    Is there a specific field within the

20   description in which the date of the memo posting is

21   listed?

22             MR. JOLLEY:  Objection, vague and ambiguous.

23             THE WITNESS:  No.  It's a free-form

24   description field.  Hogan's perspective, it's a

25   free-form 172-character field.  The settlement system

35

BARKLEY

1    would have to speak to the consistency of the date in

2    the same position of the description.

3    BY MR. MCCUNE:

4        Q    Who would be the person in your basic

5    position in the settlement area?

6        A    I would probably point you to Paul

7    Williamson.

8        Q    Where is Mr. Williamson?

9        A    Arizona.

10        Q    Do you know whether in this settlement system

11    the date of the memo posting is consistently in the

12    same field?

13            MR. JOLLEY:  Objection, vague and ambiguous.

14            THE WITNESS:  No.

15    BY MR. MCCUNE:

16        Q    You don't know, or it's not?

17        A    I don't know, because -- as I stated

18    before -- it's just a description field to us.  It's

19    one big field to Hogan.

20        Q    The trace ID and the description field on

21    Exhibit 70 do not come from the Hogan system however?

22        A    Correct.

23        Q    What computer program runs the settlement

24    system?

25        A    Again, I think probably Paul or someone from

36

BARKLEY
Court Reporters

```
 1    date?  I know what an IRD's, I just don't know whether

 2    or not this is trying to flag whether or not we have

 3    had any IRD's posted to this account.  An IRD is an

 4    imagery placement document, so a check could be

 5    presented to us as an imagery placement document versus

 6    an actual check.  But it has to do with check

 7    processing, not card processing.

 8         Q    After a transaction memo posts, I have

 9    learned it's listed as pending for different times

10    depending on the different type of transaction.  So

11    let's take a check card transaction that the settlement

12    does not come in within 5 days.

13              What is happening with the Hogan system

14    for the memo post?

15              MR. JOLLEY:  Objection.  Scope.  Vague and

16    ambiguous.  Incomplete hypothetical.

17              THE WITNESS:  Hogan only posts what's sent to

18    us.  We don't control the length of time a memo post

19    stays on.

20    BY MR. MCCUNE:

21         Q    What system controls that?

22         A    The card settlement system.

23         Q    How does the card settlement system know when

24    there has been a memo posting?

25              MR. JOLLEY:  Objection.  Scope.  Vague and
```

41

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1    ambiguous.

2                THE WITNESS:  They send us the memo post.

3    So, back to IRDS.  They send the authorization, and I

4    think Karl mentioned FDR signature-based point-of-sale

5    transactions are authorized through FDR.  FDR knows

6    what's settling tonight and what's not.  So IRDS is

7    just the authorization system to get to Hogan to post a

8    memo post.

9                After that, FDR is -- who knows whether

10   the item's settling.  There is not settling -- they

11   send us, they send card settlement, a file of

12   transactions that need to be re-memo posted, and

13   they send them to Hogan to post.  If they don't

14   re-memo post for more than two days, and they never

15   send us a hard post, we have no control over that.

16   We only post what's sent to us.

17       Q    So FDR sends a list of transactions that

18   aren't ready for settlement yet or they haven't

19   settled?

20       A    Right.

21       Q    What happens --

22                MR. JOLLEY:  Objection, scope.  Vague and

23   ambiguous.  You can answer.

24                THE WITNESS:  They send those transactions to

25   the card settlement system.  They then send those

                            42

BARKLEY
Court Reporters

1    transactions on to Hogan, and we re-memo post them.

2    BY MR. MCCUNE:

3        Q    When you say you "re-memo post" them, what

4    does that mean?

5        A    What it means is that the original

6    authorization memo post is only out there for the day.

7    It's going to fall off tonight.  So when they send us a

8    file of the transactions that are not going to settle

9    so we can run a job to repost those memos in order to

10   continue to hold the funds because we know the customer

11   spent the money.

12       Q    And those -- if it's five days, that notice

13   comes for four straight days?

14             MR. JOLLEY:  Objection.  Assumes facts.

15   Objection, vague and ambiguous.  And objection to the

16   assumption of five days.

17             You can answer.

18             THE WITNESS:  FDR controls the length of time

19   they send them to us.  We don't.

20   BY MR. MCCUNE:

21       Q    Does it repost on more than one occasion if

22   it takes five days before the settlement occurs?

23             MR. JOLLEY:  Objection, vague and ambiguous.

24   Scope.

25             THE WITNESS:  From a Hogan perspective, we

43

CONFIDENTIAL - DEBBIE CHACON                    BARKLEY

1    will post whatever they send us.  If they send it for

2    two days, we will repost it for two days.  If they

3    don't send it at all, we don't post it at all.  We have

4    no control over what gets re-memo posted.  That's all

5    at FDR and settlement.

6    BY MR. MCCUNE:

7        Q    There must be some arrangement between Wells

8    Fargo and FDR as to what they are supposed to do; isn't

9    there?

10           MR. JOLLEY:  Objection.  Scope.  That is

11   clearly outside of the scope of her knowledge, personal

12   knowledge, about the agreement with FDR.

13           You can answer.

14           THE WITNESS:  That's not my area of

15   expertise.

16   BY MR. MCCUNE:

17       Q    So I go to the store, online it shows we

18   having a pending charge on the day, and I have it there

19   for three business days and then it drops off because

20   apparently it hasn't presented for settlement yet --

21       A    Yes.

22           MR. JOLLEY:  Is that a question?  Objection.

23           MR. MCCUNE:  It's leading to a question.

24   BY MR. MCCUNE:

25       Q    So, the question is, how does the online

44

CONFIDENTIAL - DEBBIE CHACON

BARKLEY
Court Reporters

1    activity page know that it's to remove that item as a

2    pending charge?

3             MR. JOLLEY:  Objection, vague and ambiguous.

4    Incomplete hypothetical.  You can answer.

5             THE WITNESS:  We don't know to remove it.

6    Every memo posted today falls off tonight.

7    BY MR. MCCUNE:

8        Q    When you're saying "we."

9        A    Hogan deposits.

10            Every memo transaction that you post for

11   today is gone tonight.  It's a one-day memo entry.

12   So if they don't send us a re-memo post, it's gone.

13   We don't -- if it's gone, it doesn't show up online,

14   it doesn't show up in available balance, it doesn't

15   show up anywhere.

16       Q    If executive management wanted a system where

17   a pending charge would stay on the customer's online

18   activity page and available balance for, let's say, 30

19   days, continually, and/or until it settled, how would

20   it do that?

21            MR. JOLLEY:  Objection, incomplete

22   hypothetical.  Assumes facts.  Scope.

23            To the extent that she has an

24   understanding of how executive management would go

25   about to do something, she can answer from her

45

BARKLEY

1    system, any other systems you think might have that

2    information or potentially could have that information?

3              MR. JOLLEY:  Objection, compound.

4              THE WITNESS:  I don't know.

5    BY MR. MCCUNE:

6         Q    Would there be any that you would check other

7    than those two?

8         A    No.

9         Q    Same question for the date and time a

10   transaction was listed or incorporated into the

11   available balance figure; other than Hogan, are there

12   any other systems you would look at to try to figure

13   that out?

14             MR. JOLLEY:  Objection, vague and ambiguous.

15             THE WITNESS:  No.

16   BY MR. MCCUNE:

17        Q    Do you believe that information is anywhere

18   at Wells Fargo?

19        A    What information?

20        Q    The information as to a particular

21   transaction, when it first was incorporated into

22   available balance?

23        A    No.

24        Q    You don't believe that it's anywhere?

25        A    Available balance is a realtime field,

51

BARKLEY
Court Reporters

1   calculated field.  It's not stored anywhere.

2       Q    For a transaction, does the available balance

3   figure -- strike that.

4           The available balance figure is a transaction

5   that comes in that -- is the mechanism which, that

6   happens when a memo hold is put on a transaction?

7           MR. JOLLEY:  Objection, vague and ambiguous.

8           THE WITNESS:  Let me make sure I understand

9   this.  You're asking me the point in time that the

10  available balance is effected?

11  BY MR. MCCUNE:

12      Q    Yes.

13      A    Is when the memo transaction is posted in?

14      Q    That's what I was asking.

15      A    Yes.

16      Q    If you knew when the memo hold was placed,

17  you would know when the available balance figure was

18  changed for a particular transaction.  Is that an

19  accurate statement?

20      A    That's one component of available balance,

21  yes.

22      Q    If over the last 30 days we wanted to take

23  transactions that resulted in overdrafts and reorder

24  them not on their hard posting date but rather to do it

25  by their memo posting date, could that be done?

CONFIDENTIAL - DEBBIE CHACON

BARKLEY

```
1              MR. JOLLEY:  Objection.  Scope.

2              THE WITNESS:  So if you had all memo post

3     transactions, would you reorder them by their memo

4     posting date and time?

5              MR. MCCUNE:  Yes.

6              THE WITNESS:  Yes, they are in that order.

7     BY MR. MCCUNE:

8         Q    Are they in that order even after they have

9     been hard posted?

10        A    No.  Memo posts are gone after they have been

11    hard posted.  So on the reports they should be in the

12    order they were presented for posting.

13        Q    So --

14        A    But they are not anywhere on the account any

15    longer.

16        Q    So what's --

17        A    They're pending temporary entries, if you

18    will.  Pending temporary memo.

19        Q    I thought the information was kept for 60

20    days.

21        A    Not on the account, on the reports.  And on

22    the files that feed the reports.  Not on the account.

23             MR. MCCUNE:  Let's take a break.

24             (Recess taken.)

25    BY MR. MCCUNE:
```

CONFIDENTIAL - DEBBIE CHACON

BARKLEY

1

## DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA      }
                              }      ss.
4    COUNTY OF SAN FRANCISCO }

5

6            I, Jan W. Serra, hereby certify:

7            I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 8207 issued by the Court

10   Reporters Board of California and which is in full force

11   and effect.  (Fed. R. Civ. P. 28(a)).

12           I am authorized to administer oaths or

13   affirmations pursuant to California Code of Civil

14   Procedure, Section 2093(b) and prior to being examined,

15   the witness was first duly sworn by me.  (Fed. R. Civ.

16   P. 28(a), 30(f)(1)).

17           I am not a relative or employee or attorney or

18   counsel of any of the parties, nor am I a relative or

19   employee of such attorney or counsel, nor am I

20   financially interested in this action.  (Fed. R. Civ. P.

21   28).

22           I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25                            / / /

60

BARKLEY

1  of the testimony given by the witness.  (Fed. R. Civ. P.

2  30(f)(1)).

3          Before completion of the deposition, review of

4  the transcript [xx] was [  ] was not requested.  If

5  requested, any changes made by the deponent (and

6  provided to the reporter) during the period allowed, are

7  appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9  Dated:  July 1_____ , 2008_

10

11         _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

61