Richard D. McCune, Esq. State Bar No. 132124
rdm@mwtriallawyers.com
Jae (Eddie) K. Kim, Esq., State Bar No. 236805
jkk@mwtriallawyers.com
MCCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Mitchell M. Breit, Esq. (Admitted *Pro Hac Vice*)
mbreit@wdklaw.com
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, NY  10036
Telephone:  (212) 447-7070
Facsimile: (212) 447-7077

Attorneys for Plaintiffs, VERONICA GUTIERREZ, ERIN WALKER
and WILLIAM SMITH, on behalf of themselves and
all others similarly situated,

# REDACTED VERSION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER and WILLIAM SMITH, as individuals, and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and DOES 1 through 125,<br><br>              Defendants. | Case No.:  C 07-05923 WHA (JCSx)<br><br>CLASS ACTION<br><br>***REDACTED VERSION:***<br>**PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO BANK, N.A, FOR SUMMARY  JUDGMENT; DECLARATION OF RICHARD D. McCUNE; DECLARATION OF WILLIAM SMITH; DECLARATION OF VERONIC GUTIERREZ; DECLARATION OF ERIN WALKER; EXHIBITS;**<br><br>**DATE:  August 21, 2008**<br>**TIME: 8:00 a.m.**<br>**DEPT:  Courtroom 9, 19th Floor**<br><br>Judge Assigned:   Hon. William H. Alsup<br>Original Complaint filed: November 21, 2007 |

## TABLE OF CONTENTS

**Page**

I  INTRODUCTION ................................................................................. 1

II  STATEMENT OF THE CASE ............................................................ 1

   A.  Plaintiffs' Claims ....................................................................... 1

   B.  Wells Fargo's Motion Is an Attempt to Confuse and Mislead the
      Issues to Conceal Their True Motives ........................................ 1

   C.  How Plaintiffs Were Affected by Wells Fargo's Actions ......... 3

        1.  Plaintiff Veronica Gutierrez ....................................... 4
        2.  Plaintiff William Smith ............................................... 7
        3.  Plaintiff Erin Walker ................................................... 9

III  SUMMARY OF ARGUMENT ......................................................... 11

IV  ARGUMENT ................................................................................... 11

   A.  Because Plaintiffs' Claims are Based in Tort, and Not Laws Specifically
      Aimed at Banks, They Are Not Preempted .............................. 11

        1.  Plaintiffs' Claims Do Not Involve the "Business of Banking," and
            Therefore, Are Not Preempted ................................... 12

        2.  Plaintiffs' Claims Based on Wells Fargo's Practice of Publishing
            Inaccurate "Available Balance" Information to Create Additional
            Overdraft Fees Are Not Preempted Because Misrepresentation
            and Fraud Do Not Involve the "Business of Banking" ......... 17

   B.  Plaintiffs Have Standing to Pursue Each of Their Claims or, Alternatively,
      Triable Issues of Material Facts Must be Resolved Before the Legal
      Issue of Whether Plaintiffs Have Standing Can be Determined ................. 20

        1.  Reliance is a Question of Fact to be Left to the Jury .............. 21
        2.  Damage Is a Question of Fact For the Jury .......................... 22
        3.  Veronica Gutierrez Meets the Standing Requirement ............ 23
        4.  William Smith Meets the Standing Requirement ................... 23
        5.  Erin Walker Meets the Standing Requirement ..................... 24
        6.  Plaintiffs have Standing to Bring a Claim for Conversion ....... 24

   C.  Defendant's Motion for Summary Judgment Must Be Denied Because
      Plaintiffs Shows at Least One Triable Issue of Material Fact .......... 25

V  CONCLUSION ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**                                                                                        **PAGES**

*Bank of Am., N.A. v. Sorrell,*
    248 F. Supp. 2d 1196, 1199-1200 (N.D. Ga. 2002)................................................... 13

*Bank of America v. City & County of San Francisco,*
    309 F.3d 551, 558-59 (9th Cir. 2002) ............................................................. 11, 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 326, 106 S. Ct. 2548, 2555 (1986)............................................. 24

*City Solutions, Inc. v. Clear Channel Communications,*
    365 F.3d 835, 840 (9th Cir. 2004) ..................................................................... 22

*Great W. Res., LLC v. Bank of Ark., Nat'l Ass'n, No. 05-5152,*
    2006 WL 626375, at *3-4 (W.D.Ark. Mar.13, 2006) .................................... 13

*Jefferson v. Chase Home Finance,*
    2008 WL 1883484, at *7 (N.D. Cal. April 29, 2008) ................................. 1, 11, 17, 18

*Lujan v. National Wildlife Federation,*
    497 U.S. 871, 110 S. Ct. 3177, 3187-89 (1991) ........................................... 21

*Montgomery v. Bank of America Corp,*
    515 F. Supp. 2d 1106, 1113 (C.D. Cal. 2007) ...................................... 14, 20

*Nunez v. Superior Oil Co.,*
    572 F.2d 1119, 1126 (5th Cir. 1978) ............................................................ 25

*Prinzi v. Keydril Co.,*
    738 F.2d 707 (5th Cir. 1984) ........................................................................... 25

*Rose v. Chase Bank USA,*
    513 F.3d 1032 (9th Cir. 2008) ........................................................................ 20

*Silvas v. E*Trade Mortgage Corporation,*
    421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006)............................................. 20

*Watters v. Wachovia Bank, N.A.,*
    127 S. Ct. 1559, 1567, 167 L. Ed. 2d 389 (2007) .................................... 11

*Westfall v. Erwin,*
    484 U.S. 292, 108 S. Ct. 580 (1988)............................................................ 22

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

*White v. Wachovia Bank, N.A.,*
    2008 WL 2635640 (N.D.Ga., July 2, 2008)................................................. 1, 12, 13, 14

**STATE CASES**

*Alliance Mortgage Co. Rothwell,*
    10 Cal. 4th 1226, 1239, 900 P.2d 601, 608-09 (1995)........................................... 21, 22

*Blankenheim v. E.F. Hutton & Co., Inc.,*
    217 Cal. App. 3d 1463, 1475, 266 Cal. Rptr. 593 (1990).......................................... 22

*Fenning v. Glenfield, Inc.*
    40 Cal. App. 4th 1285, 47 Cal. Rptr. 2d 715 (1995)............................................... 18

*Gibson v. World Savings and Loan Assoc.,*
    103 Cal. App. 4th 1291, 1300-01, 128 Cal. Rptr. 2d 19 (2002) ................................... 18

*Gray v. Don Miller & Associates, Inc.,*
    35 Cal. 3d 498, 503, 198 Cal. Rptr. 551, 674 P.2d 253 (1984) ................................... 22

*Guido v. Koopman,*
    1 Cal. App. 4th 837, 843, 2 Cal. Rptr. 2d 437 (1991)............................................. 22

*Hood v. Santa Barbara Bank & Trust,*
    143 Cal.App.4th 526, 543, 49 Cal.Rptr.3d 369 (2006)............................................. 13

*Hoyem v. Manhattan Beach City Sch. Dist.,*
    22 Cal. 3d 508, 520, 150 Cal. Rptr. 1 (1978)................................................... 22

*Seeger v. Odell,*
    18 Cal.2d 409, 414, 115 P.2d 977............................................................. 22

*Smith v. Wells Fargo Bank, N.A.,*
    135 Cal. App. 4th 1463, 1484, 38 Cal. Rptr. 3d 653 (2005)....................................... 18

**STATE STATUTES**

Cal. Bus. Prof. Code 17200 ................................................................ 15, 17

**FEDERAL REGULATIONS**

12 C.F.R. § 34.4(B)...................................................................... 18

12 C.F.R. § 7.4002...................................................................... 12, 14, 15

12 C.F.R. § 7.4002(d)...................................................................... 12

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

12 C.F.R. § 7.4007 .................................................................................................. 13, 19, 20

12 C.F.R. § 7.4007(b)(2)(iii) .................................................................................. 17

12 C.F.R. § 7.4007(c) ............................................................................................ 13

12 C.F.R. section 7.4007(c) ................................................................................... 12

National Bank Act.................................................................................................*passim*

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)

# I

# INTRODUCTION

Defendant has filed this motion seeking summary judgment on the basis of preemption and, secondarily, on the basis that Plaintiffs lack standing. In attempting to make its square box of a defense fit into the round hole of the facts and law, Defendant has been forced to completely misstate Plaintiffs' theory of the case and what happened to the name Plaintiffs. When the true facts of the allegations are made clear, this case is not one to be decided by law and motion. This case is one for the jury to decide.

As the following will demonstrate, preemption does not apply because the allegations made against Wells Fargo are based in tort and are general commercial prohibitions, not bank specific prohibitions, and therefore not subject to preemption. *Jefferson v. Chase Home Finance*, 2008 WL 1883484, at *7 (N.D. Cal. April 29, 2008), *White v. Wachovia Bank, N.A.*, 2008 WL 2635640 (N.D.Ga., July 2, 2008). Defendant's contention that Plaintiffs lack standing must also fail. Each of the Plaintiffs can establish all of the standing requirements of reliance and damage. Accordingly, Defendant's motion is without merit for the reasons set forth below.

# II

# STATEMENT OF THE CASE

## A. Plaintiffs' Claims

Plaintiffs have made clear in the pleadings, written discovery and depositions, they are contending that Wells Fargo Bank has a practice of routinely and systematically charging overdraft fees for transactions that do not result in an actual overdraft of their accounts. In addition, Plaintiffs contend that Wells Fargo publishes inaccurate and inflated "available balance" information that induces customers to inadvertently overdraft their accounts. Finally, Plaintiffs contend that Wells Fargo fails to disclose these practices.

## B. Wells Fargo's Motion Is an Attempt to Confuse and Mislead the Issues to Conceal Their True Motives

Wells Fargo's motion consists of misstatements of facts about what happened to Plaintiffs and what Plaintiffs are alleging. These misstatements are telling as to how Wells Fargo views its position in the case. If Wells Fargo wanted to legitimately defend its actions, it would do so honestly and accurately. Instead it makes statements such as that Plaintiffs are challenging how Wells Fargo

1   processes transactions.  (Motion of Defendant Wells Fargo Bank, N.A. for Summary Judgment,

2   Memorandum of Points and Authorities ("Def. MSJ Mem."), at pp. 16-17.)  That is false.  Plaintiffs are

3   challenging Wells Fargo's practice of assessing overdraft fees for transactions that do not result in an

4   actual overdraft of the account; not how it processes such transactions.

5        Then in an attempt to further confuse the issues, Wells Fargo spends a great deal of time talking

6   about checks and floats, when neither has any relevance to **debit transactions**.   Plaintiffs have

7   specifically limited their allegations to overdraft fees that arise from electronic debit charges, and have

8   specifically excluded check transactions in this lawsuit.  The reason are that 1) Wells Fargo approves

9   each debit transaction before the transaction is finalized; 2) is aware of exactly when the transaction

10  occurred; and 3) lists the debits in chronological order until later, when it changes the order so it can

11  assess overdraft charges for transactions that were not actual overdraft transactions.  This rationale is

12  contrasted with checks, in which Wells Fargo 1) does not know when the check was written; 2) does not

13  know anything about the transaction until it has already occurred; and 3) has no way of knowing the

14  order in which the transactions took place.

15       Defendant then rather disingenuously asserts that Plaintiffs are challenging the practice and

16  disclosure of how long it takes an electronic transaction to be incorporated into the available balance as

17  a pending transaction.  (Def. MSJ Mem. at p. 8.)  Defendant mischaracterizes Plaintiffs claim in this

18  manner because it knows that: 1) Plaintiffs were aware some transactions were delayed; and 2) it is the

19  only information it discloses to its customers relating to inaccurate available balance information.

20       In truth, the inaccurate available balance claims by Plaintiffs are not that there is a delay in the

21  transactions being posted to the account as a pending charge, but rather, that after pending charges are

22  posted, they are later dropped from the available balance without warning or notice to the customer.  In

23  other words, it is Wells Fargo dropping the charge off after having initially included it in the available

24  balance that is the problem, not a delay in <u>initially</u> including the charge in the available balance.

25       Ironically, Defendant claims both that it discloses this information to consumers, while at the

26  same time claims it is secret information that needs to be filed under seal.  (Declaration of Kenneth A.

27  Zimmerman, ¶ 17.)   In fact, Defendant does not disclose in any of its written materials that a pending

28  charge once listed on the account can be removed without notice or warning thereby leaving an inflated

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1  available balance that is an overdraft draft trap for customers and a profit opportunity for Wells Fargo.

2  (Declaration of Richard McCune ("McCune Decl.") ¶ 6.)

3       The reason for these misstatements and the attempt to confuse the issues, is to conceal Wells

4  Fargo's one and only motive.   By charging overdraft fees for transactions when the customers did not

5  actually overdraft their account, combined with their tricking customers into overdrafts by giving them

6  inaccurate and inflated available balance information, Wells Fargo is making an incredible profit.  In

7  California alone, overdraft fees for debit transactions from consumer accounts generated more than

8  [REDACTED] dollars in profit for Wells Fargo in 2007 (McCune Decl. ¶ 3.)  This number has gone up

9  exponentially over the years as Wells Fargo figured out ways to increase the number of overdraft

10  charges it took from its customers.

11       It is not just the very fringe customers that are affected by this practice.  Overdraft fees affect a

12  large number of customers, especially those least able to absorb the fee of $34 (now $35) per overdraft

13  transaction, even when the transaction is for a $3.25 Starbucks coffee.  In 2007, [REDACTED] of Wells

14  Fargo's California customers incurred at least one overdraft charge, and of those, approximately

15  [REDACTED] had days with multiple overdraft charges.  (McCune Decl. ¶ 3.)

16       This practice has neither been accepted nor viewed as acceptable by Wells Fargo's customers.

17  Even though Wells Fargo only records and keeps [           REDACTED

18                 REDACTED

19        REDACTED    ], (McCune Decl. ¶ 4, Excerpts of Deposition of Julie Gray, Ex. 2)), more

20  than [REDACTED] customers have written to complain about the overdraft policies of Wells Fargo

21  (McCune Decl. ¶ 5.)

22  **C.  How Plaintiffs Were Affected by Wells Fargo's Actions**

23       Each of the named Plaintiffs in this action was issued debit cards in connection with opening a

24  Wells Fargo checking account.  A debit card allows Wells Fargo customers to make purchases from

25  stores and have the money directly and automatically withdrawn from their checking account.  (McCune

26  Decl. ¶ 7; Checking Savings and More Brochure, Ex. 3.)  The debit card is also used for cash

27  withdrawals from ATM machines.

28       For the named Plaintiffs and for a very large number of Wells Fargo customers (especially the

younger customers that Wells Fargo specifically targets in advertisements and marketing), debit cards have almost completely replaced checks and to a great extent cash.  While these customers still occasionally write checks, the vast majority of their payments and bills are made electronically.

The greatest advantage of a debit card over a check is that it is an electronic transaction approved by Wells Fargo before the transaction is completed, making it much easier to keep track of finances, inasmuch as the amount of the purchase is almost immediately deducted from the balance of the account.  Wells Fargo then provides customers access to this "available balance" information that has incorporated the recent purchases, in a number of convenient modes including online, telephone, in-branch and ATM machines.

Online, Wells Fargo defines "available balance" in a way that is completely consistent with a common-sense understanding:

> **The most current picture of funds you have available for withdrawal. It reflects the latest balance based on transactions recorded to your account today including deposited funds, paid checks, withdrawals and point-of-sale purchases.**

(McCune Decl. ¶ 8; Online Definition, Ex. 4 (emphasis added).)

No matter which of these methods is used, the customer is able to verify that the most recent purchases have been included in the available balance, and then use this current picture of funds to make withdrawals and purchase decisions.

With this backdrop, the personal experience of each of the named Plaintiffs makes clear that Wells Fargo has devised a scheme to use the ease and convenience of debit cards to generate huge profits through a "gotcha" system where Wells Fargo increases the likelihood of an overdraft by publishing "available balance" information that it knows is not accurate, and then if a customer overdrafts their account, manipulates other earlier transactions in order to generate multiple overdraft transactions.  It does this without any disclosure to its customers.  A review of what happened to each named Plaintiff illustrates Wells Fargo's scheme.

### 1. Plaintiff Veronica Gutierrez

Plaintiff Veronica Gutierrez opened a checking account at the Wells Fargo Fontana, California branch in October 2002 when she was 18 years old.  She was provided a debit card.  She also opened a

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1  savings account and used the savings account as overdraft protection.  (Declaration of Veronica

2  Gutierrez ("Gutierrez Decl.") ¶ 1.)

3      Ms. Gutierrez worked and went to school full time.  She is completing her education

4  requirements and is set to begin her career as a middle-school teacher.  She was a new financial

5  consumer when opening the account, and, following her mother's advice, was careful with her account.

6  She would occasionally write a check, but the vast majority of purchases were made using the debit

7  card.  She would keep her receipts and review her account statements to make sure that the receipts

8  matched her statements.  (Gutierrez Decl. ¶ 2.)

9      She did have difficulty keeping her account balance accurate, because her check registry never

10  seemed to match the balance given to her by Wells Fargo.  She decided it was just safer to use the Wells

11  Fargo balance.  She would check her "available balance" at least weekly by calling the Wells Fargo toll

12  free number in which an automated service would provide the "available balance" and she would also

13  check the "available balance" when she was online, at a branch store, or when she took out ATM

14  withdrawals.  For four years, she maintained the account without incurring any overdrafts.  (Gutierrez

15  Decl. ¶ 3.)

16      However, that changed in October 2006.  Ms. Gutierrez's records show that on October 5, 2006,

17  she had an available balance over $300.  (McCune Decl. ¶ 9; October 5, 2006 Statement, Ex. 5.)  On

18  October 5, 2006, she made 5 debit card purchases totaling $87.79.  Each of these five debit charges were

19  authorized by Wells Fargo before the transaction occurred, and were listed in chronological order in her

20  account.

21      At the end of October 5, 2006, after these 5 debit charges were incorporated into her account

22  balance as "pending charges" she still had over $200 in available balance.  On October 6, 2006, with an

23  available balance over $200, she made 3 debit charges totally $58.61, leaving her with an available

24  balance at the end of the day of over $100.  (McCune Decl. ¶ 10; November 6, 2006 Statement, Ex. 6.)

25      On October 10, 2006, Ms. Gutierrez accidently, and for the first time since opening the account,

26  put her account $23.59 into the negative, when a check for $65.00 she had written and forgotten about

27  was processed.  (McCune Decl. ¶ 10.)  Ms. Gutierrez does not have any complaint about being charged

28  an overdraft fee for the check transaction.  However, what Wells Fargo did instead of charging her one

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1    overdraft fee for the check (a penalty of $22 for a $65 check seems like adequate punishment), was take

2    all the debit transactions that had occurred from October 5-10, 2006, which it had already approved as

3    being within her account balance and had listed in chronological order, and group them with the one

4    check transaction that was an overdraft transaction.  Wells Fargo then reordered this grouping of

5    transactions from their original chronological order of when they were posted by Wells Fargo, to a

6    different order of the highest charges to the lowest charges.  (McCune Decl. ¶ 10.)

7           By doing this, Wells Fargo was able to take the one overdraft charge and make it into four

8    overdraft charges.  Wells Fargo then unilaterally took $88 (four $22 overdraft charges) from her

9    checking account without Ms. Gutierrez having an opportunity to contest or dispute those charges.

10   These three additional overdraft charges were for transactions that occurred on October 5 & 6, 2006,

11   when there is no question that 1) Wells Fargo had approved the transaction as being within her available

12   balance before it took place, 2) Ms. Gutierrez had sufficient funds in the account to cover the charges,

13   and 3) Wells Fargo had provided her with "available balance" information that she stayed within when

14   making her purchases.  (McCune Decl. ¶ 10.)

15          Ms. Gutierrez does not have a specific recollection of checking her available balance during this

16   time frame.  However, based on her custom and practice of checking her account balance regularly

17   through telephone inquiries and online inquires, it is more probable than not that Ms. Gutierrez obtained

18   her available balance information from Wells Fargo between October 4-9, 2006, and based on available

19   balance information provided by Wells Fargo, believed that her transactions on October 5 and 6 were

20   within both her available balance and her account balance on October 5 and 6, 2006.  She was not aware

21   that she could be charged an overdraft fee even though there was money in her account to cover the

22   transaction.  (Gutierrez Decl. ¶ 4.)

23          If she had known before October 5, 2006 that she would be charged multiple overdraft charges

24   for transaction that were within the available balance if there was a single overdraft, she would have

25   insured that there was always a higher minimum balance in the account to cover for this contingency.

26   Following the assessment of these overdraft fees, Ms. Gutierrez has avoided overdraft fees due to

27   inaccurate available balance figures by keeping a higher balance in her account.  (Gutierrez Decl. ¶ 5.)

28

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1    Ms. Gutierrez' does not complain about the one overdraft for the check; how Wells Fargo chose

2    to process transactions; how Wells Fargo calculates available balance; or that the available balance

3    figure was wrong because of a delay in the debit transactions showing up as pending charges.  Ms.

4    Gutierrez' complaint is limited to Wells Fargo charging overdraft fees for transactions that were not

5    overdraft transactions.  This is based on these debit transactions: 1) were not check transactions; 2) had

6    been approved by Wells Fargo as being within her balance when made; 3) were actually within her

7    account balance; 4) were within the published available balance; 5) had been listed in chronological

8    order before being reordered when Wells Fargo calculated overdraft fees; and 6) had taken place four to

9    five days before the one true overdraft transaction.

10        **2. Plaintiff William Smith**

11    Plaintiff William Smith is 52 years old and a sophisticated financial consumer.  He owns his own

12    business and has five separate accounts (business and consumer) with Wells Fargo.  He has been

13    banking with Wells Fargo since the early 1990's.  He has been doing his banking online since

14    approximately 2003. (Declaration of William Smith ("Smith Decl.") Decl. ¶ 1.)

15        In 1999, Mr. Smith opened the subject checking account as a personal checking account and

16    received a debit card that he could use for debit, check card and ATM transactions.  He used this

17    account for personal expenditures.  It was not the account from which he paid the regular bills.  From

18    the time Mr. Smith started online banking in 2003, he heavily relied on "available balance" information

19    on the website to monitor his accounts.  His daily monitoring of this account, as well as the other

20    accounts, would involve his checking that transactions were posted as pending transactions, so he would

21    know he could rely on the available balance information.  If necessary, he could transfer money between

22    accounts online when an account balance would get low.  This convenience of having the online

23    information of the most current picture of his funds was important.  (Smith Decl. ¶ 2.)

24        On July 3, 2007, Mr. Smith checked his online balance and noted he had about $300 of available

25    balance.  Mr. Smith then bought fireworks for $68.85 using his debit card.  Shortly thereafter, he saw

26    that charge was listed on his account as a pending charge and that the charge had been deducted from his

27    available balance.  Over the next nine days he monitored his available balance information with the

28

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1   belief that the fireworks charge had and was still deducted from the "available balance" information

2   provided to him by Wells Fargo.  (Smith Decl. ¶ 3.)

3           Unknown to Mr. Smith, Wells Fargo removed the fireworks charge after several days without

4   any notification to Mr. Smith.  From that point onward, the "available balance" did not include the

5   fireworks charge that Wells Fargo knew existed and had approved as a pending charge.

6           On July 12, 2007, Mr. Smith checked his available balance and noted he had about $50 in the

7   account.  He was aware that each of his previous charges had posted on his account as a pending charge

8   and he had not written any checks.  He had every reason to believe the "available balance" information

9   was accurate.  He then bought groceries for $24.76.  (Smith Decl. ¶ 4.)  That night, nine days after the

10  fireworks charge was listed on his account and after it had dropped off the account and available balance

11  figure without notification to Mr. Smith, Wells Fargo processed the fireworks charge.  The $68.85

12  fireworks charge not only caused an overdraft for the fireworks charge, it caused the $24.76 grocery

13  charge that Mr. Smith had made after specifically checking his "available balance" to be an overdraft

14  transaction.  (McCune Decl. ¶ 11; June 16 through July 17, 2007 Statement, Ex 7.)  Wells Fargo then

15  unilaterally took $68 (two $34 overdraft charges) from his checking account without Mr. Smith having

16  an opportunity to contest or dispute those charges.

17          Mr. Smith was unaware that Wells Fargo had removed the fireworks charge from his available

18  balance.  While he knew from one other occasion that it was possible for a transaction to fall off the

19  available balance even though it had already been listed as a pending charge, he was not told how, why

20  or when that could happen.  If the fireworks charge had not been listed as a pending charge and then

21  without notice dropped off the "available balance" providing him with inaccurate and inflated available

22  balance information, Mr. Smith would have transferred funds from another account into the subject

23  account and not have had incurred either overdraft fee. (Smith Decl. ¶ 5.)

24          Mr. Smith's complaint is limited to being assessed two overdraft charges on transactions even

25  though 1) he had not written any checks; 2) he had checked his "available balance" online before each

26  transaction to make sure he would not overdraw the account; 3) Wells Fargo had approved both charges

27  as being within his available balance; and 4) there were funds in his account at that time of the July 3,

28  2007 transaction.  In addition, Wells Fargo never disclosed the circumstances of how or when a

particular transaction would be included or excluded from the "available balance" after it had been listed as a pending charge. Plaintiff now knows from this litigation that a pending charge will be removed from the "available balance" after three business days. Wells Fargo never disclosed this fact to Plaintiff, which is information that would have kept him from overdrafting his account.

### 3. Plaintiff Erin Walker

Erin Walker was right out of high school and 17 years old when she opened her checking account in July 2006 with her mother, a co-signor on the account. Ms. Walker was going away to college and needed her own checking account. The campus at Arizona State University where she would be attending school had Wells Fargo ATM machines on campus where she could conduct her banking, so she decided to open a Wells Fargo account. (Declaration of Erin Walker ("Walker Decl.") ¶ 1.)

After receiving several account statements and finding the information in the account statements confusing, Ms. Walker begin using the "available balance" information provided to her by Wells Fargo online and ATM machines for her balance information. She would regularly check the balances online and at the ATM, and would mentally deduct from the available balance the amount of the transactions she was making on an ongoing basis. (Walker Decl. ¶ 2.)

This system worked fine until she became subject to Wells Fargo's "gotcha" overdraft scheme. Erin Walker's records show that on May 26, 2007, she made a deposit and withdrew $20 from a Wells Fargo ATM machine, at which time she would have received her available balance information. On May 29, 2007, she made a cash withdrawal from a non-Wells Fargo ATM where she would again have received her available balance information. Also on May 29, 2007 she made an ATM deposit[1] where she also would have received her available balance information. (McCune Decl. ¶ 12; May 24 through June 25, 2007 Statement, Ex. 8.)

In addition to having received her available balance information from the ATM machines, while not having a specific recollection, based on her custom and practice she also would have reviewed her online account available balance within a couple of days prior to May 29, 2007.

---

[1]  The deposit was not recorded as received by Wells Fargo until June 1, 2008

-9-

On Tuesday, May 29, 2007, Ms. Walker made a $9.66 purchase using her debit card. This purchase was within her available balance on May 29, 2007. She then made a number of additional purchases over the following week and weekend, each of which was approved by Wells Fargo. On the evening of Monday, June 4, 2007, Wells Fargo determined that the account was overdrawn by $51.29. Wells Fargo then unilaterally took from Ms. Walker's account $272 (eight $34 overdraft fees) for the $51.29 in overdraft transactions. It did this despite the fact that it had approved each of these transactions before they were made. In calculating overdraft transactions, Wells Fargo grouped transactions from May 29, 2007 to June 4, 2007 and reordered them from the date of the transaction to an order of highest amount to lowest amount. By doing this, Wells Fargo was able to take transactions, including the $9.66 purchase which was within the "available balance" and actual balance when it occurred and was approved by Wells Fargo six days earlier, and turned that $9.66 charge into a $34 overdraft fee. (McCune Decl. ¶ 12.)

Ms. Walker was unaware that even though purchases were made within the available balance, she could be assessed overdraft charges for those transactions if she overdrafted her account sometime in the future. If she had known this prior to the June 2007 overdraft charges, she would have avoided the overdraft fees because she would have ceased using the Wells Fargo account and changed banks, as she did after having been assessed the subject overdraft fees. (Walker Decl. ¶ 3.)

Ms. Walker's complaint is limited to her receiving the overdraft fee for a transaction that was not an actual overdraft. The May 29, 2007 debit transaction was 1) not a check; 2) within the available balance when made; 3) within her account balance when made; 4) had been approved by Wells Fargo before it was made; and 5) had been made six days before the account was overdrafted. In addition, Wells Fargo had not disclosed that a transaction that was within the available balance figure provided by Wells Fargo could, nevertheless, become a transaction that is the subject of multiple overdraft fees because of an overdraft days or weeks later.

//
//
//
//

III

**SUMMARY OF ARGUMENT**

Plaintiffs respectfully submit that Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment should be denied based on the following grounds:

    (1)    Plaintiffs' claim based on Wells Fargo's practice of charging overdraft fees for transactions that were not overdraft transactions is not preempted because the practice of wrongfully taking money from customers is not consistent with Wells Fargo's deposit-taking powers under the NBA or OCC regulations;

    (2)    Plaintiffs' claim based on Wells Fargo's practice of publishing inaccurate "available balance" information to create additional overdraft fees is not preempted because misrepresentation and fraud are not necessary for Wells Fargo to carry on the business of banking; and

    (3)    Plaintiffs have standing to pursue each of their claims or, alternatively, triable issues of material facts must be resolved before the legal issue of whether Plaintiffs have standing can be determined.

IV

**ARGUMENT**

**A.    Because Plaintiffs' Claims are Based in Tort, and Not Laws Specifically Aimed at Banks, They Are Not Preempted**

Contrary to the position taken by the Defendant, the NBA does not "preempt the field" of banking. *Jefferson v. Chase Home Finance*, 2008 WL 1883484, at \*7 (N.D. Cal. April 29, 2008). Federally chartered banks remain subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the purpose of the NBA. *Id. (citing Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1567, 167 L. Ed. 2d 389 (2007)). State regulation is permissible "when it does not significantly interfere with the national bank's exercise of its powers." *Id.* (*quoting Bank of America v. City & County of San Francisco*, 309 F.3d 551, 558-59 (9th Cir. 2002)).

Wells Fargo erroneously asserts that the National Bank Act ("NBA") and regulations set forth by the Office of the Comptroller of Currency ("OCC") expressly preempt the state laws invoked by Plaintiffs in this action. (*See* Def MSJ Mem. at 14.) However, engaging in the torts of

-11-

1  misrepresentation and conversion clearly are not powers, incidental or not, which Wells Fargo has the

2  authority to exercise, pursuant to the NBA, as these practices are certainly not "necessary to carry on the

3  business of banking." (*See id. (quoting Bank of Am., N.A. v. City & County of San Francisco*, 309 F.3d

4  551 (9th Cir. 2002)).)

5       Meanwhile, nothing in the NBA or 12 C.F.R. § 7.4002 expressly preempts any state law.  On the

6  contrary, Regulation 7.4002 suggests that not all state laws are preempted and that a determination of

7  preemption must be made on a case-by-case basis.  12 C.F.R. § 7.4002(d) ("The OCC applies

8  preemption principles derived from the United States Constitution as interpreted through judicial

9  precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees

10  described in this section").  Regulation 7.4002 suggests that preemption might only apply to state laws

11  "that purport to limit or prohibit charges and fees described in this section." *Id.*

12       In fact, 12 C.F.R. § 7.4007(c), which is entitled "[s]tate laws that are not preempted," specifically

13  states that state laws on contracts, torts, and criminal law "are not inconsistent with the deposit-taking

14  powers of national banks and apply to national banks to the extent that they only incidentally affect the

15  exercise of national banks' deposit-taking powers."

16    **1.  Plaintiffs' Claims Do Not Involve the "Business of Banking," and Therefore, Are Not
       Preempted**

17

18       To try and make its preemption argument, Wells Fargo attempts to reframe Plaintiffs' claims as

19  challenging "Wells Fargo's practices in calculating account balances, determining overdrafts, and

20  imposing overdraft fees for customer-initiated transactions that exceed those balances."  (Def MSJ

21  Mem. at 17.)  Wells Fargo goes on to argue that because Plaintiffs' claims seek to impose state

22  requirements that would conflict with Wells Fargo's authority under the NBA and OCC regulations,

23  Plaintiffs' state-law claims are preempted.  (*Id.*)

24       However, Plaintiffs do not challenge any of the practices mentioned above.  Instead, Plaintiffs'

25  substantive claims are based on Wells Fargo's practice of wrongfully taking money from customers by

26  assessing additional overdraft fees for transactions for which there was no overdraft.  Such practice is

27  *not* preempted by the NBA or OCC regulations.  *White v. Wachovia Bank, N.A.*, 2008 WL 2635640

28  (N.D.Ga., July 2, 2008); *see also* OCC Interpretive Letter No. 1082, Ex. 9.

1       The very recent *White* case is directly on point on this issue.  In *White*, the plaintiffs sued the

2  Wachovia Bank as a class action alleging that the bank delayed, reordered, or otherwise manipulated

3  posting transactions to an account and imposed overdraft fees even where the account contained

4  sufficient funds to pay a draft.  2008 WL 2635640 at *1.  The plaintiffs contended that as a result,

5  overdraft fees were imposed even where there were sufficient funds in the account to cover the

6  transactions.  *Id.*  The plaintiffs alleged that like here, these unfair or deceptive business practices were

7  in violation of the Georgia Fair Business Practices Act §§ 10-1-390 *et seq*., breach of contract, trover

8  and conversion.  *Id.* at *2.  The bank filed a motion to dismiss based on preemption by the NBA and

9  OCC regulations.

10      The *White* court denied the motion and held that plaintiffs' claims were not preempted.  *Id.* at *5.

11  The court noted that 12 C.F.R. § 7.4007(c) expressly provides that applying state laws on the subjects of

12  contracts and torts are "not inconsistent with the deposit-taking powers."  *Id.*  The court acknowledged

13  that  few courts have interpreted the preemption provision of 12 C.F.R. § 7.4007, but others have

14  declined to dismiss state contract, tort, and deceptive trade practices claims similar to the issues in the

15  *White* case (and thus, similar to the case at hand).[2]  *Id.*

16      The court then held that because plaintiffs' claims sound in contract and tort, which do no more

17  than incidentally affect Wachovia's deposit-taking powers, they fall within Regulation 7.4007(c) and are

18  not preempted, as opposed to Regulation 7.4007(b), which applies when state laws "obstruct" or

19  "impair" a national bank's powers.  *Id.* Furthermore, the court determined that Regulation 7.4002, which

20  authorizes banks the power to assess charges and fees, also does not warrant a finding that plaintiffs'

21  state claims are preempted, as plaintiffs' claims are not inconsistent with Regulation 7.4002.[3]   *Id.*

22

23  _____

24  [2] *Great W. Res., LLC v. Bank of Ark., Nat'l Ass'n,* No. 05-5152, 2006 WL 626375, at *3-4 (W.D.Ark.
    Mar.13, 2006) (declining to dismiss breach of contract, Arkansas Deceptive Trade Practices Act,

25  conversion, and breach of implied covenant of good faith claims on grounds of preemption); *Hood v.
    Santa Barbara Bank & Trust,* 143 Cal.App.4th 526, 543, 49 Cal.Rptr.3d 369 (2006) ("Based on the

26  record before us, it does not appear that the state's contract, tort or debt collection laws have more than
    an incidental effect on the exercise of national banks' deposit-taking ... powers or are otherwise

27  inconsistent with the banks' deposit-taking ... powers.").

28  [3] The Court mentioned that if the case was about capping the dollar amount to be charged with regard to
    overdraft fees, for instance, then the claims would be preempted by Regulation 7.4002.  *Cf. Bank of Am.,
    N.A. v. Sorrell,* 248 F. Supp. 2d 1196, 1199-1200 (N.D. Ga. 2002).

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1    The *White* court then distinguished the case from *Montgomery v. Bank of America Corp*, 515 F.

2  Supp. 2d 1106, 1113 (C.D. Cal. 2007), which dismissed the plaintiffs' state law claims "based on the

3  amount of and means of disclosure of [overdraft fees] assessed by defendant" on the ground that 12

4  C.F.R. § 7.4002 preempted those claims.  *Id.* at *6.  The court stated that unlike the claims in

5  *Montgomery*, plaintiffs' claims in *White* are not of a bank regulatory nature that would subject it to

6  federal preemption, and that while the lawsuit "may incidentally implicate Wachovia's largest-to-

7  smallest transaction posting policy, it more importantly claims that Wachovia's policy *allows the routine*

8  *imposition of an overdraft fee for transactions that do not result in an actual overdraft.*"  *Id.* (emphasis

9  added).

10    Here, Plaintiffs' claims are similar to the claims of the plaintiffs in *White* in that they both allege

11  that the banks are charging overdraft fees for transactions for which they had enough funds in their

12  accounts to cover.  Just as in *White*, Plaintiffs' state-law claims sound in tort and, therefore, are not

13  inconsistent with a bank's "deposit-taking powers" and are thus permitted, pursuant to Regulation

14  7.4007(c).  Because, these claims do not conflict with federal law, they should not be preempted by

15  Regulation 7.4007(b) or 7.4002.

16    The *White* court also noted that OCC Interpretive Letter, dated May 22, 2001, states that federal

17  law must be reconciled with the following comment to the California Commercial Code that restricted a

18  bank's discretion to post items "in any order":

19  
20    The only restraint on the discretion given to the payor bank … is that the
        bank act in good faith.  For example, the bank could not properly follow
        an established practice of maximizing the number of returned checks for
21      the sole purpose of increasing the amount of returned check fees charged
        to the customer.[4]

22  *White*, *supra,* at *6.

23  
24  The court concluded that this Interpretive Letter illustrates that compliance with state regulation is

     required when state and federal law do not conflict.  *Id.* at *7.

25    This good faith standard set forth by California law, should likewise govern the claims made by

26  Plaintiffs in the case at hand.  Certainly, the practice of wrongfully assessing and then unilaterally taking

27  
28  

-14-

1   customers overdraft fees from their account even for transactions when the account is not overdrafted is

2   a tort, and does not meet this good faith standard.  This is even more so here, where the practice was

3   implemented solely to generate additional profit for Wells Fargo.

4         The OCC Letter referred to by Wells Fargo, Interpretive Letter No. 1083 [sic – should be 1082,

5   (2007), McCune Decl. ¶ 13, Ex. 9, at p. 3] does not provide guidance on the subject issues, as it simply

6   states and supports the position that "[t]he process by which a bank honors overdraft items is typically

7   part of the Bank's administration of a depositor's account."  (*See* Def. MSJ Mem. at 16.)  This OCC

8   Letter, however, tellingly does not mention anything about a Bank's power to impose overdraft fees for

9   electronic debit transactions made when 1) sufficient funds were in the customers account to cover the

10  transactions; 2) the transaction was within the Banks published "available balance"; and 3) the bank

11  approved the transaction before it was made as being within the available balance; all of which are the

12  substantive claims made here.  Surely, the OCC would not take the position that imposing overdraft fees

13  for transactions when the customer had enough funds to cover such transactions – and thereby

14  wrongfully taking money from the customers – is part of the business of banking and the administration

15  of a depositor's account.

16        In fact, an OCC Advisory Letter, AL 2002-3, dated March 22, 2002, warns that unfair practices

17  which cause substantial consumer injury, where the injury is not outweighed by benefits to the consumer

18  or competition, and where the injury is one that consumers could not reasonably avoid, violate the

19  Federal Trade Commission Act and may violate state laws as well.  (McCune Decl. ¶ 16, Ex. 12, at pp.

20  1, 3-5.)  This letter further states that the "consequence of engaging in practices that may be unfair or

21  deceptive under federal or state law can include litigation, enforcement actions, [and] monetary

22  judgments…."  (*Id.* at p. 1.)  Finally, the OCC admits that "[a] number of state laws prohibit unfair or

23  deceptive acts or practices, and such laws may be applicable to insured depository institutions."  (*Id.* at

24  p. 3, n. 2 (*citing, e.g.,* Cal. Bus. Prof. Code 17200 *et seq.* and 17500 *et seq.*).)

25        The tests and criteria established by the OCC make clear that certain practices are subject to state

26  law.  In analyzing the subject claims under the factors identified by the OCC, it is clear that this type of

27

28
---
[4] This comment is set forth in OCC Interpretive Letters Nos. 916 (2001), McCune Decl. ¶ 14, Ex. 10, at p. 2 and 997 (2004), McCune Decl. ¶ 15,  Ex. 11, at p. 3.

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1    case is exactly the type of unfair practice that the OCC is warning the banks will subject them to state

2    laws.  First, it is undisputed that overdraft charges of the magnitude as charged here cause significant

3    consumer injury.  It goes without saying that charging a $34 overdraft charges for a $3.00 transaction

4    when the transaction is not even an overdraft transaction, causes substantial harm to consumers.  Then

5    the very act of taking money from the account without warning to consumers generates additional

6    overdraft fees.  These combined actions often result, as they did for Plaintiffs Veronica Gutierrez and

7    Erin Walker, in multiple overdraft charges that bear no conceivable relation to the amount of the

8    overdraft.  For students and for the ever increasing number of consumers that are just meeting their

9    monthly expenses, it has a potentially devastating financial effect.

10        Wells Fargo's anticipated argument that it has such a punitive overdraft fee to discourage

11    overdrafts rather than create profit falls flat.  If the rationale was to discourage overdrafts of debit

12    charges, Wells Fargo would 1) decline or at least give customers the option to opt out of their shadow

13    line of credit that is created by Wells Fargo approving overdrafts they know will result in overdraft

14    charges, 2) provide customers point of sale information that a transaction will result in an overdraft so

15    the customer can decide whether to pay $34 extra dollars for a $3.25 cup of coffee, 3) provide customers

16    real-time information on their balance information to assist them in avoiding overdrafts, and 4) provide

17    full and complete disclosures to customers about how to avoid overdrafts.

18        As there is not any benefit to the consumer in this practice, the harm easily outweighs the non-

19    existent benefit to consumers.  The number of customers falling victim to overdrafts makes clear that for

20    consumers that cannot afford to have large balances in their checking account, this is not a practice that

21    is easy to avoid.  Consumers have no way of knowing when transactions will fall off their balance

22    making their available balance inflated.  They do not have any way of knowing when a transaction that

23    was not an overdraft, suddenly becomes one a day, week or month later when a completely unrelated

24    transaction results in an overdraft.

25        In light of the above, Plaintiffs' California law tort-based claims relating to Wells Fargo's

26    practice of imposing overdraft fees for transactions in which Plaintiffs had sufficient funds to cover, do

27    not directly conflict with Wells Fargo's "business of banking" powers authorized by the NBA and OCC

28    regulations, and therefore should not preempted.

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1

2. **Plaintiffs' Claims Based on Wells Fargo's Practice of Publishing Inaccurate "Available Balance" Information to Create Additional Overdraft Fees Are Not Preempted Because Misrepresentation and Fraud Do Not Involve the "Business of Banking"**

2

3

Wells Fargo mischaracterizes Plaintiffs' misrepresentation-based claims based on inaccurate and

4

inflated available balance information that Wells Fargo provides to its customers, as simply being based

5

on inadequate disclosures. (*See* Def. MSJ Mem. at 17.) Wells Fargo then asserts that the OCC

6

regulations identify "disclosure requirements" as an area of express preemption. (*Id.* (*citing* 12 C.F.R.

7

§ 7.4007(b)(2)(iii).)

8

To the contrary, Plaintiffs allege that Wells Fargo's express representation to customers through

9

the clear and commonsense meaning of "available balance," as well as the definition given by Wells

10

Fargo that "available balance" meant the "most current pictures of funds you have available for

11

withdrawal," (McCune Decl. ¶ 8, Online Definition, Ex. 4), was false and misleading. It was false and

12

misleading because Wells Fargo knew, and the consumers did not, that the available funds might not

13

represent what they had for available withdrawal because of charges that had dropped off the balance. It

14

was also false and misleading because even though customers' charges were within the available

15

balance, Wells Fargo's manipulation of determining overdraft fees could still result in an overdraft fee

16

for that transaction. These challenges to Wells Fargo's practices are based on the torts of

17

misrepresentation, fraud, and deceptive practices and, therefore, are not preempted by the NBA or OCC

18

regulations. *See T.C. Jefferson*, 2008 WL 1883484 (N.D. Cal. April 29, 2008).

19

The Ninth Circuit decided this issue recently in *T.C. Jefferson*, in a ruling which undoubtedly

20

favors Plaintiffs on preemption. The plaintiffs in *Jefferson* asserted that Chase Bank made

21

misrepresentations about how it would apply prepayments, in violation of the Consumer Legal

22

Remedies Act, False Advertising Act, and Unfair Competition Laws ("UCL"). *Jefferson*, at *10. The

23

court held that:

24

> such laws of general application, which merely require all businesses
> (including banks) to refrain from misrepresentations and abide by
> contracts and representations to customers do not impair a bank's ability
> to exercise its lending powers. They only "incidentally affect" the
> exercise of a Bank's powers, do not fall into the enumerated categories of
> section 34.4(a), and are therefore not preempted.

25

26

27

*Id.*

28

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)

The court noted that "California courts have repeatedly held that federal law does not preempt UCL causes of action to remedy, as here, misrepresentation and deception in connection with banking practices."[5]  *Id.*  In one such case, *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1484, 38 Cal. Rptr. 3d 653 (2005), a case where a similar group of claimants as the claimants in the subject action were certified as a class, the court of appeal held that the NBA and an OCC regulation did not preempt a UCL cause of action "based on the predicate act of a systematic breach of its contractual disclosure obligations," because "enforcement of a contractual obligation under a state's general laws on contracts only incidentally affects, at most, a national bank's powers.  *Id.*

The Ninth Circuit, in *Jefferson*, held that the above preemption analysis is wholly consistent with the "savings clause" in the very OCC preemption regulation at issue.  *Jefferson* at *12.  That clause provides that state laws on contracts and torts are not inconsistent with the real estate lending powers of national banks, and provides that such state laws apply to national banks "to the extent that they only incidentally affect the exercise of national banks' real estate lending powers."  *Id.* (*citing* 12 C.F.R. § 34.4(b)).  Therefore, the court reasoned, the duty to refrain from misrepresentation falls on all businesses.  *Id.* at *13.  It does not target or regulate banking or lending, and it only incidentally affects the exercise of banks' real estate lending powers.  *Id.*

In the case at hand, Plaintiffs' misrepresentation, non-disclosure and fraud claims are based on Wells Fargo's failure to meet the duty of care required of all business.  These claims are not directed specifically at banks.  Although Plaintiffs specifically allege that Wells Fargo misrepresented available balance information to the customers, and that Wells Fargo deceptively advertised and failed to disclose

---

[5] In *Gibson v. World Savings and Loan Assoc.*103 Cal. App. 4th 1291, 1300-01, 128 Cal. Rptr. 2d 19 (2002), the Court found that plaintiff's UCL claims that the lender violated the terms of the deeds of trust and misrepresented the insurance were predicated on the duties of a contracting party to comply with its contractual obligations, on the duty not to misrepresent facts, and on the duty to refrain from unfair or deceptive business practices. 103 Cal. App. 4th at 1301-02.  These duties are not requirements or prohibitions that the regulatory statutes for federal savings associations preempts, nor are these predicate duties directed towards federal savings associations more than any other type of business.  *Id.*  Accordingly, plaintiff's claims were not preempted.  *Id.*

*Fenning v. Glenfield, Inc.* 40 Cal. App. 4th 1285, 47 Cal. Rptr. 2d 715 (1995) used the same analysis.  There, plaintiff alleged that a brokerage engaged in fraud, misrepresentation, and deceptive advertising by intentionally creating the impression it was part of a bank.  *Id.*  The claims were not preempted.  *Id.*

-18-

the meaning of available balance information, Plaintiffs' claims with regards to these allegations are based on the general commercial obligations required of all business.  These duties include refraining from misrepresenting products and services and abiding by the terms of the contract and disclosure materials.

Furthermore, the OCC regulation at issue here is 12 C.F.R. § 7.4007, which provides a savings clause as applied to banking practices in its subsection (c) that is analogous with the savings clause at issue in *Jefferson*.  So just as in *Jefferson*, where the misrepresentation claims were found to be based on tort and contract and involve practices that are merely incidental to a bank's lending practices, and therefore, are not preempted, the misrepresentation and fraud claims here should likewise not be preempted.

In addition, several OCC Interpretive Letters mentioned above, including Nos. 916 and 997, state that "a relevant factor in evaluating good faith would be whether a bank's actions were inconsistent with the practices it had represented to its customers that it would follow."  (McCune Decl. ¶ 14, Ex. 10; ¶ 15, Ex. 11.)  Implicit in this assertion by the OCC is that California's good faith standard must be considered in evaluating misrepresentation claims against Wells Fargo.

Likewise, in an OCC Advisory Letter (AL 2002-3), dated March 22, 2002, the OCC warns of deceptive acts or practices where there is a representation, omission, act or practice that is likely to mislead; the act or practice would be deceptive from the perspective of a reasonable consumer; and the representation, omission, act or practice is material.  (McCune Decl. ¶ 16, Ex. 12. at pp. 3-4.)  The OCC further suggests that such practices may be prosecuted under state causes of actions such as the UCL.  (*Id*. at p. 3, n2.)  Plaintiffs' misrepresentation-based claims are based on deceptive practices which meet the elements set forth in the Advisory Letter, and therefore may be prosecuted under state law.

The Ninth Circuit in *Jefferson* also makes a crucial distinction between cases like *Jefferson* and the case at hand, where the plaintiffs seek to impose general commercial duties regarding misrepresentation practices by banks and thus, preemption is inappropriate, and cases where the predicate claims are based on laws directly aimed at regulating specific banking functions and thus,

preemption is appropriate.[6] *Jefferson* at *12. The court stated that Chase has not articulated any way that enforcing state laws prohibiting misrepresentation to consumers would interfere with a bank's nationwide operation or "obstruct, impair or condition" its ability to engage in real estate lending any more than those laws impair the operation of any business. *Id.* at *13. The exact same rationale that applied in *Jefferson* applies to this case. Plaintiffs are asserting general commercial duty causes of action not specific banking violation causes of action.

The Ninth Circuit supported this distinction when, in deciding against *Chase* on preemption, it found that the cases cited by Chase (and cited by Wells Fargo in the subject action) were fundamentally distinguishable because they each involved state law claims either brought under or based on a substantive state law rule specifically directed at banking or lending activities and institutions. *Id.* The almost identical cases Wells Fargo relies on in its motion have the same fatal flaw. They involve state laws specifically directed at banking activities which is inapplicable to the subject case.[7] *Id.*

In light of the above, Plaintiffs' state law claims with regards to the misrepresentation of available balance information and deceptive advertising and non-disclosure of the meaning of available balance information should not be preempted.

**B.    Plaintiffs Have Standing to Pursue Each of Their Claims or, Alternatively, Triable Issues of Material Facts Must be Resolved Before the Legal Issue of Whether Plaintiffs Have Standing Can be Determined**

Defendant is vague as to what exactly it is challenging regarding Plaintiffs claims other than preemption. It states that Plaintiffs cannot establish reliance and injury, and therefore standing, on the theory that Wells Fargo did not disclose that initially some transactions would not immediately be

---

[6] The Ninth Circuit noted that the court in *Silvas v. E*Trade Mortgage Corporation*, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006), ruled that UCL claims are preempted when the predicate claims are based on laws that directly regulate the challenged practice, as opposed to predicate claims based on "general legal duties with which every business must comply," which would not merit preemption.

[7] The recent decision of *Montgomery v. Bank of America*, 515 F. Supp. 2d 1106 (C.D. Cal. 2007) held 1) that a federal regulation which gives banks discretion to set their non-interest fees, provided they are arrived at in a certain manner, preempted plaintiffs' UCL claims that fees were too high, and 2) that a federal regulation allowing banks to exercise deposit-taking powers without state law disclosure requirements preempted plaintiffs' UCL claim based on failure to disclose. In *Rose v. Chase Bank USA*, 513 F.3d 1032 (9th Cir. 2008), the court held that plaintiff's UCL claims were preempted by 12 C.F.R.

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)

1  applied to "available balance." As previously discussed, Plaintiff does not know what to do with this

2  assertion, as it has never made such a claim.

3       Plaintiffs' claims are that in addition to the practice itself being illegal, Defendant did not

4  disclose that it would charge an overdraft fee for a debit transaction that was 1) not a check; 2) was

5  approved by Wells Fargo before the transaction was made; 3) was within the available balance

6  published by Wells Fargo; 4) was within the account balance; and 5) was not an overdraft transaction

7  except that Wells Fargo changed the transaction from the chronological order in which it was initially

8  listed. Plaintiffs also claims that publishing a definition of "available balance" that is inaccurate and

9  inflated because Wells Fargo drops charges without notice after they initially are included in available

10 balance is misleading and constitutes misrepresentation. Finally, Plaintiffs claim that Wells Fargo's

11 failed to disclose that it has a practice of dropping off purchases from the available balance without

12 notice to the consumer, which results in consumers having inflated, inaccurate and misleading "available

13 balance" figures that lead to overdrafts. Each of the Plaintiffs has been damaged by one or more of

14 these acts.

15      Plaintiffs agree that standing is "an essential and unchanging part of the case-or-controversy

16 requirement of Article III." Here, that means being able to show reliance and damage. Contrary to the

17 position taken by Defendants in the motion, Plaintiffs easily meet the standing requirements. That is

18 especially true when, as is the case here, Defendants challenge to standing involves disputed facts,

19 precluding summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S. Ct.

20 3177, 3187-89 (1991).

21      **1. Reliance is a Question of Fact to be Left to the Jury**

22      The California Supreme Court has explained that "[r]eliance exists when the misrepresentation

23 or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal

24 relations, and when without such misrepresentation or nondisclosure he or she would not, in all

25 reasonable probability, have entered into the contract or other transaction." *Alliance Mortgage Co.*

26 *Rothwell*, 10 Cal. 4th 1226, 1239, 900 P.2d 601, 608-09 (1995). Under California law, it is not

27

28

§ 7.4008, but the court treated all the UCL claims themselves as predicated on violation of a substantive
state law that required specific kinds of disclosures relating to credit card convenience checks.

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)

1    necessary that a plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even

2    the predominant or decisive factor in influencing his conduct; it is enough that the representation has

3    played a substantial part, and so has been a substantial factor, in influencing his decision. *City*

4    *Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 840 (9th Cir. 2004) (*citing Engalla v.*

5    *Permanente Med. Croup, Inc.*, 15 Cal. 4th 951, 976-77, 64 Cal. Rptr. 2d 843 (1997)).

6        The California Supreme Court, in *Alliance*, also established that "[e]xcept in the rare case where

7    the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a

8    plaintiff's reliance is reasonable is a *question of fact*." 10 Cal. 4th at 1239, 900 P.2d at 609 (*quoting*

9    *Blankenheim v. E.F. Hutton & Co., Inc.*, 217 Cal. App. 3d 1463, 1475, 266 Cal. Rptr. 593 (1990); *Gray*

10   *v. Don Miller & Associates, Inc.*, 35 Cal. 3d 498, 503, 198 Cal. Rptr. 551, 674 P.2d 253 (1984)

11   ["[w]hether reliance is justified is a question of fact for the determination of the trial court"]; *Guido v.*

12   *Koopman*, 1 Cal. App. 4th 837, 843, 2 Cal. Rptr. 2d 437 (1991) ("the reasonableness of the reliance is

13   ordinarily a question of fact")) (emphasis added.) "However, whether a party's reliance was justified

14   may be decided as a matter of law if reasonable minds can come to only one conclusion based on the

15   facts." *Alliance, supra*, 10 Cal. 4th at 1239, 900 P.2d at 609 (*quoting Guido v. Koopman, supra,* 1 Cal.

16   App. 4th at p. 843, 2 Cal. Rptr. 2d 437.)

17       Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no

18   defense when the misrepresentation was intentional rather than negligent. *Alliance, supra*, 10 Cal. 4th at

19   1239-40, 900 P.2d at 609 (*quoting Seeger v. Odell,* 18 Cal.2d 409, 414, 115 P.2d 977). A plaintiff is not

20   held to the standard of precaution or minimum knowledge of a hypothetical, reasonable man. *Id.*

21       **2. Damage Is a Question of Fact For the Jury**

22       Proximate or legal cause is generally a question of fact. *Hoyem v. Manhattan Beach City Sch.*

23   *Dist.*, 22 Cal. 3d 508, 520, 150 Cal. Rptr. 1 (1978). Summary judgment in tort cases is rare because

24   issues of "negligence," "due care" and "proximate causation" usually require jury resolution of

25   competing inferences. *Westfall v. Erwin*, 484 U.S. 292, 108 S. Ct. 580 (1988).

26   //

27   //

28   //

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)

### 3.  Veronica Gutierrez Meets the Standing Requirement

Veronica Gutierrez had a reasonable belief that the "available balance" information provided to her by Wells Fargo was accurate.  She regularly checked the available balance information provided to her by Wells Fargo, and checked available balance in the relevant time frames.  She relied on the "available balance" information provided by her in making the October 5 and 6, 2007 transactions that showed she had enough funds to cover such transactions.  (Gutierrez Decl. ¶¶ 3, 4.)

Those purchases were 1) debit transactions and not checks; 2) were approved by Wells Fargo before the transactions was made; 3) were within the available balance published by Wells Fargo; 4) were within the account balance; and 5) would not have been overdraft transactions except that Wells Fargo changed the transaction from the chronological order in which they were initially listed by Wells Fargo.  (McCune Decl. ¶¶ 9, 10, October 5 and November 6, 2007 Statements, Exs. 5 and 6)

Wells Fargo admits that the transactions of October 5 and 6, 2006 were not overdraft transactions when made.  (Zimmerman Decl. at p. 17:20-24.)  Defendant has put forward no evidence to dispute Plaintiffs' contention that Defendant did not disclose that a transaction could be the subject of an overdraft charge, even though the transaction was within the available balance and did not overdraw the account.  Ms. Gutierrez would not have received $88 in overdraft fees if Wells Fargo either 1) disclosed that it charged overdraft fees for transactions that are not overdraft transactions; or 2) charge a overdraft fees only for transactions that actually cause an overdraft of the account.  (Gutierrez Decl. ¶ 5.)

Under these facts, there is at the very least a triable issue of fact of whether Veronica Gutierrez meets the reliance and damage test for standing for each of the causes of action.

### 4.  William Smith Meets the Standing Requirement

William Smith checked his available balance before each of his July 3, 2007 debit card transaction and his July 12, 2007 debit card transactions, to verify that he had available balance in his account before completing the transaction.  (Smith Decl. ¶¶ 3, 4.)  Wells Fargo was aware of every transaction on the account, and had approved each transaction.

Despite being told by Wells Fargo through the published available balance information that he had sufficient funds in his account for each of the transactions, each  transaction resulted in an overdraft fee of $34.  The inaccurate available balance information was caused by Wells Fargo intentionally

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.:  C 07-05923 WHA (JCSx)

1   dropping off a charge from the available balance of the transaction that it initially included in the

2   available balance.  Mr. Smith had not been told by Wells Fargo how, when, why or what circumstances

3   available balance would be inflated and inaccurate.  If he had been told that the July 3, 2007 transaction

4   had dropped off his account, or been told under what circumstances a transaction would suddenly drop

5   off the account, he would not have incurred either of the two overdraft charges of $34. (Smith Decl. ¶ 5.)

6        Under these facts, there is at the very least a triable issue of fact of whether William Smith meets

7   the reliance and damage test for standing for each of the causes of action.

8        **5.  Erin Walker Meets the Standing Requirement**

9        Even Wells Fargo admits that Erin Walker was charged an overdraft fee for a May 29, 2007

10  transaction that was not an overdraft transaction when made.  (Zimmerman Decl. at p. 16:8-9.)  Wells

11  Fargo does not dispute that the transaction was within the "available balance" it published to Ms.

12  Walker, and that Ms. Walker relied on "available balance" information.  (Walker Decl. ¶ 2.)  Wells

13  Fargo also cannot dispute that Ms. Walker received "available balance" information in this time frame.

14  (McCune Decl. ¶ 12, June 25, 2007 Statement, Ex. 8.)  Ms. Walker was not advised that a transaction

15  that was not an overdraft transaction could become an overdraft transaction. If she would have known

16  that she could be charged an overdraft fee for a transaction that was not an overdraft, she would not have

17  been banking with Wells Fargo and would not have incurred the $34 overdraft charge for the May 27,

18  2007 transaction. (Walker Decl. ¶ 3.)

19       Under these facts, there is at the very least a triable issue of fact of whether Erin Walker meets

20  the reliance and damage test for standing for each of the causes of action.

21       **6.  Plaintiffs have Standing to Bring a Claim for Conversion**

22       In challenging Plaintiffs' standing to pursue a conversion claim, Wells Fargo merely asserts in a

23  conclusory statement that "plaintiffs cannot show that Wells Fargo 'converted' any property belonging

24  to them, much less that it did so wrongfully or that they suffered injury as a result of any such wrongful

25  act."  (Def. MSJ Mem. at 22.)  However, a conclusory assertion that the opposing party has no evidence

26  is insufficient: "It is not enough to move for summary judgment with a conclusory assertion that the

27  [opposing party] has no evidence to prove his case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.

28  Ct. 2548, 2555 (1986).

Defendant makes this conclusory statement because there can be no real dispute on standing with this cause of action. There is no dispute that Wells Fargo unilaterally took funds from each of the Plaintiffs' accounts. If it was done illegally, then Plaintiffs have a cause of action for conversion and each Plaintiff will be able to show damage.

**C.    Defendant's Motion for Summary Judgment Must Be Denied Because Plaintiffs Shows at Least One Triable Issue of Material Fact**

Summary judgment is proper where the dispute is of a type *normally decided by the court* and not a jury; where, for policy reasons, courts normally draw the ultimate conclusion, the matter is more akin to a "pure" issue of law which may be resolved on summary judgment. *See Prinzi v. Keydril Co.*, 738 F.2d 707 (5th Cir. 1984). However, where the inference to be drawn requires "experience with the mainsprings of human conduct" and "reference to the data of practical human experience," the jury must make the determination, so summary judgment would be improper. *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1126 (5th Cir. 1978).

**V**

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully requests that this Court deny Defendant's motion for summary judgment

DATED: July 30, 2008.

McCUNE & WRIGHT, LLP

BY: _____
    Richard D. McCune
    Attorney for Plaintiffs

*REDACTED VERSION:* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: C 07-05923 WHA (JCSx)