Sonya D. Winner, SB # 200348
David M. Jolley, SB # 191164
Margaret G. May, SB # 234910
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
E-mail:  mmay@cov.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WELLS FARGO & COMPANY, *et al.*,<br><br>                    Defendants. | Civil Case No.:  CV-07-5923 WHA (JCSx)<br><br>**OBJECTIONS OF DEFENDANT WELLS FARGO BANK, N.A. TO DECLARATION OF LEWIS MANDELL**<br><br>*[Submitted in connection with Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification]*<br><br>Date:          August 21, 2008<br>Time:         8:00 a.m.<br>Courtroom:  9<br><br>Honorable William H. Alsup |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") objects to the Declaration of Lewis Mandell in Support of Plaintiffs' Motion for Class Certification ("Mandell Declaration") on the following grounds:

1. <u>Failure to disclose basis and reasons</u>.  In order to be considered reliable, an expert declaration must set forth the basis and reasons for the expert's opinions. *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 831-32 (9th Cir. 2001).   Here, Professor Mandell fails to identify the reasons for any of the opinions that he provides in Paragraphs 4a-c of his declaration.  Nor does he identify any of the specific sources or evidence that he relied on in reaching his opinions.  He simply states, without explanation, that algorithms "can be written" to conduct various analyses.  Such conclusory statements do not allow the Court to determine whether the opinions provided by Professor Mandell are "the product of reliable principles and methods" as required by Federal Rule of Evidence 702.

2. <u>Reliance on false factual assumptions</u>.  In order to be considered reliable, an expert's opinions must be based on accurate factual assumptions. *Guidroz-Brault*, 254 F.3d at 831-32.  An expert opinion is properly given no weight "where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts." *Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Group, LLC*, 262 Fed. Appx. 822, 824 (9th Cir. 2008); *see also* Fed. R. Evid. 702.  In Paragraph 3 of his declaration, Professor Mandell states in conclusory fashion that 11 separately listed categories of information are "in the possession and control of Wells Fargo."  Although he does not identify any evidence in the record to support this assumption, his opinions that certain computerized algorithms can be written are expressly conditioned on the existence and availability of these various categories of information.[1]  In fact, many of the listed categories of information either do not exist at all or do not exist in a fashion that permits an analysis through an automated computerized algorithm as theorized by Professor Mandell.

---

[1]     Professor Mandell does not claim to possess personal knowledge of the information maintained by Wells Fargo or the formats in which such information is maintained.

WELLS FARGO'S OBJECTIONS TO DECLARATION OF
LEWIS MANDELL                                                                 1
Civil Case No.:  CV-07-5923 WHA

1       The following categories of information are incorrectly identified by Professor Mandell as being in the possession and control of Wells Fargo in a format that would support an analysis by a computerized algorithm:

      a. "For each transaction that resulted in an overdraft, the date and time that Wells Fargo authorized the transaction."  Mandell Dec. ¶ 3c.  Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm.  In fact, there is no evidentiary support for such an assertion because the assertion is wrong.  *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23.

      b. "On the date each overdraft transaction was authorized by Wells Fargo, the ending ledger balance for the 6 days leading up to the date of the overdraft transaction."  Mandell Dec. ¶ 3d.  Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm.  In fact, there is no evidentiary support for such an assertion because the assertion is wrong.  *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23.

      c. "For each of the 7 days leading up to and including the overdraft transaction date, the pending debits authorized by Wells Fargo on or before each day but not included in the ledger balance until after each day."  Mandell Dec. ¶ 3e.  Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm.  In fact, there is no evidentiary support for such an assertion because the assertion is wrong.  *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23.

      d. "Record of the date and time each customer logged onto their account online in relation to the date and time that Wells Fargo authorized the overdraft transaction."  Mandell Dec. ¶ 3g.  Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm.  In fact, there is no evidentiary support for such an assertion because the assertion is wrong.  *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23, 33, 37.

      e. "Record of the date and time each customer performed an ATM transaction in relation to the date and time that Wells Fargo authorized the overdraft

transaction." Mandell Dec. ¶ 3h. Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm. In fact, there is no evidentiary support for such an assertion because the assertion is wrong. *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23, 35, 37.

      f. "Record of the date and time each customer called the automated 800 telephone number in relation to the date and time that Wells Fargo authorized the overdraft transaction." Mandell Dec. ¶ 3i. Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm. In fact, there is no evidentiary support for such an assertion because the assertion is wrong. *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23, 34, 37.

      g. "Record of the date and time each customer conducted a transaction within a branch in relation to the date and time that Wells Fargo authorized the overdraft transaction." Mandell Dec. ¶ 3j. Professor Mandell cites no record support for his assertion that this category of information exists in a format that is susceptible to aggregate analysis by a computerized algorithm. In fact, there is no evidentiary support for such an assertion because the assertion is wrong. *See* Lentz Dec. ¶¶ 8, 13-14, 20, 23, 36.

    3. <u>Use of ambiguous terms</u>. Expert testimony is unreliable if it contains "unclear, imprecise and ill-defined" language that makes the very meaning of the expert's basic opinion uncertain. *U.S. v. Frazier*, 387 F.3d 1244, 1265 (11th Cir. 2004). Here, the terms "end of the day" and "real balance" used by Professor Mandell in his opinions are so ambiguous as to render the opinions impermissibly uncertain and unreliable.

      a. "<u>End of the day</u>." Each of Professor Mandell's three opinions set forth in Paragraphs 4a-c use the term "end of the day" to describe the point in time at which customer balances would be calculated for his theorized algorithms. Professor Mandell fails to specify whether "end of the day" means (i) midnight (Pacific time), (ii) the end of the Bank's posting cycle (which has no set time, but usually occurs in the early morning hours after a business day), or (iii) some other point in time.

b. "Real balance." Professor Mandell's opinions set forth in Paragraphs 4b-c theorize that an algorithm can be written to calculate which accounts had a positive daily "real balance." The term "real balance" is not a term of art in the banking industry, nor is it a term used by Wells Fargo. Lentz Dec. ¶ 24. Professor Mandell does not specify whether "real balance" means: (i) the current balance if all credit and debit transactions that the customer has initiated are taken into account, (ii) the current balance if all such credit or debit transactions other than outstanding paper checks, ACH transactions, and prescheduled transfers are taken into account, or (iii) something else entirely.

4. Lack of relevance to the evidence or facts at issue. Pursuant to Federal Rule of Evidence 702, expert testimony is proper and relevant only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Professor Mandell's reliance on nebulous "algorithms" and his focus on "end of the day" account balances are so disconnected with the facts and issues in this case as to render his opinions irrelevant.

a. Theorized algorithms. Each of Professor Mandell's three opinions theorize that "an algorithm can be written" to conduct certain customer transaction analyses. Mandell Dec. ¶¶ 4a-c. However, nowhere does Professor Mandell explain how any of the algorithms could actually be developed, how they would operate, or what steps would be needed to design and implement them. Professor Mandell's failure to actually identify any algorithm (or even to explain what such an algorithm would look like or how it could be created) renders his opinions worthless to this Court in its evaluation of the evidence and the facts at issue.

b. "End of the day" account balances. Each of Professor Mandell's opinions focus on "end of the day" account balances (Mandell Dec. ¶¶ 4a-c), rather than the "time of the transaction" account balances that form the basis for the claims in plaintiffs' First Amended Complaint (FAC ¶ 3). To the extent that Professor Mandell is using the "end-of-the-day" available balance as a proxy for the "time-of-the-transaction" available balance, his opinions are flawed because the two are not the same thing. *See* Lentz Dec. ¶ 22. Thus, the opinions offered by Professor Mandell on "end of the day" account balances have no relevance

WELLS FARGO'S OBJECTIONS TO DECLARATION OF LEWIS MANDELL
Civil Case No.: CV-07-5923 WHA

4

1  or evidentiary value to the claims at issue, which involve "time of the transaction" account
2  balances.

4  DATED:  July 31, 2008                                   COVINGTON & BURLING LLP

By: ____/s/_____
    Sonya D. Winner
    Attorneys for Defendant
    WELLS FARGO BANK, N.A.