

Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

May 17, 2007

**Interpretive Letter #1082**
**June 2007**
**12 USC 24(7)**
**12 USC 7.4007a**
**12 USC 7.4002**

Subject: [          ] Overdraft Practices

Dear [     ]:

    This responds to your letter of May 11, 2007, in which you request the confirmation of the Office of the Comptroller of the Currency (OCC) that, with respect to deposit accounts it maintains for its customers in California, [          ] (Bank) is authorized under the National Bank Act and regulations of the OCC thereunder to: (1) in its discretion, honor items for which there are insufficient funds in depositors' accounts and recover the resulting overdraft amounts as part of the Bank's routine maintenance of these accounts; and (2) establish, charge and recover overdraft fees from depositors' accounts for doing so. You have represented that the Bank's deposit account agreements with its customers permit both practices. You also seek confirmation that the Bank's overdraft practices do not constitute an exercise of a "right to collect debts" for purposes of the OCC's regulations concerning the applicability of state law to a national bank's deposit-taking activities.

    Based on our review of your letter and supporting materials and the relevant considerations set forth in our regulations, we confirm that the Bank may honor overdrafts and recover overdraft amounts from depositors' accounts pursuant to 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4007(a). We further confirm that the Bank is authorized by section 24(Seventh) and 12 C.F.R. § 7.4002 to debit overdraft fees from depositors' accounts.[1] Finally, for the reasons described below, we agree that the Bank's overdraft practices do not implicate provisions of 12 C.F.R. § 7.4007(c) concerning the right to collect debts.

---

[1] We note that the authority of the Bank and other national banks to charge particular fees with respect to deposit accounts is not conditioned on obtaining an individual confirming opinion from the OCC because national banks are authorized to charge non-interest fees and charges as an activity necessarily incidental to their express power to engage in deposit-taking.

**EXHIBIT 9**    WFB-G 01679

I. **BACKGROUND**

Your letter describes in some detail the Bank's process for honoring and clearing overdraft items and for establishing, charging, and recovering overdraft fees. The Bank's process may be summarized as follows. Pursuant to the Bank's deposit account agreements with its customers, when the Bank processes an item submitted on a California depositor's account for which there are insufficient funds in the account, the Bank, at its option, may elect to honor the overdraft item rather than return it.[2] This creates an overdraft of the account. In such circumstances, the Bank clears the overdraft amount as soon as sufficient funds are available in the account to do so and may charge overdraft fees. In accordance with the deposit agreement and fee schedule, the amount of the fee depends on the number of overdraft items presented on the account during the preceeding 12-month period.[3]

In order to recover its overdraft fees, the Bank posts the fees to the customer's account and treats them as ordinary debits to the account balance. Overdraft fees are included in the last group of items posted daily through the Bank's batch processing system (following any deposits and other debits posted to the account the same day). In clearing overdrafts and charging overdraft fees, the Bank does not differentiate based on the source of funds – such as the deposit of Social Security benefits or other public benefits payments – held in the depositor's account.

On [     ] and [     ], 2005, two putative class actions against the Bank were filed by plaintiffs who allege they are recipients of public benefits payments. These cases are pending in the Superior Court for the County of [     ].[4] Plaintiffs in both cases argue that a bank may not recover overdraft amounts and fees owed on an account from public benefits payments deposited in that same account by a California depositor.[5]

---

[2] Your letter states that the "Bank's current account agreement with California customers provides: 'The Bank may, at its option, pay or refuse to pay any *Item* if it would create an *Overdraft* on your Account, without regard to whether the Bank may have previously established a pattern of honoring or dishonoring such an *Item*.' [     ] Consumer Account Agreement, p. 30 (effective October 2, 2006) (emphasis in the original)."

[3] The Bank charges an Overdraft Item (or Returned Item) Fee of $23 for the first and second occurrence during the 12-month period and $34 thereafter. The Bank also may charge a Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn.

[4] [     ]; [     ].

[5] [     ]. Among other arguments, the Bank asserts that the plaintiffs' claims are precluded by the recent decision of the California Court of Appeal in *Miller v. Bank of America, N.A.*, 144 Cal. App.4th 1301 (2006). In *Miller*, the court held that a bank may recover overdraft amounts and fees with respect to deposit accounts containing public benefits funds on the grounds that the practice involves the "method of balancing within a single account," rather than the collection of a debt on an unrelated account. The California Supreme Court recently granted review of the *Miller* decision.

-2-

**EXHIBIT 9**                                                                                                     WFB-G 01680

## II. DISCUSSION

### A. National Banks' Authority under 12 U.S.C. § 24(Seventh) and 12 C.F.R. §§ 7.4007(a) and 7.4002

Section 24(Seventh) authorizes a national bank to engage in activities that are part of, or incidental to, the business of banking as well as to engage in certain specified activities listed in the statute. "[R]eceiving deposits" is one of the activities expressly enumerated in section 24(Seventh). The incidental powers clause of section 24(Seventh) provides that a national bank may exercise "all such incidental powers as shall be necessary to carry on the business of banking...."[6] The OCC's regulations at 12 C.F.R. § 7.4007(a) further provide that a "national bank may receive deposits and engage in any activity incidental to receiving deposits...." The authority conferred by the statute and regulation does not differ depending on the source of funds in a depositor's account.

Your letter describes how overdrafts are created and the process by which the Bank clears and recovers overdraft amounts. The process by which a bank honors overdraft items is typically part of the Bank's administration of a depositor's account. Creating and recovering overdrafts have long been recognized as elements of the discretionary deposit account services that banks provide.[7] Where a customer creates debits on his or her account for amounts in excess of the funds available in that account, a bank may elect to honor the overdraft and then recover the overdraft amount as part of its posting of items and clearing of the depositor's account. These activities are part of or incidental to the business of receiving deposits.[8]

A bank's authority to provide products or services to its customers necessarily encompasses the ability to charge a fee for the product or service.[9] This ability to charge a fee for the bank's services is expressly reaffirmed in 12 C.F.R. § 7.4002(a), which provides:

> (a) *Authority to impose charges and fees.* A national bank may

---

[6] 12 U.S.C. § 24(Seventh). *See NationsBank v. Variable Annuity Life Ins Corp*, 513 U.S. 251 (1995) (the "business of banking" is not limited to the list of powers enumerated in section 24(Seventh)).

[7] *See* 11 AM. JUR.2d, *Banks and Financial Institutions* § 939 (2006) (whether to honor overdrafts "is a matter of discretion of the bank.").

[8] *See* Brief of the United States at 19-21, *Miller v. Bank of America, supra* n.5 (brief filed by the U.S. Department of Justice on behalf of the Department of the Treasury, the Social Security Administration, and the OCC, discussing clearing overdrafts and assessing fees as "activities that have long been considered as associated with (as well as necessary to) the administration of deposit accounts.") (citations omitted).

[9] *See Bank of America, N.A. v. City and County of San Francisco*, 309 F.3d 551 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069 (2003); *Metrobank v Foster*, 193 F. Supp. 2d 1156 (S.D. Iowa 2002). *See also Bank One v Guttau*, 190 F.3d 844 (8th Cir. 1999).

**EXHIBIT 9**    WFB-G 01681

charge its customers non-interest charges and fees, including deposit account service charges.

As noted above, the Bank recovers its overdraft fees by including them in the last group of items, following any deposits and other debits, posted daily through the Bank's batch processing system. A bank's authorization to establish fees pursuant to section 7.4002(a) includes the authorization to determine the order in which the fees are posted to a depositor's account.[10] The bank's authority in this, as in all other, areas must be exercised in a manner that is consistent with safe and sound banking practices. Paragraph (b) of section 7.4002 sets out the factors that the bank should consider to ensure that its process for setting its fees and charges is consistent with safety and soundness:

> (b) *Considerations.* (1) All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.
>
> (2) The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:
>
> > (i) The cost incurred by the bank in providing the service;
> >
> > (ii) The deterrence of misuse by customers of banking services;
> >
> > (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and
> >
> > (iv) The maintenance of the safety and soundness of the institution.

If a bank uses a decision-making process that takes these factors into consideration, then there is no supervisory impediment to the bank exercising its discretionary authority to charge non-interest fees and charges -- such as the overdraft fees at issue here -- pursuant to section 7.4002(a).

---

[10] As your letter notes, the OCC has previously determined that a national bank "may establish a given order of posting as a pricing decision pursuant to section 24(Seventh) and section 7.4002." OCC Interpretive Letter No. 916 (May 22, 2001).

-4-

**EXHIBIT 9**    WFB-G 01682

**B.  The Bank's Consideration of the Section 7.4002(b) Factors in Establishing and Recovering the Overdrafts Fees**

The Bank has provided analysis and supporting documentation [11] demonstrating that it has considered each of the four factors listed in § 7.4002(b)(2)(i)-(iv) both in establishing and in recovering the overdraft fees.

The materials provided include information on the costs incurred by the Bank in processing overdraft items. The Bank has concluded that its overdraft fees are necessary to help offset the costs and risks of providing overdraft and returned item services to its customers and its submission specifically identifies those costs and risks. The Bank also has stated that its process of recovering the fees by posting them to depositors' accounts in the manner described was intended to ensure that the cost- and risk-reducing benefits of the fees are actually achieved.

In addition, the Bank has concluded that the overdraft fees will help deter customers from misusing the Bank's overdraft item processing services. The Bank states that its process of recovering the fee from a depositor's account was intended to achieve these deterrent effects.

In discussing how the overdraft fees enhance the competitive position of the Bank, the Bank notes that the fees were intended to be not so high as to be noncompetitive and not so low that it would be an attractive account feature for depositors more likely to create overdrafts. Further, the Bank explains that its process of recovering the fees from depositors' accounts was intended to conform generally to prevailing industry practice with respect to account maintenance.

The Bank has also provided analysis on the impact that the fees it charges to access its services have on the Bank's safety and soundness. The overdraft fees and the Bank's process of recovering them are intended to reduce the Bank's costs and deter misuse in order to address the potential risks associated by depositors' overdraft items.

Based on our review of the Bank's submission, we conclude that the Bank's process for establishing and recovering the overdraft fees is consistent with the considerations required by section 7.4002(b).

---

[11] Your letter is accompanied by a separate submission, prepared by the Bank, documenting how it has considered each of the four factors listed in section 7.4002 in establishing and recovering its overdraft fees. The Bank requests confidential treatment of this separate submission. The Bank believes that its submission includes information exempt from disclosure under the Freedom of Information Act (FOIA). 5 U.S.C. § 552(b). The FOIA exempts matters constituting "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

**EXHIBIT 9**                    WFB-G 01683

C.  Scope of 12 C.F.R. § 7.4007

You have not requested us to address, and therefore we express no opinion concerning, the applicability of any state law to national banks. However, you have asked us to confirm that the Bank's overdraft practices are not covered by 12 C.F.R. § 7.4007(c)(4), which provides that state laws pertaining to "[r]ights to collect debts" apply to national banks to the extent that such laws only incidentally affect the exercise of a national bank's powers.

Section 7.4007(c)(4) is not relevant to the current circumstances. As the regulatory history of the provision demonstrates, the language "rights to collect debts," like similar language addressing state law-based tort and contract law, clarifies that types of laws that form the legal infrastructure that supports the conduct of commercial business operations, including the business of banking, apply to national banks, unless they curtail or hamper the exercise of a national bank's powers.[12] Thus, 12 C.F.R. § 7.4007(c)(4) pertains to the existence of a bank's *right* to recover a debt, not to the means the bank uses to pursue that right.

When the Bank processes an overdraft item and recovers a fee for doing so, it is not exercising its right to collect a debt. Rather, the processing of an overdraft and recovery of an overdraft fee by balancing debits and credits on a deposit account are activities directly connected with the maintenance of a deposit account. Fundamentally, the Bank is not creating a "debt" that it then "collects" by recovering the overdraft and the overdraft fee from the account. Rather, the Bank is providing a service to its depositors in accordance with its federal authority under sections 24(Seventh), 7.4007(a) and 7.4002 and that – pursuant to its deposit agreement with the accountholder – the accountholder has agreed to

---

[12] When the OCC proposed this regulation, the proposed version of the text used the term "debt collection." The final regulation as promulgated refers to "rights to collect debts." *See* 69 Fed. Reg. 1904, 1912 (Jan. 13, 2004). In explaining this change, the OCC stated that "[o]ne category of state law included in the proposed list of state laws generally not preempted was 'debt collection.' Consistent with Supreme Court precedents addressing this type of state law, we have revised the language of the final rule to refer to national banks' 'right to collect debts.'" *See Nat'l Bank v. Commonwealth*, 76 U.S. (9 Wall.) 353, 362 (1869) (national banks "are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law.") and *McClellan v. Chipman*, 164 U.S. 347, 356-57 (1896).

This regulatory history establishes that state statutes and decisional law regulating debt collection activity are not what the rule captured. Rather, the commercial law framework essential for conducting any business, including the business of banking, continues to apply to the operations of national banks. Indeed, to determine otherwise would contradict the principle underlying the OCC's rule that *how* national banks elect to collect their debts (as opposed to whether a *right* to collect the debt exists) is subject to federal control. *See also Watters v. Wachovia Bank, N.A.*, 167 L. Ed. 2d 389, 400-401 (2007) (distinguishing "state laws of general application" from state laws that "would surely interfere with [national] banks' federally authorized business.")

-6-

**EXHIBIT 9**                                                                                                      WFB-G 01684

pay for.[13] Under these circumstances, the Bank's rights to collect debts under state law within the meaning of the Supreme Court precedents described in footnote 12 and section 7.4007(c)(4) are not implicated.

### III. CONCLUSION

Based on the foregoing, we conclude that the Bank is authorized, under 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4007(a), to honor overdrafts and recover overdraft amounts from depositors' accounts. We further conclude that the Bank is authorized by Section 24(Seventh) and 12 C.F.R. § 7.4002 to charge and recover fees for processing overdrafts and that the Bank's process for establishing and recovering these fees is consistent with the considerations required by section 7.4002(b). Finally, we agree that the Bank's overdraft practices do not implicate 12 C.F.R. § 7.4007(c)(4).

Sincerely,

/s/

Julie L. Williams
First Senior Deputy Comptroller and Chief Counsel

---

[13] The Bank offers a separate overdraft line of credit product, which is not an element of the Bank's routine deposit account service described herein.

**EXHIBIT 9**