

Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

April 15, 2002

**Interpretive Letter #997**
**August 2004**
**12 USC 24(7)**
**12 CFR 7.4002**

Dear [        ]:

    This is in response to your letter dated October 31, 2001 requesting the concurrence of this office that the decision of [            **Bank 1**            ] and [ **Bank 2**            ] (collectively, the Banks) to charge "not sufficient funds" fees (NSF fees) arising, in part, from the order of check posting, is a decision pertaining to the establishment of fees pursuant to 12 U.S.C. § 24(Seventh) and 12 C.F.R. §7.4002. You also request our concurrence with your view that the process followed by the Banks in deciding to use a high-to-low order of check posting is consistent with the safety and soundness considerations of 12 C.F.R. §7.4002(b).

    Based on our review of your letter, the supporting materials you have submitted, and the relevant considerations set forth in our regulations, we agree that the Banks' decision to set fees based on a given order of check posting falls within the Banks' authority to set fees pursuant to section 4 (Seventh) and section 7.4002.[1] We further agree that the process the Banks used in deciding to adopt the order of check posting described in your submissions is consistent with section 7.4002. The bases for these conclusions are described below.

**Authority to Base NSF Fee on Order of Check Posting**

    Section 24 (Seventh) authorizes a national bank to engage in activities that are part of, or incidental to, the business of banking as well as to engage in certain specified activities listed in the

---

[1] The Banks have requested confidential treatment of the submission because they assert that it includes information that is exempt from disclosure under the Freedom of Information Act (FOIA), 12 U.S.C. § 552(b). The FOIA exempts matters constituting "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

**EXHIBIT 11**

statute. Pursuant to section 24(Seventh) and the OCC's regulations, a national bank may charge its customers a fee. The relevant section of the OCC regulation states:

> (a) *Authority to impose charges and fees*. A national bank may charge its customers non-interest charges and fees, including deposit account service charges.

12 C.F.R. § 7.4002(a).

A bank must exercise its authority to establish fees in a manner that is consistent with safe and sound banking practices. Paragraph (b) of section 7.4002 sets out the factors that the bank should consider in ensuring that its process for setting its fees and charges meets this standard:

> (b) *Considerations*. (1) All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.
>
> (2) The establishment of non-interest charges and fees, their amounts, and *the method of calculating them* are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:
>
>> (i) The cost incurred by the bank in providing the service;
>>
>> (ii) The deterrence of misuse by customers of banking services;
>>
>> (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and
>>
>> (iv) The maintenance of the safety and soundness of the institution.

12 C.F.R. § 7.4002(b) (emphasis added).[2]

If a bank uses a decision-making process that takes these factors into consideration, then there is no supervisory impediment to the bank exercising its discretionary authority to charge customers non-interest fees and charges pursuant to section 7.4002(a).

As is clear from the text of the revised regulation, a bank's authorization to establish fees pursuant to 12 C.F.R. §7.4002(a) necessarily includes the authorization to determine the amount and method by which they are computed. In the preamble to the revised regulation, the OCC

---

[2] The text of section 7.4002 was revised to include the italicized phrase, among other changes, in 2001. *See* 66 Fed. Reg. 34784, 34787 (July 2, 2001).

**EXHIBIT 11**

specifically noted that "fees resulting from the method the bank employs to post checks presented for payment are included within the authorization provided by section 7.4002."[3]

Here, according to the information the Banks have submitted, the Banks charge an NSF fee in an amount that varies, depending on, among other factors, the number of items presented against insufficient funds in the same account during the preceding 12-month period. The number of items presented against insufficient funds is determined by the order of posting applied by the Banks. If the depositor has written a number of checks against insufficient funds that are presented on the same day, the high-to-low posting order may result in a greater number of checks being presented against insufficient funds than if the Banks used different posting orders. Thus, posting order is one of the factors used to determine the amount of NSF fee that Banks charge.

The Banks have brought to our attention a copy of a provision in Texas law[4] that provides generally that checks "may be accepted, paid, certified, or charged to the indicated account of the bank's customer *in any order* and before or after the bank's regular working hours." Texas Commercial Code section 4.303 (emphasis added). The Banks note that the State Bar Committee comments to that section state that --

> Although the discretion given a bank by subsection (b) is great, the bank must continue to act in good faith in establishing its policies and procedures in this area. For example, a procedure designed to maximize the number of returned checks solely to increase returned check fees charged to customers would not be appropriate.

Texas Business and Commercial Code Ann. Section 4.303 (commentary) (West 2000).

Although this letter does not address the applicability of state law to the Banks, we note that the check-posting provision of the Texas Commercial Code cited by the Banks, which permits the Banks to post checks in any order, is consistent with the Federal law governing national bank fees, as embodied in section 7.4002(a). We note further that a relevant factor in evaluating good faith may be whether a bank's actions were inconsistent with the practices it had represented to its customers that it would follow. The Banks have represented that their deposit account agreement accurately describes the high-to-low posting order that the Banks use.

**The Banks' Consideration of the section 7.4002(b) Factors**

The Banks have provided analysis and supporting documentation demonstrating that they have considered each of the four factors listed in section 7.4002(b) in the process of establishing the order of check posting and the establishment of NSF fees.

---

[3] *Id.* at 34787.

[4] New Mexico law is silent on this point.

3

**EXHIBIT 11**

The Banks represent that high-to-low check posting has a positive impact on revenue and a change in the current policy would result in decreased revenues. The Banks also note that the decision to continue using a high-to-low check order of posting will help to maintain standardized practices within the Banks and, therefore, promote more efficient operations.

The Banks also have considered the deterrent effect that a high-to-low order of posting will have on customer behavior. The Banks' submission states that by maintaining high-to-low processing, those customers who are inclined to overdraw their accounts frequently will be less likely to bank with [          ]. The Banks seek this result in order to reduce losses from overdrafts.

Additionally, the Banks have considered the impact of the order of check posting on the Banks' competitiveness. In their submission, the Banks state that the maintenance of standardized procedures within the company will make it easier for employees to handle customer interactions about overdraft processing. This efficiency will enhance the competitive position of the Banks. The Banks further suggest that a high-to-low order of posting will help ensure that a customer's most important bills (such as mortgage payments) are paid first. The Banks conclude that the high-to-low order of posting is aligned with their customers' priorities and preferences.

**Conclusion**

Accordingly, the Banks are authorized, pursuant to section 24(Seventh) of the National Bank Act and section 7.4002, to charge NSF fees that result from the high-to-low order of check posting described in their submission. In addition, the process the Banks followed in deciding to use that order of check posting is consistent with section 7.4002.

Sincerely,

**signed**

Julie L. Williams
First Senior Deputy Comptroller and Chief Counsel

**EXHIBIT 11**