AL 2002-3

# OCC ADVISORY LETTER

Comptroller of the Currency
Administrator of National Banks

Subject: Guidance on Unfair or Deceptive Acts or Practices

**TO:** Chief Executive Officers of All National Banks and National Bank Operating Subsidiaries, Department and Division Heads, and All Examining Personnel.

**PURPOSE**

The Office of the Comptroller of the Currency (OCC) is issuing this advisory letter to inform national banks and their operating subsidiaries about the risks present in engaging in lending and marketing practices that may constitute unfair or deceptive acts or practices and to help national banks avoid being placed in jeopardy of penalties, judgments, and harm to their reputations that can result from such practices. The OCC may become aware of issues regarding unfair or deceptive acts or practices during the course of a regular safety and soundness or compliance examination, through consumer complaints, or through referrals from state agencies.

Generally, a deceptive act or practice involves a representation or omission that is likely to mislead a reasonable consumer in some material way. Whether particular conduct constitutes an unfair act or practice would depend on the particular facts and circumstances presented, but generally would involve acts or practices that are unscrupulous, unconscionable, or contrary to public policy, and that harm consumers.

The consequences of engaging in practices that may be unfair or deceptive under federal or state law can include litigation, enforcement actions, monetary judgments, and harm to the institution's reputation. The OCC is issuing this guidance to assist national banks to ensure that management and staff throughout their organizations are aware of these significant risks and of the practices that could place the bank in any jeopardy of liability or other adverse consequences. Therefore, this advisory letter provides detailed guidance to help OCC-supervised institutions avoid such practices, and also describes the type of activities that pose the greatest risk of being viewed as unfair or deceptive. The advisory:

- Describes applicable legal standards the OCC uses to evaluate whether an act or practice violates applicable law prohibiting unfair or deceptive acts or practices;

- Provides general guidance on the types of activities that examiners should scrutinize;

- Describes other laws that may be implicated in connection with a supervisory review for unfair or deceptive acts or practices; and

- Provides guidance on how banks and their operating subsidiaries can prevent reputation, compliance, and legal risks posed by certain practices.

Date: March 22, 2002                                                                 Page 1 of 8

**EXHIBIT 12**

AL 2002-3

## BACKGROUND

One consequence of increasing competition among lenders has been the aggressive marketing of various forms of secured and unsecured consumer credit, along with credit-related products. Often this marketing takes place through large direct mail and telemarketing campaigns. Advances in information technology, increased access to information on customers, and sophisticated use of credit bureau information have fueled the rise of "preapproved" solicitations for credit cards and other consumer credit. These efforts have been enhanced by amendments to the Fair Credit Reporting Act that loosened restrictions on obtaining prescreened mailing lists from credit reporting agencies that are used in this form of targeted marketing. Finally, banks and their subsidiaries also increasingly rely on independent agents, such as telemarketers, to market and offer services on behalf of the bank or subsidiary.[1]

The OCC has found that these developments create increased risk that the institution may engage in practices, including unfair or deceptive acts or practices, that cause customer dissatisfaction, harm to the company's reputation, and even litigation and government enforcement actions. Engaging in practices that harm customer relations can undermine the institution's reputation and its ability to retain customers. The OCC encourages national banks and their operating subsidiaries to review their practices to guard against activities that pose risks of the sort described in this advisory or that could undermine customer trust in the institution, and to take corrective action where needed.

## COMPLIANCE AND LEGAL RISKS

Banks and their operating subsidiaries should exercise diligence to ensure that, in marketing their products and services, they avoid violating applicable standards concerning unfair or deceptive acts or practices. Failure to comply with statutory and regulatory requirements may lead to administrative actions, including enforcement actions to address violations and to ensure appropriate corrective action; lawsuits; and civil penalties.

---

[1] The OCC will treat arrangements in which a third party provides services on behalf of the bank, including marketing services, to bank customers as subject to the provisions of the Bank Service Company Act, 12 USC 1867(c). Therefore, the OCC has authority to examine the performance of these services by the third party to the same extent as if the bank itself were performing the services on its own premises. Such examinations would evaluate potential supervisory and reputation risks and compliance with applicable law, including prohibitions on engaging in unfair or deceptive acts or practices. Pursuant to 12 CFR 8.6(a), the OCC may assess a national bank a special examination or investigation fee when the OCC examines or investigates the activities of a third-party service provider.

Date: March 22, 2002                                                                 Page 2 of 8

**EXHIBIT 12**

AL 2002-3

**Key Statutory and Regulatory Standards**

Federal Trade Commission Act Prohibitions on Unfair or Deceptive Acts or Practices

Unfair or deceptive acts or practices are unlawful under federal and State law.[2] Section 5 of the Federal Trade Commission Act (FTC Act), 15 USC 45(a)(1), prohibits "unfair or deceptive acts or practices in or affecting commerce." Under section 8 of the Federal Deposit Insurance Act, 12 USC 1818, the OCC may take appropriate enforcement actions against national banks and their subsidiaries for violations of *any* law or regulation, which necessarily includes section 5 of the FTC Act.[3] Certain unfair or deceptive acts or practices by banks and their subsidiaries have been specifically prohibited by regulation. Other acts or practices may be determined to be unfair or deceptive on a case-by-case basis, under the standards set forth in the FTC Act.

*Section 5 of the Federal Trade Commission Act*

∞ Deceptive acts or practices.

Practices may be found to be *deceptive* and thereby unlawful under section 5 of the Federal Trade Commission Act (FTC Act) if the following three factors, derived from principles applied by the Federal Trade Commission, are present:[4]

— There is a representation, omission, act or practice that is likely to mislead.

Practices that can be misleading or deceptive include false oral and written representations; misleading claims about costs of services or products; use of bait-and-switch techniques; and failure to provide promised services or products. For example, there is an implied representation that a product or service is fit for the purposes for which it is sold or marketed. In addition, the focus of this inquiry is on whether a practice is *likely to* mislead, rather than on whether it actually misleads. The OCC will consider the entire advertisement, transaction, or course of dealing in determining whether practices are misleading.

— The act or practice would be deceptive from the perspective of a reasonable consumer.

The totality of the circumstances and the net impression that is made will be evaluated in making this determination. Failure to provide information also may be a deceptive act or practice and will be evaluated from the perspective of whether a reasonable consumer is

---

[2] A number of state laws prohibit unfair or deceptive acts or practices, and such laws may be applicable to insured depository institutions. *See, e.g.,* Cal. Bus. Prof. Code 17200 *et seq.* and 17500 *et seq.* Operating subsidiaries, which operate effectively as divisions or departments of their parent national bank, also may be subject to such state laws. Congress explicitly acknowledged that national bank operating subsidiaries engage "solely in activities that national banks are permitted to engage in directly and are conducted subject to the same terms and conditions that govern the conduct of such activities by national banks." 12 USC 24a(g)(3). Pursuant to 12 CFR 7.4006, state laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank, unless otherwise provided by federal law or OCC regulation. The OCC has authority under, *inter alia,* 12 USC 1818(b)(3), 12 CFR 5.34(e)(3), and 12 USC 484 to enforce state laws against national bank operating subsidiaries.

[3] *See* 12 USC 1818.

[4] These principles are derived from the Policy Statement on Deception, issued by the Federal Trade Commission on October 14, 1983.

Date: March 22, 2002                                                                                              Page 3 of 8

**EXHIBIT 12**

AL 2002-3

likely to have been misled by the omission. A consumer's reaction to an act or practice may be reasonable even if it is not the only reaction that a consumer might have. For example, if marketing conveys more than one meaning to reasonable consumers, one of which is false, it may be deceptive. In addition, an interpretation may be reasonable even if not shared by the majority of consumers who received the marketing. Thus, a practice that misleads a significant minority of consumers may be deceptive. In addition, the OCC will evaluate the act or practice from the perspective of any specific audience to which it was targeted or which was reasonably foreseeable.

Depending on the circumstances, subsequent written disclosures containing accurate information about the benefits or material limitations of a product or service may be insufficient to correct a misleading representation. For example, a misleading representation *may not* have been corrected if the consumer is directed away from the importance of language that qualifies or contradicts the prior representation or if it is unreasonable to expect that a consumer will read the entire document containing the qualifying language. Generally, the OCC does not view a disclosure as unfair or deceptive simply because material information is contained in "fine print." However, information in fine print may be insufficient to modify a statement, made conspicuously elsewhere in the communication, that would be false or misleading without that modification. This could cause the communication as a whole to be deceptive in violation of the FTC Act.

— The representation, omission, act, or practice is material.

A material misrepresentation or practice is one that is likely to affect a consumer's choice or conduct concerning a product or service. Consumer injury is likely if inaccurate or omitted information is important to the consumer's decision. Generally, information about costs, benefits, or significant limitations related to the product or service would be material.

∞ Unfair acts or practices.

A practice may be found to be *unfair* and thereby unlawful under section 5 of the FTC Act if:[5]

— The practice causes substantial consumer injury.

Generally, monetary harm, such as when a consumer pays a fee or interest charge, or incurs other similar costs to obtain a bank product or service as a result of an unfair practice, will be deemed to involve substantial injury. An injury may also be substantial if it does a small harm to a large number of consumers or if it raises a significant risk of specific harm.

— The injury is not outweighed by benefits to the consumer or to competition.

---

[5] These principles are derived from the Policy Statement on Unfairness, issued by the Federal Trade Commission on December 17, 1980.

Date: March 22, 2002                                                                                                   Page 4 of 8

**EXHIBIT 12**

To be unfair, a practice must be injurious in its net effects. Generally, an analysis of the net effects includes not only the costs and harm to the consumer, but also consideration of the costs and regulatory burdens to banks, and the potential restrictions on competition and the availability of credit that may result from a finding of unfairness.

— The injury caused by the practice is one that consumers could not reasonably have avoided.

For example, the injury could reasonably have been avoided if the consumer had sufficient information to make an informed choice. The OCC will not find a practice unfair solely on the grounds that a consumer could have obtained a more appropriate or satisfactory product or service elsewhere. Rather, consumer harm caused by a practice that is coercive or that otherwise effectively inhibits the consumer from making an informed choice would be considered not reasonably avoidable.

Established public policies may be considered as evidence, to be considered with all other evidence, in determining whether an act or practice is unfair. Such public policy considerations may not, however, serve as a primary basis for such a determination.

∞ Examples of practices that may violate the FTC Act.

The OCC has taken enforcement action in situations where it concluded that a national bank's practices were deceptive. In each instance, the practice at issue involved a representation or omission about a material aspect of a product or service that was misleading, including:

— Failure to provide sufficient information to allow consumers to understand the terms of the product or service being offered without being misled.

> The OCC concluded that materials used to market a credit product misled consumers because they suggested particular features and benefits that did not in fact apply to the credit product the consumers received.

— Failure to adequately disclose when significant fees or similar material prerequisites applied in order to obtain the particular product or service being offered.

> The OCC concluded that consumers were misled when they were offered a credit product on which a fee was imposed and were not made aware that the fee would attach until after they accepted the product.

— Failure to adequately disclose material limitations affecting the product or service being offered.

> The OCC concluded that consumers were misled by materials used to market a credit-related product that did not disclose that numerous exceptions applied to the material benefits that were promised.

Relation to Other Laws

A number of specific compliance laws may also apply to practices that are unfair or deceptive. The following describes some of the related issues that can arise under certain compliance laws:

- Truth in Lending Act

    Under the Truth in Lending Act (TILA) and Regulation Z, a creditor that extends consumer credit must make certain disclosures "clearly and conspicuously" that describe the cost and terms of that credit. Depending upon the totality of the circumstances, failure to comply with certain TILA provisions may also involve conduct that constitutes an unlawful, unfair, or deceptive act or practice. Moreover, depending upon the totality of the circumstances, an institution may be engaged in unfair or deceptive acts or practices for marketing or other practices even if the transaction is otherwise in technical compliance with applicable TILA and Regulation Z provisions. For example, advertising a "guaranteed" or "lifetime" interest rate could be misleading when the institution makes the representation despite an intention to increase the rate. Such an institution could face reputation or litigation risks if consumers are not provided information that the institution may unilaterally change the contract terms – *whether or not* the institution's disclosure of a fixed interest rate satisfies the technical requirements of TILA.

- Equal Credit Opportunity Act

    The Equal Credit Opportunity Act (ECOA) and Regulation B prohibit discrimination in any aspect of a credit transaction against persons on the basis of race, color, religion, national origin, sex, marital status, age, and the fact that an applicant's income derives from any public assistance program. Depending upon the totality of the circumstances, an institution that engages in unfair or deceptive acts or practices may also violate the Equal Credit Opportunity Act (ECOA) – particularly if such acts or practices affect or are targeted at consumers based on their age, race, gender or other prohibited factor.

- Privacy Regulations

    12 CFR 40, the OCC's regulations implementing Title V of the Gramm-Leach-Bliley Act (Privacy regulations), among other things, prohibit the disclosure to a nonaffiliated third party, other than to a consumer reporting agency, of an account number or similar access code for a credit card, deposit, or transaction account of a consumer for use in marketing.[6]

    Depending upon the totality of the circumstances, an institution that does not comply with these requirements may be also engaging in unfair or deceptive acts or practices – for example, in connection with the unlawful disclosure of account numbers in connection with marketing of a third party's products or services.

- Fair Debt Collection Practices Act

    The Fair Debt Collection Practices Act (FDCPA) prohibits unfair, deceptive, and abusive practices related to collection of consumer debts. Although the bank itself may not be subject

---

[6] See OCC Interpretive Letter 910.

**EXHIBIT 12**

**AL 2002-3**

to the FDCPA when a third party collects debts on its behalf, it nevertheless faces reputation risk – and potential legal risk for approving or assisting in an unfair or deceptive act or practice in violation of the FTC Act – if the third party violates the FDCPA by engaging in deception, harassment, or threats in the collection of the bank's loans.

**GUIDELINES FOR MANAGING RISK**

The following general guidelines illustrate the types of actions that could be taken by bank management to manage the risks identified in this advisory letter and to improve consumer information and customer service:

- Verify that information provided to consumers is complete and accurate and is not likely to mislead or deceive a reasonable consumer. This includes a review to ensure that customers receiving the information can reasonably be expected to understand the information about products or services -- including any material limitations – without having to do "detective" work.

- Avoid the use of claims such as "guaranteed," "pre-approved," and "lifetime rates," if there is a significant possibility that consumers will not receive the terms that have been advertised, and this possibility is not described adequately.

- Provide a clear, up-front disclosure of any contract provision that permits a change in the terms of the products or services that are offered.

- Avoid engaging in promotions of a product or service that highlight a particular benefit, if that benefit will be negated by another aspect of the transaction. For example, a product should not be promoted as having "no annual fees" if the product requires the consumer to pay annual premiums for another linked product, such as mandatory credit life insurance, or if the agreement would permit imposition of such a fee at any time, and this possibility is not described adequately.

- Review telemarketing scripts used to market products to bank customers for accuracy and to ensure that they fairly and adequately describe the terms, benefits, and material limitations of the product or service being offered.

- Clearly notify consumers in connection with "free trial periods" for services – at the time of an initial solicitation and subsequently – if the consumer will be required to affirmatively act to cancel the service at the end of the trial period to avoid being billed for service past the trial period. Get clear and affirmative consent to terms and billing arrangements.

- Follow the guidance relating to due diligence in selecting a third-party vendor, monitoring vendor performance, and maintaining proper documentation about vendor management in OCC Advisory Letter 2000-9, "Third Party Risk," issued August 29, 2000, and in OCC Bulletin 2001-47, "Third Party Relationships," issued November 1, 2001. Appropriate due diligence includes a review of the competence and business practices of the third party, as well as the financial capacity of the third party.

- Ensure that contractual arrangements with third-party service providers protect the bank against risk. For example, a bank should carefully consider whether a contract with a

Date: March 22, 2002     Page 7 of 8

**EXHIBIT 12**

**AL 2002-3**

telemarketer contains any financial incentive that could lead the telemarketer to mislead consumers. As another example, if a telemarketer's compensation is based on initial sales, and is unaffected by whether a consumer subsequently cancels the product or service, the telemarketer may have an incentive to mislead the consumer regarding the nature or benefits of the product or service.

- Ensure that promotional or other information in a solicitation or other communication does not conflict with or contradict required consumer disclosures, such as TILA and Privacy notices. Such conflict or contradiction could result in the disclosures not being "clear and conspicuous," as required by those laws, as well as the communication as a whole being deceptive in violation of the FTC Act.

- Institute appropriate procedures to ensure that consumer complaints and other communications are reviewed for indications that the institution's marketing or solicitations might have misled a consumer.

- Maintain procedures that ensure that payments are promptly posted.

- Monitor loan collection activities, including collection calls, of any third party on behalf of the institution.

Questions concerning this advisory letter may be directed to the Community and Consumer Law Division at (202) 874-5750, or the appropriate supervisory office.

Julie L. Williams
First Senior Deputy Comptroller and
Chief Counsel

Emory W. Rushton
Senior Deputy Comptroller and
Chief National Bank Examiner

**EXHIBIT 12**