1  Sonya D. Winner, SB # 200348
   David M. Jolley, SB # 191164
2  Margaret G. May, SB # 234910
   COVINGTON & BURLING LLP
3  One Front Street
   San Francisco, CA  94111
4  Telephone:  (415) 591-6000
   Facsimile:  (415) 591-6091
5  E-mail: mmay@cov.com

6  Attorneys for Defendant
   WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>WELLS FARGO & COMPANY, *et al*.,<br><br>             Defendants. | Case No.: CV-07-5923 WHA (JCSx)<br><br>**REPLY IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         August 21, 2008<br>Time:        8:00 a.m.<br>Courtroom:  9<br><br>Honorable William H. Alsup |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Plaintiffs Have Not Established Any Genuine Dispute of Material Fact. ........................................................................................................................ 1

    B. Plaintiffs' Claims Are Barred by Federal Preemption. ........................................... 4

        1. Plaintiffs' Claims Are Predicated on a Challenge to Wells Fargo's Banking Practices. ................................................................. 4

        2. The Ninth Circuit Has Rejected Plaintiffs' Proposed Interpretation of the Applicable Preemption Regulations. ........................ 5

        3. An Extensive Body of Case Law Confirms that State-Law Claims Such as Plaintiffs' Are Preempted .................................................. 7

    C. Plaintiffs Lack Standing. ....................................................................................... 11

        1. "Available Balance" Claim .................................................................... 12

        2. "Sufficient Funds" Claim ....................................................................... 13

    D. Plaintiffs' Opposition to Wells Fargo's Motion for Summary Judgment Confirms That Class Treatment of Their Claims Is Inappropriate. ...................... 15

III. CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Atari Corp. v. Ernst & Whinney*,
   981 F.2d 1025 (9th Cir. 1992) ................................................................................... 11, 12, 13

*Aubertin v. Fairbanks Capital Corp.*,
   2005 WL 331351 (D.N.H. 2005) ........................................................................................... 9

*Bank of America v. City & County of San Francisco*,
   309 F.3d 551 (9th Cir. 2002) ................................................................................................. 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................... 1, 2, 11

*Foster v. Arcata Assoc.*,
   772 F.2d 1453 (9th Cir. 1985) ............................................................................................. 12

*Great Western Resources, LLC v. Bank of Ark., Nat'l Ass'n*,
   2006 WL 626375 (W.D. Ark. 2006) ..................................................................................... 9

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. 2008) ......................................................................... 5, 10, 11

*Lopez v. Washington Mut. Bank, FA*,
   302 F.3d 900 (9th Cir. 2002) ................................................................................................. 7

*Martinez v. Wells Fargo Bank, N.A.*,
   2007 WL 963965 (N.D. Cal. 2007) ........................................................................... 5, 7, 11

*Martinez v. Wells Fargo Bank, N.A.*,
   2007 WL 2213216 (N.D. Cal. 2007) ..................................................................................... 7

*Montgomery v. Bank of America Corp.*,
   515 F.Supp.2d 1106 (C.D. Cal. 2007) ............................................................................. 7, 11

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) ................................................................................. 5, 7, 10, 11

*Silvas v. E*Trade Mortgage Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ...................................................................................... passim

*Watters v. Wachovia Bank, N.A.*,
   127 S.Ct. 1559 (2007) ........................................................................................................... 7

*White v. Wachovia Bank, N.A.*,
   2008 WL 2635640 (N.D. Ga. 2008) .............................................................................. 7, 8, 9

**STATE CASES**

*Fenning v. Glenfield, Inc.*,
  40 Cal. App. 4th 1285 (1995) ................................................................................................11

*Gibson v. World Savings and Loan Ass'n*,
  103 Cal. App. 4th 1291 (2002) ..............................................................................................11

*Hood v. Santa Barbara Bank & Trust*,
  143 Cal. App. 4th 526 (2006) ..................................................................................................9

*Rinehart v. Boys & Girls Club of Chula Vista*,
  133 Cal. App. 4th 419 (2005) ................................................................................................14

*Smith v. Wells Fargo Bank, N.A.*,
  135 Cal. App. 4th 1463 (2005) ..............................................................................................11

**FEDERAL STATUTES**

12 C.F.R. § 5.34(e) ........................................................................................................................9

12 C.F.R. § 7.4002(a) ....................................................................................................................5

12 C.F.R. § 7.4007 .....................................................................................................................6, 8

12 C.F.R. § 7.4007(b) ................................................................................................................5, 6

12 C.F.R. § 7.4007(c) ................................................................................................................5, 8

12 C.F.R. § 560.2 ..........................................................................................................................6

12 U.S.C. § 484 .............................................................................................................................9

12 U.S.C. § 1818(b) .....................................................................................................................9

**OTHER AUTHORITIES**

OCC Advisory Letter AL 2002-3 ..................................................................................................9

OCC Interp. Letter No. 916 ...........................................................................................................5

OCC Interp. Letter No. 1082 .........................................................................................................5

## I. INTRODUCTION

Notwithstanding plaintiffs' attempts to recast their claims so as not to directly implicate banking practices or disclosures, it is nonetheless clear that what plaintiffs are challenging in this case is the process through which Wells Fargo accounts for its customers' debit-card transactions and assesses any resulting overdraft fees, along with the Bank's disclosures relating to that process. Under plaintiffs' theory, California law requires Wells Fargo to reconcile a customer's debit-card transactions and determine any resulting overdraft fees at the time each transaction is initiated by the customer with a merchant, rather than when the merchant later submits the item to the Bank for payment. Plaintiffs further argue that Wells Fargo's disclosures on how it determines customers' available balances are inadequate, and that the calculated available balance amounts are "inaccurate."

No matter how plaintiffs characterize them, these claims are preempted by the National Bank Act ("NBA") and OCC regulations. Moreover, the undisputed facts demonstrate that each of the plaintiffs lacks standing to maintain these claims, as none of them was actually injured by the challenged practices. Wells Fargo is accordingly entitled to summary judgment.

## II. ARGUMENT

### A. Plaintiffs Have Not Established Any Genuine Dispute of Material Fact.

Plaintiffs' Opposition ("Opp.") fails to establish any disputed issues of material fact on the issues presented in Wells Fargo's Motion for Summary Judgment ("Mot."). Thus, plaintiffs do not dispute (much less offer evidence to disprove) that each of the plaintiffs in fact spent more money than he or she had in his or her account. Mot. at 8-12. Nor do they offer evidence to establish a genuine dispute of material fact as to the actual knowledge of each of the plaintiffs that the "available balance" information provided to them by the Bank did not always reflect all of their pending transactions. *Id.*

Instead, most of plaintiffs' Opposition is dedicated to an effort to recast their claims in a way that will avoid federal preemption. This effort is in turn based upon several key factual assertions as to which plaintiffs offer no evidence and that are, in fact, untrue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (Rule 56(e) requires party to go "beyond the

pleadings" and designate *specific facts* showing a genuine issue for trial).  Thus, plaintiffs state repeatedly that Wells Fargo's practice is to charge customers "overdraft fees for transactions that do not result in an actual overdraft of their accounts."  Opp. at 1; *see also* Opp at 2, 3, 7, 11, 12, 14, 15, 16, 21, 23, 24.  The undisputed evidence, however, shows that each plaintiff did in fact spend more funds than he or she had in his or her account, and that Wells Fargo charged plaintiffs with overdraft fees only when transactions posted against insufficient funds and the Bank had to make up the difference.  *See* Zimmerman Dec. ¶¶ 44-59.  Plaintiffs offer no evidence to the contrary; these facts are accordingly undisputed.

Plaintiffs' argument relies on three bare factual assertions that, on the undisputed record, are simply untrue:

> "1) Wells Fargo approves each debit transaction before the transaction is finalized; 2) is aware of exactly when the transaction occurred; and 3) lists the debits in chronological order until later, when it changes the order so it can assess overdraft charges for transactions that were not actual overdraft transactions."

Opp. at 2; *see also* Opp. at 15, 21.  Plaintiffs cite absolutely nothing in support of these assertions, and the undisputed evidence shows that each is false.

*First*, the undisputed record shows that some debit-card transactions are *not* submitted to the Bank for pre-authorization and, in many other cases, the amount for which authorization is sought is not the final amount of the transaction.  Zimmerman Dec. ¶¶ 9, 11.

*Second*, the Bank does not know "exactly when" debit-card transactions occurred if they were not pre-authorized – indeed, it does not know "exactly when" (or even if) *any* debit-card transaction will actually require payment until it receives a settlement file from the merchant.  *Id.*  Throughout their Opposition, plaintiffs repeatedly ignore the obvious difference between the Bank's "authorization" of a transaction and its actual "payment" of that transaction.  The mere fact that the Bank "authorizes" a transaction does not mean that it has paid it – or even that payment will ever be sought and made.[1]

---

[1]  A gasoline station, for example, seeks "authorization" when the customer swipes his card at the pump, but the Bank does not know that any particular amount will be submitted for (continued…)

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT
Case No.: CV-07-5923 WHA (JCSx)

2

*Third*, at no point in time does the Bank ever have a complete "list" of transactions "in chronological order." To the contrary, it receives a large number of settlement files for a variety of transactions from multiple sources and must determine a method of combining and ordering them when it conducts its batch posting. *Id.* ¶¶ 21-27.

As explained in the Zimmerman Declaration (which plaintiffs make no effort to contest or rebut), Wells Fargo's practice is to post a debit-card transaction against a customer's account when it receives the item from the merchant for payment. If there are insufficient funds to cover the transaction at that time (which is when money actually needs to be debited from the customer's account and paid to the merchant), an overdraft is created, and a fee is charged.[2]

Plaintiffs argue that California law requires Wells Fargo to process debit-card transactions differently – by reconciling them against account funds immediately after they are initiated by a customer, rather than after they are submitted to the Bank for payment. Plaintiffs thus urge that Wells Fargo must make its determination as to whether an "overdraft" exists, not at the time when the Bank must pay the merchant, but instead when the customer *initiates* the transaction – regardless of whether or not the Bank will ultimately be out of pocket when the transaction is paid.[3]

---

payment. *See* Zimmerman Dec. ¶ 17. Indeed, the Bank has no way of knowing whether the customer has even proceeded, following the "authorization" step, to pump gasoline at all. *Id.*

[2] This process is clearly disclosed in the Bank's Customer Account Agreement:

> "Overdrafts and Insufficient Funds. … The Bank may take the following actions if the Bank *receives* an Item (including an ATM or POS Item) *drawn against your Account* and there are insufficient available funds in your Account to cover the Item without prior notice to you. … ● Pay the Item and create an overdraft to your Account. … You agree to pay the Bank's fee that may vary depending on the action it takes."

*See* Zimmerman Dec. ¶ 38 & Ex. A at 26 (emphasis added).

[3] Plaintiffs ignore the impact this approach would have in situations where there are insufficient funds in the account at the time a transaction is initiated but a covering deposit is made before settlement. The logical upshot of their argument is that the Bank would be entitled to charge overdraft fees in that situation, a result that would disadvantage many customers, including plaintiffs themselves. *See* Zimmerman Dec. ¶¶ 54, 58 & Exs. M, N.

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT
Case No.: CV-07-5923 WHA (JCSx)

3

This motion does not, of course, address the substantive merits of plaintiffs' claims. What matters for current purposes is that plaintiffs' assertion that Wells Fargo improperly charges fees when no overdrafts exist depends on plaintiffs' redefinition of what an "overdraft" is to begin with. Thus, the *undisputed* facts, supported by actual *evidence*, clearly refute plaintiffs' contention that their claim is not about the "business of banking" (Opp. at 12). Notwithstanding plaintiffs' unsupported factual assertions, moving to a "real-time" posting environment for debit-card transactions would require Wells Fargo to completely overhaul its systems and debit-card processing practices. Such an enormous undertaking, were it even possible, would have a monumental impact on Wells Fargo's banking operations.

**B.     Plaintiffs' Claims Are Barred by Federal Preemption.**

**1.     Plaintiffs' Claims Are Predicated on a Challenge to Wells Fargo's Banking Practices.**

Recognizing that any direct state-law challenge to Wells Fargo's posting practices and related disclosures would be futile, as any such challenge would be preempted by the NBA and the implementing regulations of the OCC (*see* Mot. at 13-18), plaintiffs attempt to recast their arguments as generalized conversion and misrepresentation claims that are not predicated on Wells Fargo's exercise of its federal banking powers. Plaintiffs argue that they are not challenging how Wells Fargo processes debit-card transactions, but only the Bank's practice of charging overdraft fees when there are (plaintiffs say) no overdrafts. Opp. at 12.

As shown above, this argument is circular. It is undisputed that the overdraft fees at issue were for overdrafts that genuinely existed at the time the transactions were settled and posted to plaintiffs' accounts, resulting from each plaintiff spending more money than he or she had. Therefore, plaintiffs' argument is necessarily predicated on their theory that California law requires Wells Fargo to use different procedures for processing debit-card transactions and determining overdrafts. Because plaintiffs' claims are viable only if one redefines "overdrafts" in a way that assumes Wells Fargo's current banking practices are illegal, it is clear that plaintiffs – no matter how much they protest – are in fact challenging those banking practices.

The OCC has expressly confirmed that both (i) the decision to post transactions (in any order) on the day the transactions are presented and (ii) the process for creating and

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT     4
Case No.: CV-07-5923 WHA (JCSx)

recovering overdrafts and overdraft fees resulting from such transactions represent the exercise of a bank's federal banking powers under the NBA. OCC Interp. Letter No. 916, at 3-4 (2001); OCC Interp. Letter No. 1082, at 3-4 (2007); *see also* 12 C.F.R. § 7.4002(a). Further, the OCC's regulations make clear that a National Bank may exercise its federal authority without regard to state-law limitations on practices concerning checking accounts, disclosure requirements, and funds availability. 12 C.F.R. § 7.4007(b). Therefore, plaintiffs' state-law challenge to Wells Fargo's practice of reconciling debit-card transactions and recognizing overdrafts at the time of settlement and posting (instead of at the time of purchase), along with its disclosures about those practices, implicates the Bank's exercise of its federal banking authority, and is preempted by federal law. *See Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008); *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 963965, at *8 (N.D. Cal. 2007); *see also Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *10 (N.D. Cal. 2008) (observing that if plaintiffs had challenged banking practices or disclosures, such claims "would be preempted").

### 2. The Ninth Circuit Has Rejected Plaintiffs' Proposed Interpretation of the Applicable Preemption Regulations.

In an attempt to avoid the preemption of their claims by the NBA, plaintiffs point to a savings clause contained in the OCC's preemption regulation, 12 C.F.R. § 7.4007(c), which provides that, under certain circumstances, enforcement of state criminal, contract, and tort laws is not inconsistent with the exercise of a bank's federal powers. Opp. at 12. Plaintiffs assert that their claims are not preempted because they rely on state "tort" laws of general applicability. *Id.* However, under *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008), plaintiffs' claims are excluded from this savings clause because they attempt to impose state-law limitations on Wells Fargo's exercise of its deposit-taking powers as they relate to checking accounts, disclosure requirements, and funds availability.[4]

In *Silvas*, a group of mortgage applicants alleged that the defendant violated the UCL through misrepresentations about its loan policies and through the assessment of an

---
[4] Plaintiffs' Opposition cites the district court decision in *Silvas* in a footnote but fails entirely to mention the Ninth Circuit's opinion in that case. *See* Opp. at 20 n.6.

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT       5
Case No.: CV-07-5923 WHA (JCSx)

1  improper loan-related fee. 514 F.3d at 1003. The district court dismissed the case on
2  preemption grounds, and the Ninth Circuit affirmed. *Id.* at 1008. At issue was 12 C.F.R.
3  § 560.2, a regulation of the Office of Thrift Supervision ("OTS") applicable to federal thrifts
4  that parallels 12 C.F.R. § 7.4007, which applies to National Banks.[5] In both regulations,
5  paragraph (a) sets out the scope of federal authority; paragraph (b) presents a list of topics that
6  may not be made subject to state-law limitations; and paragraph (c) contains a list of areas in
7  which state law may apply to a National Bank if that law has no more than an "incidental" effect
8  on the exercise of the bank's federal powers. As explained by the Ninth Circuit, the "first step"
9  in the preemption analysis "is to determine if [the] UCL …, as applied, is a type of state law
10 contemplated in the list under paragraph (b)" of the regulation. *Silvas*, 514 F.3d at 1006. "If it
11 is, the preemption analysis ends" without consideration of paragraph (c). *Id.* The plaintiffs'
12 claims in *Silvas* challenged both "disclosures" and "loan-related fees" – two topics that are
13 specifically listed in paragraph (b) of the regulation. The Ninth Circuit held that the UCL, as
14 applied to permit challenges to those activities, was therefore preempted by federal law. *Id.*

15 Similarly here, the first step is to determine if plaintiffs' claims are the types of
16 state-law challenges that are specifically identified in 12 C.F.R. § 7.4007(b) as being preempted.
17 Section 7.4007(b) provides that "[a] national bank may exercise its deposit-taking powers
18 without regard to state law limitations concerning: … Checking accounts; … Disclosure
19 requirements; … [and] Funds availability." Because plaintiffs are challenging how and when
20 Wells Fargo (i) balances customers' checking accounts, (ii) calculates customers' available
21 funds, and (iii) discloses these banking practices – each of which is specifically identified as a
22 preempted subject matter under Section 7.4007(b) – the preemption analysis ends and plaintiffs'
23 claims are barred by federal law. *See Silvas,* 514 F.3d at 1006.

---

27 [5]    Plaintiffs acknowledge that the savings clause in 12 C.F.R. § 560.2 is "analogous" to the
28 savings clause in 12 C.F.R. § 7.4007. Opp. at 19.

### 3. An Extensive Body of Case Law Confirms that State-Law Claims Such as Plaintiffs' Are Preempted.

Courts routinely find that state-law challenges to conduct falling within a National Bank's federal banking authority are preempted, even where such claims assert state consumer protection and tort laws of general application. *See, e.g., Silvas*, 514 F.3d at 1006-07 & n.3 (UCL claims on disclosures and fee practices); *Rose*, 513 F.3d at 1037 (UCL claims on disclosures); *Lopez v. Washington Mut. Bank, FA*, 302 F.3d 900, 905 (9th Cir. 2002) (UCL claims on overdrafts and fees); *Montgomery v. Bank of America Corp.*, 515 F.Supp.2d 1106, 1113-14 (C.D. Cal. 2007) (UCL and CLRA claims on disclosures); *Martinez*, 2007 WL 963965 at *8 (UCL claims on disclosures and fees); *see generally Watters v. Wachovia Bank, N.A.*, 127 S.Ct. 1559, 1567 (2007) (National Banks only subject to state laws of general application to the extent such laws "do not conflict with the letter or the general purposes of the NBA").

For example, in *Martinez*, the plaintiffs sued a bank for violations of the UCL based on the bank's setting, charging, and disclosing of certain mortgage-related fees. 2007 WL 963965 at *2. The UCL claims were not tied to any separate underlying state law restricting banking or lending; rather, the plaintiffs simply asserted a violation of the general consumer protection obligations that apply to all businesses in California. Judge Whyte found the UCL claims to be "premised primarily" on challenges to conduct falling within the bank's federal authority under the NBA; those claims were therefore preempted. *Id.* at *8; *see also Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216, at *4-5 (N.D. Cal. 2007).

Failing even to mention *Martinez*, plaintiffs instead rely primarily on the decision of the Northern District of Georgia in *White v. Wachovia Bank, N.A.*, 2008 WL 2635640 (N.D. Ga. 2008). *See* Opp. at 13-14. In *White*, which concerned a motion to dismiss, the plaintiffs alleged that Wachovia manipulated the posting of transactions to a customer's account and charged overdraft fees "even where the account contain[ed] sufficient funds to pay a draft." *Id.* at *1. Although the claims in *White* appear similar to those here, there are critical differences, and the procedural postures and evidentiary records of the two cases are significantly different.

According to the plaintiffs' allegations in *White* (which the district court was obliged to accept as true for purposes of the motion to dismiss), Wachovia would sometimes

charge overdraft fees for debit-card transactions even if an account had enough money to cover a transaction *at the time it posted*. *Id.* at *6. The court concluded that, "based on the record now before it," the plaintiffs' claims that Wachovia charged overdraft fees "when there was actually money in the account sufficient to pay their drafts" fell within the savings clause of Section 7.4007(c). *Id.* at *5. However, the court stated that it would revisit the preemption issue if discovery showed either (i) that no improper overdraft charges were imposed or (ii) that enforcing the plaintiffs' claims would have "more than an incidental effect on Wachovia's deposit-taking powers." *Id.* at *7.[6]

The circumstances here are very different than in *White*. Here, it is undisputed that plaintiffs spent more funds than they had in their accounts, and that the fees they challenge were assessed when their transactions posted against insufficient funds. *See* p. 2 above. In contrast, the *White* court had to assume that Wachovia charged overdraft fees for transactions that posted into accounts with funds sufficient to pay them, *i.e.,* that the bank charged overdraft fees when there truly were no overdrafts under anyone's definition. Moreover, the *White* court was not bound to follow the Ninth Circuit's guidance on how to analyze preemption under the savings clause of 12 C.F.R. § 7.4007 and hence gave that clause broader application than the Ninth Circuit has held to be proper. *See Silvas*, 514 F.3d at 1006.

Further, the *White* court acknowledged that it would have to consider preemption again if discovery showed that the plaintiffs' claims would have more than an incidental effect on the bank's exercise of its deposit-taking powers. *White*, 2008 WL 2635640 at *7. Here, the undisputed record shows that enforcing plaintiffs' claims would have a monumental impact on Wells Fargo's banking activities. *See* Zimmerman Dec. ¶¶ 8-34. Thus, even if one ignored the

---

[6] The *White* court acknowledged that the plaintiffs' claims relating to disclosures might well be preempted, but elected to permit discovery to proceed before ruling on that issue. *Id.* at *7 n.15. Moreover, as plaintiffs here acknowledge (Opp. at 13 n.3), the *White* court made clear that any direct challenge to the amount of Wachovia's overdraft fees would be preempted. 2008 WL 2635640 at *5. Plaintiffs do not appear to dispute this, notwithstanding the repeated criticisms throughout their Opposition of the amounts of Wells Fargo's overdraft fees. *See, e.g.*, Opp. at 16 (arguing that deterrence rationale does not justify amount of overdraft fees). *See generally Bank of America v. City & County of San Francisco*, 309 F.3d 551 (9th Cir. 2002) (confirming federal preemption of state-law restrictions on fees charged by National Banks).

Ninth Circuit's holding in *Silvas* and instead applied the *White* court's interpretation of the OCC regulation, plaintiffs' claims would still be preempted, because they would have "more than an incidental effect" on banking operations. *See White*, 2008 WL 2635640 at *7.[7]

Next, plaintiffs mistakenly argue that OCC Advisory Letter AL 2002-3 ("Advisory Letter"), endorses the position that National Banks are subject to private actions brought under state law for "unfair or deceptive" practices. Opp. at 15. In fact, the OCC did not issue the Advisory Letter to warn against possible private litigation, but instead to remind National Banks that failure to comply with statutory and regulatory requirements could result in action *by the OCC*, which could "includ[e] enforcement actions to address violations and to ensure appropriate corrective action; lawsuits; and civil penalties." Advisory Letter at 2. The Advisory Letter does indicate that state laws prohibiting unfair or deceptive acts or practices, such as the UCL, may in certain circumstances apply to federal depository institutions, but only to warn that *the OCC itself* has the authority to enforce unfair competition laws against National Banks. *Id.* at 3; *see Aubertin v. Fairbanks Capital Corp.*, 2005 WL 331351, at *2 (D.N.H. 2005) (unpublished); *see also* 12 U.S.C. § 1818(b); 12 C.F.R. § 5.34(e); 12 U.S.C. § 484.

The significance of the Advisory Letter was specifically addressed in *Aubertin*, in which a borrower sued U.S. Bank, alleging that the bank's lending practices violated New Hampshire's Consumer Protection Act. 2005 WL 331351 at *1. The court found that the Advisory Letter confirms that the authority to enforce consumer protection laws against National Banks in connection with their banking operations rests with the OCC, and private litigants are barred by preemption from bringing such claims. *Id.* at *2.

---

[7] No different conclusion is compelled by *Great Western Resources, LLC v. Bank of Ark., Nat'l Ass'n*, 2006 WL 626375 (W.D. Ark. 2006) or *Hood v. Santa Barbara Bank & Trust*, 143 Cal. App. 4th 526 (2006). *See* Opp. at 13 n.2. As in *White*, the *Great Western Resources* court merely decided that the plaintiffs' claims "should not be dismissed on [a Rule 12(b)(6)] motion." 2006 WL 626375 at *3. *Hood* also involved a motion on the pleadings, and it expressly did not address "whether appellants' claims were … barred by the provisions in the OCC regulations that preempt state laws that obstruct, impair, or condition a national bank's ability to fully exercise its federally authorized deposit-taking powers." 143 Cal. App. 4th at 534.

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT
Case No.: CV-07-5923 WHA (JCSx)

9

The last authority upon which plaintiffs' chiefly rely is *Jefferson v. Chase Home Finance*, 2008 WL 1883484 (N.D. Cal. 2008).[8] In *Jefferson*, the plaintiff alleged that Chase violated the CLRA and the UCL by making affirmative misrepresentations about how it allocated prepayments to customers' home loans. For example, the plaintiff alleged that a Chase representative told him over the phone that any prepayments would be applied to the principal of his home loan, when in fact his prepayments were instead placed in "suspense." *Id.* at *2. In deciding that the plaintiffs' claims were not preempted under the NBA, Judge Henderson focused on the "threshold question [of] the precise nature of Plaintiff's state law claims." *Id.* at *4. He found it significant that the plaintiff did not claim that state law required Chase to alter its practices to handle repayment of loans in any particular manner, as such state-law requirements would be preempted. *Id.* at *12. "Instead, Plaintiff claims that the laws require Chase to refrain from misrepresenting the manner in which it *does* service loans." *Id.*[9]

Insofar as plaintiffs seek to interpret *Jefferson* as distinguishing (in the preemption analysis) between state laws specifically directed at banking activities and those of general application, any such reading would have to be limited to situations – like that in *Jefferson* itself – in which the plaintiff does not challenge any underlying banking practice. Any broader interpretation would be inconsistent with the heavy weight of existing authority, including the Ninth Circuit's recent decision in *Rose*, in which it held that all of the plaintiffs' UCL claims (including two that were *not* predicated on a separate state law directed at banking or lending) were preempted by the NBA. *Rose*, 513 F.3d at 1038. The Ninth Circuit's holding did not depend on whether the state law at issue was of general application; instead, the court held that the "proper inquiry is whether *the legal duty* that is the predicate of Plaintiffs' state law

---

[8] Plaintiffs refer to *Jefferson* repeatedly throughout their Opposition as a "Ninth Circuit" decision but have since filed an "Errata" acknowledging that this is in error.

[9] Plaintiffs' attempt to draw a parallel between this claim and their claims about Wells Fargo's disclosures on available balances (Opp. at 17-20) fails to recognize the important distinction that Judge Henderson was stressing. Plaintiffs' claim is that Wells Fargo's substantive practice is unlawful and that it further acts unlawfully in failing to disclose that fact to customers. In *Jefferson*, in contrast, the claim was simply that the bank was doing one thing and telling customers it was doing something entirely different.

claim falls within the preemptive power of the NBA or regulations promulgated thereunder." *Id.* (citations omitted, emphasis added). This was also the view adopted in *Montgomery*, 515 F. Supp. 2d at 1113, and *Martinez*, 2007 WL 963965 at *8, both of which similarly applied preemption to bar general UCL claims.[10]

Because federal preemption bars all of plaintiffs' law challenges to Wells Fargo's banking practices and disclosures, the Bank is entitled to summary judgment.

### C. Plaintiffs Lack Standing.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will have the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. The non-moving party's failure of proof on an essential element of its claim renders all other facts immaterial. *Id.* at 323. These principles apply in full force to the elements of reliance and causation. *See Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030-31 (9th Cir. 1992).[11]

Plaintiffs have failed to establish a triable issue of fact on their standing to assert either their claims about alleged communication of available balances (the "available balance" claims) or their claims about the assessment of overdraft fees for transactions that they assert were not "really" overdrafts (the "sufficient funds" claims).

---

[10] Plaintiffs also cite three state-court decisions, *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005), *Gibson v. World Savings and Loan Ass'n*, 103 Cal. App. 4th 1291 (2002), and *Fenning v. Glenfield, Inc.*, 40 Cal. App. 4th 1285 (1995), for the proposition that their UCL claims are not preempted. None of these decisions applied Ninth Circuit law. Moreover, each is clearly distinguishable. In both *Smith* and *Gibson* the plaintiffs' UCL claims were predicated on a breach of contract – a claim not alleged here. In fact, plaintiffs' claims require *setting aside* the relevant contract, such as the customer's clearly stated independent obligation to keep accurate records of his transactions and the definition of "overdraft." Zimmerman Dec. ¶¶ 37, 38 & Ex. A at 11, 14, 26. *Fenning* involved a claim of fraud in connection with conduct that did not implicate any federally regulated banking activities.

[11] Plaintiffs' citation (Opp. at 24) to Justice White's concurrence in *Celotex* does not undercut these well-established principles. The Supreme Court made clear in *Celotex* that the burden on the party moving for summary judgment "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325. Here, Wells Fargo has done considerably more, presenting affirmative evidence that plaintiffs' claims fail as a matter of law.

### 1. "Available Balance" Claim

Plaintiff Walker lacks standing to assert any "available balance" claim because the undisputed evidence shows that she did not check her available balance during the relevant time period and that, even if she had, she was aware that her available balance did not always include all of her pending transactions.[12]

Plaintiff Smith lacks standing to assert an "available balance" claim because he cannot, as a matter of law, have reasonably relied on his available balance to reflect all of his pending transactions. He admits that a few months before his challenged transaction, a Wells Fargo representative explained to him over the phone that pending debit-card purchases were sometimes dropped from the available balance. Smith Dec. ¶ 5 ("I knew from one other occasion that it was possible for a transaction to fall off the available balance, even though it had already been listed as a pending charge."). Accordingly, Smith knew that his available balance would not always reflect all of his transactions and that he had to keep independent track of them. Plaintiffs argue that Smith could still reasonably rely on the available balance information to reflect all of his debit-card transactions because he "had not been told by Wells Fargo how, when, why or [under] what circumstances" a debit-card transaction could be dropped from the calculation of his available balance. Opp. at 24. This is irrelevant, as once Smith knew that transactions might "drop off" the available balance – for whatever reason – it was unreasonable for him to "rely" on the facts to be otherwise.[13]

---

[12] *See* Jolley Dec. Ex. 2 at 27-29. Walker has submitted a declaration stating that she "would regularly check [her] balances online or at the ATM." Walker Dec. ¶ 2. However, this vague statement is insufficient to create a triable issue of fact where Walker has already admitted under oath that she does not remember checking her available balance during the relevant period (Jolley Dec. Ex. 2 at 76-77) and where Wells Fargo's records confirm that she did not do so (Ahrendt Dec. ¶ 3). *See Foster v. Arcata Assoc.*, 772 F.2d 1453, 1462 (9th Cir. 1985) (party cannot create a genuine issue of fact on summary judgment by contradicting her prior deposition testimony with an affidavit). Nor can plaintiffs' counsel contradict the undisputed facts by pointing to transactions Walker conducted during which her available balance *might* have been communicated to her in passing. *See* Opp. at 9. Tellingly, Walker does not even mention these transactions in her declaration, and she certainly does not assert that she actually did review and rely upon available balance information given to her.

[13] *See Atari Corp.*, 981 F.2d at 1031 (9th Cir. 1992) (reliance not justifiable where plaintiff possessed facts demonstrating that challenged representations were not true). Smith now asserts that if Wells Fargo had not allowed the challenged transaction to "drop off" of the available (continued…)

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT
Case No.: CV-07-5923 WHA (JCSx)                12

Plaintiff Gutierrez lacks standing to assert an "available balance" claim for the simple undisputed reason that, during the relevant period, her available balance would have accurately reflected all of her pending transactions except for the check she wrote that Wells Fargo did not know about (and that was the ultimate cause of her overdrafts). *See* Zimmerman Dec. ¶ 46. Gutierrez cannot recall whether she checked her available balance during the relevant period (Jolley Dec. Ex. 1 at 90-91, 97-98), but given that her available balance would have accurately reflected all pending debit-card transactions, that point is moot. She cannot establish that she received a false statement about her available balance that caused her injury.

### 2. "Sufficient Funds" Claim

Plaintiffs fare no better in establishing a triable issue of fact on causation and actual injury for their "sufficient funds" claim.

Plaintiffs have offered no evidence contradicting Wells Fargo's showing that Walker was not injured by the challenged practice. There is no dispute that, had overdraft fees for all of Walker's electronic transactions been calculated as of the original transaction dates (as plaintiffs advocate), she would have incurred six more overdrafts for the statement period than she was in fact assessed. *See* Zimmerman Dec. ¶ 54 & Ex. M. Walker has submitted a declaration stating that if she had known that Wells Fargo might charge overdraft fees for debit-card transactions that were within her available balance when initiated, "I would have ceased using the Wells Fargo account and changed banks." Walker Dec. ¶ 3. This assertion does nothing to save her claim. Walker's overdrafts were caused by her practice of spending more money than she had, and she does not even claim (much less offer evidence) that she would not have had exactly the same pattern of overspending had her account been with another bank. And had that other bank had the hypothetical "lawful" practice that plaintiffs advocate here, she would have incurred *more* overdraft fees, not fewer. Therefore, there is absolutely no causal

---

balance communicated to him, he "would have transferred funds from another account" to avoid his two overdraft fees. Smith Dec. ¶ 5. This is simply another way of restating his argument that he relied on the available balance and would have acted differently had he not done so. Since Smith already knew he could not reasonably rely on the available balance, he cannot claim injury caused by having done so.

link between the challenged practice (or disclosures about this practice) and any injury suffered by Walker. *See Rinehart v. Boys & Girls Club of Chula Vista*, 133 Cal. App. 4th 419, 435 (2005) (plaintiff must establish an "actual causal link" between the claimed injury and the alleged wrongful conduct).

Plaintiff Smith similarly lacks standing to assert a "sufficient funds" claim because he also was not injured by the challenged practice. Plaintiffs offer no evidence to contest Wells Fargo's showing that, had all of Smith's transactions been posted, and the existence of overdrafts determined, on the original transaction dates (as plaintiffs advocate), he would have incurred more overdraft fees rather than fewer. *See* Zimmerman Dec. ¶ 58 & Ex. N. Having gained a net benefit from the challenged practice, Smith has no standing to challenge it.

Plaintiff Gutierrez lacks standing to assert a "sufficient funds" claim because her overdraft fees were caused by a check she had written before she initiated any of the debit-card transactions at issue. Zimmerman Dec. ¶¶ 46-48. If Gutierrez had not written that check, she would have received no overdraft fees during the relevant period. *Id.* ¶ 46. Gutierrez has submitted a declaration stating that if she had known that Wells Fargo might charge overdraft fees for debit-card transactions that were within her available balance when initiated, "I would have insured that there was always a higher minimum balance in the account to cover for this contingency." Gutierrez Dec. ¶ 5. As with the "but for" explanations offered by the other plaintiffs, this is a *non sequitur*. What Gutierrez needed to do to avoid her overdrafts was to keep enough money in her account to cover the check she wrote, an obligation she already knew she had and that she admits error in not satisfying (Opp. at 5). Her declaration establishes no causal link between her alleged injury and the challenged "practice" (or disclosures about it). *See Rinehart*, 133 Cal. App. 4th at 435.[14]

---

[14] Nor is the requisite causal link established simply because a *different* posting practice not challenged by plaintiffs caused Gutierrez to incur four overdraft fees rather than just one on the day in question. The Bank received her check on the same day several other transactions settled, and the check was paid before smaller items, pursuant to the Bank's practice of posting larger items first, leaving insufficient funds to cover other transactions. *See* Zimmerman Dec. ¶ 27. This posting practice is fully disclosed, *id.* ¶ 38 and plaintiffs have acknowledged in their Motion for Class Certification that it is not challenged in this case. *See* Class Motion at 8-9; *see also* Class Opp. at 8 n.9.

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT
Case No.: CV-07-5923 WHA (JCSx)
14

### D. Plaintiffs' Opposition to Wells Fargo's Motion for Summary Judgment Confirms That Class Treatment of Their Claims Is Inappropriate.

All three plaintiffs have submitted declarations identifying the unique actions each asserts that he or she would have taken to avoid injury had Wells Fargo's disclosures been different. Walker says she would have changed banks. Walker Dec. ¶ 3. Smith says he would have transferred funds from another account. Smith Dec. ¶ 5. And Gutierrez claims she would have kept more money in her account. Gutierrez Dec. ¶ 5. Although each of these attempts to show actual injury fails for the reasons stated above, they confirm that plaintiffs' claims require analysis of a multitude of individualized issues of reliance, causation, and actual injury. Even if the named plaintiffs had been able to establish actual injury through their declarations, the fact that such declarations are necessary – and that they are all different – demonstrates that class treatment of these claims is inappropriate.

Plaintiffs' recasting of the substance of their claims in opposing summary judgment also creates new barriers to class certification. For example, plaintiffs now claim that they do not challenge the fact that "there is a delay in transactions being posted to the account … but rather, that after pending charges are posted, they are later dropped from the available balance without warning." Opp. at 2. Plaintiffs' Motion for Class Certification is entirely silent on any methodology for identifying which members of their proposed "available balance" class had this specific experience (as opposed to the "delay" that plaintiffs now claim not to challenge) and, if so, whether those persons suffered any injury.

## III. CONCLUSION

Wells Fargo's motion for summary judgment should be granted.

DATED:  August 7, 2008                                    COVINGTON & BURLING LLP

                                                          By:        /s/
                                                             Sonya D. Winner
                                                             Attorneys for Defendant
                                                             WELLS FARGO BANK, N.A.

REPLY IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT                                            15
Case No.: CV-07-5923 WHA (JCSx)