Richard D. McCune, Esq. State Bar No. 132124
rdm@mwtriallawyers.com
Jae (Eddie) K. Kim, Esq., State Bar No. 236805
jkk@mwtriallawyers.com
MCCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Mitchell M. Breit, Esq. (Admitted *Pro Hac Vice*)
mbreit@wdklaw.com
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

Attorneys for Plaintiffs VERONICA GUTIERREZ, ERIN WALKER
and WILLIAM SMITH, on behalf of themselves and
all others similarly situated

PUBLIC VERSION
REDACTED

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER and WILLIAM SMITH, as individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and DOES 1 through 125,<br><br>Defendants. | Case No.: C 07-05923 WHA (JCSx)<br><br>CLASS ACTION<br><br>***PUBLIC VERSION REDACTED:*** **PLAINTIFFS' REPLY TO OPPOSITION OF WELLS FARGO BANK, N.A. TO PLAINITFFS' MOTION FOR CLASS CERTIFICATION; DECLARATION OF RICHARD D. McCUNE; EXHIBITS;**<br><br>**DATE: August 21, 2008**<br>**TIME: 8:00 a.m.**<br>**DEPT: Courtroom 9, 19th Floor**<br><br>Judge Assigned: Hon. William H. Alsup<br>Original Complaint filed: November 21, 2007 |

---

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

**TABLE OF CONTENTS**

*Page*

I. INTRODUCTION…………………………………………………………………………………….1

II. ARGUMENT…………………………………………………………………………………………...2

    A. Wells Fargo Has the Burden to Establish a Right to Overdraft Fees from Its Customers ……2

    B. The Facts Are Inconsistent with Wells Fargo's Claims that It Discourages Overdrafts ..……3

    C. Wells Fargo's Strategy Is to Confuse the Issues ……………………………………………..4

        1. This Case Is Not about Checks and Floats, It Is about Pre-approved Electronic Debit Charges……………………………………………………………………………………..4

        2. The Issue with Inflated Published Available Balance Is Not about a Delay in Posting………………………………………………………………………………………...5

        3. A Finding that Wells Fargo Improperly Charged Customers Overdraft Fees for Transactions that Were Not Overdraft Transactions, Does Not Result in Other Customers Incurring Overdraft Fees………………………………………………………….5

    D. Plaintiffs Can Establish the Identity of Affected Class Members Through Wells Fargo's Data……………………………………………………………………………………………. 6

        1. Sufficient Funds Class…………………………………………………………………….6

        2. Available Funds Class………………………………………………………………...…6

        3. This Computer Information Is Clearly Available…………………………………….…7

    E. Wells Fargo Does Not Dispute It Engaged in a Uniform Practice …………………………...9

    F. The Individual Issues Raised by Defendant Are Reliance Questions and the Courts Have Clearly Stated that Reliance Can Be Established by Class-Wide Proof……………………...9

    G. Wells Fargo's Attack on the Named Plaintiffs Is Classic Misdirection……………………..11

        1. Gutierrez is a Proper Class Representative…………………………………………..11

        2. Walker is a Proper Class Representative………………………………………………12

        3. Smith Is a Proper Class Representative……………………………………………...…13

    H. Any Court Perceived Deficits in the Class Representatives, Class Definition or Class Period Are Curable………………………………………………………………………………...…14

VI. CONCLUSION……………………………………………………………………………………15

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.:  C 07-05923 WHA (JCSx)

# TABLE OF AUTHORITIES

**FEDERAL CASES** — **PAGE(S)**

Boucher v. Syracuse Univ.,
 164 F.3d 113, 118 (2nd Cir., 1999) .................................................................................. 15

Falk v. General Motors Corp.,
 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) .................................................................. 10

Gordeon v. Hunt,
 98 F.R.D. 573, 576-78 (S.D.N.Y., 1983) ........................................................................... 15

In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,
 140 F.R.D. 425, 430 (D. AZ. 1992) .................................................................................... 9

In re Graphics Processing Units Antitrust Litigation,
 2008 WL 2788089, at *2, *22 (N.D. Cal., July 18, 2008) ................................................. 14

Payne v. Travenol Laoratories, Inc.,
 673 F.2d 798, 810-11 (5th Cir., 1982) ............................................................................... 14

Robinson v. Sheriff of Cook County,
 167 F.3d 1155, 1157 (7th Cir. 1999) ................................................................................. 15

T.C. Jefferson v. Chase Home Finance,
 2008 WL 1883484, *15 (N.D. Cal. April 29, 2008) .......................................................... 10

Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,
 350 F.3d 1181, 1189 (11th Cir. 2003) ............................................................................... 13

**STATE CASES**

Consumer Advocates v. Echostar Satellite Corp.,
 113 Cal. App. 4th 1351, 1358-60, 8 Cal. Rptr. 3d 22 (2003) ............................................ 10

Corbett v. Superior Court,
 101 Cal. App. 4th 649, 655, 125 Cal. Rptr. 2d 46 (2002) ................................................. 10

Fletcher v. Security Pacific National Bank,
 23 Cal. 3d 442, 450, 153 Cal. Rptr. 28, 591 P.2d 51 (1979) ............................................. 10

Kraus v. Trinity Management Services, Inc.,
 23 Cal. 4th 116, 124, 96 Cal. Rptr.2d 485 (2000) ......................................................... 9, 10

Vasquez v. Superior Court,
 4 Cal. 3d 800, 812-15, 484 P.2d 964, 971 (1971) ......................................................... 9, 10

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

# I

# INTRODUCTION

Wells Fargo's opposition to the motion for class certification seeks to assert a standard for class actions that no consumer class action could ever meet, and would provide absolute immunity to companies involved in large scale wrongdoing. It asks this Court to overlook the fact that Wells Fargo takes from customers' account overdraft fees for transactions that are not overdraft transactions, and then compounds the conduct by not disclosing what it does. It asks the Court to ignore that it has made [ REDACTED ] from its customers doing this, and instead rule that unless each customer's consumer experience was exactly the same, which they could never be, a consumer class action should not be certified.

Fortunately that is not the law. That Wells Fargo's conduct was wrongful and uniform to each class member, combined with the participation of reasonable and adequate representatives committed to protecting the interests of the class, make this a proper class action. The issues raised by Defendant related to computer limitations, voluntary payment, and bizarre examples of fraud do nothing to change the appropriateness of this case as a class action.

Wells Fargo feigns surprise that certification would even be considered. Odd, considering that Defendant is well aware that a California State Court in *Smith v. Wells Fargo Bank*, *N.A*, Case No. GIC 802664 applying the same law, against the same Defendant, on behalf of California Wells Fargo customers (except that their claims were for conduct that occurred in 2002-2003 rather than the present case of 2003 to the present), on an issue related to Wells Fargo having improperly assessed overdraft fees, found that all the conditions were met for class certification. All the same issues related to identifying affected class members and determining damages were present in that case, and the Court found class certification appropriate to allow Wells Fargo the opportunity to defend the allegations on their merits before a jury.

Also important is that, except as to the issues of the adequacy of the class representatives, Defendant's challenge to class certification is limited to the misrepresentation and fraud based causes of action. It raises no substantive class challenges to class certification on the False Advertising and Conversion causes of action.

-1-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

Defendant's self-serving challenge to the adequacy of class representatives is misplaced. It seeks to avoid entirely its responsibility to the class for its actions because of concern over the class representatives' ability to protect the class. That is the equivalent of the fox raising concerns that it should be allowed in the coop, because the lead chickens are not qualified to guard the coop against the fox. Each of the class members, as discussed more thoroughly in the opposition to the motion for summary judgment, has been damaged by Wells Fargo's actions. They have each indicated they understand their duties and are committed to protecting the class. Therefore, the class representatives are adequate to protect the interests of the class.

Defendant's challenge to the class certification of the fraud and misrepresentation causes of action is in essence that it should be allowed to profit from its wrongdoing because it is has made it difficult to determine from which customers it has improperly taken money from and to calculate how much it has taken. While it may be hard, it can be done. It can be done with Wells Fargo's own computer records. Further, even if it could not be done with their records going back to 2003, a statistical analysis could be run on current data to determine the amount of improperly assessed fees so as to return Wells Fargo's unjust enrichment to its customers. The law does not say to a defendant, you can steal, as long as you make it really hard to figure out which person you stole from, and exactly how much you stole from each person.

This action is exactly the type of case designed for class certification, and Wells Fargo should be afforded the opportunity to defend its practices under the bright light of a trial on the merits, rather than escape responsibility under the darkness of law and motion.

## II

## ARGUMENT

**A.   Wells Fargo Has the Burden to Establish a Right to Overdraft Fees from Its Customers**

Wells Fargo arrogantly starts its analysis with the unstated but clear belief that it has some higher level right to reach into its customers' accounts and take their money whenever it unilaterally decides there has been a qualifying overdraft transaction. That premise is fundamentally wrong. If Wells Fargo is going to reach in and take money that does not belong to it, then it has the obligation to establish that a real overdraft transaction occurred. It further has the obligation to clearly disclose when that will

-2-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.:  C 07-05923 WHA (JCSx)

occur. Wells Fargo makes no pretense that it did either.

Wells Fargo makes no effort to justify how it is that a customer could check their Wells Fargo online account and see that they have $100; have Wells Fargo authorize the use of their debit card to buy a $3.50 cup of coffee; yet be charged a $34 overdraft charge for that cup of coffee, because a week later they accidently overdraft their account, and Wells Fargo turns the one overdraft transaction into $68 (two $34 fees) in overdraft fees by combining the overdraft transaction with the non-overdraft coffee transaction. It provides no disclosures to inform customers that this will happen.

**B.      The Facts Are Inconsistent with Wells Fargo's Claims that It Discourages Overdrafts**

Wells Fargo's attempt to blame customers for incurring overdraft fees on non-overdraft transactions by claiming that it discloses to customers that they are to keep track of their own balances, falls flat for several reasons.

First, it is in direct contradiction to Wells Fargo's ongoing marketing campaign where it invites Wells Fargo customers to rely upon Wells Fargo for their balance information.



(McCune Decl. ¶ 4, Wells Fargo Print Ad, Ex. 20)

-3-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.:  C 07-05923 WHA (JCSx)

1    This ad is consistent with its theme of looking to Wells Fargo for account balance information marketed in television commercials, (McCune Decl. ¶ 3, Wells Fargo Television Ad, Ex. 19), print ads, (McCune Decl. ¶ 4, Wells Fargo Print Ads, Ex. 20), radio commercials, (McCune Decl. ¶ 5, Wells Fargo Radio Ads, Ex. 21), direct message commercials on statements (McCune Decl. ¶ 6, Wells Fargo Statement Ads, Ex. 22), and ATM commercials, (McCune Decl. ¶ 7, Wells Fargo ATM Ads, Ex. 23).

Second, keeping track of finances will help keep the customer from ever having a single overdraft, but it will not keep customers from getting multiple overdraft fees, in the event they ever do overdraft their account, because Wells Fargo groups overdraft transactions with non-overdraft transactions and re-orders them from highest to lowest. This results in non-overdraft transactions becoming overdraft transactions, which keeping an accurate check registry would not prevent from happening.

Third, Wells Fargo is being disingenuous. It makes [REDACTED] a year from overdraft fees from California personal checking accounts alone. Is it credible that it wants these customers to stop overdrafting their accounts when it would lose that [REDACTED] in profit?

**C.    Wells Fargo's Strategy Is to Confuse the Issues**

Instead of addressing Plaintiffs' allegations, Wells Fargo follows the classic defense playbook of attempting to confuse the issues. One of the main ways it does this is by misstating Plaintiffs' allegations.

**1.    This Case Is Not about Checks and Floats, It Is about Pre-approved Electronic Debit Charges**

Wells Fargo tells the Court that Plaintiffs are complaining about checks and float. This is false and Defendant knows it to be false. Plaintiffs have specifically limited their allegations to overdraft fees that arise from **electronic debit charges**, and have specifically excluded check transactions in this lawsuit. This distinction and attempt to mislead is highlighted by Wells Fargo's discussion about Ms. Gutierrez. A check written by Ms. Gutierrez that was paid on October 10, 2006, resulted in an overdraft transaction. Defendant tries to confuse the issue by stating that this is the overdraft fee being challenged by Ms. Gutierrez. That is false. The check overdraft fee is a proper one.

-4-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.:  C 07-05923 WHA (JCSx)

1   What was not proper was taking three debit transactions each of which were approved by Wells
2   Fargo and had occurred up to five days earlier when there was no question that there were sufficient
3   funds to cover the transactions, then using those transactions to justify removing from her account $66
4   (three $22 overdraft fees), in addition to the one $22 proper charge for the check overdraft.

### 2. The Issue with Inflated Published Available Balance Is Not about a Delay in Posting

Wells Fargo implies that Plaintiffs are challenging the practice and disclosure of how long it takes an electronic transaction to be incorporated into the available balance as a pending transaction. This is false for two reasons. First, the challenged practice relates to *when* Wells Fargo charges an overdraft fee, not *how* Wells Fargo incorporates pending charges into the available balance. Second, the problem causing inaccurate available balance information resulting in overdraft fees is not that there is a delay in the transactions being posted to the account as a pending charge, but rather, that after pending charges are posted, they are later dropped from the available balance without warning or notice to the customer, only to reappear yet again day(s) later. In other words, it is Wells Fargo dropping the charge off after having initially included it in the available balance that is the problem, not a delay in initially including the charge in the available balance. Wells Fargo can not dispute that it does not disclose this fact.

### 3. A Finding that Wells Fargo Improperly Charged Customers Overdraft Fees for Transactions that Were Not Overdraft Transactions, Does Not Result in Other Customers Incurring Overdraft Fees

Wells Fargo yet again badly distorts Plaintiffs' allegations by claiming that Plaintiffs are demanding that Wells Fargo change how it processes transactions, and that this new way of processing transactions would actually increase overdraft fees for some customers. The fatal flaw in Wells Fargo's argument is in its premise.

Plaintiffs, in fact, are not contending that Wells Fargo must change how or when it processes electronic transactions. Rather, Plaintiffs contend that Wells Fargo simply must not assess overdraft charges for transactions for which it knows sufficient funds are present at the time of such transaction. This is a change in their overdraft policy, not their processing policy. At the very least, it must not do this without disclosure to customers. This relief does not require Wells Fargo to fundamentally change how it processes transactions, and would not harm any customers.

-5-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

**D.  Plaintiffs Can Establish the Identity of Affected Class Members Through Wells Fargo's Data**

### 1. Sufficient Funds Class

To determine who has been assessed overdraft fees for non-overdraft transactions, all that is needed is: 1) customer identifying information; 2) the transactions that triggered an overdraft fee ("overdraft transaction"); and 3) the date each transaction that triggered an overdraft fee actually occurred ("transaction date").  With this information, a programmer would tell the computer to identify for each overdraft transaction the transaction date, then, calculate the "real balance" at the end of each overdraft transaction date by taking a ledger balance from a week earlier and adding all subsequent credits and deducting all debits by their transaction dates.  The "real balance" is the account balance at the time of the last transaction on that date, calculated as if there was never any further activity in this account.  This is exactly what a handwritten check register would look like at the end of the day.  If the balance figure is positive on the transaction date of an overdraft transaction, then it is an improper overdraft fee.  If it is negative, then it is a proper overdraft fee.

### 2. Available Funds Class

For the available funds class, in addition to the information discussed above, the Parties would need to know which customers accessed the available balance information within a certain number of days before the overdraft transaction date (Plaintiff suggests three but could be as much as a week or as little as the same day).  This can again be determined by looking at Wells Fargo's records to see when the customer had logged online, had accessed the automated telephone system, had made an ATM transaction or had conducted business in a branch.

To determine what the "available balance" figure the customer would have had access to, the computer programmer could either use Wells Fargo's "available balance" figure that it keeps for six months, or through inputting the rules the computer uses in calculating "available balance," duplicate what the available balance was when accessed.  With this information, the programmer would program the computer to first look to the overdraft transaction date and determine whether the available balance was positive that day.  If it was, the computer would then check to see if the customer had accessed available balance information within the prescribed number of days.  It that "available balance" figure

-6-

1  was positive, and had been positive since that information was accessed, it would be an improper
2  overdraft fee.
3      While understanding that this is complicated and difficult for the programmers, if the
4  information is available in electronic form, then it is possible to do.  There is no question that Wells
5  Fargo has this information and can replicate it by computer analysis.

### 3. This Computer Information Is Clearly Available

Plaintiffs have provided information in the form of Dr. Mandell's declaration to support a mechanism for determining identity and damages on a class-wide basis using Wells Fargo's database. As discussed in the following, the information needed from Wells Fargo database is available. As set forth in the response to Wells Fargo's objection to Dr. Mandell's declaration, this provides sufficient foundation for Dr. Mandell's opinions.

In response to Dr. Mandell's opinions, Wells Fargo submitted a 20 page declaration from Mr. Mark Lentz.  Mr. Lentz states in his declaration that he is a manager of an analytical team, but fails to disclose that his role is being part of the *marketing* analytical team.  He does not disclose that he is not an employee with technical computer programming responsibilities, and that he has no technical expertise.  (McCune Decl. ¶ 8, Lentz Depo p. 7:15-19, Ex. 24.)  Wells Fargo had the ability to provide evidence from any number of employees that work in the Technology Information Group, which manages the information held by Wells Fargo and have computer programming experience and expertise, (McCune Decl. ¶ 8, Lentz Depo pp. 13:17-14:6, Ex. 24), if it thought it could actually establish that its programmers could not program its system to perform the above searches and calculations.

But it did not provide someone with computer programming expertise, and this was not something that Wells Fargo just overlooked.  Plaintiffs knew that Wells Fargo would attempt to hide behind its complicated computer system to fight class certification.  So on April 25, 2008, the very first deposition Plaintiff set was a 30(b)(6) witness on the issue of computer databases and information retained by Wells Fargo (McCune Decl. ¶ 9,  Notice of Deposition, Ex. 25).  Wells Fargo produced Mr. Lentz as their corporate designee.  Mr. Lentz testified under oath that:  1) [ **REDACTED** ], (McCune Decl. ¶ 8, Lentz Depo pp. 52:25-

-7-

1  53:6, Ex. 24); 2) [                    REDACTED                    ] (McCune Decl.
2  ¶ 8, Lentz Depo pp. 71:18-72:5, Ex. 24); and 3) [           REDACTED
3                                                   ] (McCune Decl. ¶ 8, Lentz Depo
4  p. 55:10-14, Ex. 24).

5      If that information were true, the case would be limited to a statistical analysis.  But the
6  information was counter-intuitive and seemed contrary to some of Wells Fargo's own documents.  So
7  Plaintiffs continued taking depositions of persons identified in depositions and further 30(b)(6)
8  witnesses (deposing three additional Wells Fargo employees relating to computer data information over
9  the next 2 ½ months).  (McCune Decl. ¶ 10, Notices of Taking Depositions, Ex. 26.)  Finally, on July 9,
10 2008, one day before the class certification motion was to be filed, Wells Fargo was forced to produce a
11 witness that conceded that certain information provided by Mr. Lentz was inaccurate.

12     The truth is now undisputable that: 1)            REDACTED
13                                        ], (McCune Decl. ¶ 11, Williamson Depo p. 18:19-20, Ex.
14 27; McCune Decl. ¶ 12, Trans Detail, Ex. 28); 2) [          REDACTED
15                        ], (McCune Decl. ¶ 13, Moore Depo pp. 16:25-19:6, Ex. 29; McCune
16 Decl. ¶ 14, Gutierrez Overdraft Notices, Ex. 30); 3) [        REDACTED
17                                   ], (McCune Decl. ¶ 11, Williamson Depo pp. 27:25-28:7, Ex. 27); and
18 4) [              REDACTED                      ]. (McCune Decl. ¶ 11,
19 Williamson Depo pp. 19:16-20:19, Ex. 27).   By having this digital information, the ability to identify
20 class members and damages through a computer algorithm is possible, and provides the support for Dr.
21 Mandell's declaration.

22     A review of Mr. Lentz's declaration shows that it was carefully crafted to discuss what Mr. Lentz
23 would or would not do in determining improper overdraft fees under Plaintiffs allegations.  It does not
24 say what a Wells Fargo computer programmer would or could do.  Of course, because Mr. Lentz is not a
25 programmer, he is unable to say what a computer programmer could do.  That is exactly how Wells
26 Fargo wanted it.  Given that, the digital information is recorded and retained, and that Plaintiffs have
27 provided a qualified expert to provide an opinion that the information can be obtained from algorithms
28 run by qualified programmers, Plaintiffs have met their burden to show how class members and

-8-

damages can be determined on a class-wide basis. At the very least, if the Court considers the non-qualified deposition of Mr. Lentz to be persuasive, Plaintiff should be allowed to bring in a programmer who is provided access to all the Wells Fargo database information before the Court determines that digital information that is in the system cannot be utilized to achieve the necessary results.

### E. Wells Fargo Does Not Dispute It Engaged in a Uniform Practice

The most important issue related to uniformity and the predominance of common issues over individual issues is whether the actions of Wells Fargo that give rise to this lawsuit differ between class members. Notably absent from the opposition is any contention that Wells Fargo's actions are not uniform to each customer. The conceding of this point means that Wells Fargo admits that it:

1. Calculated overdraft fees in the same way for each the class member.

2. Provided Uniform Disclosure to each class member which did not disclose that its practice was to 1) charge overdraft fees for approved transactions even when the transactions were within both the available balance and the real balance at the end of the day it occurred; and 2) the published "available balance" figure could be artificially inflated because charges that were initially included in available balance dropped off without notice depending on the type of transaction.

### F. The Individual Issues Raised by Defendant Are Reliance Questions and the Courts Have Clearly Stated that Reliance Can Be Established by Class-Wide Proof

In attacking Plaintiffs' fraud and misrepresentation claims on a class wide basis, Wells Fargo asserts that individual issues predominate over common issues with regard to establishing the element of reliance. Plaintiffs show below that each of these issues may appropriately be approached through class-wide analysis. As such, Plaintiffs establish that reliance is predominantly a common issue.

First, the California Supreme Court has held that reliance may be presumed where identical misrepresentations were made to each plaintiff. *Vasquez v. Superior Court*, 4 Cal. 3d 800, 812-15, 484 P.2d 964, 971 (1971). Where the misrepresentations to each class member are the same or substantially similar (*e.g.*, a "standard sales pitch" to each customer or the same misstatements in an offering circular), a class action may be certified as to falsity. *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D. 425, 430 (D. AZ. 1992). The California Supreme Court has also established that "once an unfair trade practice was established, a class action could proceed without individualized proof of lack of knowledge of the fraud." *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 124, 96 Cal. Rptr.2d 485 (2000), *citing Fletcher v. Security Pacific National Bank*, 23

-9-

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

1  Cal. 3d 442, 450, 153 Cal. Rptr. 28, 591 P.2d 51 (1979); *see Corbett v. Superior Court*, 101 Cal. App.
2  4th 649, 655, 125 Cal. Rptr. 2d 46 (2002).
3        Here, the misrepresentations and nondisclosures made with regard to available balance
4  information were uniform as to all putative Class members. The term "available balance" itself was
5  uniformly used (which implies that a charge within that balance representation would not lead to an
6  overdraft fee) and consistently provided it to customers, whether the customer accessed it online, at the
7  ATM machine, through the Wells Fargo automated phone bank, or through representatives at a Wells
8  Fargo branch.
9        As these misrepresentations and nondisclosures are made uniformly to all Class members,
10 reliance may be presumed. *See Vasquez, supra,* 4 Cal. 3d at 812-15, 484 P.2d at 971. Furthermore, as
11 Wells Fargo's practice of misrepresentation and nondisclosure as to the available balance information is
12 established, this class action may proceed without individualized proof of lack of knowledge of fraud
13 with regard to each putative Class member. *See Fletcher, supra*, 23 Cal. 3d at 450; *Kraus*, *supra*, 23
14 Cal. 4th at 124; *Corbett, supra*, 101 Cal. App. 4th at 655. Therefore, as all putative class members were
15 subject to the same misrepresentations and nondisclosures, it is irrelevant for a determination of class
16 certification whether each putative class member had varying degrees of knowledge with regard to the
17 accuracy of available balance information.
18       Second, as discussed above, Plaintiffs can obtain the necessary information found within the
19 Wells Fargo database, to establish class-wide reliance for the class members. Finally, the Court may
20 apply class-wide the "reasonable consumer" standard for proving reliance by examining whether a
21 reasonable consumer, who was given inflated "available balance" information for a checking account
22 within a specified period of time prior to making a transaction (the amount of which was within the
23 stated "available balance") yet resulted in the account incurring an overdraft fee, could have *reasonably*
24 *relied* on the misrepresentation to his detriment. *See Consumer Advocates v. Echostar Satellite Corp.*,
25 113 Cal. App. 4th 1351, 1358-60, 8 Cal. Rptr. 3d 22 (2003); *Falk v. General Motors Corp.*, 496 F. Supp.
26 2d 1088, 1095 (N.D. Cal. 2007); *T.C. Jefferson v. Chase Home Finance*, 2008 WL 1883484, *15 (N.D.
27 Cal. April 29, 2008).
28

*REDACTED*: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

In light of the above, Wells Fargo's concerns as to individual questions regarding proof of reliance are immaterial as Plaintiffs have established that common issues predominate over individual issues in determining class-wide reliance.[1]

**G.    Wells Fargo's Attack on the Named Plaintiffs Is Classic Misdirection**

Defendant claims that the class representatives are not typical and adequate and therefore all the class members should lose their ability to recover for Wells Fargo's wrongdoing. This is really just the same attack as was made in the motion for summary judgment, and Plaintiffs requests their arguments made in opposition to the motion for summary judgment be incorporated into this reply. The body of law in this area is built on concern that the class representatives will sacrifice the interests of the class, in order to further their individual interests. It should first be pointed out that without these class representatives, the class members will not receive anything, which is obviously worse than having less than perfect class representatives. However, choosing conflicted class representatives over a dismissed class is not one the Court must make. Each of the representatives has standing, has claims typical to the class, and will adequately protect the interests of the class.

**1. Gutierrez is a Proper Class Representative**

As discussed more thoroughly in the opposition to the motion for summary judgment and motion for class certification, Gutierrez was charged three overdraft fees for transactions which were not overdraft transactions and were within her accessed available balance.[2] These facts make class representative Gutierrez a proper class representative. The fact that she got involved in response to learning about the case from the radio certainly does not change this fact, especially in light of her

---

[1] Wells Fargo attempts to interject voluntary payment as a defense. Interestingly, it did not think enough of this concept to use it as a basis for summary judgment, which leads to the logical conclusion that Wells Fargo is not serious about it. Unlike *Endres*, the Wells Fargo customer did not pay the fee. The fee was unilaterally taken from his/her account by Wells Fargo without notice and without opportunity to object. The only way to get it back is to sue, which is what the customers are doing. There has been no voluntary payment, and this is not a serious issue in the case.

[2] Ms. Gutierrez does not have a specific recollection of checking her available balance during this time frame. However, based on her custom and practice of checking her account balance regularly through telephone inquiries and online inquires, it is more probable than not that Ms. Gutierrez obtained her available balance information from Wells Fargo between October 4-9, 2006, and based on available balance information provided by Wells Fargo, believed that her transactions on October 5 and 6 were within both her available balance and her account balance on October 5 and 6, 2006.

-11-

commitment to the case as demonstrated by her participation in written discovery, depositions and knowledge and commitment to fulfilling her class representative responsibilities.

### 2. Walker is a Proper Class Representative

As also discussed more thoroughly in the opposition to the motion for summary judgment and motion for class certification, Walker was also charged at least one overdraft fee for a transaction that was not an overdraft transaction and was within her accessed available balance.[3] That provides her with standing and makes her claim typical.

Wells Fargo, in a gratuitous and misguided attempt to criticize the competence of putative class representatives and dirty the Court's view of class counsel, asserted in its Opposition that Ms. Walker's "involvement in this case was arranged by her mother, and she has little or no understanding of her responsibilities as a class representative." (Def.'s Opp. at 15, n.13.) To the contrary, Ms. Walker has expressed a firm knowledge of her responsibilities as a class representative in this action, has been fully committed to meeting her responsibilities in representing all putative class members, and has fulfilled all of these responsibilities. In her deposition, she fully indicated her understanding of her responsibilities as a class representative: to tell her story about how she has been harmed by Wells Fargo's practice, provide information and documents in support of the case, provide answers during deposition, and protect the rights of all putative class members. (McCune Decl. ¶ 15, Walker Depo pp. 59:25-60:13, Ex. 31.) In this action, Ms. Walker has provided information and documents for initial disclosures in this case, provided information and signed verifications in responding to three sets of discovery from Wells Fargo, took time off from work to sit through and provide answers throughout a full-day deposition taken by Wells Fargo, reviewed and submitted any necessary corrections to her deposition transcript,

---

[3] Erin Walker also checked her available balance in the relevant time frames. Her records show that on May 26, 2007, she made a deposit and withdrew $20 from a Wells Fargo ATM machine, at which time she would have received her available balance information. On May 29, 2007, she made a cash withdrawal from a non-Wells Fargo ATM where she again would have received her available balance information. Also on May 29, 2007 she made an ATM deposit where she also would have received her available balance information. (McCune Decl. to Oppo to MSJ ¶ 12; Ex. 8.) In addition to having received her available balance information from the ATM machines, while not having a specific recollection, based on her custom and practice she also would have reviewed her online account available balance within a couple of days prior to May 29, 2007. (*Id.*)

-12-

REDACTED: Plaintiffs' Reply to Opposition of Wells Fargo Bank, N.A. to Plaintiffs' Motion for Class Certification
Case No.: C 07-05923 WHA (JCSx)

and provided a declaration in support of Plaintiffs' Opposition to Motion of Wells Fargo Bank, N.A., for Summary Judgment.

Wells Fargo's unmerited criticism of Ms. Walker's understanding of her role in this case is, in light of these facts, disingenuous, inappropriate, and reflective of the feebleness of Wells Fargo's attempt to impugn through *ad hominem* attacks the adequacy of the putative class representatives, who have fully embraced their responsibilities and intelligently and completely fulfilled their obligations.

### 3. Smith Is a Proper Class Representative

Wells Fargo claims that William Smith, who brought this case to Plaintiffs' counsel's attention (McCune Decl. ¶ 16, Smith Depo pp. 49:22-51:19, Ex. 32) cannot meet the requirement of standing, typicality and adequacy. Again Plaintiffs refer to the opposition to the motion for summary judgment to fully respond to these claims.

It is undisputed from the testimony and Wells Fargo's own documents, that Mr. Smith checked his available balance before making purchases on July 3, 2007, and July 10, 2007, both of which resulted in overdraft fees because it turned out that the "available balance" information was inflated and wrong. Wells Fargo claims that because this had happened to Mr. Smith once before, he had notice and could never bring a claim, despite his never having been told how, when or why it happened. Wells Fargo claims he was not entitled to forget that Wells Fargo was deceiving and then profiting from him. Whether this prior instance precludes him from making a claim is something for the trier of fact to decide. However, its uniqueness does not rise to the level of disqualifying him as a class representative.

Wells Fargo then raises the issue of Mr. Smith's adequacy as a class representative because he is a Wells Fargo customer who is married to a non-lawyer employee of Plaintiffs' counsel. Wells Fargo claims this creates a conflict with the class. For Wells Fargo's position to prevail, however, it must show that the conflict must be a *fundamental* one going to the *specific issues in controversy*. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). In such a situation, the named representatives' interests are "actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members … [and] the class collapses into distinct groups of winners and losers." *Id.* To provide adequate representation, the class representative must not seek

-13-

1  relief that favors some class members at the expense of others.  *See Payne v. Travenol Laoratories, Inc.*,
2  673 F.2d 798, 810-11 (5th Cir., 1982).

3        First there is no evidence, nor could there be, that Mr. Smith's involvement as a class
4  representative would result in him receiving any different result than the class members, or that he and
5  his wife would profit from either a settlement or verdict.  The issues raised in the cases where the courts
6  found a conflict are where a class representative who has a connection with Plaintiffs' counsel, had
7  motivation to settle the case to assist the spouse's employer.  First, the Court has made clear that there
8  will be no settlement that does not pass the strict scrutiny of this Court; so there is the Court safeguard.
9  Second, Mr. Smith is only one of three class representatives; so there is class representatives safeguard.
10  Finally, Mr. Smith's actions in initiating the action, responding to discovery, sitting for his deposition
11  and making clear in the deposition that he understood his responsibilities as a class representative defeat
12  Wells Fargo's attack.

13        Furthermore, Mr. Smith is far different than the class representative removed by this Court in *In*
14  *re Graphics Processing Units Antitrust Litigation*, 2008 WL 2788089, at *2, *22 (N.D. Cal., July 18,
15  2008), where the representative had: 1) known class counsel for nine years during which time he
16  received $20,000 for construction projects from class counsel and served as the named plaintiff in at
17  least six class-action suits filed by class counsel, 2) made the purchase that is the subject of the action
18  merely one week prior to filing of the complaint, and 3) taken an inconsistent position with this suit as a
19  class representative in a separate action.  Mr. Smith has never served as a class representative before;
20  has been a Wells Fargo customer for almost 20 years; and all positions he has taken in this case are
21  completely consistent with him doing everything he can to protect the class interests.  Based on these
22  facts, Mr. Smith does not have a disqualifying conflict.

23  **H.     Any Court Perceived Deficits in the Class Representatives, Class Definition or Class Period Are Curable**
24

25        Plaintiffs' counsel does not believe there are any issues related to these class representatives, but
26  if the Court disagrees, then additional class representatives should be added to protect the interests of the
27  class.  Plaintiffs' counsel had been contacted by over 50 aggrieved Wells Fargo customers, most of who
28

-14-

are willing to serve as class representatives should the Court decide additional class representatives are necessary. (McCune Decl. ¶ 17.)

Plaintiffs' also believe that the class definitions are sufficient for the class certification proceeding. However, should the Court disagree, the class definitions can be expanded to provide definitions of the terms. For instance, Defendant contends that it is confused as to what is meant by "end of day" in the sufficient funds class definition. Defining each term is beyond what is required at the class certification stage. However, if it helps Defendant, Plaintiffs' definition is the balance at the conclusion of the last transaction of a calendar day. These types of issues are easily curable without putting the class certification at risk.

Similarly, the issue of the class period is disputed by Wells Fargo, contending that certain computer data is not available during all of the proposed class period. As discussed above, even if true, which Plaintiffs do not accept, the class definition can be clarified and refined as to class period.

The Classes can also be broken down into subclasses to deal with any difficulties perceived by the Court. Where a class action appears proper but the named representatives are not able to represent all members of the purported class adequately, the court has power to cure the defect where possible. For example, it may increase the number of class representatives (*see Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999)); divide the class into *subclasses*, and appoint a representative and counsel for each subclass, (Fed. Rules of Civil Pro. 23(C)(f)(B); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2nd Cir., 1999)); or simply limit the class to those persons who would be adequately represented by the named representative (*Gordeon v. Hunt*, 98 F.R.D. 573, 576-78 (S.D.N.Y., 1983).

## III

## CONCLUSION

Defendant has not provided any credible basis for denial of the motion for class certification. Therefore, Plaintiffs' respectfully request that the Court certify the class.

DATED: August 7, 2008                                McCUNE & WRIGHT, LLP

BY: _____
Richard D. McCune
Attorney for Plaintiffs