1   Sonya D. Winner, SB # 200348
    David M. Jolley, SB # 191164
2   Margaret G. May, SB # 234910
    COVINGTON & BURLING LLP
3   One Front Street
    San Francisco, CA 94111
4   Telephone:  (415) 591-6000
    Facsimile:  (415) 591-6091
5   E-mail:  mmay@cov.com

6   Attorneys for Defendant
    WELLS FARGO BANK, N.A.
7

8                  **UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10
    VERONICA GUTIERREZ, *et al.*,          Civil Case No.:  CV-07-5923 WHA (JCSx)
11
                         Plaintiffs,       **DEFENDANT WELLS FARGO BANK,**
12                                         **N.A.'S NOTICE OF MOTION AND**
          v.                               **MOTION FOR CLARIFICATION OF**
13                                         **CLASS DEFINITIONS**
    WELLS FARGO & COMPANY, *et al.*,
14                                         Date:         October 30, 2008
                         Defendants.       Time:            8:00 a.m.
15                                         Courtroom:   9

16                                         Honorable William H. Alsup

17

18

19

20

21

22

23

24

25

26

27

28

    WELLS FARGO'S MOTION FOR CLARIFICATION
    Civil Case No.:  CV-07-5923 WHA (JCSx)

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION & MOTION  ................... ……………………………………………1

MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION……………………...1

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT...................................................................................................................... 2

      A.      The "Re-Sequencing" Class ................................................................................... 3

            1.      The Parties Agree that the "Re-Sequencing" Class Should Be
                  Limited to Holders of Consumer Checking Accounts............................. 3

            2.      The Definition of the Re-Sequencing Class Contains Important
                  Ambiguities.............................................................................................. 4

            3.      Proposed Revised Definition of the Re-Sequencing Class........................ 9

      B.      The "Including and Deleting" Class .................................................................... 10

            1.      The Definition of the "Including and Deleting" Class Should
                  Also Be Clarified. ................................................................................. 10

            2.      Proposed Revised Definition of the Including and Deleting
                  Class.......................................................................................... 13

III.    CONCLUSION.................................................................................... 13

1        **NOTICE OF MOTION & MOTION**

2            PLEASE TAKE NOTICE that on October 30, 2008, at 8:00 a.m. in the

3    courtroom of the Honorable William H. Alsup, United States District Court for the Northern

4    District of California, San Francisco Division, 450 Golden Gate Ave., Courtroom 9, 19th Floor,

5    San Francisco, California, or at such date and time as the Court may otherwise direct, defendant

6    Wells Fargo Bank, N.A. ("Wells Fargo") will move and hereby does move the Court for

7    clarification of the definitions of the classes certified in the Court's September 11, 2008 Order

8    (Docket No. 98).

9

10        **MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION**

11   **I.      INTRODUCTION**

12           In its September 11, 2008, Order on Plaintiffs' motion for class certification

13   ("Order"), the Court certified two plaintiff classes – (1) the "Re-Sequencing Class" and (2) the

14   "Including and Deleting Class."  The Court adopted definitions for both classes that differed

15   substantially from the class definitions sought by plaintiffs, with implicit parallel changes in the

16   substance of the claims to be pursued on behalf of those classes in subsequent proceedings in

17   this case.  In both instances, there are ambiguities in the definitions adopted by the Court that

18   have important implications for all future proceedings in this case, including both class notice

19   and the merits.

20           Wells Fargo has met and conferred at length with counsel for plaintiffs

21   concerning these ambiguities.  *See* Declaration of David Jolley ("Jolley Dec.") ¶¶ 2, 4-13.

22   Plaintiffs have stated their agreement that these definitions contain important ambiguities, and

23   on several points (identified more specifically below) the parties agree, at least in substance, on

24   what clarification is appropriate.  *Id.* ¶¶ 5, 6, 10.  On some points, plaintiffs have stated that,

25   although they agree ambiguities exist, they do not believe the definitions need to be clarified

26   now.  On several of those points, plaintiffs have declined even to tell Wells Fargo what

27   interpretations they believe is appropriate.  *Id.* ¶¶ 7-9, 11-13.

28

WELLS FARGO'S MOTION FOR CLARIFICATION          1
Civil Case No.:  CV-07-5923 WHA (JCSx)

1            This motion does ***not*** seek to reargue the issues presented in the briefs on the

2    class certification motion.[1]  Instead, this motion simply seeks clarification of aspects of the

3    Court's class definitions that are needed to permit the parties to proceed with the next stages of

4    this litigation.

5    **II.    ARGUMENT**

6            As the Court recognized in its September 11 Order, a certified class must be

7    ascertainable.  *See* Order at 24 (citing *Lamumba Corp. v. City of Oakland*, 2007 WL 3245282, at

8    *3 (N.D. Cal. Nov. 2, 2007)).  An obvious prerequisite to satisfaction of this requirement is a

9    class definition that clearly delineates who is and is not in each class.  *See Whiteway v. FedEx*

10   *Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, at *3 (N.D. Cal. Sept. 14, 2006)

11   (holding that an identifiable class exists only if its members can be ascertained by reference to

12   objective criteria); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)

13   (holding that a class must be adequately defined and clearly ascertainable before a class action

14   may proceed).

15           Discussed below are a number of respects in which the definitions adopted by the

16   Court contain ambiguities that prevent a clear delineation of who is in the class.  These points

17   relate, not to the evidentiary issues Wells Fargo addressed in its opposition to the class

18   certification motion, but rather to fundamental definitional ambiguities that exist regardless of

19   what evidence is and is not available.  Because the Court adopted largely new class definitions

20   in its Order, the parties have not had a previous opportunity to brief these issues.

21           Each of the ambiguities discussed below have important material impacts on the

22   composition of the certified classes.  Substantial numbers of people could be excluded from (or

23   included in) each of those classes depending on how the Court answers the interpretive

24   questions we pose here.  And it is important to clarify these points before the case proceeds any

25   further, for multiple reasons.

26   _____

27   [1]    Wells Fargo does not, of course, concede that certification of any class is appropriate in
     this case and reserves the right to seek decertification of one or both classes in the future as the
     record is developed.  That is not, however, the subject of this motion.
28

WELLS FARGO'S MOTION FOR CLARIFICATION          2
Civil Case No.:  CV-07-5923 WHA (JCSx)

1      First, the class definitions will be recited in the class notice and will be important

2  in helping class members understand what the case is about.  To the extent there are

3  ambiguities, class members may not receive the appropriate full opportunity to consider the

4  extent to which the litigation affects them and whether they wish to participate in the class, to

5  exercise their right to enter their own appearance in the case, or to opt out.  Indeed, without

6  clarification on these points, it will be impossible to determine who is in the class for purposes

7  of receiving the class notice in the first place.[2]

8      Second, as the parties complete discovery and prepare for the next stages in this

9  case, it would be highly inefficient, and potentially prejudicial, to require them to proceed with

10  substantial open questions about the contours of the classes.  This is particularly important

11  because each class is defined in a way that is tailored to correspond to the substantive claims

12  that the Court has found to be potentially viable for that class.  This in turn has implications for

13  determining, among other things, what additional discovery may or may not be relevant.  It will

14  also guide the parties' work with witnesses and experts in preparing for any future trial.  To the

15  extent that ambiguities can be resolved now, it would be unfair for either party to be required to

16  prepare its case based on a definition of the class that could turn out, at the eleventh hour, to be

17  incorrect.

18  **A.      The "Re-Sequencing" Class**

19  **1.      The Parties Agree that the "Re-Sequencing" Class Should Be Limited to Holders of Consumer Checking Accounts.**

20  The Court's Order does not expressly limit the "Re-Sequencing" class to holders

21  of *consumer* checking accounts.  Plaintiffs agree with Wells Fargo that the class definition

22  should be revised to include this limitation.  Jolley Dec. ¶ 6.

23

24  [2]      This latter problem cannot be avoided by accepting plaintiffs' suggestion that the class notice be sent to a vastly over-inclusive group of Wells Fargo customers of which these classes

25  are subsets. (This issue is discussed in more detail in the Joint Case Management Statement to be filed at the same time as this Motion.)  Indeed, such an approach would make precise class

26  definitions even more critical.  If the notice were to be provided in such an over-inclusive manner, recipients would have to determine, not simply whether they wanted to opt out, but

27  whether they were even members of the classes in the first place.  The current ambiguities in the class definitions would make any such determination all but impossible.

28

1      Plaintiffs have from the very beginning of this case limited their claims to

2  consumer checking accounts, and their proposed class definitions were accordingly limited.

3  The Court's definition of the "Including and Deleting" class contains this limitation, but it is not

4  mentioned in the Court's definition of  the "Re-Sequencing" class.  Wells Fargo assumes that

5  this omission was simply an oversight.  Plaintiffs have never asserted claims reaching beyond

6  consumer accounts and have expressly stated that their claims are limited to such accounts.  All

7  three of the named plaintiffs are consumer checking account customers; there are no class

8  representatives who present claims as to other types of accounts.[3]

9            **2.      The Definition of the Re-Sequencing Class Contains Important
                       Ambiguities.**
10
       The Court has defined the Re-Sequencing Class as "all Wells Fargo California
11
   customers from November 15, 2004, to June 30, 2008, who incurred overdraft fees on debit card
12
   transactions as a result of the bank's practice of sequencing transactions from highest to lowest."
13
   Order at 27.
14
       It appears from the Order that the Court has rejected plaintiffs' request to certify
15
   a class to pursue a broader theory that Wells Fargo may never charge an overdraft fee when a
16
   customer's "available balance" is sufficient to cover a transaction at the time the transaction is
17
   initiated with the merchant, regardless of whether there are sufficient funds in the account to pay
18
   the transaction at the time when the merchant subsequently submits it for payment.[4]  Instead, it
19
   appears that the Court has focused, and based its class definition on, the separate practice
20
   through which the bank orders certain debit transactions from highest amount to lowest on the
21
   date of payment.  *See* Order at 25.[5]
22

23  [3]     Plaintiff Smith has business accounts but requested early on, and the parties agreed, that
   his business accounts not be placed in issue.  His discovery responses, for example, were
24  accordingly limited to his consumer accounts.  Jolley Dec. ¶ 6.

25  [4]     In finding this definition to be overbroad, the Court clearly appreciated that there are a
   number of reasons why an overdraft could happen in this circumstance that could not possibly
   be characterized as wrongful conduct on the bank's part.  For example, the customer could
26  simply withdraw funds from his account before the merchant submits the debit-card transaction
   to Wells Fargo for payment, leaving insufficient funds in the account to cover it.
27
   [5]     In their class certification motion, plaintiffs expressly characterized the bank's "high to
28  low" posting practice as one that is *not* at issue in this case.  *See* Plaintiffs' Motion for Class
   (continued…)

WELLS FARGO'S MOTION FOR CLARIFICATION          4
Civil Case No.:  CV-07-5923 WHA (JCSx)

1    However, clarification is needed concerning what alternative posting order the

2    parties are to assume in interpreting and applying the Court's definition of this class. That

3    definition requires class members to have incurred overdraft fees "*as a result of* the bank's

4    practice of sequencing transactions from highest to lowest." (Emphasis added.) This definition

5    thus requires a comparison between the bank's actual mode of posting and some alternative

6    mode.[6] But it is not self-evident what that alternative is. Nor does the Court's name for the

7    class (using the term "re-sequencing") answer this question.

8    Based on discussions with plaintiffs' counsel, Wells Fargo believes the parties

9    are in agreement that clarification on this point is important, because the alternative posting

10   order used for comparison purposes will have significant impacts on (among other things) the

11   determination of who is and is not in the class. *See* Jolley Dec. ¶ 8. However, plaintiffs have

12   declined to tell Wells Fargo what alternative posting order they believe the Court's class

13   definition encompasses. *Id.* Plaintiffs apparently intend to take the position that resolution of

14   this issue should be deferred, although they do not explain why. *Id.*[7] For the reasons set out

15   above, Wells Fargo urges that the Court provide the necessary clarification now. The pertinent

16   issues can be encapsulated in three basic questions:

17   **a. What transactions are included in "sequencing transactions"?** The

18   parties are in basic agreement on this first question, which relates to the scope of the term

19   "transactions." That term is used twice in the Court's definition of this class. On the first

20   occasion, it is modified by "debit-card," but there is no such modifier on the second occasion.

21   _____

22   Certification at 8-9. (For this reason, the bank did not offer any significant amount of
     discussion of this practice in its opposition papers. *See* Class Cert. Opp. at 8 n.9.) The Court's
23   order represents an implicit invitation to plaintiffs to revise their theory of the case to challenge
     this practice. Plaintiffs have informed Wells Fargo that they intend to accept this invitation.
     *See* Jolley Dec. ¶ 5.

24   [6]   In other words, if class members were allegedly harmed because of "re-sequencing" of
25   transactions, there must be a baseline "sequencing" against which the actual sequencing is to be
     compared.

26   [7]   Wells Fargo is aware of no case authority for the proposition that a class may be
27   certified yet not fully defined. One might suspect that plaintiffs simply wish to wait until they
     can decide which definition they think would yield the highest recovery. That is obviously an
     insufficient reason to defer delineating the class with the required precision.

28

1    Wells Fargo believes that the Court intended the term to be limited in both cases to "debit-card"

2    transactions.  (Elsewhere in the Order, for example, the Court indicates that checks are not

3    included.  *See* Order at 12 n.3.)   However, this is not explicit.

4           Plaintiffs have stated to Wells Fargo that they agree that the term "transactions"

5    is modified by "debit-card" in both instances as used in this class definition.  Jolley Dec. ¶ 7.

6    Plaintiffs have said that they believe this is sufficiently obvious that no wording change is

7    needed.  *Id.*   But since the class definition will be included in the class notice, Wells Fargo

8    believes it would be prudent to clarify the point explicitly in the definition.

9           **b.  What is the "sequence" against which the bank's actual posting sequence**

10   **must be compared to determine if overdraft fees were "a result of" the sequence used?**

11   The most fundamental question as to this definition involves the "but for" posting rule against

12   which the parties are to compare the bank's actual posting practice in order to ascertain which

13   customers paid overdraft fees "because of" that practice.  There are several possibilities that the

14   Court could have had in mind.[8]  These include:

15           i.       *Chronological Order by Date Within Each Day's Posting Session.*  One

16   interpretation would be to assume a "but for" world in which Wells Fargo collects all

17   transactions that are submitted to the bank for settlement on a given day, and then groups and

18   posts those transactions based on the dates on which they were initiated.  Thus, for example, if

19   on a Monday the bank posted four debit-card transactions, two initiated the previous Thursday

20   and two on Friday, it would first post the two "Thursday" transactions and then post the two

21   "Friday" transactions.  Wells Fargo believes that this is the approach most likely intended by the

22   Court, as it appears to be the approach illustrated in the example provided on page 12 of the

23   Order.

24

25

26   [8]      Each of these possibilities carries with it significant logistical challenges for this
     litigation.  Many of these challenges are set forth in Wells Fargo's opposition to the class
27   certification motion and are not repeated here.  Our current purpose, again, is simply to ascertain
     the Court's intent in defining the class.
28

1            ii.      *Chronological Order by Both Date and Time Within Each Day's Posting*

2  *Session.*  A second alternative would modify the first alternative to require transactions to be

3  sorted, not just by date, but also in the order of initiation on a given date.  Wells Fargo does not

4  believe this to be the Court's intent, in part because the Order nowhere indicates as much and in

5  part because such an approach would require plaintiffs to find and present proof of the exact

6  order in which transactions were initiated (a task that would be impossible for many

7  transactions).

8            iii.     *The Order in Which the Transaction First Appears on the Customer's*

9  *Online Account Transaction Summary*.  This is one "sequencing" to which plaintiffs made

10  reference in their motion papers, but it makes no logical sense as a precise definition of the "but

11  for" sequencing here.  If and to the extent the Bank learns of some types of transactions

12  (including some, but not all, debit-card transactions) during the course of the day, between

13  posting sessions, it records these transactions in a transitory format that the customer can view

14  online.  However, the sequence in which pending transactions are shown in this report (of which

15  no permanent record is kept) does not necessarily correspond with the order in which the

16  customer actually initiated the transactions; nor does it purport to do so.  Most debit-card

17  transactions that are authorized appear on the report fairly quickly, but there are no special

18  systems put in place to ensure that they appear in any particular order, especially if transactions

19  occur close together in time.  Moreover, this report does not list in anything approaching a "real-

20  time" basis or order those debit-card transactions that are not submitted for authorization; nor

21  does it so list checks, ACH transactions, or certain other types of debits.  Debits in these

22  categories (including a significant number of debit-card transactions) do not appear on the

23  online report while they are "pending" but instead are listed only when they actually post to the

24  account.  Wells Fargo cannot discern anything in the logic of the Court's Order that would

25  require a comparison to this often random listing.

26            iv.     *Absolute Chronological Order Across Time Based on the Date the*

27  *Customer Initiated the Transaction, With Ongoing Recalculation of Past Balances.*  Under this

28  alternative, the "but for" world would assume that all debit-card transactions are posted in

1   absolute chronological order, no matter when the transactions are actually submitted by the

2   merchant to the bank for settlement and payment.  It seems extremely unlikely that this was the

3   Court's intent.  Under such an approach, there would never be certainty about the actual amount

4   of a customer's balance – or the existence or non-existence of an overdraft – on any given day,

5   as the bank would have to "un-do" previous posting sessions on a rolling basis to insert newly-

6   settled  transactions and re-calculate the resulting balances for preceding dates.  Such back-

7   dating of payments would be inconsistent with (among other things) fundamental accounting

8   principles.  Nothing in the Court's Order suggests that such an extreme alternative was the

9   Court's intent.

10                  v.       *Some Other Method*.  One could imagine a large variety of additional

11   alternative posting orders that a bank might adopt.  Wells Fargo cannot discern any basis in the

12   Court's Order for any such alternative; nor is it aware of one that would make greater sense in

13   light of the Court's discussion than the first alternative supplied above.

14                  In the parties' discussion of these issues, plaintiffs did not dispute that the

15   identification of an alternative sequence was inherent in the Court's class definition and will

16   need to be clarified.  However, plaintiffs have declined to inform Wells Fargo of what

17   alternative sequence they believe is required.  Jolley Dec. ¶ 8.  Wells Fargo believes the first

18   alternative discussed above is most consistent with the Court's apparent intent in its Order.  No

19   matter what alternative is to be used, however, the parties need to know what it is with certainty.

20          **c.  What is the pertinent "date" of a transaction?**  The Court's reference to

21   "re-sequencing" of transactions assumes an original "sequence" can be determined based on a

22   self-evident date of the transaction.  Even if the transactions addressed here are limited to debit-

23   card transactions (as the parties both believe the Court intended), there will often be no such

24   self-evident basis for "dating" such a transaction.  In particular, it is not clear whether the Court

25   intends debit-card transactions to be "dated" based on the date when the customer initiates a

26   transaction with a merchant or the date when the bank actually learns that a transaction has

27   occurred in a concrete amount.  For many debit-card transactions, the two are the same.  But, as

28   the Court acknowledges in its Order (at 2), there are many instances when the two are *not* the

1    same.  For example, on many occasions Wells Fargo is not asked to authorize a debit-card

2    transaction and thus knows nothing about it until the transaction is submitted by the merchant

3    for payment, perhaps several days after the customer has initiated it (much like a check that the

4    bank knows nothing about until it is received for payment).  On other occasions (as in the

5    gasoline station example cited in the Court's Order, at 2), Wells Fargo may have notice that a

6    transaction has been initiated by the customer but will not know the actual *amount* of the

7    transaction until the date of settlement.

8            There is accordingly an inherent ambiguity in the class definition as to when a

9    transaction should be dated for purposes of determining its "sequence" when there is a

10   discrepancy between the time when the customer initiates, for example, a purchase that turns out

11   to be for $20, and the time when the bank learns that a $20 purchase has been made.  In those

12   instances, it is hard to ascertain how plaintiffs can expect to demonstrate that the bank is "re-

13   sequencing" anything (since it had nothing to "sequence" at any earlier time).  The most

14   sensible interpretation of the Court's definition would seem, therefore, to "date" transactions

15   based on the date when the Bank first became aware of the transaction and its amount.

16           On this issue also, plaintiffs have declined to disclose their position to Wells

17   Fargo, asserting (without explanation) that the issue need not be resolved at this time.  Jolley

18   Dec. ¶ 9.

19           **3.      Proposed Revised Definition of the Re-Sequencing Class**

20           Based on the foregoing, the Court should clarify its definition of the Re-

21   Sequencing Class as follows:

22           All Wells Fargo California customers with consumer checking
             accounts from November 15, 2004, to June 30, 2008, who
23           incurred overdraft fees on debit-card transactions as a result of the
             bank's practice of sequencing debit-card transactions from highest
24           to lowest instead of sequencing within each posting session all
             debit-card transactions for which the bank had notice (including
25           notice of amount) based on the date the bank received such notice.

26           Wells Fargo does not intend to suggest in offering this definition that such a class

27   is ultimately ascertainable (in the evidentiary sense) or is otherwise properly certified.

28

WELLS FARGO'S MOTION FOR CLARIFICATION          9
Civil Case No.:  CV-07-5923 WHA (JCSx)

1   However, as stated above, this motion is limited to an effort to clarify the Court's intent in its

2   decision to certify the class, and this language is proposed solely in light of that purpose.

3        **B.        The "Including and Deleting" Class**

4        **1.        The Definition of the "Including and Deleting" Class Should Also Be Clarified.**

5            The Court has defined the "Including and Deleting" class as "all Wells Fargo

6   California customers with consumer checking accounts from November 15, 2004, to June 30,

7   2008, who incurred overdraft fees on debit card transactions after dissemination by Wells Fargo

8   of available-balance information that once reflected and later deleted a debit card transaction."

9   Wells Fargo and plaintiffs are in full agreement as to the need for clarification of this definition,

10  although, once again, plaintiffs have indicated to Wells Fargo that they believe such clarification

11  can be deferred to a later time.  *See* Jolley Dec. ¶¶ 11-13.  The parties also agree, at least in

12  concept, on the proper resolution of all but one of the points set out below.  *See id*. ¶¶ 10-13.

13           The critical ambiguity in this definition lies with the term "after."  Taken

14  literally, this definition could be construed as including within the class any customer who *ever*

15  received available-balance information that once reflected and later deleted a debit card

16  transaction and then *at any time subsequently* incurred an overdraft fee.  Thus, for example, the

17  current phrasing would seem to sweep in a customer who had an "including and deleting"

18  experience in March 2005 (but incurred no overdraft fee at that time) and then simply spent

19  more money than he had in his account in March 2008 – three years later – and incurred an

20  overdraft fee.

21           Such a result is clearly not what the Court intended here, and plaintiffs have

22  confirmed that they do not intend to pursue a claim on that basis.  Jolley Dec. ¶ 11.[9]

23  Notwithstanding the comments in the Court's order about possible inferences of reliance, the

24

25  _____

26  [9]      Similarly, the Court's Order clearly does not contemplate sweeping into the class a
    customer who would have incurred the same overdraft fee with or without the "including and
27  deleting" event, such as a customer whose available balance was off by just $1 because of a
    small "deleted" transaction and then proceeded to overdraft his account by $100.   Plaintiffs
    have indicated their "conceptual" agreement with this as well.  Jolley Dec. ¶ 13.
28

1    Court has clearly accepted (as it must) the need for some kind of causal link between

2    communication of available-balance figures that were affected by the "including and deleting"

3    phenomenon and a debit-card transaction that subsequently incurred an overdraft fee.  *See* Order

4    at 14.

5              As described by the Court, the theory for which the Court has certified this class

6    assumes that a class member incurred an overdraft fee because he (a) saw an available balance

7    figure that included a pending transaction, (b) then saw a subsequent available balance figure

8    that excluded that transaction, and (c) being misled into thinking that the balance figure

9    disclosed on the second occasion still included all transactions included in the prior balance,

10   initiated another debit-card transaction that *was* within the second available balance (adjusted

11   for other pending transactions, such as checks, that the customer knew about but Wells Fargo

12   did not) but *was not* within a balance that included the "deleted" transaction.  Order at 13-14.[10]

13   Regardless of whether plaintiffs may or may not prove reliance in this situation through

14   inference rather than direct proof, there must at a minimum be some kind of linkage between the

15   "including and deleting" events, corresponding communications of available balance figures,

16   and the incurring of an overdraft fee.

17             What that linkage should be is, of course, the key question.  Logically, however,

18   several points must be incorporated in the class definition if it is to include only those persons

19   whom the Court intended to include:

20             *First*, if the definition anticipates (as the Court has suggested) that reliance is to

21   be inferred from temporal proximity, there must actually be some temporal proximity required

22   from which such an inference could reasonably be argued.   Plaintiffs agree with this, although

23   ───────────────────────

24   [10]    The alleged experience of William Smith described at page 13 of the Order provides
     plaintiffs' signature example of this claim.  The Court expressly rejected any broader definition

25   that would include all situations in which an available balance failed to include a pending
     transaction.  Instead, the only pertinent transactions "omitted" from an available balance are

26   those that were first "included" in an available balance communicated to a customer and then
     "deleted" (before posting) from an available balance communicated subsequently.  Order at 13.

27   In recent discussions, plaintiffs confirmed that this corresponds with the current formulation of
     their claim on this issue; indeed, they stated that their claim was always so limited.  Jolley Dec.

28   ¶ 10.

1    they have declined to identify the amount of time that should be specified and have suggested

2    that this can simply be decided later.  Jolley Dec. ¶ 11.  Deferring the issue, however, would

3    simply result in the use of a class definition (for purposes of notice, discovery, and preparation

4    for trial) that everyone agrees is massively over-inclusive.

5             Wells Fargo does not believe reliance may properly be inferred through

6    proximity in time alone, but in any event the time should be quite short.  In the absence of any

7    concrete suggestion from plaintiffs, and without waiving Wells Fargo's right to dispute any

8    inferences plaintiffs may seek to draw from such a period, Wells Fargo suggests that six hours

9    be specified.

10            *Second*, the "included and deleted" transaction must be one that subsequently

11   posts to the account.  (Plaintiffs have stated that they agree with this in concept.  Jolley Dec.

12   ¶ 12.)  If a merchant never submits a "deleted" transaction for payment, its "deletion" from the

13   available balance cannot cause any subsequent overdraft.  Indeed, in this situation the "deleted"

14   available balance allegedly relied on by the customer will turn out to be more accurate than the

15   "included" available balance.

16            *Third*,  the parties also agree, at least in concept, that the "included and deleted"

17   transaction must post to the account *before* the transaction for which the challenged overdraft

18   fee is incurred.  *See* Jolley Dec. ¶ 12.  In that situation, again, the overdraft transaction posts

19   against the same "deleted" balance that the customer allegedly relied upon.  The injury plaintiffs

20   allege can only logically occur when the "included and deleted" transaction posts to the account

21   between the time when the subsequent overdraft transaction is initiated and the time when the

22   latter transaction itself posts to the account.

23            *Fourth*, the amount by which the account goes into overdraft must be less than

24   the amount of the "included and deleted" transaction.  Otherwise, the alleged

25   "misrepresentation" of the available balance cannot by definition be material.  Thus, for

26   example, if a customer saw a figure for his available balance of $20, which was $1 too high

27   because a $1 pending purchase that was previously "included" in an available balance he saw

28   previously had since been "deleted," and the customer then went out and made a $100 debit card

WELLS FARGO'S MOTION FOR CLARIFICATION
Civil Case No.:  CV-07-5923 WHA (JCSx)                    12

1   purchase, the resulting overdraft fee could not possibly have been caused by the "including and

2   deleting" event, even by inference.  In such a situation, an overdraft would exist regardless of

3   which balance applied.  Wells Fargo understands that plaintiffs agree on this point also, at least

4   in concept.  Jolley Dec. ¶ 13.

### 2.   Proposed Revised Definition of the Including and Deleting Class

6          For the foregoing reasons, Wells Fargo suggests that the Court clarify the

7   definition of the Including and Deleting Class as follows:[11]

> All Wells Fargo California customers with consumer checking
> accounts from November 15, 2004, to June 30, 2008, (a) to whom
> Wells Fargo communicated an available balance figure that took
> account of a pending debit-card transaction (the "Included and
> Deleted Transaction"), (b) to whom Wells Fargo subsequently
> communicated an available balance figure that did not take
> account of the Included and Deleted Transaction, (c) who within
> six hours of the second communication initiated one or more
> debit-card transactions (the "Subsequent Transactions") for which
> an overdraft fee was paid, and (d) where the Subsequent
> Transactions posted after the Included and Deleted transaction and
> were in amounts creating overdrafts totaling less than the amount
> of the "Included and Deleted" transaction.

## III.   CONCLUSION

16         For the reasons stated above, Wells Fargo requests that the Court amend its class

17  definitions to prove the requested clarifications.

19  DATED:   September 22, 2008                COVINGTON & BURLING LLP

21                                         By:      /s/
22                                                David M. Jolley
                                                Attorneys for Defendant
23                                                WELLS FARGO BANK, N.A.

---

[11]      Again, Wells Fargo is merely attempting here to suggest clarifying language that would alleviate ambiguities in the current definition and to carry out the Court's intent in its September 11 Order.  As Wells Fargo has previously made clear, it does not believe any such class is reasonably ascertainable in light of evidentiary constraints or that this is an appropriate class to be certified using any definition.