Richard D. McCune, SB # 132124
rdm@mwtriallawyers.com
Jae (Eddie) K. Kim, SB # 236805
jkk@mwtriallawyers.com
McCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone:    (909) 557-1250
Facsimile:    (909) 557-1275

Mitchell M. Breit, Esq. (Admitted *Pro Hac Vice*)
mbreit@wdklaw.com
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

Attorneys for Plaintiffs, VERONICA GUTIERREZ, ERIN WALKER
and WILLIAM SMITH, on behalf of themselves and
all others similarly situated,

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER and WILLIAM SMITH, as individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; and DOES 1 through 125,<br><br>Defendants. | Case No.:   C 07-05923 WHA (JCSx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR CLARIFICATION OF CLASS DEFINITIONS**<br><br>**Date: October 30, 2008**<br>**Time: 8:00 a.m.**<br>**Courtroom: 9**<br><br>Judge Assigned:   Hon. William H. Alsup<br>Complaint Filed:   November 21, 2007 |

//

//

//

# I

## DEFENDANT'S MOTION IS SIMPLY A REHASHING OF ITS OPPOSITION TO THE MOTION FOR CLASS CERTIFICATION

Defendant states in the opening section that this motion does not seek to reargue the issues presented in the class certification motion, then goes on to do exactly that. In the guise of "seeking clarification", defendant rehashes its same arguments that the Court did not find persuasive in its opposition to the Motion for Class Certification. Plaintiffs believe there is one small matter of clarification required in the class definition of the re-sequencing class; which is to clarify that what is at issue is consumer checking accounts. The rest of Defendants so called request for clarification of class definition are simply expert and trial issues and not class definition issues.

This motion also misrepresents positions taken by Plaintiffs' counsel. Following several e-mail exchanges about disputed discovery issues, on September 5, 2008, Plaintiffs' counsel asked for a personal meet and confer between counsel. Because of scheduling issues, the parties arranged the meet and confer after the settlement conference on September 17, 2008 to discuss disputed discovery issues. (¶ 2 to Declaration of Richard D. McCune "McCune Decl.")  Following the unsuccessful settlement conference on September 17, 2008, counsel for the parties met and conferred. At this meeting, Defense counsel raised for the first time the so called clarification issues. Plaintiffs' counsel agreed to consider the points raised by Defense counsel and indicated it would get back to Wells Fargo's counsel. (McCune Decl. ¶ 3)  Plaintiffs' counsel did that and on September 18, 2008, replied with a document that stated it agreed with the clarification of consumer checking accounts and made clear that the other issues may be valid issues to be resolved for expert discovery and trial, but are not issues that require clarification at this stage of the proceedings. (McCune Decl. ¶ 4) Defense counsel has attempted to misconstrue Plaintiffs counsel's position.  The only clarification Plaintiffs believe is warranted to the definitions is to insert "consumer checking" into the re-sequencing class.

This motion also smacks of sandbagging by Defense counsel. At the meet and confer Defense counsel indicated that it intended to file an administrative motion for clarification of the class definitions. Instead, after the parties filed their joint case management conference, Defendants filed this thirteen page noticed motion, knowing full well these issues have to be decided now or risk significant

Plaintiffs' Response to Defendant Wells Fargo Bank, N.A.'s Motion for Clarification of Class Definitions
Case No.:  C 07-05923 WHA (JCSx)

delay to the trial. This motion was obviously drafted some time ago and its content could have been provided to Plaintiffs much earlier so they could timely respond to the issues raised in the motion, instead of leaving Plaintiffs with just a few hours to respond to a 13 page motion.

## II

## THE CLASS DEFINITIONS ARE ADEQUATE AND FALL SQUARELY WITHIN THE ALLEGATIONS PUT FORWARD BY PLAINTIFFS

**A.  The Court in Its Class Definitions Has Not Materially Changed the Nature of Plaintiffs' Claims**

Defendant feigns shock that this case involves reordering. That is nonsense. Plaintiffs framed the case as one where consumers who otherwise had sufficient funds to cover a transaction at the time of the transaction, were nevertheless assessed overdraft fees by Wells Fargo for those transactions when Wells Fargo reordered the transactions from highest to lowest at time of posting. Plaintiffs focused on the *result* of the conduct of reordering or re-sequencing. The Court finding that approach confusing, instead focused in its definition *on the practice* that led to the result. That is a distinction without a major difference as it relates to Plaintiffs claims. Both Plaintiffs' result-oriented approach, and the Court's determination of a class definition through a practice-related approach, are premised and based on Wells Fargo's practice of reordering or re-sequencing.

As it relates to the including and then deleting class, the Court simply limited the scope of class claims that could go forward. Surprisingly, Defendants seem unhappy that the Court has limited Plaintiffs' claims, which suggests that perhaps there is a different agenda in play. Plaintiffs' claims of including and then deleting has always been the basis for this claim and the Court's class definition does not alter that claim, except to narrow it, in any meaningful way.

**B.  The Issues with Class Definition Must Be Viewed in Light of the Information Needed by the Customers to Want to Opt-Out of The Class**

Defendant would ask the Court to ignore the realities of the case at issue. Wells Fargo is taking hundreds of dollars from individual customers. While that is a significant amount to the customers, that is not an amount that would ever justify an individual case. Accordingly, while customers might theoretically opt out to pursue their case individually rather than be tied to the judgment, that is not in

1  the real world a valid concern. If it was, Plaintiffs could be sure that Well Fargo would not be raising it
2  and subjecting itself to multiple lawsuits.
3      The only class members that are going to legitimately motivated to opt out are those customers
4  who have personal feelings about Wells Fargo, litigation or class action lawsuits that make them not
5  want to be part of this lawsuit. To those customers, the class definitions provide more than sufficient
6  information to make their decision on opting out.

7  **C.    The Class Definition of the Re-Sequencing Class Does Not Require The Changes Put
8         Forward by Defendants**

9      Defendant inaccurately claims in the motion that Plaintiffs' counsel agrees with them that the re-
10 sequencing class definition requires substantial clarification. That is inaccurate. Plaintiffs do agree that
11 before trial, there are some issues raised by Defendant relating to causation, the methodology of
12 determining damages and the amount of Wells Fargo's unjust enrichment, that are going to have to be
13 decided by the Court. However, those are not class definition issues for purpose of notice. Those are
14 proof and evidentiary issues.

15     Plaintiffs do agree that the re-sequencing definition should state that it relates to consumer
16 checking accounts. However the rest of the hyper-technicalities, questions, issues and "concerns" raised
17 by Wells Fargo are not warranted for purposes of defining the class in the opt-out notices, and appear to
18 relate more to their wanting a vehicle to rehash the class issues than any concern about the
19 appropriateness of the class definition to be contained in the notice. Even if Defendant's positions on
20 sequencing and timing were adopted, which Plaintiffs do not believe is appropriate, logical or justified,
21 the definition suggested by Defendants would do far more to confuse the class members than educate
22 them. Nevertheless, Plaintiffs will attempt to succinctly address these issues of disagreement point by
23 point.

24     Defendant raises a concern that in the re-sequencing class definition, when referencing the
25 transactions at issue, "debit-card" is used before transactions in the first part of the sentence but not later
26 in the sentence and thereby may be confusing to consumers. Plaintiffs believe this concern falls in the
27 hyper-technical category, and thinks there is little likelihood of any confusion and it does not warrant a
28 change. However, Plaintiffs do not think this issue is important either way, and does not object to

inclusion of "debit-card" being used twice in the sentence.

Defendant raises the issue of what alternative sequencing is claimed by the Plaintiffs for the re-sequencing class. This is a damage issue that will be resolved by trial. It not only involves a decision as to the most rational and reasonable approach, it requires expert testimony on the information available and how that information can be analyzed to provide the desired analysis. However, it is little to do with the class definition for purposes of providing customers sufficient information to opt-out. Even if customers have statements, with the limited information provided by Wells Fargo in the statements, defining the alternate way of reordering would not be helpful in assisting customers to know if their overdrafts were caused by the conduct at issue and whether they should opt-out of the litigation.

The issues raised by Defendants relating to the including and deleting class appear to Plaintiffs to relate more to causation and damages than to class definition. Of course Plaintiffs agree that there is no harm under the situations raised by Defendants where:

- A debit card transaction was included then deleted in the available balance before it later came in for settlement and posting, but that the customer did not incur an overdraft during that time frame.
- The amount of the overdraft transaction was less than the deleted transaction so that the transaction would have been an overdraft even if the customer had been provided the correct available balance.
- A debit card transaction was included then deleted but never again came back into the account.

However, it would do nothing but confuse the class members to include this information in the class definition. As to the issue of temporal proximity, that again is an issue that is not required in class definition.

### III

### CUSTOMERS THAT RECEIVE THE OPT OUT NOTICE THAT ULTIMATELY ARE NOT CONSIDERED CLASS MEMBERS ARE NOT HARMED BY RECEIVING NOTICE

Because class certification is often done early in the case, class definitions are fluid and can be changed or altered at later dates. *See* Fed.R.Civ.P. 23(c)(1); *In re Domestic Air Transp. Antitrust*

-5-

Plaintiffs' Response to Defendant Wells Fargo Bank, N.A.'s Motion for Clarification of Class Definitions
Case No.: C 07-05923 WHA (JCSx)

*Litigation*, 137 F.R.D. 677, 683 (N.D. Ga., 1991); *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1045 (N.D. Miss., 1993) (Rule 23(c)(1) fully contemplates that as discovery progresses and the parties exchange knowledge within their possession, some tailoring of the class definition may be necessary); *Harris v. Circuit City Stores, Inc.*, 2008 WL 40862, *5 (N.D. Ill., February 7, 2008) (class definition may not be finalized until the conclusion of discovery).

In *In re Domestic Air Transp. Antitrust Litigation*, the Court held:

> [t]he act of refining a class definition is a natural outcome of federal class action practice. Rule 23 requires that the motion for class certification be presented to the Court at the earliest practicable date. As a result, a plaintiff's original class definition is often framed on the basis of little, if any, discovery, to be opposed by defendants who have a wealth of information concerning the industry.

137 F.R.D. 677, 683 (N.D. Ga., 1991).

It is not necessary that every trial issue is resolved prior to providing notice of the class for opt-out purposes. If there was any danger to consumers of losing rights by not opting out, which there is not in the real world, that could not possibly be caused by providing notice to customers who ultimately turn out not to be the class members. If personal notice is required by the Court, then Plaintiffs do not think there is any harm in sending notice to all California consumer checking account holders who incurred overdraft fees during the class period.

DATED: September 23, 2008.

McCUNE & WRIGHT, LLP

BY: _____
Richard D. McCune
Attorney for Plaintiffs