Sonya D. Winner, SB # 200348
Lawrence A. Hobel, SB # 73364
David M. Jolley, SB # 191164
Margaret G. May, SB # 234910
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: swinner@cov.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>WELLS FARGO & COMPANY, *et al.*,<br><br>          Defendants. | Civil Case No.: CV-07-5923 WHA (JCSx)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT WELLS FARGO FOR SUMMARY JUDGMENT ON ALL CAUSES OF ACTION**<br><br>Date:  April 23, 2009<br>Time: 8:00 a.m.<br>Dept.: Courtroom 9<br><br>Honorable William H. Alsup |

**[PUBLIC REDACTED VERSION]**

# TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED ........... 1

II.     BACKGROUND ............................................................................................. 2

III.    ARGUMENT .................................................................................................. 4

A.      Wells Fargo Is Entitled to Summary Judgment on the UCL, CLRA,
        FAL, Fraud, and Negligent Misrepresentation Claims of the Re-
        Sequencing Class. ........................................................................................ 4

        1.      Wells Fargo's Posting Practice Is Consistent With State Law. ................. 4

                a)      The Uniform Commercial Code Authorizes Banks to Post
                        Transactions "In Any Order." ........................................................ 5

                b)      Plaintiffs Cannot Challenge Wells Fargo's Posting Order
                        Merely on the Ground That It Generates Higher Overdraft
                        Fee Revenues Than Their Preferred Alternative. ........................ 7

        2.      Plaintiffs Have Consented to the Posting Order They
                Challenge. ................................................................................... 9

        3.      Summary Judgment Should Be Entered On The CLRA, FAL,
                Fraud and Negligent Misrepresentation Claims of the Re-
                Sequencing Class for Additional Reasons. ............................... 12

B.      Summary Judgment Should Be Entered on Any Remaining UCL,
        FAL, CLRA, Fraud, and Negligent Misrepresentation Claims of the
        "Including and Deleting" Class. ................................................................. 12

        1.      Plaintiffs' Class Proof on the Issue of Injury and Reliance Is
                Inadequate as a Matter of Law .................................................. 12

        2.      The Individual Plaintiffs Are Also Unable to Prove Injury and
                Reasonable Reliance. ................................................................. 14

        3.      Plaintiffs' Substantive Challenge to the Manner in Which
                Wells Fargo Calculates Available Balances Makes No Sense
                and Cannot Sustain Any of Their Causes of Action. ................. 15

C.      The Conversion Claims of Both Classes Fail As a Matter of Law ..................... 17

D.      The CLRA Does Not Apply to Overdrafts and Overdraft Fees. ........................ 19

E.      Plaintiffs Have No Evidence of Fraudulent Intent and Hence Cannot
        Prove Their Fraud Claim as to Either Class. ............................................. 19

i

F.   All of Plaintiffs' Claims Are Barred By Waiver and the Voluntary Payment Doctrine ................................................................................ 22

G.   Plaintiffs Cannot Prove Injury and Damages. ...................................... 24

IV.   CONCLUSION..................................................................................... 25

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................................................4

*Atari Corp. v. Ernst & Whinney,*
   981 F.2d 1025 (9th Cir. 1992) .......................................................................15

*Brown v. Bank of America, N.A.,*
   457 F. Supp. 2d 82 (D. Mass. 2006)..............................................................11

*Clemmer v. Key Bank Nat'l Ass'n,*
   539 F.3d 349 (6th Cir. 2008) .........................................................................11

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.,*
   566 F.2d 631 (9th Cir. 1978) .........................................................................17

*Dessar v. Bank of Am. Nat'l Trust and Savings Ass'n,*
   353 F.2d 468 (9th Cir. 1965) .........................................................................15

*DSU Aviation, LLC v. PCMT Aviation, LLC,*
   2007 WL 3456564 (N.D. Cal. Nov. 14, 2007) ..............................................18

*Endres v. Wells Fargo Bank,*
   2008 WL 344204 (N.D. Cal. Feb. 6, 2008) ...................................................22

*Evans v. Chase Manhattan Bank USA, N.A.,*
   2006 WL 213740 (N.D. Cal. Jan. 27, 2006) ..................................................11

*Funk v. Sperry Corp.,*
   842 F.2d 1129 (9th Cir. 1988) .......................................................................19

*In re Late Fee & Over-Limit Litig.,*
   528 F. Supp. 2d 953 (N.D. Cal. 2007)............................................................11

*Jefferson v. Chase Home Finance, LLC,*
   2007 WL 1302984 (N.D. Cal. May 3, 2007)..................................................18

*Lipton v. Pathogenesis Corp.,*
   284 F.3d 1027 (9th Cir. 2002) .......................................................................21

*Lopez v. Washington Mutual Bank, F.A.,*
   302 F.3d 900 (9th Cir. 2002) ....................................................................22, 23

*Morris v. BMW of N. Am., LLC,*
   2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ..................................................7

*Newman v. RCN Telecom Servs., Inc.,*
   238 F.R.D. 57 (S.D.N.Y. 2006)......................................................................22

*Sierra Club v. Johnson*,
  2008 WL 2873263 (N.D. Cal. July 23, 2008) ........................................................11

*Torres v. Wells Fargo Bank*,
  2008 WL 2397460 (N.D. Cal. June 11, 2008)...........................................................6

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
  2008 WL 1946859 (S.D. Cal. April 25, 2008) .......................................................18

*Van Slyke v. Capital One*,
  503 F.Supp. 2d 1353 (N.D. Cal. 2007)....................................................................19

*Van Slyke v. Capital One Bank*,
  2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ............................................................7

**STATE CASES**

*Aebli v. Bd. of Educ. of City and County of San Francisco*,
  62 Cal. App. 2d 706 (1944) ....................................................................................22

*Alliance Mortgage Co. v. Rothwell*,
  10 Cal. 4th 1226 (1995) ..........................................................................................19

*Berry v. American Express Publishing, Inc.*,
  147 Cal. App. 4th 224 (2007) .................................................................................19

*Burlesci v. Petersen*,
  68 Cal. App. 4th 1062 (1998) .................................................................................17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)......................................................................................7, 16

*Daniels v. PNC Bank, N.A..*,
  738 N.E.2d 447 (Ohio Ct. App. 2000)......................................................................6

*Fetter v. Wells Fargo Bank Texas, N.A.*,
  110 S.W. 3d 683 (Tex. App. 2003)............................................................................6

*Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  20 Cal. App. 3d 668 (1971) ....................................................................................11

*French v. Smith Booth Usher Co.*,
  56 Cal. App. 2d 23 (1942) ......................................................................................17

*Guido v. Koopman*,
  1 Cal. App. 4th 837 (1991) .....................................................................................13

*Hill v. St. Paul Fed. Bank*,
  768 N.E.2d 322 (Ill. App. Ct. 2002) .........................................................................6

*Lawrence v. Bank of America,*
    163 Cal. App. 3d 431 (1985) ........................................................................ 17

*McKell v. Washington Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006) ...................................................................... 18

*Metropolitan Life Ins. Co. v. San Francisco Bank,*
    58 Cal. App. 2d 528 (1943) .......................................................................... 17

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082 (1993) .................................................................................. 13

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,*
    150 Cal. App. 4th 384 (2007) ........................................................................ 18

*Ramey v. Socony Mobil Oil Co.,*
    211 Cal. App. 2d 441 (1962) .......................................................................... 21

*Shea-Kaiser-Lockheed-Healy v. Dept. of Water & Power,*
    73 Cal. App. 3d 679 (1977) ............................................................................. 5

*Shelley v. Bd. of Trade of San Francisco,*
    87 Cal. App. 344 (1927) ................................................................................ 22

*Smith v. First Union Nat'l Bank of Tenn.,,*
    958 S.W.2d 113 (Tenn. Ct. App. 1997) ........................................................... 6

*Textron Fin. Corp. v. Nat'l Union Fire Ins. Co.,*
    118 Cal App. 4th 1061 (2004) ....................................................................... 19

*Turbinator, Inc. v. Super. Ct.,*
    33 Cal. App. 4th 443 (1995) ........................................................................... 6

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................ 4

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .......................................................... 12

Cal. Civ. Code § 1761 ....................................................................................... 19

Cal. Civ. Code § 1770(a) ................................................................................... 12

Cal. Civ. Code § 3515 ....................................................................................... 11

Cal. Com. Code § 4303 .......................................................................... 5, 6, 8, 10

Cal. Com. Code § 11103(a)(1) ............................................................................. 5

Cal. Com. Code § 11504(a) ................................................................................. 5

**RULES**

Fed. R. Civ. P. 56 .................................................................................................... 1

Fed. R. Civ. P. 56(c) .............................................................................................. 4

Fed. R. Evid. 702 .................................................................................................... 9

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 23, 2009, at 8:00 a.m. in the courtroom of the Honorable William H. Alsup, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., Courtroom 9, 19th Floor, San Francisco, California, or at such date and time as the Court may otherwise direct, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move and hereby does move the Court for summary judgment on all causes of action alleged in plaintiffs' [Adjusted] First Amended Class Action Complaint.

This motion is made pursuant to Fed. R. Civ. P. 56 on the grounds that: (a) Wells Fargo's posting practice is consistent with state law and has been consented to by plaintiffs, (b) plaintiffs lack evidence of actual injury and damages resulting from "including and deleting," and plaintiffs' substantive challenge to the manner in which Wells Fargo calculates available balances lacks any legal support, (c) the conversion claims of both classes fail as a matter of law for multiple reasons, (d) the Consumer Legal Remedies Act does not apply to overdrafts and overdraft fees, (e) plaintiffs have no evidence to support the element of fraudulent intent that is necessary to their fraud claim, (f) all of plaintiffs' claims are barred by waiver and the voluntary payment doctrine, and (g) plaintiffs cannot prove injury and damages.

The motion is based on this notice, the memorandum of points and authorities set out below, and the accompanying Declarations of David M. Jolley, Christopher M. James, and Todd Menenberg, as well as the previously filed declaration of Kenneth Zimmerman (Dkt. No. 41), together with such further argument and evidence as the Court shall permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED

In a Motion for Partial Summary Judgment filed on February 12, 2009, defendant Wells Fargo Bank, N.A. ("Wells Fargo") sought judgment on plaintiffs' misrepresentation-based claims on the basis of plaintiffs' admission that none of them had read or relied upon the

1   statements they sought to challenge.  In this Motion, filed after the exchange of expert reports,

2   Wells Fargo now seeks summary judgment on all of plaintiffs' causes of action in their entirety.

3          Plaintiffs assert that Wells Fargo's practice of sequencing debit-card transactions

4   from highest amount to lowest in posting them to a customer's account is a violation of

5   California state law.  That assertion is incorrect.  California law permits a bank to post a

6   customer's transactions in any order the bank chooses.  Wells Fargo's practice in posting

7   customer transactions is consistent with industry standards and is perfectly lawful.

8          Plaintiffs also assert that customers are injured by an artifact of Wells Fargo's

9   complex process of authorizing and settling debit-card transactions and calculating customer

10   balances that the Court has referred to as "including and deleting."  For a customer to be injured

11   by "including and deleting," as defined by the Court and plaintiffs' own admissions, a very

12   specific set of events has to occur in a very specific order.  Among these is a requirement that a

13   customer have actually relied on available balances that first "include" and then "delete" a

14   debit-card transaction and be injured as a result.   It is now clear that plaintiffs lack any evidence

15   of such reliance and resulting injury.

16          For these and other reasons set out below, Wells Fargo is entitled to summary

17   judgment as a matter of law on all remaining claims in this case.

18   **II.     BACKGROUND**

19          The class claims in this case are summarized in this Court's Order of September

20   11, 2008, which certified two classes.[1]   The Court's class definitions are generally descriptive

21   of the core claim asserted by each class.

22          Thus, for example, the Court certified a "Re-Sequencing" class of

23          "[A]ll Wells Fargo California customers from November 15,
24          2004, to June 30, 2008, who incurred overdraft fees on debit card

_____

25   [1]     Order Denying Defendant's Motion for Summary Judgment and Granting in Part and
     Denying in Part Plaintiffs' Motion for Class Certification (September 11, 2008) (Dkt. No. 98).
26   In that Order, the Court rejected (for summary judgment purposes), Wells Fargo's argument that
     plaintiffs' claims were barred by federal preemption under the National Bank Act and associated
27   regulations.  Wells Fargo reserves the right to pursue that issue at trial should any of plaintiffs'
     claims survive that far.
28

transactions as a result of the bank's practice of sequencing transactions from highest to lowest."

*Id.* at 27.   Finding plaintiffs' proposed definition of this class to be "overbroad and unhelpful," the Court stressed that the class claims applied only to the order in which the bank sequenced debit-card transactions at the time of posting.  Other aspects of the bank's posting practices were not at issue, and the case would proceed taking it as a given that the bank could sort other kinds of debits, including checks, in any manner it chose.  Class Order at 12 & n.3.

The court also certified an "Including and Deleting" class defined as:

"[A]ll Wells Fargo California customers with consumer checking accounts from November 15, 2004, to June 30, 2008, who incurred overdraft fees on debit card transactions after dissemination by Wells Fargo of available-balance information that once reflected and later deleted a debit card transaction."

*Id.* at 25.  This class was certified to pursue claims relating to overdrafts incurred when a customer overspends his account due to reliance on an "available balance" that fails to take into account a still-pending transaction that *was* included in an available balance the customer saw previously.   Rejecting the suggestion that a broader class could properly be certified to challenge overdrafts occurring in any situation in which a customer received an available balance that failed to account for a pending transaction, the Court found:

"To be clear, the only viable claim concerning the available-balance information concerns Wells Fargo's practice of including but then deleting transactions without adequate notice.  The mere fact that the available balance appearing online or at an ATM is sometimes not fully accurate is not, by itself, enough to state a claim."

*Id.* at 13.[2]

The Class Order did not analyze any of the claims of either class within the context of the specific causes of action asserted in plaintiffs' Complaint.  There are six such causes of action:  claims under the California Unfair Competition Law ("UCL"), Consumer

---

[2]      The Court observed that "the bank has no way of knowing the extent of unpresented checks and the extent of debit transactions that will turn out to be more than what was initially authorized," and that the bank clearly disclosed the fact that some transaction activity might not be reflected in the available balance.  *Id*. at 13-14.

1  Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), as well as claims for fraud,

2  negligent misrepresentation, and conversion.  Each of these causes of action fails as a matter of

3  law on the undisputed facts, in most cases for several multiple and independent reasons.

4  **III.    ARGUMENT**

5           Summary judgment is appropriate "if the pleadings, the discovery and disclosure

6  materials on file, and any affidavits show that there is no genuine issue as to any material fact

7  and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue

8  is "genuine" only if there is a sufficient evidentiary basis upon which a reasonable jury could

9  find for the nonmoving party, and a fact is "material" only if it might affect the outcome of the

10 suit under the applicable rule of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

11 (1986).  The facts material to the issue presented here are undisputed; summary judgment is

12 accordingly appropriate.

13     **A.    Wells Fargo Is Entitled to Summary Judgment on the UCL, CLRA, FAL,
               Fraud, and Negligent Misrepresentation Claims of the Re-Sequencing Class.**

14

15          Plaintiffs claim that the order in which Wells Fargo posts debit-card transactions

16 to customers' accounts violates the California UCL, Bus. & Prof. Code §§ 17200 *et seq.*, and

17 other state laws.[3]  This claim fails as a matter of law, for several reasons.

18          **1.    Wells Fargo's Posting Practice Is Consistent With State Law.**

19          In its Class Order (at 14), the Court observed that Wells Fargo had, at that stage

20 of the case, offered no showing concerning the status of its posting practice under California

21 state law.[4]  Wells Fargo does so now.  If and to the extent California state law applies to

22

23     _____

24 [3]     In opposing Wells Fargo's Motion for Partial Summary Judgment on their
   misrepresentation claims, plaintiffs argued that Wells Fargo has also made misleading
   statements about this practice.  As Wells Fargo showed in that motion, none of the named
25 plaintiffs saw or relied on any such misrepresentations.  Moreover, as discussed at pp. 24-25
   below, plaintiffs lack competent evidence of injury and damages associated with any such
26 claims.

27 [4]     The motion from Wells Fargo (Dkt. No. 38) that the Court denied in the Class Order
   addressed only the question of whether plaintiffs' claims were preempted by federal law, not the
28 content of any state law that would apply in the absence of such preemption.

plaintiffs' challenge to the order in which Wells Fargo posts debit-card transactions, that law plainly permits the practice.

### a) The Uniform Commercial Code Authorizes Banks to Post Transactions "In Any Order."

California has adopted the Uniform Commercial Code ("UCC") provision on the posting of debits to bank checking accounts. That provision states that "items may be accepted, paid, certified, or charged to the indicated account of [the] customer *in any order.*" Cal. Com. Code § 4303(b) (emphasis added). Similarly, the parallel provision of Article 4A of the UCC, which deals with certain types of electronic transactions,[5] authorizes a bank receiving more than one electronic payment order or more than one payment order and other item to charge "the various orders and items in any sequence." Cal. Com. Code § 11504(a).

The reason for this broad authority is explained in the UCC comments.[6] The California version of one comment offers the example of a customer who has written three checks, one of them (the largest) to the IRS. Observing that the bank could return any of the checks to the extent there are insufficient funds in the account, the Comment states:

> "In this example, it may well be that the customer would prefer that the check to the IRS be paid because nonpayment may have more serious consequences than nonpayment of the other two checks, but that is not necessarily true. Payment of one of the smaller checks may be more vital or the customer may prefer to minimize the number of checks returned because the payor bank normally charges a fee with respect to each returned check. The bank has no way of knowing the wishes of the customer, but it may be able to identify a check that appears to be particularly important. *It is necessary to give discretion to the payor bank because it is impossible to state a rule that will be fair to the customer in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer's account; the possible methods of receipt; and other variables. Further, the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid*

---

5    Article 4A governs "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary.…" Cal. Com. Code § 11103(a)(1).

6    Although these comments are not part of the statute, they are regarded as persuasive authority in interpreting it. *See Shea-Kaiser-Lockheed-Healy v. Dept. of Water & Power*, 73 Cal. App. 3d 679, 688 (1977).

*before another;* and the holders have no direct right against the payor bank in any event, unless of course, the bank has accepted, certified or finally paid a particular item, or has become liable for it under Section 4-302."

Cal. Com. Code § 4303 Calif. cmt. 7 (emphasis added); *see also* official cmt. 7 (similarly noting impossibility of formulating a rule that would benefit customers in all cases).

Every single case of which Wells Fargo is aware in which a bank's order of posting transactions has been challenged has recognized that posting transactions from highest amount to lowest is lawful under the UCC.  *See Fetter v. Wells Fargo Bank Texas, N.A.,* 110 S.W. 3d 683 (Tex. App. 2003); *Hill v. St. Paul Fed. Bank*, 768 N.E.2d 322 (Ill. App. Ct. 2002); *Daniels v. PNC Bank, N.A.,* 738 N.E.2d 447 (Ohio Ct. App. 2000); *Smith v. First Union Nat'l Bank of Tenn.,* 958 S.W.2d 113 (Tenn. Ct. App. 1997).  Because "uniformity in construction of the code provisions in the various states is highly desirable," these "decisions from other states constitute strong persuasive authority" in interpreting the California UCC.  *Turbinator, Inc. v. Super. Ct.*, 33 Cal. App. 4th 443, 450 n.4 (1995).[7]

As a technical matter, Section 4303 does not apply to debit-card transactions, because they are excluded from the universe of transactions governed by Article 4 of the UCC.  However, this exclusion stems, not from a legislative judgment that different rules should apply to the posting of such transactions, but rather from a belief by the UCC drafters that regulation of debit-card transactions was governed by preemptive federal law.

Section 4303 addresses the posting of "items."  The current version of section 4104(a)(9) defines "item" as "an instrument or a promise or order to pay money handled by a bank for collection or payment.  The term does not include a payment order governed by Section 4A or a credit or debit card slip."  The last sentence of this definition was added in the 1990 Amendments to the UCC (adopted in California in 1992).  The UCC drafters discussed their views on this exclusion in the course of their discussion of the new Article 4A, written at

---

[7]      The only case in California of which we are aware is the decision of Judge Fogel in favor of Wells Fargo in *Torres v. Wells Fargo Bank*, 2008 WL 2397460, at *1-2 (N.D. Cal. June 11, 2008).  However, as published on Westlaw, Judge Fogel's opinion bears a legend stating that it is "not for citation."

1   the same time, which they envisioned would also exclude debit-card transactions.  The drafters

2   excluded such transactions in the belief that they were governed exclusively by federal law,

3   including the Electronic Fund Transfer Act.  As one commented:

> "They [sic] are a variety of transactions which are described in
> that act.  They're all consumer transactions.  We have simply
> taken the position that in anything that is covered by federal law,
> we are preempted anyway, and we simply say:  If it's covered in
> that act, then it is simply not covered here."

7   Transcript of Proceedings, National Conference of Commissioners on Uniform State Laws,

8   UCC Arts. 3, 4, & 4A, at 141:16-142:11 (July 31-Aug. 7, 1987).

9           Thus, the only legislative history bearing on the exclusion of debit-card

10  transactions from the UCC reflects a belief that the treatment of such transactions was fully

11  governed by federal law, *not* an intention that they be subject to a different set of state-law rules.

12  To the contrary, every single type of transaction that *is* governed by state law – whether subject

13  to Article 4 of the UCC or Article 4A – is explicitly subject to the bank's discretion as to order

14  of posting.  Insofar as the California Legislature has spoken on this subject, therefore, it has

15  confirmed its policy of leaving the order of posting to the bank's discretion.

16          Because California law authorizes a bank to choose the order in which it will

17  post transactions, Wells Fargo's exercise of that choice cannot be characterized as unfair or

18  otherwise unlawful under the UCL.  This posting practice is consistent with both the letter and

19  the policy of California law.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

20  163, 182 (1999); *see also Van Slyke v. Capital One Bank*, 2007 WL 3343943, at *11-13 (N.D.

21  Cal. Nov. 7, 2007) (applying *Cel-Tech* standard to consumer claims under the UCL); *Morris v.*

22  *BMW of N. Am., LLC*, 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7, 2007) (same).

23          **b)     Plaintiffs Cannot Challenge Wells Fargo's Posting Order**
            **Merely on the Ground That It Generates Higher Overdraft**
24          **Fee Revenues Than Their Preferred Alternative.**

25          Plaintiffs' substantive challenge to the Wells Fargo's posting order ultimately

26  rests on nothing more than an argument that the bank earns higher revenues from overdraft fees

27  under this method of posting than it would under the alternative posting scenario that plaintiffs

28  prefer.  Plaintiffs will doubtless point to documents produced in discovery showing that Wells

MOTION OF DEFENDANT WELLS FARGO FOR                7
SUMMARY JUDGMENT ON ALL CAUSES OF ACTION
Civil Case No.:  CV-07-5923 WHA (JCSx)

Fargo expected to receive increased revenues after adopting the posting order it currently uses. But even accepting (for purposes of this motion only) plaintiffs' distorted treatment of those documents, they are beside the point. There is nothing in the law that requires a bank to offer a customer the lowest possible price for a service or to avoid increasing its revenues. If one took plaintiffs' argument to its logical conclusion, Wells Fargo should charge its customers no overdraft fees at all. But the law plainly supports no such conclusion.

There is, to be sure, a statement in the California commentary to the UCC that:

> "The only restraint on the discretion given to the payor bank under subsection (b) is that the bank act in good faith. For example, the bank could not properly follow an established practice of maximizing the number of returned checks for the *sole purpose* of increasing the amount of returned check fees charged to the customer."

Cal. Com. Code § 4303, Calif. cmt. 7 (emphasis added). Notably, this statement reinforces that the "restraint" of which it speaks is the *only* one that would limit a bank's discretion. Any such restraint has no application here, because the undisputed facts confirm that Wells Fargo has neither chosen a posting order that maximizes fees nor chosen its order solely for that purpose.

The undisputed record shows that Wells Fargo has *not* selected the posting sequence that would maximize overdraft (or returned item) fees; to the contrary, there are numerous possible posting orders that would yield more overdrafts than the one Wells Fargo uses. Menenberg Dec. ¶ 17. The undisputed evidence also shows that revenues were not the sole reason for adopting the Bank's posting order. Rather, the decision was motivated by multiple considerations, including a belief that – as stated in the California Comment to the UCC – there are situations in which customers will want their larger and more important items to be posted first to ensure payment. Jolley Dec. Exs. 1, at 32, 2 at 39-40, 3 at 17-18. If a large item is a check or ACH debit and is moved later in the order, there is an increased chance that the Bank will return it unpaid. *See* James Dec. ¶ 5. The fee charged by the Bank for such an item is the same either way, but the repercussions for the customer from penalties imposed by the payee can be severe, especially if the item is something like a mortgage or credit-card payment (or, to use the UCC example, a tax payment to the IRS). *See id.*

1       Moreover, the posting order employed by Wells Fargo is consistent with that

2  followed by the majority of banks in the United States, including nearly all of the major national

3  banks that are Wells Fargo's major competitors.  James Dec. ¶ 6.  It is, moreover, a practice

4  that is regarded as reasonable and fully consistent with sound banking practices.  *Id.* ¶ 6.[8]

5       Plaintiffs have *no* evidence to refute *any* of these points.  They merely assert that,

6  as a matter of simple math, it is obvious that posting from highest amount to lowest will

7  sometimes generate more overdraft and/or returned items and that Wells Fargo knew that.[9]  But

8  that fact would have been equally obvious to the drafters of the UCC and to the California

9  legislature.  They nonetheless chose to leave the discretion on posting sequence with the bank,

10  recognizing that an accountholder who spends money out of his account is supposed to make

11  sure he has enough to cover that spending – and that if he does so, the order in which

12  transactions are posted will be irrelevant.

13      **2.**     **Plaintiffs Have Consented to the Posting Order They Challenge.**

14       Plaintiffs' claims concerning Wells Fargo's posting practices are further barred

15  by their contract with the Bank.  It is undisputed that Wells Fargo's standard practice is to

---

16

17  [8]    The Office of the Comptroller of the Currency confirms this in information for
consumers posted on its website:

18

19      "You may write your checks in numerical order, but that doesn't mean the
bank will post them that way.  The same is true with point-of-sale or other
electronic transactions:  They don't necessarily post in the order in which you
made the purchases.

20

21      When several items come to the bank for clearing, it can choose to debit them
from your account in several ways.  Many national banks are opting to post
the largest dollar items first instead of posting the checks in numerical order.

22      Often the largest check represents payment for rent, mortgage, car payments,
or insurance premiums."

23  Comptroller of the Currency, Answers About Overdraft Fees and Protection,
http://www.helpwithmybank.gov/ faqs/banking_overdraft.html (last visited Mar. 3, 2009).

24  [9]    Plaintiffs' only other evidence on this subject is proposed testimony from an expert on
"business ethics" that he believes the bank's posting order to be "unethical."  *See* Jolley Dec.

25  Ex. 4 at 2.  That expert does not even assert that the conduct is unethical according to any
objective standard; rather, he asserts only that the bank's posting practice is, in his view,

26  inconsistent with the bank's own corporate ethics policies.  *Id.* Ex. 5 at 65-66, 139-41, 185.
Wells Fargo is filing concurrently a motion to exclude that testimony under Rule 702 and

27  *Daubert*.  In any event, an opinion on the *ethical* implications of this practice has no meaningful
bearing on its *legal* status.

28

provide copies of its Consumer Account Agreement to all customers at account opening.
Zimmerman Dec. ¶ 35 & Ex. A.  That agreement provides that use of the account constituted consent to the terms set out in the Agreement; those terms include the bank's authority to approve and pay items into overdraft and to assess and collect overdraft fees.  *See* Zimmerman Dec. Ex. A at 26.

The Agreement contains a separate section on "Withdrawals from Your Account," with a subsection entitled "Order of Posting."   (Both are listed in the Table of Contents and are easy to find.)  The Order of Posting section states:

> "The Bank may post Items presented against the Account in any order the Bank chooses, unless the laws governing your Account either requires or prohibits a particular order.  For example, the Bank may, if it chooses, post Items in the order of the highest dollar amount to the lowest dollar amount.  The Bank may Change the order of posting Items to the Account at any time without notice.  If more than one Item is presented to the Bank for payment … the overdraft and returned Item fees assess may be affected by the order that the Bank chooses to pay those Items…. For example, if the Bank pays Items in the order of highest to lowest dollar amount, the total number of overdraft and returned Item fees you are charged may be larger than if the bank were to pay the Items in the order of lowest to highest dollar amount."

*Id.* at 23.

The first sentence of this section exactly parallels the UCC, which provides that "items may be accepted, paid, certified, or charged to the indicated account of [the] customer in any order."  Cal. Com. Code § 4303(b).   After stating that the Bank may post in any order it chooses and may change the order without notice,[10] the Agreement goes on to warn customers that some potential orders used – such as an order from highest to lowest – could result in more overdraft fees than others. The Agreement thus confirms that the Bank may do exactly what the law says it may do and warns the customer of the possible repercussions of that discretion.

---

[10]      There have been no changes in posting order in California during the class period.   The last change was in 2001 – three years before the beginning of the class period and before the class representative for the Re-Sequencing Class, Veronica Gutierrez, opened her account. *See* Jolley Dec. Exs. 1 at 62-63; 13 at 13.

1    "He who consents to an act is not wronged by it."  Cal. Civ. Code § 3515.

2    Consistent with this fundamental principle of California law, a plaintiff may not ordinarily

3    challenge as "unfair" a practice that he has consented to by contract.  This rule applies in full

4    force to claims challenging banking practices.  *See, e.g., In re Late Fee & Over-Limit Litig.*, 528

5    F. Supp. 2d 953, 966 (N.D. Cal. 2007); *Evans v. Chase Manhattan Bank USA, N.A.*, 2006 WL

6    213740, at *6 (N.D. Cal. Jan. 27, 2006).[11]

7          Plaintiffs have suggested that the contractual language on this subject is

8    insufficient because its use of the word "may" creates ambiguity about whether the Bank will in

9    fact post transactions from highest amount to lowest.  In making this argument, plaintiffs

10   routinely mischaracterize the language of the Agreement, suggesting that it merely states that

11   the Bank "may post from high to low."  But what the document says is that the Bank may post

12   in any order it chooses.  In this context, the word "may" is clearly used, not in a predictive sense

13   (the sentence would be nonsensical if read that way), but rather in the same permissive sense in

14   which it is used in the statute.  *See Sierra Club v. Johnson*, 2008 WL 2873263, at *4 (N.D. Cal.

15   July 23, 2008) (finding that the customary meaning of the word "may" is permissive).

16          Moreover, the Bank could not responsibly adopt plaintiffs' suggestion that the

17   Agreement instead state that the Bank *will* post from highest amount to lowest.  Any such

18   statement would be inaccurate, as the bank posts different categories of transactions in separate

19   groups and only posts from highest to lowest within each group.[12]  Thus, in some instances

20   (days on which the only items to post are within the same group) a customer's transactions will

21   be subject to a simple high-to-low posting order, but in others they will not.  *See Clemmer v.*

22   *Key Bank Nat'l Ass'n*, 539 F.3d 349, 354 (6th Cir. 2008) (holding that disclosure that the bank

23   "may" charge an ATM fee was adequate notice where fee was not always charged); *Brown v.*

24   *Bank of America, N.A.*, 457 F. Supp. 2d 82, 86 (D. Mass. 2006) (same).

---

26   [11]    It is irrelevant for this purpose whether the plaintiffs actually read the contract.  *See*
     *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 Cal. App. 3d 668, 671 (1971).

27   [12]    Zimmerman Dec. ¶ 27.  This ordering actually leads to *fewer* overdraft fees overall than
28   would exist under a strict high-to-low order.  Menenberg Dec. ¶ 16.

1    Plaintiffs accordingly cannot escape the fact that their contract with Wells Fargo

2    authorizes the Bank to do what the law already permits it to do anyway.

3        **3.    Summary Judgment Should Be Entered On The CLRA, FAL, Fraud
              and Negligent Misrepresentation Claims of the Re-Sequencing Class
4             for Additional Reasons.**

5    The CLRA claim in plaintiffs' Complaint appears to be directed only at the

6    claims of what is now the "Including and Deleting" class.  In any event, a CLRA claim requires

7    a showing that a challenged practice violates one of the prohibitions of the statute.  *See* Civ.

8    Code § 1770(a).  The only such prohibitions that even arguably apply in this case relate to

9    misrepresentations, and plaintiffs' claims on that score have been addressed in Wells Fargo's

10   Motion for Partial Summary Judgment.  Because the Re-Sequencing class has no other claims

11   under the CLRA, summary judgment should be granted on this cause of action.  For the same

12   reason, this class has no viable claim for fraud (including under the UCL), negligent

13   misrepresentation, or false advertising under the FAL, Bus. & Prof. Code §§ 17500 *et seq*.

14   These causes of action also fail for the separate and independent reasons that (a)

15   plaintiffs have no proof of injury and damages to the Re-Sequencing class associated with any

16   misrepresentations and (b) the CLRA does not apply to any of plaintiffs' claims in this case.

17   These issues are discussed further in, respectively, Parts III.G. and III.D. below.

18   **B.    Summary Judgment Should Be Entered on Any Remaining UCL, FAL,
            CLRA, Fraud, and Negligent Misrepresentation Claims of the "Including
19          and Deleting" Class.**

20       **1.    Plaintiffs' Class Proof on the Issue of Injury and Reliance Is
              Inadequate as a Matter of Law.**
21

22   Plaintiffs have no direct proof that any class member (with the possible exception

23   of named plaintiff William Smith) incurred overdraft fees as a result of reliance on available

24   balances that were inaccurate because of "including and deleting."  Their only evidence on this

25   subject is a global damages analysis from their experts.  That analysis is discussed in detail in

26   Wells Fargo's Motion to Decertify Classes, also filed today; that discussion is incorporated here

27   by reference.  Plaintiffs' analysis is insufficient as a matter of law to demonstrate reliance and

28   injury here, because (among other things):

1.     It does not even attempt to measure the impact of a genuine "including and deleting" scenario but instead leaves out critical elements.  It therefore at most measures aggregate damages associated with a set of events *different from* the "including and deleting" scenario on which this claim is based.  *See* Motion to Decertify Classes at 6-10.

2.     It does not demonstrate that any particular member of the class (including even the handful included within the sample that was analyzed) actually *paid* an overdraft fee; it only looks at fees that were assessed.  This is not a negligible oversight, as it is undisputed that 20 percent of the overdraft fees assessed by the bank are waived or charged off and are therefore never paid.  Jolley Dec Ex. 1 at 93-94.  Plaintiffs have admitted that a member of this class suffers no injury from assessed fees that are waived or otherwise not paid.  *Id.* Ex. 6, No. 25.

3.     Plaintiffs' analysis treats as a "check" of an available balance upon which a customer supposedly "relied" *any* interaction that a customer had with the bank during which he *might* have had access to his available balance, requiring an assumption that customers always check their available balances every time they make an ATM withdrawal, visit a branch teller, or otherwise interact with the bank.  The analysis does not even require in all cases that the interaction have occurred *before* the transaction that led to the overdraft.  At the same time, it assumes that the customer would have continued to "rely" on the balance he was potentially exposed to for up to seven full days.  *Id.* Ex. 7, No. 14.  Plaintiffs have no evidence, including evidence from any of their experts, demonstrating that *any* of this is reasonable.  Indeed, at least some aspects – such as an inference of reliance on something that had not yet even happened – are incontestably ridiculous.

Plaintiffs will doubtless respond that reliance is ordinarily an issue of fact for the finder of fact.  But it does not follow that *any* evidence that a plaintiff offers to prove reliance is sufficient to avoid summary judgment.  Where, as here, plaintiffs have no legally adequate evidence of reliance and injury, their claims fail as a matter of law.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1094 (1993); *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991).  And, again, even if plaintiffs had enough evidence to get to trial on the issue of *reliance*, they still could not

get around their complete lack of evidence to show that – with or without reliance – each and every class member was *injured* by actually having to pay one or more overdraft fees.

The Court should accordingly grant summary judgment to Wells Fargo on the causes of action asserted on behalf of the Including and Deleting Class under the UCL, FAL, and CLRA, as well as the claims of fraud and negligent misrepresentation.[13]

### 2. The Individual Plaintiffs Are Also Unable to Prove Injury and Reasonable Reliance.

Plaintiffs are unable to prove that even the named plaintiffs suffered actual injury from "including and deleting."  In interrogatory responses served at the very close of discovery, plaintiffs were required to specify the damages they were claiming.  Their responses simply referred to the reports of their experts.  Jolley Dec. Ex. 8, No. 24.  Neither those expert reports nor the interrogatory responses offered any damages figures for any of the named plaintiffs.  Plaintiffs have elsewhere conceded that plaintiff Gutierrez is not a member of this class.  *Id.* Ex. 6, No. 15.

There is no evidence that plaintiff Walker suffered any actual injury as a result of "including and deleting."  The Court previously found there to be a disputed issue of fact as to whether Walker relied on an available balance that was affected by "including and deleting."  Class Order at 19.  But even if one assumes that she did so rely, it does not follow that she actually paid overdraft fees that were the result of such reliance.  It is undisputed that the bank waived several of the fees Walker was assessed during the period in question.  Jolley Dec. Ex. 9, No. 7.  Moreover, plaintiffs take the position that Walker is also a member of the Re-Sequencing class, which indicates that some of her fees were (according to plaintiffs) attributable to that practice.  *Id.* Ex. 6, No. 17.   She also admits that she properly owed at least some of the fees she paid.  *Id.* Ex. 9, No. 7.  Plaintiffs have proffered no analysis that purports to demonstrate that any fees Walker actually *paid* were attributable to "including and deleting."

---

[13]    In the alternative, the Court should decertify this class for the reasons set out in Wells Fargo's Motion to Decertify Classes.

1    The Court has also previously found sufficient evidence that plaintiff Smith

2    relied on a balance that was affected by "including and deleting."  Class Order at 20.   However,

3    plaintiffs have similarly failed to proffer evidence of a specific amount of damages for him

4    attributable to that practice.

5    Moreover, Smith had actual knowledge that his available balance could *not* be

6    relied upon to "include" all transactions that had been "included" in balances he had seen

7    previously.  This was because *exactly the same thing* had happened to him previously.  When he

8    was assessed an overdraft on that occasion, the bank explained to him that "sometimes [an

9    electronic transaction] will fall off because they are waiting for the receipt to show up."  Jolley

10   Dec. Ex. 10 at 51-52; *see also id.* at 88.  Thus, if and to the extent any of Smith's challenged

11   overdraft fees were incurred because he relied on an available balance affected by "including

12   and deleting," any such reliance was not *reasonable*.  *See Atari Corp. v. Ernst & Whinney*, 981

13   F.2d 1025, 1031 (9th Cir. 1992) (plaintiff could not assert claim based on reliance where

14   plaintiff possessed facts demonstrating that challenged representations could not be relied

15   upon).  In short, Smith did not "rely" on his allegedly incorrect available balance because he

16   genuinely thought it would be accurate; he simply relied on it (if he did) because he found it

17   convenient to do so.  On those undisputed facts, he has no valid claim.

18   The Court has previously stated that the question of whether Smith's reliance

19   was reasonable was "a matter of defense."  Class Order at 20.  While it is certainly true that

20   these facts also support an affirmative defense of failure to mitigate, it is *plaintiffs'* burden to

21   demonstrate reasonable reliance as an element of their claim.  The Court's earlier denial of

22   summary judgment did not, of course, constitute a final determination on this issue.  *Dessar v.*

23   *Bank of Am. Nat'l Trust and Savings Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965).  Discovery is

24   now closed, and it is clear that plaintiffs have no new evidence to offer on this point.

25                 **3.      Plaintiffs' Substantive Challenge to the Manner in Which Wells
                             Fargo Calculates Available Balances Makes No Sense and Cannot**
26                 **Sustain Any of Their Causes of Action.**

27   Plaintiffs have taken the position that if the full details of the complex series of

28   events that could lead to an "including and deleting" scenario cannot be effectively disclosed to

1   customers, then the Bank violated state law by failing to maintain its memo holds for pending

2   transactions for at least 30 days.  Jolley Dec. Ex. 7, No. 14.  The bank's practice in dropping

3   holds on customers' funds does not offend either the letter or the policy of any state law.  *See*

4   *Cel-Tech Commc'ns*, 20 Cal. 4th at 182.  There is no state law that dictates the period during

5   which a bank is required to limit a customer's access to account funds, much less one that

6   requires it to do so for 30 days.  Nor could the bank's practice in this respect be characterized as

7   "unfair" under any other rubric.

8            The reason that holds are only kept in place for a short time is that a lengthy hold

9   prevents a customer from having full access to funds that – if the transaction ultimately does not

10  post – should be available to him.  *See* Zimmerman Dec. ¶¶ 16-17; *see* Jolley Dec. Ex. 11 at 37-

11  38.  Approximately 8 percent of transactions are never submitted for settlement at all and hence

12  never post.  Of the remainder, more than 95 percent settle within three days.[14]  This leaves only

13  a very small percentage of transactions that actually post after three days.  Recognizing this fact,

14  and confronted with complaints that banks were keeping holds in place indefinitely and

15  depriving consumers of access to their funds, the Visa network adopted a rule, which Wells

16  Fargo follows, requiring all holds to be dropped within three days.  Zimmerman Dec. ¶¶ 16-17;

17  Jolley Dec. Ex. 11 at 37-38.

18          Were Wells Fargo to abandon this rule and keep holds in place for up to 30 days,

19  any such outcome would clearly be injurious to many consumers, including class members.  The

20  impact would be at least as severe (and perhaps more so) if Wells Fargo were required to

21  impose holds sufficient to be certain of covering the full transaction amount for gasoline

22  purchases.  For gasoline transactions, the bank currently imposes          **REDACTED**

23  the amount of the authorization.  Zimmerman Dec. ¶ 17.  Since the Bank does not learn the final

24  amount of a gasoline purchase until settlement, *id.*, its only other option would be to impose a

25  hold for $75 (the ceiling amount that it could be obligated to pay based on the authorization).

26  _____

27  [14]     Jolley Dec. Ex. 11 at 37-38.  This is the percentage for signature debit transactions,
    which are processed over the Visa network.  *Id.* at 42.  Nearly all pin-based transactions post

28  within one day.  Zimmerman Dec. ¶ 16.

1   *See* Jolley Dec. Ex. 11 at 40-41.  In fact, as a witness from Visa has testified, some banks do

2   exactly that, and there have been vehement complaints about that practice.  *Id.*  In contrast, the

3   Visa witness testified that he was aware of no customer complaints about banks having

4   *insufficient* hold policies.  *Id.* at 39.

5          Plaintiffs can point to no evidence that the alternative memo-hold policy that

6   they claim the bank should be required to adopt is better for customers, on balance, than the

7   bank's current practice.  And there is certainly no law that imposes any such requirement.

8   Wells Fargo is accordingly entitled to summary judgment on this claim.

9          **C.      The Conversion Claims of Both Classes Fail As a Matter of Law.**

10          Plaintiffs' cause of action for conversion fails as a matter of law as to *both*

11  classes, on multiple grounds.

12          First, for the reasons set forth above, plaintiffs cannot demonstrate any taking of

13  property through a "wrongful act."  *Burlesci v. Petersen,* 68 Cal. App. 4th 1062, 1066 (1998).

14  The Consumer Account Agreement expressly authorizes the bank to assess overdraft fees.  *See*

15  *French v. Smith Booth Usher Co*., 56 Cal. App. 2d 23, 27-28 (1942) (consent bars claim for

16  conversion).

17          Second, plaintiffs cannot, as a matter of law, prove the threshold element of an

18  actual taking of plaintiffs' (or other class members') property.  *Burlesci*, 68 Cal. App. 4th at

19  1066.  Here, plaintiffs' conversion theory is presumably that Wells Fargo has "taken" funds

20  from class members' bank accounts by assessing excessive overdraft fees and then debiting

21  those fees from the accounts.  However, under California law, funds in a bank account are not

22  the "property" of the depositor; rather, a bank and its depositor have a debtor-creditor

23  relationship, which means that once a customer deposits money with the bank, title to these

24  funds passes to the bank.  *Metropolitan Life Ins. Co. v. San Francisco Bank,* 58 Cal. App. 2d

25  528, 534 (1943).  The bank cannot, therefore, be liable for converting the money, as this would

26  mean that it had "converted" its own property.  *Id.*; *see also Crocker-Citizens Nat'l Bank v.*

27  *Control Metals Corp.,* 566 F.2d 631, 637-38 (9th Cir. 1978) (reversing judgment on

28  counterclaim that bank had converted funds from defendant's account); *Lawrence v. Bank of*

1   *America,* 163 Cal. App. 3d 431, 437 n.2 (1985) (observing that "[i]t is well settled … that

2   money on deposit with a bank may not be the subject of conversion").[15]

3           Third, plaintiffs' conversion claim fails for the independent reason that it is

4   simply a claim that Wells Fargo overcharged plaintiffs when they overdrew their accounts.

5   Plaintiffs have freely admitted that they did overdraft their accounts and that *some* amount in

6   fees was properly charged for those occurrences.  *See, e.g.,* Jolley Dec. Exs. 9, No. 7; 12, No. 7;

7   13 at 76-78.  Plaintiffs assert that the cost to them of those overdrafts was higher than it should

8   have been.  *Id.*  But under California law, a conversion claim does not lie for a claim of

9   overcharging.  *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1491-92 (2006); *see*

10   *Utility Consumers' Action Network v. Sprint Solutions, Inc.*, 2008 WL 1946859, at * 8-9 (S.D.

11   Cal. April 25, 2008); *DSU Aviation, LLC v. PCMT Aviation, LLC*, 2007 WL 3456564, at *4

12   (N.D. Cal. Nov. 14, 2007).[16]  Plaintiffs therefore cannot assert a conversion claim on the basis

13   that Wells Fargo overcharged them for their admitted overdrafts.

14           Plaintiffs' conversion claim also fails because the damages claimed are not

15   "ascertainable."   California law permits actions for conversions of sums of money only when

16   the amounts converted are clearly specified and readily ascertainable.  *PCO, Inc. v. Christensen,*

17   *Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395-96 (2007).  As

18   explained in detail in Wells Fargo's Motion to Decertify Classes, plaintiffs have developed no

19   methodology that would permit a finder of fact to ascertain the specific sums "converted" from

20   any particular class member.

---

21   [15]        This is of course not to suggest that a bank is free, willy-nilly, to divert money from a
22   customer's checking account in violation of its contract with the customer.  However, the
     remedy for any such action would lie in contract or through resort to statutory consumer
23   protection remedies (to the extent not preempted by federal law).  Plaintiffs here pled no
     contract claim; indeed, they have disavowed any such claim.  *See* Jolley Dec. Ex. 8 at 23.  As
24   discussed above, their statutory claims fail for other reasons.

25   [16]        In *Jefferson v. Chase Home Finance, LLC,* 2007 WL 1302984, at *2 (N.D. Cal. May 3,
     2007), Judge Henderson declined to apply *McKell* to a claim that Chase had improperly failed to
26   credit prepayments made on loans.  He pointed out that the claims before him involved, not an
     overcharge of amounts due, but rather a failure properly to credit prepayments that had been
27   voluntarily made.  *Id.* at *4.  Here, in contrast, the claim clearly involves an allegation that
     Wells Fargo charged the plaintiffs too much for their overdrafts. (*Jefferson*, it should be noted,
28   did not involve a claim that funds had been "converted" from the plaintiffs' checking accounts.)

**D.     The CLRA Does Not Apply to Overdrafts and Overdraft Fees.**

Summary judgment should be entered on plaintiffs' CLRA cause of action for the additional reason that the bank's activities in covering overdrafts and charging overdraft fees are not subject to the CLRA.  In *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (2007), the California Court of Appeal held that the CLRA did not extend to activities relating solely to the provision of credit.  In examining the legislative history of Cal. Civ. Code § 1761, the court pointed out that early drafts of that provision had defined "Consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family or household purposes." *Id. at* 230 (quoting Assem. Bill No. 292 (1970 Reg. Sess.) as introduced Jan. 21, 1970).  The references to "money" and "credit" were, however, subsequently dropped when the statute was enacted. *Id.*  Applying the principle that a statute should not be construed as encompassing a provision that the Legislature affirmatively chose to omit, the Court concluded that the CLRA should not be construed as including within its scope activities relating solely to the provision of "money" or "credit." *Id.*

When the bank covers an overdraft, it is not, as a technical matter, providing "credit" to the customer.  It is, however, making "money" available to cover the customer's transactions.  As in *Berry*, moreover, this money is provided "separate and apart from any sale or lease of goods or services." *Id.* at 233.  Under the reasoning of *Berry*, therefore, overdraft services, and the fees charged for them, fall outside the scope of the CLRA. *See also Van Slyke v. Capital One*, 503 F.Supp. 2d 1353, 1358-59 (N.D. Cal. 2007) (following and applying *Berry).*

**E.     Plaintiffs Have No Evidence of Fraudulent Intent and Hence Cannot Prove Their Fraud Claim as to Either Class.**

As demonstrated above and in Wells Fargo's motion for partial summary judgment on plaintiffs' misrepresentation claims, there are numerous grounds on which summary judgment should be granted on plaintiffs' fraud claim.  That claim is subject to summary judgment on the additional ground that there is no evidence in the record from which a reasonable finder of fact could conclude that any of the conduct at issue here was done with fraudulent intent. *See Funk v. Sperry Corp.*, 842 F.2d 1129, 1133-34 (9th Cir. 1988); *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co.*, 118 Cal App. 4th 1061, 1073 (2004); *see also Alliance*

1   *Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (necessary elements of fraud include

2   "knowledge of falsity" and "intent to defraud").

3         **Including and Deleting Claim.**  With respect to the "including and deleting"

4   claim, there is no evidence that Wells Fargo adopted the various procedures that can, taken

5   together, lead to an "including and deleting" scenario with the intent to defraud anyone.  To the

6   contrary, the undisputed record shows that those practices were adopted for entirely beneficial

7   purposes, including ensuring that consumers were not unfairly prevented from obtaining access

8   to their funds.  *See,* pp. 16 above.   The possibility of an overdraft being caused by the rare

9   situation at issue here – in which a transaction fails to post within three days and a customer

10  happens to have seen available balances that first included and then deleted that transaction and

11  then relied on the latter so as to incur an overdraft – is, in the end, an artifact of a complex

12  system whose overall purpose is indisputably to benefit customers.  There is no evidence

13  whatsoever that Wells Fargo intended to defraud customers through "including and deleting."

14        Plaintiffs claim that Wells Fargo should have explicitly disclosed to customers

15  the possibility that an "including and deleting" event might happen.  Regardless of the merits of

16  that assertion, there is not a scintilla of evidence that anyone at Wells Fargo deliberately chose

17  *not* to disclose it, much less that they made such a choice in the hopes that customers would rely

18  on inaccurate available balances and incur overdraft fees.  Indeed, plaintiffs have elicited no

19  evidence that Wells Fargo decision-makers ever had occasion, prior to this lawsuit, even to

20  consider the issue.  The representative of Visa who authored the network's three-day rule

21  testified that he has never heard of a customer complaint stemming from any bank's adherence

22  to that rule.  Jolley Dec. Ex. 11 at 39.

23        Plaintiffs cannot satisfy the intent requirement here by relying on generalized

24  arguments about advertisements or other statements that generally encouraged customers to

25  check their available balances.  As the Court explicitly found in its Class Order, there is no

26  viable cause of action to be stated here based solely on the proposition that available balances

27  are sometimes "inaccurate."  There are many reasons outside the bank's control why an

28  available balance might fail to include all of a customer's pending transactions.  Class Order at

1    13-14; *see* Zimmerman Dec. ¶ 5.  And there is no evidence that any Wells Fargo employee

2    wrote or approved any advertising or other customer communications about available balances

3    with "including and deleting" scenarios even in the back of his or her mind, much less with such

4    scenarios forming part of his or her intentional decision-making process.

5            **Re-Sequencing Claim.**  There is also not a scintilla of evidence in the record that

6    Wells Fargo adopted its current posting sequence with the intention of defrauding anyone.  To

7    the contrary, the record evidence on the thought processes of the pertinent Wells Fargo decision-

8    makers is that they thought the practice would be consistent with a customer preference for

9    maximizing the likelihood of payment of important items and would appropriately streamline

10   the bank's operations.  *See* Jolley Dec. Exs. 1 at 32; 2 at 39-40; 3 at 17-18.   Moreover, the

11   record shows that Wells Fargo's posting order is fully consistent with industry practice; indeed,

12   Wells Fargo's posting order is considerably more generous (in terms of likely impact on

13   overdraft fees) than it is required to be and more generous (by the same measure) than that

14   followed by many of its major competitors.  *See* James Dec. ¶¶ 4, 6.  Fraudulent intent cannot be

15   inferred solely from evidence that the bank also thought its revenues would be positively

16   affected by the practice.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir.

17   2002); *Ramey v. Socony Mobil Oil Co.*, 211 Cal. App. 2d 441, 454-55 (1962).

18           Moreover, the practice is not a secret.  Although plaintiffs attack the bank's

19   disclosure on the subject, the fact is that the Consumer Account Agreement *does* explicitly state

20   that the bank reserves the right to post in any order it chooses, and it both explicitly mentions

21   high-to-low order as an option the bank is entitled to follow and warns that such an approach

22   could lead to more overdraft fees.  Even more significantly, the bank gives every single

23   customer every single month an account statement that shows the actual order in which that

24   customer's transactions have been posted.  Zimmerman Dec. ¶ 7; James Dec. ¶ 7.   There is, in

25   short, absolutely no evidence that Wells Fargo's posting sequence represents a secret policy

26   designed to intentionally defraud customers.

27           Because intent is a necessary element of any cause of action for fraud, Wells

28   Fargo is entitled to summary judgment on that cause of action for this additional reason.

**F.      All of Plaintiffs' Claims Are Barred By Waiver and the Voluntary Payment Doctrine**

Plaintiffs' claims are also barred by the voluntary payment doctrine and/or by waiver.  When a consumer is charged a fee for a service and voluntarily pays that fee in an ongoing contractual relationship with the provider, he may not later challenge the payments he has made.  *See Lopez v. Washington Mutual Bank, F.A.,* 302 F.3d 900, 904 (9th Cir. 2002); *Endres v. Wells Fargo Bank,*2008 WL 344204, at *10 (N.D. Cal. Feb. 6, 2008); *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 78 (S.D.N.Y. 2006).  "The principle is elementary that if a person knowingly submits to a demand, however improper, by paying that which is demanded instead of invoking the remedy which the law affords him against such demand, such payment is voluntary and the recovery thereof cannot be had."  *Shelley v. Bd. of Trade of San Francisco*, 87 Cal. App. 344, 349 (1927); *see also Aebli v. Bd. of Educ. of City and County of San Francisco*, 62 Cal. App. 2d 706, 726 (1944) ("If, to avoid trouble facing him in the shape of a lawsuit or in any other form, [an individual] with full knowledge of the facts and not under compulsion but voluntarily pays out money, he has waived his right to contest the validity of the claim.").

In *Lopez,* the Ninth Circuit applied these principles in rejecting a challenge to a bank's use of consumers' direct deposits of Social Security benefits to cover overdrafts and overdraft fees assessed against their accounts. *Lopez,* 302 F.3d at 902-03.  The agreements governing the plaintiffs' accounts authorized the bank to assess overdraft fees. *Id.* at 903.  The agreement also pledged customers to pay the overdrawn amounts and fees back to the bank immediately.  *Id.* at 902-03.  The court found that the plaintiffs had consented explicitly to the bank's actions under the original account agreement, and then again consented implicitly by failing to close their accounts once the overdrafts in dispute had occurred, explaining that "each deposit to the account after an overdraft should be treated as a voluntary payment of a debt incurred." *Id.* at 904.  The court pointed out that:

> [P]laintiffs here were not forced to incur overdrafts.  Two of the named plaintiffs indicated that they understood the bank's overdraft policies and fully expected that their next deposit of SSI benefits would cover those costs.  The plaintiffs also remained free to close their accounts or change their direct deposit

instructions, and were therefore able to remove their benefits from
the bank's reach if they so desired.

*Id.* at 905.

The pertinent facts as to each of the plaintiffs – whom plaintiffs contend are
"typical" of the classes they represent – are as follows:

**Erin Walker**.   Walker challenges fees that she paid for overdrafts associated
with transactions she initiated between May 29 and June 1, 2007.  On June 4 and 5, 2007, eight
overdrafts and associated fees posted to Walker's account, and on June 5 the bank sent her a
letter separately notifying her of the overdrafts.  Jolley Dec. Exs. 16-17.  Although Walker
discovered the overdrafts by checking her account online (*id.* Ex. 15 at 91), she did nothing
about the situation for a full month.  On June 26, Wells Fargo wrote to her again, pointing out
that her account had been overdrawn for three weeks.  *Id.* Ex.18.  Finally, on or about July 9,
Walker went to a branch and spoke with a Wells Fargo banker, who agreed to forgive four of
her overdraft item fees, plus four separate continuous overdraft fees, for a total of $156.  She in
turn agreed to pay the outstanding overdraft balance and the remaining fees.  She left the
meeting, went to an ATM at another bank where she had an account, withdrew the funds, and
returned to deposit them in payment of the overdraft amount and remaining fees.  *Id.* Exs. 15 at
92-95, 98; 19.  She then conducted several additional transactions in the following months
before closing the account in December 2007.   *Id.* Exs. 15 at 97-99; 20.

**William Smith**.  Smith's overdrafts and fees were incurred in July 2007, and he
discovered them on July 13, 2007.  On July 16 and 17, he voluntarily transferred funds into his
account from another account to cover the overdrafts and fees.  He continued his banking
relationship with Wells Fargo thereafter.  *Id.* Exs. 10 at 17, 82-83; 21.

**Veronica Gutierrez**.   Gutierrez's challenged overdraft fees posted on October
13, 2006.  She learned of the overdrafts through notices sent to her by the bank, after which she
made transfers into her account to cover the overdrafts and fees.  Like the other plaintiffs, she
elected not to close her account but remained a Wells Fargo customer. *Id.* Exs. 13 at 85-86, 100-
101; 22; 23.

1    From these undisputed facts, it is plain that all three plaintiffs voluntarily paid the

2    overdraft fees they seek to challenge.  Indeed, Walker received tangible consideration for the

3    waiver of her claim when she accepted the bank's waiver of some of her assessed fees in return

4    for payment of the remainder.

5    For this additional reason, Wells Fargo is entitled to summary judgment against

6    as least the three named plaintiffs on all of their claims.  If the Court finds that these plaintiffs

7    must be viewed as "typical" of the classes they represent, Wells Fargo is entitled to judgment as

8    against both of those classes as well; if not, the classes should be decertified.

9    ### G.    Plaintiffs Cannot Prove Injury and Damages.

10    As discussed in detail in Wells Fargo's Motion to Decertify Classes, plaintiffs

11    have failed to generate a methodology through which they can prove that any class member was

12    actually injured by any of the practices challenged in this case.  Absent proof of such injury,

13    Wells Fargo is entitled to summary judgment on these claims.

14    This absence of proof is particularly acute with respect to plaintiffs' various

15    misrepresentation claims based on Wells Fargo advertisements, disclosures, and other

16    statements.  The analysis of plaintiffs' damages experts did not even attempt to identify

17    damages specifically attributable to any such misrepresentation.  Plaintiffs have no proof that

18    any misrepresentations were made uniformly to all members of either class.  Indeed, it is

19    undisputed that they were not – none of the named plaintiffs, who are supposedly "typical" of

20    these classes, themselves claim to have seen any of them.  *See* Wells Fargo's Motion for Partial

21    Summary Judgment on Plaintiffs' Misrepresentation Claims (Dkt. No. 176) at 5-8.[17]  It is

22    therefore beyond question that plaintiffs' damages analysis cannot be used as proof of injury

23    and damages to any customers who *were* exposed to these statements.  Since plaintiffs lack any

24    other evidence of injury and damages associated with such alleged misrepresentations, all of

25    their claims concerning them are subject to summary judgment for this additional ground.

26    _____

27    [17]    *See also* Motion to Decertify Classes at 24-25 (discussing undisputed evidence
       demonstrating limited distribution of materials that plaintiffs claim is misleading).

28

As demonstrated in the Motion to Decertify, plaintiffs' proof of injury and damages is fundamentally defective even as to claims that would apply uniformly to each class as a whole.  Simply put, plaintiffs' damages analysis does not actually measure either injury or damages *from the practices at issue in this case*.  They do not even prove actual injury – *i.e.*, actual payment of even $1 in overdraft fees – on the part of any class member.  There is accordingly a failure of proof as to these claims as well, and Wells Fargo is entitled either to summary judgment or to decertification of the classes.

## IV.    CONCLUSION

For the reasons set forth above, the Court should enter summary judgment for Wells Fargo and against plaintiffs on all causes of action in plaintiffs First Amended [Adjusted] Complaint.


DATED:  March 19, 2009                          Respectfully submitted,

                                                COVINGTON & BURLING LLP


                                                By:     /s/
                                                        David M. Jolley
                                                        Attorneys for Defendant
                                                        WELLS FARGO BANK, N.A.