Sonya D. Winner, SB # 200348
Lawrence A. Hobel, SB #73364
David M. Jolley, SB # 191164
Margaret G. May, SB # 234910
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: mmay@cov.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>WELLS FARGO & COMPANY, *et al.*,<br><br>  Defendants. | Civil Case No.: CV-07-5923 WHA (JCSx)<br><br>**REPLY MEMORANDUM OF DEFENDANT WELLS FARGO BANK, N.A. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ALL CAUSES OF ACTION**<br><br>Date:  April 30, 2009<br>Time:  8:00 a.m.<br>Dept.:  Courtroom 9<br><br>Honorable William H. Alsup |

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................. 1

II.    The "Factual Background" Section of Plaintiffs' Opposition Is Largely
       Irrelevant and Unsupported by the Record. ..................................................................... 1

III.   Plaintiffs' Opposition Fails to Rebut the Grounds for Summary Judgment Set
       Out in Wells Fargo's Motion. ........................................................................................... 6

       A.    Plaintiffs Cannot Prevail in Their Substantive Challenge Under the
             UCL to Wells Fargo's Order of Posting Debit-Card Transactions........................ 6

       B.    The Non-Misrepresentation Claims of the Re-Sequencing Class Are
             Barred By Consent................................................................................................. 8

       C.    Plaintiffs Lack Proof of Injury to Support the Including and Deleting
             Claim...................................................................................................................... 9

       D.    Plaintiffs Have Abandoned Their Substantive Challenge to Wells
             Fargo's Practice of Deleting Holds on Customer Funds in Determining
             Available Balances. ............................................................................................. 10

       E.    Plaintiffs' Conversion Claim Fails as a Matter of Law. ..................................... 10

       F.    The CLRA Does Not Apply to Overdrafts and Overdraft Fees. ......................... 12

       G.    Plaintiffs Have Not Come Forward With Evidence of Fraudulent
             Intent. ................................................................................................................... 12

       H.    Plaintiffs Do Not Dispute that Erin Walker's Claim is Barred by
             Voluntary Payment and the Remainder of Their Showing on This Issue
             is Inadequate. ....................................................................................................... 14

IV.    CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................1

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.*,
    566 F.2d 631 (9th Cir. 1978) ...................................................................................11

*Gasaway v. Northwestern Mut. Life Ins. Co.*,
    26 F.3d 957 (9th Cir. 1994) .....................................................................................14

*Hauk v. JP Morgan Chase Bank USA*,
    552 F.3d 1114 (9th Cir. 2009) .................................................................................12

*Hernandez v. Hilltop Fin. Mortgage, Inc.*,
    2007 WL 3101250 (N.D. Cal. 2007) .......................................................................12

*Jefferson v. Chase Home Fin.*,
    2008 WL 1883484 (N.D. Cal. Apr. 29, 2008)...................................................11, 12

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) .................................................................................13

*Lopez v. Washington Mutual Bank*,
    302 F.3d 900 (9th Cir. 2002) ...................................................................................15

*Moreland v. Las Vegas Metro. Police Dep't*,
    159 F.3d 365 (9th Cir. 1998) .....................................................................................1

*Morris v. BMW of North America, LLC*,
    2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ............................................................8

*Van Slyke v. Capital One Bank*,
    2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ............................................................8

*Van Slyke v. Capital One Bank*,
    503 F. Supp. 2d 1353 (N.D. Cal. 2007) ...................................................................12

*Vaughn v. Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) .................................................................................13

*Veliz v. Cintas Corp.*,
    2008 WL 4911238 (N.D. Cal. Nov. 13, 2008) ..........................................................3

| | |
|---|---|
| **STATE CASES** | **PAGE(S)** |
| *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226 (1995) | 13 |
| *Berry v. American Express Publ'g, Inc.*, 147 Cal. App. 4th 224 (2007) | 12 |
| *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) | 7 |
| *Engelken v. Justice Court*, 50 Cal. App. 157 (1920) | 14, 15 |
| *Flores v. Transamerica Homefirst, Inc.*, 93 Cal. App. 4th 846 (2002) | 9 |
| *Hood v. Santa Barbara Bank & Trust*, 143 Cal. App. 4th 526 (2006) | 11 |
| *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322 (1999) | 9 |
| *Lawrence v. Bank of America*, 163 Cal. App. 3d 431 (1985) | 11 |
| *McMillan v. Vischer*, 14 Cal. 232 (1859) | 14 |
| *Metropolitan Life Ins. Co. v. The San Francisco Bank*, 58 Cal. App. 2d 528 (1943) | 11 |
| *Ramey v. Socony Mobil Oil Co.*, 211 Cal. App. 2d 441 (1962) | 13 |
| *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005) | 12 |
| **STATUTES** | |
| Cal. Com. Code § 4303 | 7 |
| Cal. Com. Code § 11504(a) | 7 |

## I.  INTRODUCTION

The majority of plaintiffs' Opposition to this motion is consumed with a frantic effort to reargue a different motion – Wells Fargo's Motion for Partial Summary Judgment on Misrepresentation Claims – that has already been fully briefed, argued, and submitted.  And while that effort at reargument can and should be disregarded as improper, it ultimately adds nothing new on that motion.  Nor does the remainder of plaintiffs' Opposition refute the multiple grounds for summary judgment established in *this* motion.

## II.  The "Factual Background" Section of Plaintiffs' Opposition Is Largely Irrelevant and Unsupported by the Record.

Most of the "facts" discussed in plaintiffs' Opposition have little or nothing to do with the issues presented in this motion.  Indeed, many of plaintiffs' factual assertions – such as those about the compensation paid to Wells Fargo's CEO, the bank's overall "profits," or plaintiffs' conspiracy theory about a supposed "seven-step plan to increase overdraft fees" in 2001 and 2002 – have nothing to do with *any* issue in this case.  Such irrelevant factual assertions require no response, as summary judgment may be defeated only by a showing of genuine dispute as to *material* facts.  *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir. 1998); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").  However, some of plaintiffs' irrelevant factual assertions are clearly intended to confuse, and a brief response to those points is therefore provided below.  Subsequent sections will then turn to plaintiffs' limited response to the grounds for summary judgment asserted in Wells Fargo's motion.

*Misleading Portrayal of Online Account Reports*.  In an argument that appears central to their theory of the case (although not germane to the issues presented on *this* motion), plaintiffs assert that Wells Fargo misleads customers into believing that their transactions are posted in chronological order because of the way such transactions are shown to a customer online.  Opp. at 7-8.

To make this argument, plaintiffs rely on a doctored excerpt from a single piece of evidence – an online transaction activity page for the account of William Smith from July 2007.  The excerpt, which is presented on page 7 of plaintiffs' Opposition, shows only the

portion of the original page that lists transactions that have not yet posted to the account, each of which is explicitly identified as "pending." To the right, in the "balance" column, plaintiffs have inserted an arrow, with the words "newest" and "oldest," to indicate that the list should be read in reverse chronological order from the top down.[1] Those words, and the arrow, do not appear on the original document – and by inserting them, plaintiffs have covered up the fact that in the original document the "balance" column is *blank* for transactions that are merely pending. *Compare* Pl. Ex. 27.

Moreover, in excerpting the document, plaintiffs cut it off after the first few items, showing none of the *posted* transactions that are displayed on that same online page. Those posted transactions appear without the "pending" designation and *with* entries in the "balance" column, showing how each posted transaction affected the account balance. Plaintiffs do not claim – and could not claim – that those posted transactions appear in any order other than the *actual order in which they were posted to the account.* Thus, in examining this page, the customer would immediately see (a) which transactions are not yet posted to his account (designated as "pending," without balance calculations), and (b) the exact order in which all of his transactions have been posted to his account.[2] That same order is also shown on the customer's monthly account statement. *See* Jolley Dec. Ex. 21 (Dkt. 203).

This exhibit, and plaintiffs' argument concerning it, have nothing to do with the issues presented on this motion. Plaintiffs clearly supplied it in an effort to re-argue the Motion for Partial Summary Judgment. It does not support their position on either motion.

---

[1] Plaintiffs offer no evidence of the order in which Smith actually conducted these transactions. They just offer the bare assertion that the order shown for the pending transactions in the excerpt reproduced in their brief is "chronological." Plaintiffs also assert, again without citing any evidence, that the "same information" displayed on this page is also provided "to callers audibly" over the telephone and that it "could" also be communicated by "service representatives." Opp. at 8. None of these bare assertions is entitled to any weight on summary judgment in the absence of evidentiary support.

[2] Notably, the pending transactions that plaintiffs claim are shown in "chronological" order include a *credit.* Plaintiffs do not explain how customers would believe from reviewing this report that debits are posted in chronological order but that credits are not. It is undisputed that the impact of posting *both* debit-card transactions *and* credits in chronological order would be *more* overdraft fees, not fewer. Menenberg Dec. ¶ 17 & Ex. 1 at 11-12 (Dkt. 204).

1    ***Improper Declaration from Veronica Gutierrez.***  Regardless of what the online
2    report discussed above does and does not show, none of the named plaintiffs was injured by it.
3    Plaintiffs do not argue that Smith (who is not a member of the Re-Sequencing Class) was misled
4    by the way his transactions appeared online.  They do argue that Veronica Gutierrez was misled
5    by the portrayal of her transactions on her online account activity page (which plaintiffs have
6    not provided).  Opp. at 10, 14, 17.  This argument simply attempts to revisit the issue – lack of
7    standing by the named plaintiffs – that has already been briefed, argued, and submitted on Wells
8    Fargo's Motion for Partial Summary Judgment.  In opposing that motion, plaintiffs submitted no
9    declaration from Gutierrez in which she made any such claim.  They have now submitted such a
10   declaration in a belated effort to bolster their position on that motion.

11   This is clearly improper.  It is also unavailing.  During discovery, Gutierrez
12   provided verified answers to interrogatories that required her to identify any misrepresentations
13   by Wells Fargo that she claimed to have relied upon.  Her responses – which she reconfirmed as
14   accurate and complete in her deposition and never supplemented – made no mention of Wells
15   Fargo's online communications about her account.  Jolley Dec. Ex. 12; Declaration of Margaret
16   G. May Ex. 1 at 71-73.  She did testify that she believed debit-card transactions were posted to
17   her account immediately, but she also testified that Wells Fargo was not the source of that
18   understanding.  *Id.* at 47-48.  Indeed, she admitted that she had noticed, in viewing her account
19   online, that on at least some occasions transactions did *not* show up immediately.  *Id.* at 40-41.

20   "[P]arties cannot create issues of fact on summary judgment by submitting
21   declarations to contradict the declarant's deposition or other sworn testimony."  *Veliz v. Cintas*
22   *Corp.*, 2008 WL 4911238, at *8 n.12 (N.D. Cal. Nov. 13, 2008) (citing *Block v. City of Los*
23   *Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001)).  Here, Gutierrez's belated declaration is flatly
24   contradicted by both her deposition testimony and her verified interrogatory answers.

25   ***Irrelevant Discussion of Other Alleged Misrepresentations***.  Plaintiffs repeat
26   their arguments about alleged misrepresentations in brochures, educational guides, and other
27   materials.  Opp. at 8, 18.  None of these items is relevant to the issues presented on this motion.
28   Nor are they relevant to any *other* issue in this case, as the papers filed on the Motion for Partial

Summary Judgment show it to be undisputed that none of the named plaintiffs relied upon *any* of them. Indeed, although claiming that one document was given to Gutierrez, plaintiffs admit that she never read the portion they purport to challenge. Opp. at 10.

Seeking to muddy this issue, plaintiffs assert that they may pursue a claim based on a common course of conduct through which similar misrepresentations were made to the whole class, even if the specific form of those misrepresentations varied. Although, as Wells Fargo showed in its briefs on the prior motion, plaintiffs substantially overstate the extent to which Ninth Circuit law permits such a claim, they have presented no actual evidence in this case that the same or similar misrepresentations were in fact communicated to the class as a whole. Indeed, the only evidence in the record about actual communications of these supposed misrepresentations to class members is that none of the named plaintiffs saw or relied on *any* of them. If these plaintiffs are indeed "typical," the only possible conclusion is that there was no material impact of these supposed misrepresentations on the class as a whole.

***Mischaracterization of the Bank's Posting Practice.*** Plaintiffs assert (Opp. at 2) that Wells Fargo routinely posts "earlier occurring" debit card transactions to customers' accounts before "later occurring" checks and ACH transactions. This mischaracterizes the order in which transactions are posted and is clearly designed to confuse the Court.

There is no dispute about the sequence Wells Fargo uses in posting transactions to customers' accounts. *See* Declaration of Kenneth Zimmerman (Dkt. No. 42) ¶¶ 21-27. Wells Fargo sequences all debit-card purchase transactions, checks, and ACH transactions that are received for settlement and payment on a given day in a single group, regardless of the date when the customer originally initiated the transaction.[3] There is no bias in favor of settling later-occurring transactions before earlier-occurring ones.

This is illustrated by the transactions of plaintiff Gutierrez that are used as an example in the Court's Class Order (Dkt. No. 98), at 11-12. Those transactions, all of which

---

[3] This group is posted after (a) credits and (b) a separate group of cash debits, including ATM withdrawals and online transfers. Zimmerman Dec. ¶ 27.

1  posted to Gutierrez's account on October 10, 2007, included a check and seven debit-card
2  purchases. The "earliest occurring" from Gutierrez's standpoint was the check, which she wrote
3  on September 28. May Dec. Ex. 2. The debit-card purchases "occurred" (from her perspective)
4  on October 5-7. All of those transactions were submitted by the merchants or other payees for
5  settlement and payment on October 10 and were posted to her account that night. Zimmerman
6  Dec. ¶ 46. The check and debit-card purchases were posted in order from highest amount to
7  lowest – which caused the earliest of the transactions – the check – to be posted before all but
8  one of the debit-card purchases. *Id.* Ex. J.

9          ***Mischaracterization of Events in 2001 and 2002***. Plaintiffs assert that Wells
10 Fargo adopted a "seven-step plan to increase overdraft fees" in 2001-2002. Opp. at 3-4.
11 Plaintiffs elicited no testimony in discovery supporting their fanciful conspiracy theory about
12 the changes the bank made in its processes in 2001 and 2002, most of which they admit had
13 nothing to do with posting order.[4] They offer no support for their sweeping assertions about
14 these changes, beyond a handful of documents that provided estimates of potential revenue
15 impacts. Plaintiffs stop short (as they must) of asserting that those revenue numbers have
16 anything to do with any comparison between a high-to-low posting order and the chronological
17 order that plaintiffs seek. They also stop short (as again they must) of asserting that any named
18 plaintiff was affected by the alleged failure to notify customers of changes made during that
19 period. The only one of the three plaintiffs who had an account at the time, William Smith, is
20 by plaintiffs' own admission not a member of the Re-Sequencing Class; the other two plaintiffs
21 did not open their accounts until later. Jolley Dec. Ex. 6 at No. 16; May Dec. Exs. 3, 4 . There
22 have been no changes in the bank's posting practices in California since that time.

---

[4]    *Id.* at 4. One change did affect an aspect of posting order not at issue in this case, as Wells Fargo began to post debit-card transactions in the same group with checks instead of posting them in a separate group. This change was independent of the bank's earlier decision to post from highest amount to lowest and is not challenged in the complaint; nor has a class been certified to pursue any such challenge. Moreover, plaintiffs have never identified any basis upon which a customer could reasonably challenge the bank's decision to mix debit-card purchases with checks, which represent increasingly interchangeable modes of payment.

REPLY IN SUPPORT OF MOTION FOR SUMMARY      5
JUDGMENT ON ALL CAUSES OF ACTION
Civil Case No.: CV-07-5923 WHA (JCSx)

     ***Discussion of Irrelevant Complaints***.   Plaintiffs make much (Opp. at 5-6) of complaints Wells Fargo has received about overdraft fees, but fail to mention that those complaints are not about the practices challenged in this case.  Many are not even complaints but rather merely requests for fee waivers.  Even the items plaintiffs cherry-picked to cite in their Opposition do not address the practices at issue here, referring instead to things such as the timing of a deposit (Pl. Ex. 15), failure to terminate a previously authorized bill payment (Pl. Ex. 16), or the customer's unexpected expenses and own mistakes (Pl. Exs. 18, 19).

     In short, the "facts" plaintiffs identify in their Opposition are not even what plaintiffs claim them to be and are in any event not material to the issues on this motion.

### III.    Plaintiffs' Opposition Fails to Rebut the Grounds for Summary Judgment Set Out in Wells Fargo's Motion.

     The Argument section of plaintiffs' Opposition is again largely devoted to their claims about alleged misrepresentations that none of the named plaintiffs has standing to challenge.  This Reply returns to the grounds for summary judgment that this motion presents.

#### A.    Plaintiffs Cannot Prevail in Their Substantive Challenge Under the UCL to Wells Fargo's Order of Posting Debit-Card Transactions.

     Lacking standing to pursue a theory that Wells Fargo misled customers about how it posts debit-card transactions, plaintiffs can only prevail on the "re-sequencing" issue by showing that Wells Fargo's practice of posting debit-card transactions from highest amount to lowest is substantively unlawful.  Plaintiffs have identified no law that bars this posting practice, which is common in the industry.[5]  Instead, they argue only that California law does not expressly *permit* it and that it may therefore be condemned as "unfair."

     Plaintiffs take Wells Fargo to task for not disclosing at the outset of its discussion of the Uniform Commercial Code ("UCC") that the UCC provisions expressly authorizing a

---

[5]    Plaintiffs cite an FDIC study of small banks that found that only a quarter of those banks overall posted from highest amount to lowest (by itself a very large percentage for a practice plaintiffs claim to be unlawful).  Opp. at 20.  They fail to mention that the majority of the larger banks in that study posted from highest amount to lowest.  Pl. Ex. 1 at 11.  And they offer no rebuttal to Wells Fargo's showing that nearly all of the large national banks that are Wells Fargo's principal competitors (and which were not included in the FDIC study) post in this manner.  James Dec. ¶ 6 (Dkt. 202).

1   bank to post in any order it chooses do not apply to debit card transactions.  (In fact, Wells
2   Fargo's opening brief discussed that exclusion at considerable length).  But plaintiffs do not
3   dispute that for all transaction types it *does* cover, the UCC expressly permits a bank to post
4   transactions "in any order."  Cal. Com. Code § 4303(b); *see also* § 11504(a).  Nor do plaintiffs
5   cite any statute or other source that even hints at a legislative policy that debit cards should be
6   posted in any particular order, much less in the chronological order that plaintiffs seek.

7              Wells Fargo has shown that the exclusion of debit-card transactions from the
8   UCC had nothing to do with any legislative views about posting order.  Mot. at 5-7.  Plaintiffs
9   argue that differences between debit-card transactions and checks *could* lead a legislator to
10  choose to require them to be posted in a different order.  But plaintiffs do not – and cannot –
11  argue that any such arguments represent the actual reason debit-card transactions are excluded
12  from the UCC (which excludes such transactions from all its provisions, not simply those on
13  posting order)  The drafting history is clear on this point.  *Id.*

14             As Wells Fargo predicted (Mot. at 7-8), plaintiffs seize on the comment to the
15  UCC indicating that a bank should not choose a posting order that "maximize[es]" overdrafts
16  "for the sole purpose" of increasing fees, Cal. Com. Code § 4303, Calif. cmt. 7, and argue that
17  one of the reasons for Wells Fargo's posting order was a desire to increase fee revenues.  But
18  Wells Fargo has shown that its posting order does not "maximize" fees, *see* Mot. at 8-9 (citing
19  evidence), and plaintiffs offer no evidence (or even argument) to rebut that showing.  Wells
20  Fargo has also shown that revenues were not the "sole purpose" of its posting order; rather, the
21  order was also motivated by factors such as the desire (recognized as valid in the UCC
22  comment) of enhancing the likelihood that a customer's checks for high-value items, such as
23  mortgages or tax payments, will be paid rather than rejected.  *Id.* (citing evidence).  Plaintiffs
24  make no effort to rebut that showing either.  Absent any dispute about these facts, plaintiffs
25  cannot invoke the exception suggested in the comment.

26             Finally, plaintiffs' general argument that the bank's posting order can be found to
27  be "unfair" ignores this Court's holding that "the rationale of *Cel-Tech* [*Communications, Inc. v.*
28  *L.A. Cellular Tel. Co.,* 20 Cal. 4th 163 (1999)] nonetheless compels the conclusion that the

REPLY IN SUPPORT OF MOTION FOR SUMMARY                7
JUDGMENT ON ALL CAUSES OF ACTION
Civil Case No.: CV-07-5923 WHA (JCSx)

unfairness prong [of the UCL] must be tethered to some legislative policy, otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike." *Morris v. BMW of North America, LLC*, 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7, 2007); *see also Van Slyke v. Capital One Bank*, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007) (same). The Court should reject plaintiffs' invitation to depart from this sound rule. Here, the clear legislative policy is that posting order is left to the discretion of the bank, and plaintiffs' claim to the contrary therefore fails.

### B. The Non-Misrepresentation Claims of the Re-Sequencing Class Are Barred By Consent.

In responding to Wells Fargo's showing that its posting order – already permitted by statutory policy – is also authorized by contract, plaintiffs argue that the contractual provision is inadequate because it fails to state definitively that in all cases transactions will (as opposed to "may") be posted from high to low. But plaintiffs cannot dispute, and therefore do not even mention, Wells Fargo's showing (Mot. at 11) that any such definitive statement would itself be inaccurate in many instances, given that some debits (cash transactions) are posted in a separate group. Nor do they attempt to distinguish the case law upholding the adequacy of a disclosure using the word "may" in a situation of this kind *Id.*. Plaintiffs also have no answer to Wells Fargo's showing (*id.* at 10-11) that the *actual* language of this section of the Account Agreement – as opposed to plaintiffs' distorted characterization of that language – uses the word "may" in the same permissive sense it is used in the UCC, rather than in the predictive sense.

Plaintiffs next argue (Opp. at 9) that this section of the Agreement is somehow nullified because it conflicts with an earlier section that states that the Bank may debit an account "on the day an Item is presented … or at an earlier time based on notification received by the Bank that an Item drawn on your Account will be presented for payment or collection." Pl. Ex. 38 at 26. This section has nothing to do with posting order; rather it addresses how the bank calculates the "available" balance that is used "for purposes of making a decision to dishonor an Item for insufficiency or unavailability of funds." *Id*. It explains that in determining whether, for example, to accept a check for payment on a given day, the bank may take into account pending debits of which it is aware that have not yet posted to the account,

1  thus warning the customer that the bank may consider a pending debit for this purpose even
2  before the debit is posted.  The next section in the agreement, entitled "Order of Posting," then
3  explains how the bank orders transactions when they are actually posted to the account.  *Id.* at
4  27.  There is no conflict between these sections that could obviate plaintiffs' consent to both.
5         Finally, plaintiffs for the first time assert (without explanation) that this provision
6  of the Consumer Account Agreement is "unconscionable."  They cite no evidence whatever in
7  support of this argument.  To avoid enforcement here, plaintiffs must satisfy (among other
8  requirements) the stringent standard for substantive unconscionability, which "focuses on the
9  terms of the agreement and whether those terms are so one-sided as to shock the conscience."
10 *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999) (internal quotes
11 omitted).  Plaintiffs make no effort to demonstrate that this standard is met here.  The only two
12 cases they cite, *Kinney* and *Flores v. Transamerica Homefirst, Inc.*, 93 Cal. App. 4th 846, 854
13 (2002), both involved one-sided arbitration clauses that permitted only one party to compel
14 arbitration.  The provision at issue here, in contrast, does not involve a normally bilateral right
15 that the contract renders one-sided.  Plaintiffs offer neither explanation nor evidence in support
16 of an argument that substantive unconscionability exists here.  Indeed, since this provision
17 merely authorizes something that the law already permits, it is difficult to imagine how
18 substantive unconscionability could possibly be shown.
19     **C.**    **Plaintiffs Lack Proof of Injury to Support the Including and Deleting Claim.**
20        There is no proof of actual injury to plaintiff Erin Walker stemming from
21 "including and deleting."  Plaintiffs assert that there is an issue of disputed fact as to whether
22 Walker relied on an available balance that was affected by "including and deleting."  But that is
23 beside the point.  As Wells Fargo demonstrated in its Motion, plaintiffs lack proof that Walker
24 suffered any actual *injury* as a result of such reliance, because several of her overdraft fees were
25 waived by Wells Fargo, and plaintiffs have never presented evidence that the fees she *paid* were
26 attributable to "including and deleting."  Plaintiffs have made no effort to supply such evidence
27 in their Opposition.  Indeed, they do not even address the point, which is therefore conceded.
28

1   Plaintiffs also fail to respond to Wells Fargo's showing that plaintiff Smith did
2  not *reasonably* rely on any balance affected by "including and deleting." Again, plaintiffs
3  simply offer evidence that Smith relied on such a balance. But Wells Fargo showed that this
4  reliance was unreasonable because exactly the same thing had happened to Smith previously
5  and the cause had been explained to him. Mot. at 15. Smith was thus fully aware that his
6  available balances might be affected by the including and deleting of pending transactions.
7  Plaintiffs offer no answer to this showing. This issue is accordingly also conceded.

8   Given plaintiffs' failure to come forward with evidence to dispute Wells Fargo's
9  showing that neither Walker nor Smith suffered actual injury as a result of reasonable reliance
10 on inaccurate available balance information, summary judgment must be entered on their
11 "including and deleting" claims. And with no ability to prove injury to either class
12 representative (Gutierrez is not a member of this class, Jolley Dec. Ex. 6 at No. 15), plaintiffs
13 cannot proceed with these claims as to the class either. In any event, their proof of injury to
14 class members is equally deficient. As discussed in more detail in Wells Fargo's Reply on its
15 Motion to Decertify, plaintiffs persist in confusing their very specific burden to show *injury* to
16 all members of the class with the different standard that applies in proving aggregate *damages* to
17 the class. Plaintiffs have no common proof of injury to this class, a fact that requires entry of
18 summary judgment or, at a minimum, decertification of the class.

19  **D.   Plaintiffs Have Abandoned Their Substantive Challenge to Wells Fargo's
         Practice of Deleting Holds on Customer Funds in Determining Available
20       Balances.**

21  Plaintiffs offer no defense of their alternative theory that holds on customer funds
22 must be kept in place for 30 days. *See* Jolley Dec. Ex. 7 at No. 14. As Wells Fargo has shown,
23 any such policy would have significant adverse effects on many class members. Mot. at 16. As
24 this point is now conceded, summary judgment should be entered on this claim.

25  **E.   Plaintiffs' Conversion Claim Fails as a Matter of Law.**

26  Plaintiffs do not dispute that their conversion claim requires a showing that a
27 practice is unlawful and that contractual consent would bar any such claim (although they do
28 argue that such consent is absent). Their arguments on those points are discussed above.

Plaintiffs ridicule the long-standing principle of California that a bank customer may not assert a conversion claim based on a "taking" by the bank of funds from his account because, as a formal matter, the relationship between the bank and the depositor is one of debtor and creditor. *Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637-38 (9th Cir. 1978); *Lawrence v. Bank of America*, 163 Cal. App. 3d 431, 437 n.2 (1985); *Metropolitan Life Ins. Co. v. The San Francisco Bank*, 58 Cal. App. 2d 528, 534 (1943). But plaintiffs are able to cite no authority purporting to overrule this long-standing principle of California law. Most of the cases plaintiffs cite on this point are from different states and do not purport to interpret or apply California law. Neither of the California cases they cite addressed the issue.[6]

Plaintiffs' reliance on an out-of-context excerpt from a section of the Consumer Account Agreement on joint accounts is also unavailing. The Agreement specifically warns that the presumptions about account "ownership" set out there are subordinate to state law. Pl. Ex. 38 at 32. And the section on joint ownership that plaintiffs excerpt in their Opposition (at 24) merely addresses the bank's right to "rely solely on its records" in identifying who has the right to enjoy the benefits of a jointly held account. Nothing in the Account Agreement purports to override state law on who *as between the bank and the accountholder* technically "owns" funds in the account for purposes of any conversion claim.

Plaintiffs assert that the separate bar on conversion claims for "overcharges" (*see* Mot. at 18) does not apply here because Wells Fargo's pricing for overdrafts is based on the number of overdraft items. Yet plaintiffs do not dispute that their core theory is that Wells Fargo is overcharging customers when they overdraft their accounts. Gutierrez, for example, does not dispute that she owed Wells Fargo a fee for overdrafting her account; she merely challenges the amount she was charged for that overdraft. *See*, Opp. at 4-5 (asserting that Wells Fargo charged "over 1,000% interest" for one overdraft by charging multiple overdraft fees).

---

[6] *Jefferson v. Chase Home Fin.,* 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008), did not involve payment of fees from deposit accounts, and the defendant did not challenge the plaintiffs' allegation of an ownership interest. *Id.* at *1-2, 19. *Hood v. Santa Barbara Bank & Trust*, 143 Cal. App. 4th 526 (2006), addressed only the issue of whether the plaintiff's conversion and other state-law claims were subject to federal preemption.

### F. The CLRA Does Not Apply to Overdrafts and Overdraft Fees.

Plaintiffs have little to say in support of the application of the CLRA to their claims. They suggest that this Court should simply ignore *Berry v. American Express Publ'g, Inc.*, 147 Cal. App. 4th 224 (2007), and they themselves ignore this Court's decision approving and applying *Berry* in *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1358-59 (N.D. Cal. 2007). But they offer no reason for the Court to depart from these precedents. The cases plaintiffs cite are either clearly distinguishable or do not mention the issue at all.[7]

Plaintiffs' only other argument is that *Berry* does not apply because Wells Fargo takes the position that overdrafts are not "credit." This argument overlooks the fact that plaintiffs *do* argue that overdrafts represent a form of credit. *See, e.g.*, Opp. at 5 (referring to overdraft fees as "interest"). More importantly, the exclusion recognized in *Berry* was not just for "credit," but also for "money." 147 Cal. App. 4th at 230. Wells Fargo's motion focused on the latter exclusion, yet plaintiffs do not even mention it. Regardless of whether overdrafts are or are not "credit," they clearly do represent the payment of "money" on behalf of a customer to pay a transaction initiated by that customer. And plaintiffs do not assert that any separate goods or services are provided. Under *Berry* and *Van Slyke*, therefore, summary judgment should be entered on plaintiffs' CLRA claims.

### G. Plaintiffs Have Not Come Forward With Evidence of Fraudulent Intent.

On the issue of intent, plaintiffs offer the predictable argument that the issue of intent is often not amenable to summary judgment. Opp. at 17-18. But that does not eliminate plaintiffs' obligation to come forward with actual evidence of intent; absent such evidence,

---

[7] *Hernandez v. Hilltop Fin. Mortgage, Inc.*, 2007 WL 3101250, at *6 (N.D. Cal. 2007) held that the CLRA covered the mortgage loans at issue because the plaintiffs "did not seek just a loan; they sought defendants' services in developing an acceptable refinancing plan"). The cases cited in *Hernandez* similarly involved separate services over and above the mere provision of credit. In *Van Slyke*, 503 F. Supp. 2d at 1359, this Court expressly declined to follow *Jefferson* (which is in any event distinguishable) and pointed out that the issue was not addressed in *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005). Nor was it addressed in *Hauk v. JP Morgan Chase Bank USA,* 552 F.3d 1114 (9th Cir. 2009), in which the plaintiff did not even appeal the district court's dismissal of the CLRA claim.

summary judgment is as appropriate on this as on any other issue. *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980).

Fraudulent intent requires both the knowledge that a communication made to the plaintiff was false and intent that the plaintiff rely on it. *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). To avoid summary judgment, plaintiffs must produce evidence supporting these particular elements. They have failed to do so.

On the issue of re-sequencing, plaintiffs have identified no false statement made to any of the named plaintiffs about the bank's posting order, much less that Wells Fargo knew that any such statement was false.[8] And plaintiffs offer no answer to – indeed, do not mention – the fact that Wells Fargo's posting order is far from secret and can be clearly seen in the account statements that Wells Fargo provides to every customer. Nor have plaintiffs offered any evidence of an intent that anyone rely on any false statement on this subject. Evidence that Wells Fargo earns more in overdraft fees than it would under a different posting order might support a finding of intent to earn fees; it does not, by itself, support a finding of intent to defraud anyone. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002); *Ramey v. Socony Mobil Oil Co.*, 211 Cal. App. 2d 441, 454-55 (1962).

On the issue of "including and deleting," plaintiffs state repeatedly that Wells Fargo "intentionally" withheld disclosure on this subject. Opp. at 11, 16, 18. On each occasion, however, they cite only the same excerpt from one deposition, in which the witness simply conceded that the specific sequence of events that constitutes "including and deleting" is not explicitly mentioned in the bank's formal disclosures. The witness went on to testify that he did not know if it was communicated to customers in other ways. Pl. Ex. 4 at 77-78. (In fact, plaintiff Smith was told about it in a call to the phone bank. May Dec. Ex. 5 at 50-56.) The

---

[8] Plaintiffs refer to statements allegedly made to unidentified *others* in the class that transactions are "immediately" withdrawn from a customer's account, but they offer no evidence that any such statements were made with an intent that anyone interpret or rely on them in the way plaintiffs hypothesize. Nor do they address Wells Fargo's showing that the documents containing such statements had extremely narrow distribution.

1   witness did *not* testify that Wells Fargo intentionally chose not to disclose it.   In bringing this
2   motion, Wells Fargo pointed out that:

> "there is not a scintilla of evidence that anyone at Wells Fargo
> deliberately chose *not* to disclose it, much less that they made
> such a choice in the hopes that customers would rely on inaccurate
> available balances and incur overdraft fees.  Indeed, plaintiffs
> have elicited no evidence that Wells Fargo decision-makers ever
> had occasion, prior to this lawsuit, even to consider the issue."

Mot. at 20.  Plaintiffs have offered no evidence on any of these points, and summary judgment is therefore appropriate.  *Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir. 1994) (summary judgment affirmed where non-moving party offered "mere allegations or denials" in place of factual evidence supporting her opposition).

### H.   Plaintiffs Do Not Dispute that Erin Walker's Claim is Barred by Voluntary Payment and the Remainder of Their Showing on This Issue is Inadequate.

Plaintiffs offer no response (indeed, once again, do not even mention) Wells Fargo's showing that plaintiff Erin Walker's claim is barred because she negotiated a resolution of her disputed fees pursuant to which Wells Fargo waived several fees and she voluntarily paid the remainder.  Mot. at 22-24.   This point is accordingly conceded, and Wells Fargo is entitled to summary judgment on Walker's claim on this ground alone.

Nor is there merit to plaintiffs' argument that the voluntary payment doctrine does not apply unless the plaintiff knew at the time he made the payment that he had a valid legal claim.  Plaintiffs cite no authority for this proposition, and there is none.  All three of the plaintiffs admit that they knew something was "wrong" (from their perspective) at the time they made deposits to their accounts to cover their overdrafts.  *See* Mot. at 23 (citing evidence).  Nor do plaintiffs offer any evidentiary support for their vague speculation that there might have been some kind of special reason why these payments were not really "voluntary."  Such unsupported speculation is clearly insufficient to defeat summary judgment. *Gasaway*, 26 F.3d at 960.

The cases plaintiffs cite offer no support for their arguments.  One, *McMillan v. Vischer*, 14 Cal. 232 (1859), is a 150-year-old case in which the language plaintiffs rely on appears, not in the holding, but in the recitation of one party's *argument*, which the court rejected.  The other, *Engelken v. Justice Court*, 50 Cal. App. 157 (1920), merely held that the

1  enforced satisfaction of a court judgment did not constitute a voluntary payment.  *Id.* at 159.
2  Neither case addressed a situation in which a consumer voluntarily paid a fee as part of an
3  ongoing contractual relationship and then sought to challenge that payment later.
4  　　　　　The Ninth Circuit's decision in *Lopez v. Washington Mutual Bank*, 302 F.3d 900
5  (9th Cir. 2002) is both considerably more recent and directly on point.  Plaintiffs try to
6  distinguish *Lopez* by making up facts (asserting that the *Lopez* plaintiffs "were fully aware of
7  and apparently intended to use the overdraft as a line of credit," Opp. at 23) that are nowhere to
8  be found in the decision.  Nor is there any merit to plaintiffs' argument that they are not
9  challenging fees taken from their accounts as the *Lopez* plaintiffs were.  That is exactly what
10 they are challenging.  *Lopez* is directly on point, and for all three named plaintiffs – as well as
11 any other class members who voluntarily made payments to their accounts to cover their
12 overdraft fees – the voluntary payment doctrine bars their claims.

13 **IV.    CONCLUSION**

14 　　　　　For the reasons set out above and in Wells Fargo's opening papers, the Court
15 should enter summary judgment for Wells Fargo on all of plaintiffs' causes of action.

17 DATED:  April 16, 2009　　　　　　　　　　Respectfully submitted,

18 　　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP

20 　　　　　　　　　　　　　　　　　　　　　By:  _____/s/_____
21 　　　　　　　　　　　　　　　　　　　　　　　Sonya D. Winner
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　　　WELLS FARGO BANK, N.A.