IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, *et al.*, | No. C 07-05923 WHA |
| Plaintiffs, | |
| v. | **ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| WELLS FARGO & COMPANY, *et al.*, | |
| Defendants. | |

**INTRODUCTION**

In this certified consumer class action, defendant Wells Fargo Bank, N.A. moves for partial summary judgment. For the reasons stated below, Wells Fargo's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiffs filed this suit against Wells Fargo on November 21, 2007, alleging Wells Fargo improperly assessed overdraft charges on transactions. Wells Fargo also allegedly published inaccurate available-balance information thereby increasing the likelihood that overdraft charges would be applied to customers. The three named class representatives — Veronica Gutierrez, William Smith, and Erin Walker — were customers of Wells Fargo. On September 11, 2008, two classes were certified by the Court (Dkt. 98):

> The "re-sequencing" class was defined as "all Wells Fargo customers from November 15, 2004 to June 30, 2008, who incurred overdraft fees on debit card transactions as a result of the bank's practice of sequencing transactions from highest to lowest."

\*       \*       \*

> The "including and deleting" class was defined as "all Wells Fargo California customers with consumer checking accounts from November 15, 2004 to June 30, 2008, who incurred overdraft fees on debit card transactions after dissemination by Wells Fargo of available-balance information that once reflected and later deleted a debit card transaction"

The September 11 order also denied a motion for summary judgment filed by Wells Fargo.

Plaintiffs assert six claims: (1) violation of the Consumer Legal Remedies Act, California Civil Code Section 1750; (2) violation of the Unfair Business Practices Act, California Business and Professions Code Section 17200; (3) violation of the Unfair Business Practices Act, California Business and Professions Code Section 17500; (4) fraud; (5) negligent misrepresentation; and (6) conversion.

According to the complaint, Wells Fargo made misrepresentations in marketing materials and customer contractual agreements regarding the accuracy and reliability of the available-balance information. Seven examples of such documents are set forth in the complaint under the heading "'Inaccurate Balance' Class Factual Allegations" (which is now limited and defined as the including-and-deleting class): (1) Welcome to Your New Account Jacket; (2) Consumer Account Fee and Information Schedule, p. 38; (3) Get your finances into shape with our resources (brochure); (4) Checking, Savings, and More (brochure); (5) Wells Fargo Account Activity Questions (webpage); (6) Checking Account statement envelope, postmarked August 24, 2007; and (7) Television and Radio Commercial Campaign (Compl. ¶ 27).

Wells Fargo propounded interrogatories to probe whether plaintiffs relied on any challenged Wells Fargo statements:

> Describe in detail each and every CHALLENGED STATEMENT of WELLS FARGO, whether written or oral, including the nature and/or content of the CHALLENGED STATEMENT and the circumstances (including, but not limited to, date and/or time period, LOCATION, PARTICIPANTS, and manner) under which YOU contend such CHALLENGED STATEMENT occurred.

(Jolley Exh. A at 4). "Challenged statement" was defined as "each separate disclosure, failure to disclose, advertisement, or other written or oral statement or omission challenged by you in

2

this case" *(id.* at 2). Responding to the interrogatories, plaintiffs stated that they lacked personal knowledge of any such statements except their online account balance. Using the exact same language, plaintiffs Smith and Walker, class representatives for the including-and-deleting class, both responded to the interrogatory as follows:

> I do not have personal knowledge of the statements except that I regularly reviewed my account online and checked my balance. I relied on that information provided by Wells Fargo as being accurate.

(Jolley Exh. B at 3, Exh. C at 3). Similarly, plaintiff Gutierrez, class representative for the re-sequencing class, stated in response to the interrogatory:

> I do not have personal knowledge of the statements except that I regularly reviewed my account online and checked my balance. I relied on that information provided by Wells Fargo as being accurate. I also looked at the jacket that I received when I signed up that discussed the benefits to online banking to manage your finances and check account balances.

(Jolley Exh. D at 3). In addition, the interrogatory responses for the three plaintiffs stated that "my counsel is aware of other statements and this response includes statements known by my counsel" and followed this with a list of the seven documents at issue. No supplemental interrogatory responses were provided prior to the close of fact discovery on February 20, 2009. All plaintiffs confirmed at their depositions that their respective interrogatory answers were accurate and complete.

Wells Fargo later served a follow-up interrogatory:

> For every advertisement, marketing piece, or other statement by Wells Fargo that YOU challenge in this case, identify each individual member of the class for whom YOU have evidence or actual knowledge that the individual class member actually reviewed and relied upon the advertisement, marketing piece, or other statement at issue, and for each such class member, list all such advertisements, marketing pieces, or other statements for which YOU have such evidence or actual knowledge, and identify and describe the particular evidence or actual knowledge that supports YOUR response.

(Jolley Exh. E at 3). Objecting that the interrogatory called for a legal conclusion and attorney work product, plaintiffs' counsel vaguely responded that they challenge a variety of advertisements, marketing materials and other statements made by Wells Fargo. Without identifying specific material, plaintiffs' counsel then generally listed types of

3

statements challenged (Jolley Exh. F at 3). In the same response, plaintiffs' counsel stated that "[o]ther than individual class members identified and deposed by Defendants, Plaintiffs are aware of no specific individual class members that specifically 'relied' on a specific advertising, marketing or other statement made by Wells Fargo" (*ibid*).

Wells Fargo now moves for partial summary judgment on the grounds that plaintiffs have failed to show reliance on any alleged misrepresentations made by Wells Fargo in the seven documents cited in the complaint or in any other advertising or marketing material. In its motion, Wells Fargo does not raise other alleged misrepresentations embodied in the available-balance figures.

**ANALYSIS**

**1.  LEGAL STANDARD.**

Under FRCP 56(c), summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. The evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The moving party "has both the initial burden of proof and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

**2.  PLAINTIFFS' CLRA, SECTION 17200, SECTION 17500, FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS.**

The basis of Wells Fargo's motion is that plaintiffs cannot prevail as to their CLRA, Section 17200, Section 17500, fraud and negligent misrepresentation claims, because plaintiffs never relied on the seven documents identified in the complaint or any other material

4

purportedly containing misrepresentations made by Wells Fargo. Wells Fargo seeks partial summary judgment on plaintiffs' CLRA, Section 17200, fraud and negligent misrepresentation claims as far as those claims address any alleged misrepresentations other than specific available-balance figures and on plaintiffs' Section 17500 claim in its entirety.

Wells Fargo asserts that injury and causation are required elements of each of plaintiffs' claims. Wells Fargo further maintains that plaintiffs must prove they relied on the misrepresentation to prove causation of an injury. Reliance is required for plaintiffs' claims under the CLRA, Section 17200, and Section 17500 and for their claims of fraud and negligent misrepresentation. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292–93 (2002) (CLRA); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193–94 (S.D. Cal. 2005) (Sections 17200 and 17500); *Mirkin v. Wasserman*, 5 Cal. 4th 1089 n.2, 1092 (1993) (fraud and negligent misrepresentation). It is not necessary that the injured party's reliance on the misrepresentation be the sole or dominant factor to influence the party's conduct, but the misrepresentation must be a substantial factor. Whether the injured party relied on a misrepresentation or whether that reliance was justified and reasonable are questions of fact. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).[1]

### A. Plaintiff Smith.

Wells Fargo maintains that plaintiff Smith has not relied on any alleged misrepresentations. Nothing in the opposition (or the complaint for that matter) refutes this. The opposition does not point to any evidence that Smith read, much less relied on, the seven documents cited as examples of misrepresentations in the complaint. The opposition does refer to additional alleged misrepresentations that are in other advertising and marketing material not cited to in the complaint. Nevertheless, there is no evidence on the record for this motion that Smith relied on those additional materials either.

The primary argument in plaintiffs' opposition is that he and the other plaintiffs relied on their available balance. But this is not the issue. The seven documents set forth in the

---

[1] "Causation" and "reliance" are often used interchangeably in the case law. *See, e.g., Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008).

5

1  complaint and any additional advertising or marketing material that plaintiffs challenge are the
2  focus of Wells Fargo's motion.  In fact, Wells Fargo repeatedly states that its motion does *not*
3  address plaintiffs' reliance on the available-balance figures, and this is one of the reasons
4  Wells Fargo seeks only partial summary judgment at this juncture (*see, e.g.,* Br. at 2).
5  Therefore, this order does not address the available-balance issue.  As such, plaintiffs' assertion
6  of reliance on their available balance does not save their claims regarding other alleged
7  misrepresentations.  Plaintiffs also argue that the class representatives relied on non-disclosures,
8  but non-disclosures are distinct from affirmative misrepresentations such as those purportedly
9  in the seven documents at issue.  Finally, plaintiffs contend that this issue has already been
10 decided in their favor in a prior order, but a review of the record shows this is not so.[2]

11     Wells Fargo cites to plaintiff's interrogatory responses as evidence that there was no
12 reliance on any alleged misrepresentations.  Smith responded to the interrogatory that he had
13 no personal knowledge of any challenged statements (besides his available balance).

14     For misrepresentations to be actionable under the asserted claims, the plaintiff must
15 have relied on them.  While the opposition asserts that there is "substantial evidence that the
16 Class Representatives have been exposed to, and have relied upon, certain of the
17 misrepresentations and non-disclosures," plaintiffs do not cite to this "substantial evidence"
18 for Smith (Opp. at 16).  It is not enough to set forth the misrepresentations in hope that some
19 of the absent class members relied on them.  And assertions of knowledge by counsel are not
20 probative.  Reliance is required by the plaintiffs.  As the nonmoving party, plaintiffs may not
21 rest upon mere allegations or denials of Wells Fargo's evidence but, instead, must produce

---

[2] Contrary to plaintiffs' assertion, the prior orders herein did not explicitly address plaintiffs' lack of reliance on the alleged misrepresentations in the seven documents currently at issue.  The September 11 order focused on the alleged misrepresentation embodied in the inaccurate available-balance information provided to customers.  In fact, when discussing preemption, the prior order merely stated in a footnote that "Wells Fargo does state that 'causation of injury is a required element for each of plaintiffs' six claims'" (Dkt. 98 at 14 n.4). Otherwise, the order did not delve into reliance or causation except to discuss available-balance information. For example, the section of the order addressing plaintiff Walker's standing noted it was sufficient for standing purposes that Walker declared that she checked and relied on her available-balance information during the period she was charged overdraft charges.  Also, plaintiffs have not opposed defendant's argument that the available-balance figures are not advertising material and thus this point is conceded.

6

admissible evidence that shows there is a genuine issue of material fact for trial. *See Nissan*, 210 F.3d at 1102.

Because plaintiff Smith has not read or in any way relied on any challenged statement, then he cannot establish that he entered into any transactions as a result of them. In other words, causation is lacking. *See Laster*, 407 F. Supp. 2d at 1194 (finding plaintiffs failed to show there was causation when "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements [or] allege they entered into any transaction *as a result* of those advertisements") (emphasis in original).

Counsel argue that a class action may be based on an overarching fraudulent scheme involving both misrepresentations and non-disclosures. For support, plaintiffs cite to *Negrete v. Alliance Life Ins. of North America*, 238 F.R.D. 482 (C.D. Cal. 2006). That decision does not aid plaintiffs. *Negrete* was not necessarily a decision where no class representatives had seen or relied upon the alleged misrepresentations. In fact, unlike here, the plaintiffs there stated that defendants used standardized misleading documents and that they like other class members had *received and read* such documents. In any event, that decision dealt with reliance in the context of an "overarching fraudulent scheme" in a RICO action.

Reliance has been inferred on a class-wide basis in consumer class actions where defendants *made a standardized sales pitch with the intent that they rely thereon. See, e.g., Vasquez v. Superior Court*, 4 Cal. 3d 800, 814–15 (1971); *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 362–63 (1976). In *Vasquez*, the defendant seller memorized a standard statement containing the misrepresentation and recited it to every member of the class. 4 Cal. 3d at 811–12. In *Occidental Land*, the misrepresentations were in a public report that each purchaser was obligated to read and to state in writing that he or she had done so. 18 Cal. 3d at 358. The California Supreme Court's later summary of the holdings in these two cases is instructive:

> *When the same material misrepresentations have actually been communicated to each member of a class*, an inference of reliance arises as to the entire class. While this does mean that actual reliance can be proved on a class-wide basis when each class member has read or heard the same misrepresentations, nothing in

7

> either case so much as hints that a plaintiff may plead a cause of
> action for deceit without alleging actual reliance.

*Mirkin*, 5 Cal. 4th at 1095 (emphasis in original).

Here, however, plaintiffs' counsel have supplied no plausible method of class-wide proof from which one could conclude that plaintiff Smith relied on any of the seven. More to the point, Wells Fargo has shown that Smith did not read or rely on any advertising or marketing material.

In sum, plaintiff Smith has not established reliance or causation regarding any challenged Wells Fargo advertising and marketing materials. Accordingly, Wells Fargo's motion for partial summary judgment as to the individual claims asserted by plaintiff Smith under the CLRA, Section 17200, and Section 17500 and for fraud and negligent misrepresentation as to alleged misrepresentations is **GRANTED**.

### B. Plaintiff Walker.

Wells Fargo also contends that plaintiff Walker cannot prove reliance because she never saw or relied on any alleged misrepresentations. Plaintiffs, however, point to Walker's deposition testimony and argue she was "exposed to and read" the Welcome to Wells Fargo Jacket, one of the seven documents at issue (Opp. at 19). Her deposition testimony on this was:

> Q. What is it?
>
> A. It is the welcome jacket I received on the day that I opened my accounts.
>
> \*      \*      \*
>
> Q. Can you recall how long after you opened your account you read it again?
>
> A. I read it the same day. I read it probably a few more times after that.
>
> Q. Why did you read it a few more times after that?
>
> A. To look at what Wells Fargo has to offer.
>
> Q. For any other purpose?
>
> A. No.

8

1  (McCune Exh. 48 at 20:15–17, 21:11–19). Wells Fargo counters that the deposition testimony
2  does not undercut Walker's verified interrogatory responses, which her sworn deposition
3  testimony confirmed, that she did not rely on any alleged misleading statement in any document.
4  While Walker does not testify that she specifically relied on the welcome jacket, she does state
5  that she read the welcome jacket a number of times.

6  If a consumer reads or hears a misleading statement on multiple occasions, then he or she
7  may or may not remember later the extent to which it was relied on. This is especially true as to
8  half-truths and omissions, for we cannot expect consumers to remember relying on something
9  that was left out. The law, therefore, cannot expect the consumer to always remember chapter
10 and verse the extent to which the consumer relied on a particular statement among many.

11 Where the whole point of a brochure is to disclose key points and to invite the consumer
12 to rely on it, the law should permit the inference and presumption, subject to rebuttal on a
13 case-by-case basis, that the brochure was relied on, at least when the consumer reviewed the
14 brochure. The disclosures in the welcome jacket were intended by the bank to be relied on by
15 consumers. A presumption of reliance is warranted. *See Vasquez*, 4 Cal. 3d at 814–15. At trial
16 perhaps, Wells Fargo can try to rebut the presumption as to Walker. The record as to Walker is
17 not sufficient for summary judgment. Wells Fargo's motion for partial summary judgment as to
18 plaintiff Walker's individual claims under the CLRA, Section 17200, and Section 17500 and for
19 fraud and negligent misrepresentation relating to alleged misrepresentations in the welcome
20 jacket is **DENIED**.

21 Putting the welcome jacket aside, no evidence, however has been presented showing that
22 Walker read or relied on any misrepresentations in the six other documents cited in the
23 complaint or any other advertising or marketing material such as that discussed in the opposition.
24 Accordingly, Wells Fargo's motion for partial summary judgment as to plaintiff Walker's
25 individual claims under the CLRA, Section 17200, and Section 17500 and for fraud and
26 negligent misrepresentation relating to alleged misrepresentations other than those in the
27 welcome jacket is **GRANTED**.
28

9

C.     **Plaintiff Gutierrez**.

Plaintiffs concede "that it is true that Plaintiff is not asserting that Plaintiff Gutierrez relied on those seven specific documents" (S.J. Opp. at 17). Instead, plaintiffs argue that Wells Fargo's common conduct supports an inference of reliance. As explained above, this order declines to extend a class-wide inference but Gutierrez is entitled to an inference of reliance for those materials she read.

Gutierrez responded to an interrogatory that she had no personal knowledge of any challenged statements (besides her available balance). She stated she "looked at" the welcome jacket (one of the seven documents identified in the complaint). But she does not go so far as to say she relied on it. Gutierrez also stated in her deposition that she read parts of the consumer account agreement, but Wells Fargo points out she did not read the parts relevant to this action. It is not reasonable to expect Gutierrez to remember exactly which parts of the document she read and then relied on. Accordingly, for summary judgment purposes, we must infer Gutierrez relied on the welcome jacket and the consumer account agreement. The jury may or may not eventually accept the inference, even without any rebuttal, although defendant shall be free to try to use other evidence indicating no reliance. Wells Fargo's motion for partial summary judgment as to plaintiff Gutierrez's individual claims under the CLRA, Section 17200, and Section 17500 and for fraud and negligent misrepresentation relating to alleged misrepresentations in the welcome jacket and consumer account agreement is **DENIED**.

Besides the welcome jacket and consumer account agreement, there is no evidence that Gutierrez read or relied on any misrepresentations in any other advertising or marketing material. As such, Wells Fargo's motion for partial summary judgment as to plaintiff Gutierrez's individual claims under the CLRA, Section 17200, and Section 17500 and for fraud and negligent misrepresentation relating to alleged misrepresentations other than those in the consumer account agreement and welcome jacket is **GRANTED**.

\*          \*          \*

After the briefing and argument on this pending motion was completed, plaintiffs' counsel submitted the deposition testimony of plaintiff Gutierrez stating that she read the

10

brochure called "Checking, Savings, and More" published by Wells Fargo. This was in connection with a separate motion. To this, Wells Fargo objected that the material was untimely and should not be considered as part of the record on the instant motion. This objection is **SUSTAINED**. The material should have been presented weeks ago. No excuse has been given for failure to follow the rules. This is without prejudice to bringing a proper motion for reconsideration.

\*          \*          \*

Because Walker and Gutierrez's claims, at least for some of the advertising and marketing material, are still in play, they have a sufficient stake in the litigation to proceed as class representatives. The Court will not decertify the class based on the alleged shortfall in their personal story. Their claims are typical so as to allow counsel to try to prove the class relied on misrepresentations in Wells Fargo's materials. This, however, may be beside the point inasmuch as the including-and-deleting class will be decertified for other reasons as set forth in the accompanying order.

**CONCLUSION**

For the foregoing reasons, Wells Fargo's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. This order does not reach plaintiffs' claims regarding alleged misrepresentations embodied in the available balance provided to class members under an including-and-deleting scenario or plaintiffs' substantive challenge to the order in which Wells Fargo posts debit card transactions. This order also does not reach any class-wide claims but is confined to certain claims by the named plaintiffs as individuals.

**IT IS SO ORDERED.**

Dated: May 5, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE