Richard M. Heimann (State Bar No. 063607)
E-mail: rheimann@lchb.com
Barry R. Himmelstein (State Bar No. 157736)
E-mail: bhimmelstein@lchb.com
Michael W. Sobol (State Bar No. 194857)
E-mail: msobol@lchb.com
Jordan Elias (State Bar No. 228731)
E-mail: jelias@lchb.com
Mikaela Bernstein (State Bar No. 261301)
E-mail: mbernstein@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
E-mail: rdm@mwtriallawyers.com
Jae (Eddie) K. Kim (State Bar No. 236805)
E-mail: jkk@mwtriallawyers.com
McCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER, and WILLIAM SMITH, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; and DOES 1 through 125,<br><br>Defendants. | Case No. C 07-05923-WHA (JCSx)<br><br>**PLAINTIFFS' OPPOSITION TO WELLS FARGO'S MOTION IN LIMINE NO. 3 TO PRECLUDE TESTIMONY OF UNTIMELY DISCLOSED AND IMPROPERLY DESIGNATED WITNESSES**<br><br>Judge Assigned: Hon. William H. Alsup<br>Trial Date: April 26, 2010 |

## I. INTRODUCTION

Wells Fargo's Motion in Limine No. 3 should be denied. Plaintiffs' disclosures of their potential trial witnesses fully complied with Rule 26 and the Court's applicable scheduling Orders. Moreover, as explained below, there is no basis for excluding any of the six witnesses identified in Wells Fargo's motion.

## II. THE SIX WITNESSES

Wells Fargo asserts in conclusory fashion that six of the individuals on Plaintiffs' witness list have nothing relevant to say. To the contrary, all six are likely to provide testimony that will have a tendency to prove material facts. Therefore, Plaintiffs should be allowed to call them.

### 1. Eugenie Espinosa

Ms. Espinosa is a California Wells Fargo customer who retained the account statements and communications that she received from Wells Fargo. Plaintiffs wish to call her solely to authenticate one of her bank statements. If Wells Fargo will stipulate to the authenticity of the bank statement in question, then Plaintiffs will not need to call Ms. Espinosa.[1]

### 2. Carrie Tolstedt

During the class period, Ms. Tolstedt served as Wells Fargo's Regional President for California and as head of regional banking in the United States. At her deposition, she testified that she was aware of the bank's practice of re-sequencing customers' debit transactions from highest to lowest amount and that she attended meetings in which executives discussed the practice. She testified that customers want checks to be processed first. In addition to these topics, Ms. Tolstedt's testimony will be valuable because she held supervisory authority over

---

[1] The statement in question was presented to the Court at the April 24, 2010 hearing. It was presented because the Court asked for evidence that Wells Fargo previously sequenced customers' debit transactions from low-to-high. Since this case began, Wells Fargo has played "hide the ball" regarding its sequencing practices prior to its change to high-to-low. Wells Fargo argues that Plaintiffs did not timely disclose Ms. Espinosa's bank statement, but that is simply not the case. Plaintiffs disclosed the bank statement when it became apparent to Plaintiffs that it might be relevant—that is, when it became apparent that Wells Fargo and its witnesses were unwilling or unable to clearly describe Wells Fargo's sequencing practices during that time period. Thus, Plaintiffs' disclosure of the document was timely under Rule 26. In any event, Wells Fargo fails to explain how it could possibly be unduly prejudiced by the admission of a bank statement that Wells Fargo itself issued and which Plaintiffs identified a year ago.

branch operations in California at the time Wells Fargo changed its overdraft policies. In addition to explaining how the changes affected bank operations and customers, Ms. Tolstedt is expected to describe what information concerning overdraft fees Wells Fargo provided to its bank branch employees who dealt directly with customers. She is also expected to testify about customer complaints regarding overdraft fees.

### 3. Tim Smith

Mr. Smith is Vice-President in charge of finance, product delivery and services in Wells Fargo's consumer deposit group. He is expected to testify about the financial forecasts and results that Wells Fargo used in connection with its decision to change its overdraft policies. Mr. Smith is also expected to testify as to the earnings Wells Fargo subsequently derived from its scheme to reorder debit transactions to maximize profits at its customers' expense.

### 4. Howard Atkins

Mr. Atkins, Wells Fargo's CFO, is well-positioned to testify about how overdraft fees affected the bank's balance sheet. Given his responsibility for monitoring revenue flow and projected earnings, Mr. Atkins should be able to situate the overdraft fee scheme in the context of the bank's wider operations, and explain to the Court how different overdraft fee arrangements would have affected the bank's finances. Mr. Atkins has a unique vantage point on corporate financial strategy, and his knowledge bears directly on Plaintiffs' claims.

### 5. John Stumpf

As CEO of Wells Fargo, Mr. Stumpf will be able to testify about Wells Fargo's corporate philosophy, ethical guidelines and approach to customer service. He is likely to have knowledge of the intent behind Wells Fargo's overdraft practices, and their effect on consumers. Indeed, Mr. Stumpf served as the bank's Regional President in California when Wells Fargo changed its overdraft policies, and he was copied on significant e-mail correspondence relating to the changes. Plaintiffs are entitled to examine him on these and other topics.

### 6. Paul Hazen

Mr. Hazen is an important witness because he was CEO of Wells Fargo when it was acquired by Norwest Bank. He is expected to testify about the changes former Norwest

executives implemented at Wells Fargo that resulted in a different overdraft policy. He is also expected to lay a foundation for certain exhibits and provide factual information concerning the demographics of Wells Fargo's customers before and after the Norwest/Wells Fargo acquisition.

### III.     ARGUMENT

####      A.     Plaintiffs Disclosed Their Potential Trial Witnesses In a Timely Manner.

Plaintiffs served their final list of potential trial witnesses on May 8, 2009, nearly a full year before the start of the upcoming trial. *See* Declaration of Roger Heller in Opposition to Wells Fargo's Motion in Limine No. 3 ("Heller Decl."), Ex. A. Based on the previous June 2009 trial date, Plaintiffs' disclosure was timely under Rule 26(a)(3), which requires that such disclosure be made at least 30 days prior to trial, and was timely under the existing schedule set by the Court. After the trial date was continued, the Court issued a scheduling Order in connection with the new trial date, which has subsequently been revised. The applicable scheduling Order (Docket No. 282) required the parties to exchange updated witness and exhibit lists by May 19, 2010. Plaintiffs informed Wells Fargo, by email on May 19, 2010, that they were not making any changes to their May 8, 2009 potential trial witness list. *See* Heller Decl., Ex. B. Any suggestion that Plaintiffs' witness disclosure was untimely is thus wholly without merit.

Wells Fargo claims that, under Rule 37, the Court should exclude six of the witnesses that Plaintiffs listed in their Rule 26(a) disclosures. However, the plain language of Rule 37 establishes that Plaintiffs have more than satisfied the disclosure requirements. Rule 37 provides that, "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or a trial…." Fed. R. Civ. P. 37(c)(1) (emphasis added). Wells Fargo admits that Plaintiffs listed *all six* potential trial witnesses in their Rule 26 disclosures. *See* Mot. at 4 (noting that plaintiffs disclosed the name of four of the witnesses in supplemental Rule 26(a)(1) disclosures, and the other two pursuant to Rule 26(a)(3)). The penalties contemplated by Rule 37 only take effect if a party "fails to . . . identify a witness *as required by Rule 26(a)* or (e) . . ." Fed. R. Civ. P. 37(c)(1) (emphasis added). Having fully complied with Rule 26, plaintiffs cannot have violated Rule 37.

Attempting to avoid this result, and the plain meaning of the rules, Wells Fargo nevertheless claims that the witnesses in question—all, with the exception of Ms. Espinosa, current and former Wells Fargo employees—were not "disclosed in a timely manner." Mot. at 4. This is incorrect. Pursuant to Rule 26(a)(3), and consistent with the Court's applicable scheduling Orders, Plaintiffs disclosed the witnesses more than 30 days before trial. Wells Fargo would have the Court impose a novel rule—alien to the Federal Rules—requiring *all* potential trial witnesses—*both known and unknown*—to be disclosed in a party's Rule 26 initial disclosures. Wells Fargo ignores that litigants generally learn relevant information during discovery, including the identity of potential witnesses, and that a party's claims and strategy can change between initial disclosures and trial.[2] Thus, Rule 26(a)(3) provides that a party need not disclose its potential trial witnesses until 30 days before trial. *See*, *e.g.*, *Sarantis v. ADP, Inc.*, 2008 WL 4057007, at *6 (D. Ariz. Aug. 28, 2008) (refusing to exclude trial witnesses and noting that, in the absence of a court order setting a particular deadline for pre-trial disclosures, such disclosures are due 30 days before trial, and no earlier).

**B.** **Plaintiffs Are Entitled to Call Wells Fargo's Executives.**

The Court should also reject Wells Fargo's argument that its executives' testimony will not be relevant to Plaintiffs' claims. The executives' testimony should be admitted if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Adv. Cmt. Note to Fed. R. Evid. 401 (1972 Proposed Rules). As noted above, the executives in question—Ms. Tolstedt, Mr. Stumpf, and Mr. Atkins—are expected to provide unique insight into nature and development of the practices

---

[2] Here, Wells Fargo failed to identify the five Wells Fargo employees at issue in its initial disclosures, and Plaintiffs identified them as potential witnesses only through discovery. Wells Fargo fails to explain how Plaintiffs could have possibly been obligated to identify these witnesses any earlier than they did, or how Wells Fargo could possibly be unduly prejudiced by the timing of their disclosure when they are all current and former Wells Fargo employees. As for Ms. Espinosa, Plaintiffs had no reason to believe that her testimony or bank statement might be relevant until it became apparent that they could not get a straight answer from Wells Fargo and its witnesses regarding Wells Fargo's prior, low-to-high sequencing practices.

1  at issue, Wells Fargo's decisions to change such practices, Wells Fargo's motives for changing
2  such practices, and the impact of Wells Fargo's practices and the changes thereto. Moreover, to
3  the extent that the executives claim ignorance as to any of these issues, that would also be
4  relevant because it would either undermine the witnesses' (and Wells Fargo's) credibility, or
5  indicate that executives were asleep at the wheel on a matter of substantial concern to the bank
6  and its customers. Because these witnesses' testimony is likely to be probative of material facts,
7  it should be allowed.

8  Moreover, Wells Fargo completely fails to specify any undue prejudice that could
9  possibly result from these witnesses' trial testimony, particularly given that these are all Wells
10  Fargo employees. On the other hand, not allowing Plaintiffs to call these witnesses could
11  prejudice Plaintiffs' ability to prove their claims.

12  Wells Fargo's argument that Plaintiffs are improperly trying to call "apex"
13  witnesses is without merit. Mot. at 4-7. "Generally, a claimed lack of knowledge on behalf of
14  the deponent does not alone provide sufficient grounds for a protective order. Moreover, the fact
15  that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper
16  discovery." *WebSideStory, Inc. v. NetRatings, Inc*., 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6,
17  2007) (citations omitted). Here, Wells Fargo makes no showing that its executives are
18  unavailable or that their expected testimony—which is plainly relevant—would be duplicative.
19  Wells Fargo's reliance on *Abarca v. Merck & Co., Inc*., 2009 WL 2390583 (E.D. Cal. Aug. 3,
20  2009), is unwarranted. That case did not concern proposed trial witnesses following the close of
21  discovery, nor did it prevent the CEO there from testifying at trial. Rather, it simply held that the
22  CEO's deposition was "not timely given the limited number of Merck employee (or former
23  employee) depositions that have been completed" at an early stage of the litigation. *Id*. at *6; *see
24  also id*. at *7 (ruling applied only "at this juncture").

25  Allowing the Wells Fargo executives to testify will ensure that the Court has
26  access to all relevant facts and arguments in rendering judgment.

27
28

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Wells Fargo's Motion in Limine No. 3.

Respectfully submitted,

Dated: April 9, 2010                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By:  */s/ Michael W. Sobol*
        Michael W. Sobol

Richard M. Heimann (State Bar No. 063607)
Barry R. Himmelstein (State Bar No. 157736)
Michael W. Sobol (State Bar No. 194857)
Jordan Elias (State Bar No. 228731)
Mikaela Bernstein (State Bar No. 261301)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
Jae (Eddie) K. Kim (State Bar No. 236805)
McCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

*Attorneys for Plaintiffs and the Class*