IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER, and WILLIAM SMITH, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and DOES 1 through 125,<br><br>Defendants. | No. C 07-05923 WHA<br><br>**ORDER SUMMARIZING RULINGS ON MOTIONS *IN LIMINE*** |

At the final pretrial conference held on April 19, 2010, the following rulings on the parties' motions *in limine* were set forth:

**1.     WELLS FARGO'S MOTION *IN LIMINE* #1**

With respect to the expert testimony of Dr. Mandell, the motion is **DENIED**. There is enough in the record to show that Dr. Mandell is sufficiently qualified to express an expert opinion on financial literacy and consumer perception. Wells Fargo's criticisms of his expert report go to the weight of his testimony, not its admissibility. Effective cross-examination will be Wells Fargo's ammunition. This ruling, however, is without prejudice to Wells Fargo objecting at trial to individual questions that fall outside the scope of Dr. Mandell's asserted qualifications.

As for Wells Fargo documents that are not the subject of the individual misrepresentation claims of the named class members, the undersigned has given full consideration to the majority

opinion in *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009). In the *Tobacco* decision, the California Supreme Court interpreted the effect of Proposition 64 on class actions brought under California unfair competition law. As explained in *Tobacco*, Proposition 64 was directed at "unscrupulous layers who exploited the generous standing requirement of the UCL to file 'shakedown' suits to extort money from small businesses." *Id.* at 32 (citation omitted). As such, the "intent of California voters was to limit such abuses by 'prohibiting private attorneys from filing lawsuits for unfair competition *where they have no client who has been injured in fact.*" *Ibid.* (citation omitted) (emphasis added). As such, Proposition 64 amended Section 17204 of the California Business & Professions Code to authorize suits by any person "who has suffered injury in fact and has lost money and property as a result of such unfair competition[,]" rather than (as allowed prior to the amendment) any person "acting for the interests of itself, its members or the general public[.]" *Id.* at 31. Thus, the effect of Proposition 64 was to "prevent uninjured private persons from suing for restitution on behalf of others." *Ibid.* (citation omitted).

In the instant case, there is no dispute that the named plaintiffs have "live" claims alleging misrepresentation under California unfair competition law. As such, this is not a situation where "uninjured private persons" are "suing for restitution on behalf of others[,]" or where a lawsuit has been filed where "no client has been injured in fact." In other words, the abuses targeted by Proposition 64 are not present in the instant litigation.

Additionally, Wells Fargo's argument that the class-wide misrepresentation claims (and the exact documents they pertain to) must be limited to those asserted by the named plaintiffs is *not* supported by the *Tobacco* decision. The *Tobacco* decision stated that "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, *but not identical*, interests *depends not on standing, but on an assessment of typicality and adequacy of representation.*" *Id.* at 34 (emphasis added). Moreover, "there is nothing in . . . Proposition 64 that purports to alter accepted principles of class action procedure that treat the issue of standing only to the class representative and not the absent class members[.]" *Id.* at 35. Here, the named plaintiffs clearly have standing to bring misrepresentation claims under California unfair competition law based

upon certain allegedly misleading documents (specifically, the Wells Fargo welcome jacket and consumer account agreement). As such, having met the "injury in fact" requirement created by Proposition 64, the named plaintiffs may properly present claims on behalf of others with "similar, but not identical, interests[,]" even though the exact documents they may have *personally* seen and relied upon are but a subset of a larger collection of allegedly misleading documents disseminated to the class. So long as these other allegedly misleading documents contain "similar" misrepresentations to those in the welcome jacket and consumer account agreement, they will not held inadmissible for the reasons set forth in Wells Fargo's motion.

Accordingly, Wells Fargo's motion to exclude such documents is **DENIED**. This denial, however, will be without prejudice to renewed objections at trial targeting individual documents do not contain alleged misrepresentations similar to those at issue in the welcome jacket and consumer account agreement.

### 2. WELLS FARGO'S MOTION *IN LIMINE* #2

This motion involved a number of documents proffered by plaintiffs. They will be addressed one-by-one. With respect to the FDIC report, it is not inadmissible on hearsay grounds under the "public records and reports" exception of FRE 803(8), and it is not inadmissible on relevance grounds. The determination of relevance will depend upon other evidence presented at trial, how broadly the market is defined, and who the competitors are — the determination will be blow-by-blow, play-by-play during trial, with each paragraph in the report being evaluated individually. As such, the motion with respect to the FDIC report is **DENIED** without prejudice to Wells Fargo renewing its objections at trial.

As for the Consumer Reports exhibits and the Moebs Survey, both are inadmissible as hearsay. No hearsay exception exists for these documents. Moreover, they were not relied upon in any expert reports. As such, the motion with respect to the Consumer Reports exhibits and the Moebs Survey is **GRANTED**. The Bank of America press release, however, is another matter. For the press release, the Court will wait and see how this particular document gets worked into the give and take at trial before evaluating its admissibility. Accordingly, the motion with respect to the Bank of America press release is **DENIED** without prejudice to renewal at trial.

Finally, with respect to all objections pertaining to the release in the *Smith v. Wells Fargo* settlement, the following general rule will govern: If an item of evidence has relevance only to the claims in the *Smith* case, plaintiffs should not attempt to put it into evidence. If, however, plaintiffs have a good-faith basis for believing that evidence has probative value to the issues in the instant case, plaintiffs may attempt to admit it. The fact that a piece of evidence does double duty and is relevant to the claims in *Smith* and the instant case does not — without more — warrant its exclusion. The proffered evidence, however, must have independent probative value for an issue in the instant case to be admissible.

### 3. WELLS FARGO'S MOTION *IN LIMINE* #3

This motion involved six potential trial witnesses designated by plaintiffs. They will be addressed one-by-one. With respect to Ms. Carrie Tolstedt, plaintiffs offered (at the pretrial conference) to have Ms. Tolstedt appear by deposition. Wells Fargo was amenable to this proposal. As such, the motion as to Ms. Tolstedt is **DENIED AS MOOT**. This denial is without prejudice to Wells Fargo objecting to specific designations from Ms. Tolstedt's deposition during trial. Given this ruling, plaintiffs agreed not to call Mr. John Stumpf, Mr. Howard Atkins, and Mr. Paul Hazen. As such, the motion as to these three potential witnesses is **DENIED AS MOOT**. With respect to Mr. Tim Smith, while plaintiffs' Rule 26(a)(1) disclosures should have been supplemented as soon as counsel knew that they were likely to call him, since he still works for Wells Fargo and the bank has known under Rule 26(a)(3) for nearly a year that he would be called to testify at trial, the late disclosure is harmless and the motion as to Tim Smith is **DENIED**. Finally, with respect to Ms. Eugenie Espinoza, she can be called by plaintiffs for the limited purpose of authenticating her Wells Fargo bank statement. While she — like Mr. Smith — should have been disclosed earlier, she was nevertheless disclosed one year ago, and therefore the late disclosure was harmless. The motion with respect to Ms. Espinoza is **DENIED**.

### 4. PLAINTIFFS' MOTION *IN LIMINE* #1

With respect to evidence proffered by Wells Fargo pertaining to the practices of other banks, plaintiffs' motion to exclude such evidence is **DENIED**. Wells Fargo will be allowed to put in evidence of what they thought the rest of the industry was doing. One of the reasons why this

4

evidence is relevant is that it arguably informs customers' reasonable expectations about custom and usage and what they would expect when dealing with a bank like Wells Fargo. As for plaintiffs' objections pertaining to the missing Norwest Study, the objections were withdrawn at the final pretrial conference.

## 5. PLAINTIFFS' MOTION *IN LIMINE* #2

One aspect of this motion targeted OCC and FDIC regulations, interpretive letters, and other related materials. As explained at the final pretrial conference, since these documents conceivably explain what Wells Fargo believed was the industry practice or what customers would be expecting, the evidence is relevant, and the motion is **DENIED**.

A separate aspect of this motion was whether Wells Fargo would be allowed to offer evidence to support their defense of preemption. Since the Court merely denied Wells Fargo's motion for summary judgment on the issue of preemption (plaintiffs did not move for summary judgment on the preemption issue), Wells Fargo *may* support its preemption argument with relevant evidence. As such, the motion with respect to preemption is also **DENIED**.

## 6. PLAINTIFFS' MOTION *IN LIMINE* #5

Two of Wells Fargo's expert witnesses were targeted by this motion. *First*, with respect to Mr. Christopher James, the motion is **DENIED** without prejudice to question-by-question objections at trial. *Second*, the motion with respect to Mr. Paul Carrubba is **DENIED** without prejudice to question-by-question objections at trial. The reasons behind these rulings mirror those set forth for plaintiffs' expert, Mr. Mandell. Just as Mr. Mandell will be allowed to testify and be subjected to cross-examination about his purportedly "unsupported" opinions, so too will Mr. James and Mr. Carrubba.

**IT IS SO ORDERED.**

Dated: April 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE