1  Richard M. Heimann (State Bar No. 063607)
   *E-mail: rheimann@lchb.com*
2  Michael W. Sobol (State Bar No. 194857)
   *E-mail: msobol@lchb.com*
3  Roger Heller (State Bar No. 215348)
   *E-mail: rheller@lchb.com*
4  Mikaela Bernstein (State Bar No. 261301)
   *E-mail: mbernstein@lchb.com*
5  LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
6  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
7  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
8
   Richard D. McCune (State Bar No. 132124)
9  *E-mail: rdm@mwtriallawyers.com*
   Jae (Eddie) K. Kim (State Bar No. 236805)
10 *E-mail: jkk@mwtriallawyers.com*
   McCUNE & WRIGHT, LLP
11 2068 Orange Tree Lane, Suite 216
   Redlands, CA 92374
12 Telephone: (909) 557-1250
   Facsimile: (909) 557-1275
13
   *Attorneys for Plaintiffs and the Class*
14

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17

18 VERONICA GUTIERREZ, ERIN            Case No. C 07-05923-WHA (JCSx)
   WALKER, and WILLIAM SMITH, as
19 individuals and on behalf of all others   **CLASS COUNSEL'S NOTICE OF**
   similarly situated,                   **MOTION AND MOTION FOR AN**
20                                        **AWARD OF ATTORNEYS' FEES AND**
                    Plaintiffs,          **COSTS; MEMORANDUM OF POINTS**
21                                        **AND AUTHORITIES**
   v.
22                                        Date:         December 16, 2010
   WELLS FARGO BANK, N.A.,               Time:         8:00 a.m.
23                                        Courtroom:    9
                    Defendant.           Judge Assigned:  Hon. William H. Alsup
24

25

26

27

28

CLASS COUNSEL'S MOTION FOR AN AWARD OF
                                         ATTORNEYS' FEES AND COSTS; MPA
                                         CASE NO. C 07-05923 WHA (JCSX)

1

**TABLE OF CONTENTS**

2

Page

3    NOTICE OF MOTION AND MOTION ............................................................................... 1

4    MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

     I.      INTRODUCTION ................................................................................................ 1

5    II.     BACKGROUND ................................................................................................. 2

6          A.     Class Counsel Agrees To Represent Plaintiffs In Risky, Uncertain
                Litigation. ........................................................................................... 2

7          B.     The Commencement Of The Case And the Litigation Before Trial. ......... 6

8                 1.      The Pleadings Stage ....................................................... 6

9                 2.      Class Certification .......................................................... 6

10                3.      Overcoming Wells Fargo's Attack on the Class
                     Representatives ............................................................... 7

11                4.      Successfully Uncovering Key Facts in this Case Through
                     Discovery ....................................................................... 7

12                5.      Successfully Fending Off Wells Fargo's Motion Attack on
                     the Eve of The Original Trial Date. ................................. 8

13                6.      Assembling the Team of Plaintiffs' Experts ................... 8

14         C.     Pre-Trial Proceedings and the Trial. ................................................... 8

15         D.     The Class Prevails At Trial And The Court Awards $203 Million in
                Restitution and Important Injunctive Relief. ...................................... 10

16         E.     Post Trial, Judgment, and the Appeal. ................................................ 11

      F.     Class Counsel's Total Lodestar And Costs. ........................................ 11

17   III.    ARGUMENT .................................................................................................. 12

18         A.     Class Counsel Is Entitled to An Award of Attorneys' Fees Under
                the Common Fund Doctrine ................................................................ 12

19                1.      The Court Should Award Fees Based on a Percentage-of-

20                        the-Fund. ....................................................................... 13

21                       a.     A Fee Award Based on the Ninth Circuit's 25-
                              Percent Benchmark is Fair and Reasonable. ...... 14

22                       b.     A Lodestar-Multiplier Cross-Check Confirms the
                              Reasonableness of an Award of 25% of the Common

23                                 Fund. ..................................................................... 17

24                 2.      Alternatively, Class Counsel Are Entitled to an Award
                     Representing a Multiplier of Their Lodestar. .................. 18

25                       a.     Class Counsels' Lodestar is Reasonable. ........... 19

                    b.     A Significant Multiplier is Warranted ................ 21

26         B.     Class Counsel is Entitled to an Award of Attorneys' Fees, Pursuant

27                   to Section 1021.5, For the "Significant Benefit" They Conferred on
                Consumers. ........................................................................................ 22

28

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

C.    Class Counsel are Entitled to Reimbursement for Their Out-of-
Pocket Nontaxable Costs..........................................................................24

4

D.    The Class Representatives Are Entitled to Participation Awards For
Their Considerable Efforts and Demonstrated Commitment to the
Class. ......................................................................................................25

5

6

IV.    CONCLUSION ......................................................................................................25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adderley v. Nat'l Football League Players Ass'n*,
2009 U.S. Dist. LEXIS 115742 (N.D. Cal. Nov. 23, 2009).......................................... 25

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
1991 WL 427893 (S.D. Cal. May 6, 1991)............................................................... 15

*Ballen v. City of Redmond*,
466 F.3d 736 (9th Cir. 2006)................................................................................... 17

*Beasley v. Wells Fargo Bank*,
235 Cal.App.3d 1407 (1991).................................................................................. 23

*Blum v. Stenson*,
465 U.S. 886 (1984)....................................................................................... 13, 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................ 12, 13, 14

*Castaneda v. Burger King Corp.*,
2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010)...................................... 15, 16

*Caudle v. Bristow Optical Co.*
224 F.3d 1014 (9th Cir. 2000)................................................................................ 20

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)............................................................................................... 12

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal.App.4th 663 (2006)................................................................................... 23

*Corriea, et al., v. Wells Fargo & Co. et al.*,
Case No. GCG 04-436819................................................................................... 2, 6

*County of Colusa v. California Wildlife Conservation Bd.*,
145 Cal.App.4th 637 (2006)............................................................................. 23, 24

*Create-A-Card, Inc. v. Intuit, Inc.*,
Case No. C 07-06452 WHA................................................................................... 19

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000)........................................................................... 19, 20

*Garner v. State Farm Mut. Auto. Ins. Co.*
2010 WL 1687829 (N.D. Cal. Apr. 22, 2010)......................................................... 15

*Graham v. DaimlerChrysler*,
34 Cal.4th 553 (2005)..................................................................................... 17, 24

*Hanlon v. Chrysler Group*,
150 F.3d 1011 (9th Cir. 1998).................................................................... 13, 17, 18

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)..................................................................................... 24

*Hassler v. Sovereign Bank*,
374 Fed.Appx. 341 (3d Cir. 2010).......................................................................... 3

*HCL Partners LTD. Partnership v. Leap Wireless Intern, Inc.*,
2010 WL 4156342 (S.D. Cal., October 15, 2010)................................................... 24

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................ 15, 20

*In re Activision Sec. Litig.*
723 F.Supp. 1373 (N.D. Cal. 1989) ......................................................................... 15

*In re Cenco Inc. Securities Litigation*,
519 F.Supp. 322 (N.D. Ill. 1981) ............................................................................. 15

*In re Connecticut General Life Ins. Co.*,
1997 WL 910387 (C.D. Cal. Feb. 13, 1997) ............................................................ 25

*In re Corel Corp. Inc. Sec. Litig.*,
293 F.Supp.2d 484 (E.D. Pa. 2003) ......................................................................... 15

*In re Crazy Eddie Sec. Litig.*,
824 F.Supp. 320 (E.D.N.Y. 1993) ........................................................................... 15

*In re Gen. Instruments Sec. Litig.*,
209 F.Supp.2d 423 (E.D. Pa. 2001) ......................................................................... 15

*In re LDK Solar Securities Litig.*,
2010 U.S. Dist. LEXIS 73530 (N.D. Cal. Jun. 21, 2010) ....................................... 25

*In re M.D.C. Holdings Sec. Litig.*,
1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ........................................................... 15

*In re Medical X-Ray Film Antitrust Litig.*,
1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................................ 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................... 15

*In re Merry-Go-Round Enterprises, Inc.*,
244 B.R. 327 (Bankr. D. Md. 2000) ........................................................................ 18

*In re Omnivision Technologies, Inc.*,
559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................... 13, 15, 16

*In re Omnivision Techs., Inc.*,
2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ........................................................... 15

*In re Public Serv. Co. of New Mexico*,
1992 WL 278452 (S.D. Cal. July 28, 1992) ............................................................ 15

*In re Rite Aid Corp. Sec. Litig.*,
146 F.Supp.2d 706 (E.D. Pa. 2001) ......................................................................... 18

*In re Rite Aid Corp. Sec. Litig.*,
362 F.Supp.2d 587 (E.D. Pa.2005) .......................................................................... 18

*In re RJR Nabisco, Inc. Sec. Litig*
1992 WL 210138 (S.D.N.Y Aug. 24, 1992) ........................................................... 18

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F.Supp.2d 503 (E.D.N.Y 2003) ....................................................................... 16

*In re Washington Public Power Supply System Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............................................................................. passim

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ............................................................................... 17, 21

- iv -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ........................................................................................... 19

4

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................................. 15

5

6

*Leonard v. Baumer*,
   1989 WL 73211 (C.D. Cal. Mar. 9, 1989) .............................................................. 25

7

*Linney v. Cellular Alaska P'ship*
   1997 WL 450064 (N.D. Cal. Jul. 18, 1997) ............................................................ 16

8

*Marini v. Municipal Court*,
   99 Cal.App.3d 829 (1979) ....................................................................................... 24

9

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ................................................................................................ 14

10

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .................................................................................. 14

11

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F.Supp.2d 1334 (S.D. Fla. 2007) ..................................................................... 16

12

*Press v. Lucky Stores, Inc.*,
   34 Cal.3d 311 (1983) .............................................................................................. 22

13

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 25

14

15

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ...................................................................................... 12, 17, 20

16

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990).......................................................................... 13, 14

17

*Smith v. Wells Fargo Bank, N.A*,
   (S.D. Superior Court Case No. GIC 802664) .............................................. 3, 9, 10

18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)........................................................................ 12, 13, 16

19

20

*Steiner v. Am. Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007)........................................................................ 18

21

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007)................................................................................... 14

22

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) .................................................................................. 13

23

*Thayer v. Wells Fargo Bank*,
   92 Cal. App. 4th 819 (2001) ................................................................................... 21

24

25

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) ......................................................................... 25

26

*Vincent v. Hughes Air West. Inc.*,
   557 F.2d 759 (9th Cir. 1977)................................................................................... 13

27

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)........................................................................... passim

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ................................................................. 13

*Wininger v. SI Mgmt. L.P.*
   301 F.3d 1115 (9th Cir. 2002)............................................................... 25

**STATUTES**

California Business & Professions Code
   §§ 17200, *et seq.* ........................................................................ 11, 16

**RULES**

California Code of Civil Procedure
   1021.5............................................................................................ passim

Federal Rule of Civil Procedure
   23(h)...................................................................................................... 1
   54(d)...................................................................................................... 1

**TREATISES**

Federal Judicial Center, *Manual for Complex Litigation*, (4th ed. 2004)
   § 27.71.................................................................................................. 16

1

## NOTICE OF MOTION AND MOTION

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD

3        PLEASE TAKE NOTICE that on December 16, 2010, at 8:00 a.m., or as soon as it may

4    be heard, in Courtroom 9 of the Northern District of California, 450 Golden Gate Ave., San

5    Francisco, CA 94102, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2) and Cal. Code Civ. P. §

6    1021.5, and pursuant to the Court's October 25, 2010 Order Regarding Joint Recommendation

7    Regarding Post-Trial Issues and Proposed Judgment (Doc. No. 497), Class Counsel in this action

8    will move, and hereby does move, for an award of attorneys' fees and nontaxable costs.  Class

9    Counsel are entitled to such an award for having successfully litigated and tried this case,

10   resulting in a complete restitution award for the Class of over 1.1 million California consumers,

11   and for conferring a "significant benefit" on an even larger class of persons.  Class Counsel and

12   Plaintiffs further move for an award of reasonable participation awards for each of the Class

13   Representatives in this case.

14       This motion is based upon this Notice of Motion and Motion, the accompanying

15   Memorandum of Points and Authorities, the supporting declarations and [Proposed] Order

16   submitted herewith, any further pleadings and evidence filed in connection with this motion, any

17   argument made in connection with this motion, and the pleadings, files, and evidentiary record in

18   this action.

19

20

21

22

23

24

25

26

27

28

898811.5                                    - 1 -

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3    Class Counsel for the Plaintiffs who prevailed at trial in this matter, and for whom the

4    Court has entered a $203 million judgment, hereby respectfully move pursuant to Fed. R. Civ. P.

5    23(h) and 54(d)(2) for an award of attorneys' fees and nontaxable costs.  Class Counsel are

6    entitled to such an award for having successfully litigated and tried this case, resulting in a

7    complete restitution award for the Class of over 1.1 million California consumers, and for

8    conferring a "significant benefit" through the injunctive relief mandating that Wells Fargo cease

9    its unfair businesses practices, a benefit that extends not only to the Class, but to all of Wells

10   Fargo's customers in California.

11    Pursuant to the Court's Order Regarding Joint Recommendation On Post-Trial Issues And

12   Proposed Judgment (Doc. No. 497), Class Counsel, by this motion, seek an Order regarding only

13   their *entitlement* to fees and costs, and not the process of determining the *amount* of the award.[1]

14   There are two bases upon which Class Counsel are entitled to an award of attorneys' fees and

15   costs: (a) under the common fund doctrine, as a percentage of the fund or, alternatively, on the

16   basis of a lodestar/multiplier; and (b) pursuant to Cal. Code. Civ. P. § 1021.5, for the "significant

17   benefit" they "conferred on the general public or a large class of persons" through their work on

18   this case in achieving both significant injunctive relief and the $203 million restitution judgment

19   on behalf of the Class.  Wells Fargo "agrees that the Court has discretion to award reasonable

20   attorneys fees out of the class fund under the common fund doctrine."  Doc. No. 490 at 42.

21    Class Counsel respectfully submit that they are entitled to a fee award representing a

22   percentage of the common fund established by the judgment of $203 million, in accordance with

23   the Ninth Circuit's 25% "benchmark."  Although the Court may award fees above the benchmark,

24   given, *inter alia*, the benefits inherent in the injunctive relief achieved, and award fees on top of

25

---

[1] Doc. 497 at 5:  "The parties should brief only their *entitlement* to attorney's fees and non-cost
26   expenses, as well as whether the requested award should come from opposing counsel or the
class.  If entitlement to such fees and expenses is granted, the undersigned judge will issue a
27   procedural order that will set forth a *specific* process by which a reasonable award will be
determined."  *See also* Fed. R. Civ. P. 23(h) for the procedures to be applied in the subsequent
28   procedural order.

that under Section 1021.5, Class Counsel's request is limited to a *total* award equal to 25% of the common fund.  (As the injunctive relief has significant value, this means that Class Counsel's request is effectively less than 25% of the overall value created by their efforts.)  The source of the funding of such award may be from the Class' common fund or, under Section 1021.5, from Defendant Wells Fargo, or some combination of the two, as the Court deems appropriate.  In other words, if the Court were to order some or all of the award under Section 1021.5, then to the extent the Court makes such an award, Class Counsel would respectfully submit that the award from the common fund be reduced in that amount, but that in all events Class Counsel's total award should represent 25% of the common fund.

## II.   BACKGROUND

As the Court has ordered that briefing be limited, at this time, to counsel's "entitlement" to fees and costs, Class Counsel set forth herein a summary of the background, and reserve the opportunity to more fully describe their efforts and their specific expenditures of time and resources in connection with the submission of the fee application that the Court intends as part of the "*specific* process by which a reasonable award [that] will be determined."

### A.   Class Counsel Agrees To Represent Plaintiffs In Risky, Uncertain Litigation.

The outstanding results Class Counsel achieved here are properly viewed in light of the risks they assumed, and the uncertainty they faced, at the time they agreed to prosecute this action.   When this case was filed in November 2007, the legal landscape facing Class Counsel was extremely precarious.  Previous challenges to the re-ordering and related practices of Wells Fargo and other banks had proven unsuccessful.  For example, a class action was filed in San Francisco Superior Court against Wells Fargo in 2004, challenging its reordering practices and related disclosures.  *Corriea, et al., v. Wells Fargo & Co. et al.*, Case No. GCG 04-436819.  Similar complaints were filed against Bank of America and Citibank.  On the banks' demurrers, the presiding judge in *Corriea*, the Hon. Richard A. Kramer, indicated that Plaintiffs could pursue their misrepresentation claims, but that if Plaintiffs intended to pursue claims regarding the re-ordering practices themselves, such claims would be pre-empted by federal law.  Declaration of Richard D. McCune, submitted herewith ("McCune Decl."), ¶¶ 2-6 (noting that eventually the

1    misrepresentation claims in *Corriea* were dismissed).  Several other then-recent decisions further

2    indicated a strong chance that claims challenging re-ordering practices and disclosures would be

3    pre-empted, and it was clear that Wells Fargo, which litigated this issue in multiple cases already,

4    would aggressively pursue this defense in any action regarding these practices.  *Id.*, ¶¶ 7-11.

5         In addition to the pre-emption hurdle, Class Counsel also faced the considerable challenge

6    of having to prove the illegality of Wells Fargo's conduct.  While always a challenge in any class

7    case (especially against a defendant as large and well-funded as Wells Fargo), this case presented

8    its unique challenges to proving liability.  First, the claims could be compromised by the fact that

9    Wells Fargo's account agreements made reference to the possibility that Wells Fargo "may" post

10   debit transactions in high-to-low order.[2]  Second, federal authorities regarding banks' rights to

11   post checks high-to-low could have been extended (improperly from Plaintiffs' perspective) to

12   debit card transactions.  Third, high-to-low reordering was extensively employed throughout the

13   industry, making it potentially harder for a court to find the practice illegal, particularly absent

14   precedent finding these practices illegal.  *Id.*, ¶¶ 12-14.

15        In addition, there was the danger that the claims here could be found to be released by the

16   May 2007 settlement in another class action filed against Wells Fargo, *Smith v. Wells Fargo*

17   *Bank, N.A,* (S.D. Superior Court Case No. GIC 802664).  While the claims in *Smith* were limited

18   to Wells Fargo's failure to adequately disclose its "shadow line" practice, the release language in

19   the settlement agreement was extremely broad and, if enforced according to its literal terms,

20   would have covered the claims raised in this action.  McCune Decl., ¶¶ 15-16.

21        The magnitude of the risks and uncertainty associated with prosecuting the claims here is

22   exemplified by few other class action lawyers willing to accept these cases, despite the billions of

23   dollars that Wells Fargo and other banks reaped through their re-ordering and related practices.[3]

---

24   [2] Class Counsel acknowledge that the Court correctly found that rather than giving Wells Fargo a
25   justifiable excuse for its business practices, these contract disclosures were misleading.  *See*
     Findings, ¶¶ 200-216.  Nonetheless, other courts have misinterpreted similar disclosures.  *See,*
26   *e.g.*, *Hassler v. Sovereign Bank*, 374 Fed.Appx. 341, 345 (3d Cir. 2010).

27   [3] The fact that the plaintiffs bar would not take these cases cannot be accounted for by these
     practices being simply a banking industry secret.  The banking industry's unfair overdraft
28   policies, including the high-to-low ordering practice, and the outrageous amount of profits banks
     were making from these practices, were highlighted by the mainstream news media throughout

1    Despite these risks and the fact that pursuing this action would require the commitment of an

2    enormous portion of its resources, Class Counsel McCune & Wright ("M&W") commenced this

3    and agreed to vigorously prosecute this action on behalf of the Class. *Id.*, ¶¶ 17-31.

4            Class Counsel Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") is one of the few

5    plaintiffs firms that have agreed to represent consumers against banks in litigation concerning

6    overdraft fee practices for many years.  This litigation was likewise risky, and at times resulted in

7    dismissals of plaintiffs' claims.  Declaration of Michael W. Sobol, submitted herewith ("Sobol

8    Decl."), ¶ 5.  Despite these experiences in prior litigation and the numerous risks described above,

9    LCHB again agreed to represent consumers in debit-card overdraft litigation in late 2008, filing a

10   class action against Bank of America regarding its re-ordering practices in early 2009. *Id.*

11           On May 3, 2009, LCHB was approached by Richard D. McCune of M&W, then serving

12   as Class Counsel in this matter, about the possibility of LCHB joining as co-counsel and lead trial

13   counsel in this action. *Id.*, ¶ 6; McCune Decl., ¶¶ 51-52.  At the time, the trial in this case was

14   scheduled to commence in approximately one month.  While Plaintiffs had overcome significant

15   hurdles up until that point, considerable challenges and risks reamined, including, *inter alia*, the

16   ultimate task of proving Wells Fargo's liability and class-wide damages at trial.  Days after

17   LCHB was approached about joining the case, the Court issued a series of orders on pending

18   motions by Wells Fargo for summary judgment and class decertification.  *See* Doc. Nos. 245-247.

19   Among other things, the Court decertified the class claims concerning Wells Fargo's "including

20   and deleting" practices (Doc. No. 245 at 10-15) and granted partial summary judgment as to

21   Plaintiffs' misrepresentation-based claims (Doc. No. 247).  Further, the Court was disinclined to

22   accept an aggregate damage model based on the sampling and extrapolation, so if the case was

23   going to go forward, it would involve either: (a) proceeding to trial in June 2009 as scheduled

24   and, if Plaintiffs prevailed on liability, inviting class members to submit individual claims with

25   mini-trials; or (b) postponing trial to allow Plaintiffs to perform a full damages study using data

26   from the entire class period.  Doc. No. 245 at 10.

27

28   2003 through 2006; were the subject of public regulatory debates; and were mentioned in
     important decisions for the Plaintiff bar, like *Miller v. Bank of America.*  McCune Decl., ¶¶ 17-20.

1        Notwithstanding that either alternative involved significant risk, the likelihood of

2   substantial costs, and an almost certain trial (or if alternative (a) was selected, multiple trials),

3   LCHB agreed that it would serve as lead counsel and trial counsel if the matter did not settle at an

4   imminent Court-ordered settlement conference before Magistrate Judge Spero.  Sobol Decl., ¶¶ 7-

5   8.  On May 13, 2009, the Court indicated that it would reject the proposed settlement reached by

6   the parties with Judge Spero.  The Court then went on to postpone the trial and allow Plaintiffs

7   the opportunity to perform a damages study using comprehensive data for the entire class period.

8   Doc. No. 262.  The Court also recommended to M&W that it associate in an experienced class

9   counsel like LCHB to assist in the prosecution of the case through trial.  Doc. 263 at 3.

10       However, when the Court made its recommendation on May 13, 2009, LCHB had already

11  agreed in principal that if the case went forward, it would serve as co-counsel and lead trial

12  counsel.  Importantly, LCHB made this commitment before the Court: made its May 13, 2009

13  recommendation regarding associating class counsel; had been presented with any settlement

14  proposals; had authorized a full damage study; or continued the trial date.  Sobol Decl., ¶¶ 6-8

15       At the time of LCHB's commitment, and even after the May 13, 2009 hearing,[4] a fair

16  assessment of the record indicated that achieving a positive recovery for the Class would require a

17  full trial on the merits and representation of the Class through the inevitable appeal of any

18  judgment entered in favor of the Class.  LCHB knowingly took on the representation of the Class

19  aware of the risks inherent in a trial of complex class-wide issues, and the risks inherent in class-

20  wide rulings (*e.g.*, preemption, standing, class certification) and a class-wide judgment being

21  upheld on appeal.  Despite these risks, LCHB agreed to appear for the Class, take on the role of

22  lead trial counsel, advance all litigation expenses (including significant expenses already

23  incurred), and co-represent the Class for all purposes.  Sobol Decl., ¶¶ 6-8; McCune Decl., ¶ 53.

24       When LCHB agreed to join as co-counsel, the Court had not ruled on how the case would

25  proceed, and thus there was a real possibility the trial would begin in just weeks.  Even after the

26  Court postponed the trial, Class Counsel expended considerable time and resources on the

27

28
_____
[4] LCHB formally associated in as counsel on June 5, 2009.  Doc. No. 267.  The Court ordered
LCHB's appointment as additional Class Counsel on September 18, 2009.  Doc. No. 279

1   updated damages study, despite ongoing uncertainty regarding whether Plaintiffs would prevail at

2   trial on the issue of liability, and well aware that Wells Fargo would in any event seek to exclude

3   the updated damages study when it was completed (which Wells Fargo, in fact, did through a

4   renewed decertification and summary judgment motion, *see* Doc. No. 292) and, failing that,

5   attack the study's viability at trial through its own expert testimony.

6         **B.**     **The Commencement Of The Case And the Litigation Before Trial.**

7        Plaintiffs commenced this action on November 21, 2007.  The pre-trial litigation was

8   hard-fought and extensive throughout.

9            **1.**     **The Pleadings Stage**

10        In order to get the case through the pleading stage, there were two important steps that

11   made this case uniquely difficult.  First, Wells Fargo argued that the release language in the *Smith*

12   settlement barred the claims here.  Class Counsel successfully challenged the *Smith* settlement

13   release in the Superior Court of San Diego, resulting in that court's narrow interpretation of the

14   release.  Second, Plaintiffs needed to craft a theory of the case that would not result in federal

15   preemption, as Judge Kramer in *Corriea v. Wells Fargo* had indicated would result if plaintiffs

16   there challenged re-ordering.  Class Counsel was ultimately able to do so, defeating multiple

17   attempts by Wells Fargo to argue preemption in this case.  McCune Decl., ¶¶ 32-35.[5]

18            **2.**     **Class Certification**

19        In addition to the usual challenges of getting a large consumer class certified, there were

20   unique difficult challenges here.  For example, Wells Fargo contended that it did not have

21   searchable data records that would allow for a re-ordering of transactions to ascertain the class

22   members harmed and the amount of such harm.  Specifically, it claimed not to have date and time

23   authorization records.  Wells Fargo's corporate designee, Mark Lentz, testified at deposition that

24   this could not be done in an automated way, and submitted a declaration in opposition to class

25   certification stating the same.  Class Counsel did not accept this position, and identified and

26

27   [5] The theory that Class Counsel adopted appears to have been borrowed by plaintiffs in *White v.
      Wachovia Bank*, filed after this case, where the court rejected the argument that claims such as

28   those brought here are preempted by federal law.  This Court has relied, in part, on the reasoning
      of the *White* court in rejecting Wells Fargo's preemption arguments here.  Doc. No. 98 at 17.

deposed six witnesses who actually performed the database work, until Wells Fargo finally

identified the databases that would allow for an automated damage analysis.  With this critical

information in hand, Class Counsel successfully obtained class certification, and thereafter

engaged in extensive damages-related discovery, and, as the Court is well aware, were able to

calculate the damages suffered by each Class member.  *Id.*, ¶¶ 36-39.

### 3.      Overcoming Wells Fargo's Attack on the Class Representatives

Class Counsel also overcame Wells Fargo's relentless attack on the class representatives.

First, Plaintiffs defeated Wells Fargo's initial motion for summary judgment, which challenged

their standing and ability to represent the Class.  Doc. No. 98.  Wells Fargo took full-day

depositions of each Plaintiff, and served fifteen sets of written discovery requests on Plaintiffs.  In

addition, Wells Fargo took extensive discovery of absent class members.  McCune Decl. ¶ 40.

### 4.      Successfully Uncovering Key Facts in this Case Through Discovery

Early on in the case, Wells Fargo witnesses took the position that profit was not the

primary reason for Wells Fargo's adoption of high-to-low posting.  Class Counsel deposed of a

number of high ranking executives regarding this issue, and were able to successfully

demonstrate that Wells Fargo's position regarding its motives was not credible or supported by

documentary evidence.  Among other things, Class Counsel obtained key admissions from Wells

Fargo's Kenneth Zimmerman that profit was an important reason for the change in practice, and

that he had recommended against adopting high-to-low posting because it would harm customers

and because of concerns about liability.  *Id.*, ¶¶ 41-42.

Class Counsel also had to review over 41,000 pages of documents produced by Wells

Fargo.  Ultimately, there were a core group of documents—many of the key exhibits at trial—

that revealed the bank's true financial motive in adopting high-to-low posting, which were only

obtained after counsels' persistent use of law and motion.  Wells Fargo did not disclose these

documents in its Rule 26 disclosures, and when they were identified at depositions, they were

initially produced in redacted form, which made them of little value.  Furthermore, through

personal investigation, Class Counsel discovered a program called *Hands On Banking*, that

contained misrepresentations about how transactions are processed and ordered.  Through further

investigation, Class Counsel was able to establish that these (and many other) deceptive disclosures were seen by hundreds of thousands of consumers. *Id.*, ¶¶ 43-45.

### 5.   Successfully Fending Off Wells Fargo's Motion Attack on the Eve of The Original Trial Date.

Wells Fargo aggressively used motions practice to try to defeat Plaintiffs' claims, filing before the original trial date alone, *inter alia*, multiple summary judgment motions; a decertification motion; a motion for "clarification"; and motions to disqualify an expert and the Court. Opposing these motions required very significant research and briefing. *Id.*, ¶ 46.

### 6.   Assembling the Team of Plaintiffs' Experts

Class Counsel assembled the team of experts that provided the Court with the expert testimony and information necessary for a Judgment in Plaintiffs' favor. Class Counsel oversaw the production of expert reports and took/defended 11 expert depositions. Especially important was the identification of a database expert able to take the database information that Wells Fargo claimed could not be used, and use it to re-sequence the data in a way that identified each harmed customer and the amount of restitution due each customer. This analysis was one that: (a) Wells Fargo, with all of its resources and knowledge of its own system, claimed could not be done; and (b) Wells Fargo's hired database experts in this case were unable to do. *Id.*, ¶ 47.

Class Counsel developed the legal method for establishing restitution, which was ultimately adopted by the Court, and provided significant assistance to expert Art Olsen to coordinate the data and the methodology for providing restitution calculations.[6] Class Counsel took/defended the depositions of both sides' damages experts, and was able to successfully overcome multiple attempts by Wells Fargo to exclude and/or discredit Mr. Olsen's analysis.

### C.   Pre-Trial Proceedings and the Trial.

The trial and related proceedings in this case were hard fought and required extensive and efficient efforts from Class Counsel. During the time leading up to trial, Class Counsel had to

---

[6] McCune Decl., ¶¶ 48-50. The analysis first involved a sample, and then a full analysis for the entire class period. The initial analysis provided actual benefits to the Class, as it familiarized Mr. Olsen with Wells Fargo's data system, became the template for the full analysis, resolved numerous issues that could have been problematic if they were first identified during the full analysis, and provided assurance that the complete analysis was bug-free since the results of both analyses were very similar.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1   contend with Wells Fargo's motion (styled as a motion for summary judgment/decertification) to

2   exclude Art Olsen's analysis and testimony (Doc. No. 292), which required expert depositions,

3   briefing and a hearing shortly before trial.  Additionally, the parties filed several motions *in*

4   *limine*, which were heard at the Pre-Trial Conference on April 19, 2010.  These motions included

5   attempts to exclude documentary evidence and witness testimony, as well as Wells Fargo's

6   unsuccessful attempt to exclude all evidence relating to "shadow line" based on the *Smith*

7   settlement.  Litigating these motions required significant effort from Class Counsel.  Moreover,

8   the parties engaged in extensive meet and confer regarding objections to the designated trial

9   exhibits and deposition testimony and, when Wells Fargo insisted on maintaining "authenticity"

10  objections to dozens of documents *which Wells Fargo itself produced from its own records*,

11  litigated a motion concerning such objections.  Doc. No. 384; Sobol Decl., ¶¶ 10-13.

12          Pursuant to the Court's guidelines, the parties filed a joint Proposed Pre-Trial Order on

13  April 12, 2010, which included information such as a statement of Plaintiffs' claims and request

14  for relief, and required counsel for both sides to meet and confer with each other.  Doc. No. 370.

15  Pursuant to the Court's guidelines, Class Counsel also filed pre-trial Proposed Findings of Fact

16  and Conclusions of Law, which took considerable effort from multiple attorneys to draft.  Doc.

17  No. 375.  Class Counsel also had to brief several additional issues related to trial, including Wells

18  Fargo's motion to prevent Plaintiffs from using Wells Fargo's "Hands on Banking" educational

19  materials (which contained misrepresentations) at trial.  Doc. No. 400; Sobol Decl., ¶14.

20          The trial commenced on April 26, 2010, and concluded on May 7, 2010.  At trial,

21  Plaintiffs presented live testimony from 10 witnesses, as well as deposition testimony from two

22  Wells Fargo executives, Mr. Biller and Ms. Tolstedt.  Wells Fargo presented testimony from 10

23  live witnesses, as well as deposition testimony from several other witnesses.  In all,

24  approximately 180 exhibits were admitted into evidence at trial.  Successfully preparing trial for

25  and trying this case required the hard work of numerous attorneys and staff, both in the time

26  leading up to, and during, trial.  Declaration of Richard M. Heimann, submitted herewith

27  ("Heimann Decl."), ¶¶ 6, 11-12; Sobol Decl., ¶¶ 15-17, 25-26.

28

1        Additionally, the motions practice and other litigation activity remained intense even

2 during the course of trial.  Among other mid-trial issues, Class Counsel had to: litigate Wells

3 Fargo's Rule 52(c) Motion for Judgment on Partial Findings, litigate Wells Fargo's motion to

4 exclude the testimony of one of Plaintiffs' experts, depose one of Wells Fargo's percipient

5 witnesses, and spend considerable attorney resources addressing issues related to, among other

6 things, the settlement in the *Smith* matter, Wells Fargo's redaction of several key documents

7 during discovery, Wells Fargo's changing recollection of how it posted checks prior to adopting

8 high-to-low posting, and reviewing and flagging customer complaints concerning Wells Fargo's

9 overdraft fee practices.  Doc No. 408, 410, 416, 418, 429, 436.  Litigating these many issues mid-

10 trial required the hard work of numerous attorneys and staff outside the courtroom and, further,

11 because of the relation of these issues to the trial itself, reasonably required the participation and

12 appearance of additional attorneys at trial.  Sobol Decl., ¶ 16; Heimann Decl., ¶ 12.

13        After the evidentiary portion of trial concluded on May 7, 2010, the parties filed their

14 Proposed Findings of Fact and Conclusions of Law on May 19, 2010 and responses thereto on

15 May 26, 2010.  Preparing these submissions required a significant effort on the part of Class

16 Counsel to review the extensive testimony and documentary evidence, research the relevant case

17 law, and craft proposed findings and responses thereto.  Sobol Decl., ¶ 17.   Closing argument

18 was presented by counsel, and the matter was submitted, on July 9, 2010.

19        Subsequently, at the Court's request, Class Counsel submitted briefing regarding the

20 effect of the release in the *Smith* case, and further responded to Wells Fargo's misguided "Notice

21 of Potential Jurisdictional Defect."  *Id.,* Doc. Nos. 469, 471, 473.

        **D.**      **The Class Prevails At Trial And The Court Awards $203 Million in Restitution and Important Injunctive Relief.**

        On August 10, 2010, the Court issued its Findings of Fact and Conclusions of Law After

Bench Trial (Doc No. 476) ("Findings"), finding that Wells Fargo violated the "unfair" and

"fraudulent" prongs of Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").  Findings at 60-73.

The Court awarded approximately $203 million in restitution to the Class, to be paid to Class

1    members without any claims process. *Id*. at 85-59.  The Court further awarded permanent

2    injunctive relief, ordering Wells Fargo to cease its unfair practices. *Id*. at 84-85.

3        **E.    Post Trial, Judgment, and the Appeal.**

4            Class Counsel's responsibilities to the Class continued after the Court issued its Findings.

5    Five months after the trial concluded, Wells Fargo moved to amend the Court's Findings, based

6    on its purported "late discovery" of the so-called "Norwest study," which Wells Fargo had relied

7    upon for years in this case but which never materialized prior to the close of evidence, and which,

8    in fact, *supported* the Court's Findings.  Class Counsel successfully opposed Wells Fargo's

9    motion.  Doc. No. 489.  Moreover, Class Counsel worked hard to prepare their portions of the

10   Joint Recommendation and their proposed forms of Judgment, as ordered by the Court, meeting

11   and conferring with Wells Fargo's counsel as necessary.  Doc. Nos. 490-493; Sobol Decl., ¶ 18.

12           The Court entered final Judgment in this case on October 25, 2010.  Doc. No. 498.

13   Thereafter, in order to ensure the Class will recover the restitution ordered by the Court, Class

14   Counsel opposed Wells Fargo's motion for a stay of execution pending appeal without the

15   posting of a *supersedeas* bond.  Doc. No. 505; Sobol Decl., ¶ 19.  Wells Fargo has now appealed

16   the Court's Judgment.  Class Counsel will continue to represent the Class' interests throughout

17   the full appellate process, and if the Class prevails on appeal, Class Counsel's responsibilities to

18   the Class will continue through the distribution of restitution to Class members. *Id.*, ¶ 20.

19       **F.    Class Counsel's Total Lodestar And Costs.**

20           In all, the attorneys and staff at LCHB have spent approximately 3,303 hours, and the

21   attorneys and staff at M&W have spent approximately 4,864 hours, investigating, analyzing,

22   researching, and successfully litigating and trying this case.  LCHB's total lodestar to date is

23   approximately $1,556,260.50.  M&W's total lodestar to date is approximately $2,220,667.09.

24   Sobol Decl., ¶¶ 23-24, Ex. A; McCune Decl., ¶ 79.  Moreover, LCHB has advanced

25   approximately $419,093.93, and M&W approximately $309,754.01, in necessary out-of-pocket

26   litigation expenses.  Sobol Decl., ¶¶ 29-30, Ex. B; McCune Decl., ¶ 81.[7]  Class Counsel's

27

28   _____
     [7] These expenses do not include the costs that are included in Class Counsels' Bill of Costs, filed
     herewith.  Breakdowns of the time spent by the relevant timekeepers and their billing rates, as

1   commitment of such resources, notwithstanding the significant litigation risks they faced, was

2   essential to the success of the case, which resulted in full restitution to the Class and significant

3   injunctive relief that will benefit Class members and many additional California consumers.

4   **III.   ARGUMENT**

5        The Class prevailed at trial on claims asserted under California law, and California law

6   thus governs the award of attorneys' fees here.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

7   (9th Cir. 2002).  The Court may also properly look to Ninth Circuit and other federal precedent to

8   determine Class Counsels' entitlement to a fee award here.  *Id.*

9        As set forth herein, Class Counsel respectfully submit that they are entitled to a total fee

10  award representing 25 percent of the $203 common fund, for their efforts in creating both the

11  monetary fund and the valuable injunction requiring Wells Fargo to cease its unfair practices, and

12  that the source of such award may be the common fund, Wells Fargo (under Section 1021.5), or

13  some combination of the two, as the Court, in its discretion, deems appropriate.

14       **A.   Class Counsel Is Entitled to An Award of Attorneys' Fees Under the Common Fund Doctrine.**

15  California recognizes the common fund doctrine for the award of attorneys' fees to a

16  prevailing plaintiff whose efforts result in the creation of a monetary fund benefiting others.

17  *Serrano v. Priest*, 20 Cal. 3d 25, 35-38 (1977).  In fact, for well over a century, California and

18  federal courts have recognized that when counsel's efforts result in the creation of a common

19  fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be

20  compensated from that fund for their successful efforts in creating it.  *See, e.g.*, *id*; *Boeing Co. v.*

21  *Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized

22  consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable

23  attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116

24  (1885); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *In re Washington Public Power*

25  *Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation

26  of a fund should share the wealth with the lawyers whose skill and effort helped create it");

27

28  well as a summary of Class Counsels' out-of-pocket expenses, are included in Class Counsels'
    declarations filed herewith.  Sobol Decl., Exs. A-B; McCune Decl., ¶¶ 79-80.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1    *Vincent v. Hughes Air West. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)  ("[A] private plaintiff, or his

2    attorney, whose efforts create, discover, increase or preserve a fund to which others also have a

3    claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

4    The common fund doctrine rests on the understanding that attorneys should normally be paid by

5    their clients.  *See Boeing*, 444 U.S. at 478.  Where the attorneys' unnamed class member clients

6    have no express retainer agreement, those who benefit from the fund without contributing to it

7    would be unjustly enriched if attorneys' fees were not paid out of the common fund.  *See id.*; *In re*

8    *Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007).

9            Through their extensive, and ultimately successful, efforts in this case, Class Counsel

10   achieved a common fund of nearly $203 million that will benefit the named Plaintiffs and each

11   and every Class member, none of whom have paid Class Counsel for their efforts in this case.

12   Class Counsel are thus equitably entitled to an award of attorneys' fees from the common fund.

13   Under both California and Ninth Circuit precedent, the Court has discretion to calculate fees in a

14   common fund case by applying either the "percentage-of-the-fund" or "lodestar/multiplier"

15   methods.  *Staton*, 327 F.3d at 963-64; *Vizcaino*, 290 F.3d at 1048-1049; *Hanlon v. Chrysler*

16   *Group*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th

17   224, 253 (2001).  Regardless of which method is applied, the fundamental requirement is that the

18   resulting fee is fair and reasonable.  *Staton*, 327 F.3d at 963-64.

19           **1.      The Court Should Award Fees Based on a Percentage-of-the-Fund.**

20           The fairest and most efficient way to calculate a reasonable fee where, as here,

21   contingency fee litigation has produced a common fund is by awarding class counsel a percentage

22   of the total fund.  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Vizcaino*, 290 F.3d at

23   1047; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)

24   (common fund fee is generally "calculated as a percentage of the recovery"); *In re Omnivision*,

25   559 F.Supp.2d at 1046 ("use of the percentage method in common fund cases appears to be

26   dominant").  The percentage-of-the-fund method comports with the legal marketplace, where

27   counsel's success is frequently measured in terms of the results counsel has achieved.  *See*

28   *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the

1    monetary amount of the victory is often the true measure of [counsel's] success").  By assessing

2    the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage

3    method "more accurately reflects the economics of litigation practice" which, "given the

4    uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id*.

5        When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an

6    agreement in which counsel's fee is based upon a percentage of any recovery.  The percentage of

7    the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would

8    have been negotiated by the class members in advance, had such negotiations been feasible, given

9    the prospective uncertainties and anticipated risks and burdens of the litigation.  *See, e.g.*, *Paul,*

10   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the

11   lawyer who creates a common fund is allowed an extra reward, beyond that which he has

12   arranged with his client, so that he might share the wealth of those upon whom he has conferred a

13   benefit."); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in

14   common fund cases, we have consistently directed district courts to 'do their best to award

15   counsel the market price for legal services, in light of the risk of nonpayment and the normal rate

16   of compensation in the market at the time.'"); *cf. Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285

17   (1989) (market factors should be considered in evaluating reasonableness).

18       Here, the Judgment entered by the Court establishes a $203 million common fund.

19   Because Class members have not paid Class Counsel for their efforts, equity requires them to pay

20   a fair and reasonable fee, based on what the market would traditionally require, no less than if

21   they had hired private counsel to litigate their cases individually.  *Boeing*, 444 U.S. at 479-81.

22                **a.     A Fee Award Based on the Ninth Circuit's 25-Percent**
                 **Benchmark is Fair and Reasonable.**
23
         In the Ninth Circuit, the "benchmark" for a fee award in a common fund case is 25% of
24
     the fund achieved.  *Vizcaino*, 290 F.3d at 1047; *In re Washington Public Power*, 19 F.3d at 1297;
25
     *Six Mexican Workers*, 904 F.2d at 1311.  An award in excess of the benchmark may be proper
26
     based on circumstances.  *Vizcaino*, 290 F.3d at 1048-1050.  Courts frequently award fees greater
27
     than the benchmark.  *See, e.g.*, *id*. at 1049-50; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,
28

460 (9th Cir. 2000); *In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007) ("[I]n most common fund cases, the award exceeds that [25%] benchmark.").[8]

     The circumstances here justify a fee award of the 25% benchmark.  First, the results Class Counsel achieved were excellent.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (results achieved most important factor in determining appropriate fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members").  That Class Counsel achieved *full* restitution for the Class weighs in favor of an award of at least 25% of the common fund.  Courts regularly award a 25% fee or greater where the proportional recovery for the class is far less than full.[9]  Second, that this excellent relief was obtained only after trial further supports an award of at least the benchmark.  Courts in the Ninth Circuit, including this Court, have repeatedly awarded fees of 25% or more in cases where a common fund was created through a settlement.[10]  The case for a fee award consistent with, or greater than, the benchmark is even stronger here, where Class Counsel was only able to secure relief for the Class after years of hard fought litigation and prevailing at trial.  *Cf. In re Cenco Inc. Securities Litigation*, 519 F.Supp. 322, 326 (N.D. Ill. 1981) (enhanced fee award appropriate where favorable relief "could not have been achieved if plaintiffs' counsel had not thoroughly and painstakingly prepared for trial.").

---

[8] *See also In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).

[9] *See, e.g., Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5-7 (N.D. Cal. Feb. 2, 2009) (30 % fee where settlement fund equaled about half of alleged damages); *In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee where settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F.Supp.2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee where settlement fund equaled about 11% of estimated damages); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5, 7-8 (E.D.N.Y. Aug. 7, 1998) (1/3 fee where recovery was 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F.Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent fee where recovery was 10% of damages).

[10] *See, e.g., Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010) (Alsup, J.); *Vizcaino*, 290 F.3d 1043; *Garner v. State Farm*, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *In re Omnivision*, 559 F.Supp.2d 1036; *In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989).

1   Other factors would support an award here as well, including the contingent nature of the

2   fee and risks assumed by Class Counsel in representing the Class, the novelty and complexity of

3   the issues raised in this case, and the skill and knowledge required of counsel in order to

4   successfully prosecute this case through trial. *Vizcaino*, 290 F.3d at 1048-50; *In re Washington*

5   *Public Power*, 19 F.3d at 1299; *In re Omnivision*, 559 F.Supp.2d at 1047.

6   In addition to securing full restitution for the Class for the overages Wells Fargo

7   wrongfully assessed, Class Counsel obtained a permanent injunction requiring Wells Fargo to

8   cease its unfair practices.  This additional relief will save millions of Class members and other

9   Wells Fargo customers from being charged millions of dollars in wrongful overdraft fees.

10  McCune Decl., ¶¶ 56-58; Doc No. 263 (Tr. from May 13, 2009 Proceedings) at 3-4 (Court noting

11  importance of an injunction in this case and that "the point of 17200 is to stop an….unfair

12  practice.").  As this Court has noted, awarding fees above the 25% benchmark is fair and

13  reasonable where counsel has achieved valuable non-monetary relief in addition to a monetary

14  fund.  *Castaneda*, 2010 U.S. Dist. LEXIS 78299 at * 9-10; *see also Staton*, 327 F.3d at 974 (court

15  "should consider the value of the injunctive relief obtained as a 'relevant circumstance' in

16  determining what percentage of the common fund class counsel should receive as attorneys'

17  fees."); *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that

18  counsel's performance generated benefits beyond the cash settlement fund").[11]  In *Castaneda*, this

19  Court approved an award equal to 33% of the common fund established via settlement, finding:

> the monetary damages in this settlement -- although quite
> substantial -- are only part of the relief obtained for class members.
> As noted above, the settlement also provides for injunctive relief at
> the ten restaurants in question to eliminate accessibility barriers.

*Castaneda*, 2010 U.S. Dist. LEXIS at * 9-10.  A fee award in excess of the 25% benchmark

would likewise be appropriate here based on the valuable injunctive relief Class Counsel obtained

---

[11] *Accord Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at * 7 (N.D. Cal. Jul. 18, 1997)
(1/3 fee award where settlement provided additional non-monetary relief); *In re Visa
Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 525 (E.D.N.Y 2003) ("the substantial
injunctive relief here should inform [the court's] decision on awarding fees"); *Pinto v. Princess
Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1343 (S.D. Fla. 2007) (30% fee reasonable where
important non-monetary relief achieved).

for California consumers in addition to the full restitution achieved for the Class.

Notwithstanding the above, Class Counsel will limit their *total* fee request, for both the monetary and valuable injunctive relief they achieved, to 25% of the common fund.  Given the significant value of the injunction here, and notwithstanding that an award in excess of the benchmark 25% would be justified, Class Counsel is actually asking for a fee award that is significantly *lower* than 25% of the total value created as a result of their efforts.

### b.   A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of an Award of 25% of the Common Fund.

A court applying the percentage-of-the-fund method may apply the lodestar-multiplier method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5.  The cross-check is optional, as the percentage-of-the-fund approach is primarily based upon the results achieved, not the hours expended. *Vizcaino*, 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar *may* provide a useful perspective on the reasonableness of a given percentage award") (emphasis added).  A lodestar-multiplier cross-check here confirms that a 25% fee award is reasonable.

The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate.  *See Hanlon*, 150 F.3d at 1029; *Graham v. DaimlerChrysler*, 34 Cal.4th 553, 579 (2005). Once this raw lodestar figure is  determined, the court may take into consideration additional factors to enhance the lodestar, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Hanlon*, 150 F.3d at 1029; *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Serrano*, 20 Cal.3d at 48.

The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar.  As described in those declarations, Class Counsel and their

1   staffs have devoted approximately 8,167 hours to this litigation, and have a total unadjusted

2   lodestar of approximately $3,776,927.59.  Sobol Decl., ¶¶ 23-24, Ex. A; McCune Decl., ¶ 79.  As

3   set forth below, *see* section III.A.2.a, *infra*, both the hours billed by Class Counsel and the rates

4   used to calculate their lodestar are reasonable.  Moreover, the circumstances of this case—

5   including, *inter alia*, the exceptional monetary and non-monetary relief obtained for the Class, the

6   fact that Class Counsel had to litigate this case for nearly three years and prevail at trial in order

7   to obtain such relief, the contingent nature of the fee and the significant risks assumed by Class

8   Counsel in representing the Class in this case, the complexity and novelty of the issues involved

9   in this case, and the skill and effort demonstrated by Class Counsel in successfully litigating and

10  trying this action on behalf of the Class—support a significant enhancement of their lodestar.  *See*

11  section III.A.2.b, *infra*.  Given Class Counsel's lodestar and the circumstances of this case, a total

12  fee award (*i.e.*, for the monetary and injunctive relief achieved) equal to the "benchmark" 25% of

13  the common fund is reasonable under a lodestar-multiplier cross-check and within the range of

14  fees awarded in other common fund cases.  *See Vizcaino*, 290 F.3d at 1051 n.6 (citing cases with

15  multipliers ranging from 0.6 to 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th

16  Cir. 2007) (25% fee reasonable where effective multipler was 6.85).[12]

17          **2.          Alternatively, Class Counsel Are Entitled to an Award Representing a**
                          **Multiplier of Their Lodestar.**
18

19          The lodestar-multiplier method is more typically used in cases where there is no true

20  common fund like the fund established by the Judgment entered in this case.  Class Counsel

21  respectfully submit, therefore, that the percentage-of-the-fund method best suits this case, and that

22  they are entitled to award on that basis.  *Hanlon,* 150 F.3d at 1029 (noting that lodestar method is

23  used more often in case where "there is no way to gauge the net value of the settlement or any

24

25  _____

26  [12] *See also, e.g., In re Merry-Go-Round Enterprises, Inc*., 244 B.R. 327 (Bankr.D.Md. 2000)
    (40% award of $71.2 million fund; cross-check multiplier of 19.6); *In re Rite Aid Corp. Sec.*
27  *Litig*., 146 F.Supp.2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5-
    8.5); *In re Rite Aid Corp. Sec. Litig*., 362 F.Supp.2d 587 (E.D. Pa. 2005) (25% of $126,000,000
28  fund; multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig*., 1992 WL 210138 (S.D.N.Y Aug. 24,
    1992) (25% of $72.5 million; multiplier of 6).

1  percentage thereof.").  In any event, should the Court apply lodestar-multiplier, application of

2  such method supports that an award equal to 25% of the common fund is appropriate here.[13]

3       As the California Supreme Court has explained, in a contingent case like this, a fee based

4  upon lodestar and multiplier "constitutes earned compensation; unlike a windfall, it is neither

5  unexpected nor fortuitous.  Rather, it is intended to approximate market-level compensation for

6  such services, which includes a premium for the risk of nonpayment or delay in payment of

7  attorney fees."  *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001).  As such, "a contingent fee

8  must be higher than a fee for the same legal services paid as they are performed."  *Id.* at 1132.

9                          **a.      Class Counsels' Lodestar is Reasonable.**

10      The accompanying declarations of Class Counsel set forth the hours of work and billing

11  rates used to calculate their lodestar.  As described in those declarations, Class Counsel and their

12  staffs spent approximately 8,167 hours working on this case, for a total unadjusted lodestar of

13  approximately $3,776,927.59, exclusive of costs. McCune Decl., ¶ 79; Sobol Decl., ¶ 23-24.

14      Class Counsels' hourly rates are reasonable.  In assessing the reasonableness of an

15  attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in

16  the community for similar services by lawyers of reasonably comparable skill, experience and

17  reputation."  *Blum*, 465 U.S. at 895 n.11.  Moreover, Courts apply each biller's current rates for

18  all hours of work performed, regardless of when the work was performed, as a means of

19  compensating for the delay in payment.  *In re Washington Pub. Power*, 19 F.3d at 1305.  Class

20  Counsel in this case are highly regarded members of the bar who are experienced in the area of

21  consumer class actions and complex litigation.  Heimann Decl., ¶¶ 2-4; Sobol Decl., ¶ 4; McCune

22  Decl., ¶¶ 65, 68, 71, 74, 77.  Class Counsels' customary rates, which were used in calculating the

23  lodestar here, are in line with prevailing fees in this District, and have been approved by courts in

24  this District and by numerous other courts.  Sobol Decl., ¶¶ 27-28; McCune Decl., ¶¶ 67, 70, 73,

25  76, 78; *Create-A-Card, Inc. v. Intuit, Inc.*, Case No. C 07-06452 WHA, Doc No. 78 (Alsup, J.)

26  (implicitly approving LCHB billing rates).  Class Counsels' hourly rates are therefore reasonable.

27

28

---

[13] Like an award based on a percentage-of-the-fund, a fee award based upon a lodestar enhanced by a multiplier may be paid from a common fund obtained for a class.  *See Fischel v. Equitable Life. Assur. Soc'y,*, 307 F.3d 997, 1007-1008 (9th Cir. 2002).

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1   The number of hours that Class Counsel billed is reasonable as well.  *Caudle v. Bristow*

2   *Optical Co*., 224 F.3d 1014, 1028 (9th Cir. 2000) (counsel entitled to recover for all hours

3   reasonably expended); *Serrano*, 20 Cal.3d at 49.  Class Counsel made every reasonable effort to

4   prevent the duplication of work or inefficiencies that might have resulted from having multiple

5   firms working on this case.   For example, internal meetings among Class Counsel were kept to a

6   minimum, and were generally based on agendas prepared in advance.  *Id*.  Assignments were

7   made for specific tasks and activities so that it was clear which firm had primary responsibility

8   over each task.  Moreover, Class Counsel was careful not to overstaff hearings or the trial beyond

9   what was reasonably necessary.  Heimann Decl., ¶¶ 11-12; Sobol Decl., ¶¶ 25-26.

10   Class Counsels' hours are reasonable given Wells Fargo's aggressive defense over the

11   course of nearly three years, necessitating, *inter alia*, extensive discovery practice, dozens of

12   litigated motions (including a class certification motion, two decertification motions, and multiple

13   motions for summary judgment/adjudication), employing multiple experts on both sides, and a

14   full trial.  Among other important tasks, Class Counsel spent substantial time investigating the

15   conduct at issue in this case, conducting legal research, preparing pleadings, propounding and

16   responding to written discovery, reviewing documents, taking depositions, working with experts,

17   communicating with Plaintiffs and other Class members, preparing for and participating in

18   settlement discussions, preparing witnesses for deposition and trial, preparing for trial, trying the

19   case, and preparing post-trial pleadings.  Sobol Decl., ¶¶ 31-40; McCune Decl., ¶ 66, 69, 72, 75.[14]

20   Not only were the hours Class Counsel spent reasonable given Wells Fargo's vigorous

21   defense, they also served the public by providing substantial compensation and injunctive relief to

22   consumers impacted by Wells Fargo's unfair conduct.  Class Counsel respectfully submit that the

23   Court should find that all hours Class Counsel spent in this action were reasonably incurred.

24

---

25   [14] It is well established that in moving for fees, counsel is "not required to record in great detail
how each minute of his time was expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12
26   (1983).  Instead, counsel need only "identify the general subject matter of his time expenditures."
*Id.*; *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent
27   on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of
documentation).  If the Court prefers to review Class Counsels' detailed time records, Class
28   Counsel will make them available for *in camera* review.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1

b.      **A Significant Multiplier is Warranted**

2

Consideration of the relevant enhancement factors demonstrates that a significant

3

multiplier is reasonable and warranted here.

4

i.      Class Counsel Achieved Exceptional Results for the Class.

5

California and Ninth Circuit courts have long recognized that the result obtained by Class

6

Counsel is a principal factor in considering an enhanced lodestar multiplier:

7

The "results obtained" factor can properly be used to enhance a
lodestar calculation where an exceptional effort produced an

8

exceptional benefit.  In other words, as stated by a leading treatise,
"[t]he California cases appear to incorporate the 'result obtained'

9

factor into the 'quality' factor: *i.e.*, high-quality work may produce
greater results in less time than would work of average quality, thus

10

justifying a multiplier."  (Pearl, *Cal. Attorney Fee Awards* (Cont.
Ed. Bar 2d ed 1998) § 13.6, p. 327).

11

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001); *Kerr*, 526 F.2d at 70.  Class

12

Counsel recovered full restitution of all wrongfully assessed overdraft charges and a permanent

13

injunction enjoining the unfair practices which alone will save California consumers from

14

millions more in wrongful fees.  These excellent results strongly support an upward enhancement.

15

ii.      The Contingent Nature of This Case.

16

The public interest is served by rewarding attorneys who assume representation on a

17

contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing

18

at all for their work.  *In re Wash. Pub. Power*, 19 F.3d at 1299.  From the outset, prosecution of

19

this action on behalf of the Class has involved significant risk.  Section II.A, *supra*.  In agreeing

20

to represent the Class on a contingent basis, Class Counsel risked their own resources with no

21

guarantee of recovery.  Sobol Decl., ¶¶ 21-22; McCune Decl., ¶¶ 21-31, 80.  Even after prevailing

22

at trial, Wells Fargo continues to contest liability, class certification, and the restitution award.

23

The risk that Class Counsel could recover nothing in this case, on its own, justifies a multiplier.

24

iii.      The Novelty and Difficulty of Questions Involved

25

The lodestar amount should be enhanced to account for the novelty and complexity of the

26

questions involved.  As set forth above, Class Counsel agreed to represent the Class when

27

previous attempts to challenge banks' re-ordering and related practices had failed.  The plaintiffs'

28

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1   bar was overwhelmingly unwilling to pursue claims regarding these issues despite the large sums

2   that banks were reaping by these practices.  *See* section II.A, *supra*; McCune Decl., ¶¶ 2-20.  The

3   claims in this case involved numerous issues of fact and law that were complex and novel.

4   Nonetheless, Class Counsel agreed to represent the Class and, through their skill and

5   extraordinary effort, successfully overcame formidable defenses to prevail at trial and obtain

6   excellent relief for the Class.  A multiplier is warranted under these circumstances.  *See Vizcaino*,

7   290 F.3d at 1048 (affirming enhanced fee where counsel "pursued this case in the absence of

8   supporting precedents" and "against [defendant's] vigorous opposition throughout the litigation").

9                                     iv.      The Experience, Reputation and Ability of Counsel

10          The reputation, experience, and ability of Class Counsel were essential to the success of

11   this litigation.  As noted in the accompanying declarations, Class Counsel have extensive

12   experience in consumer class action and other complex litigation.  Heimann Decl., ¶ 2-4; McCune

13   Decl., ¶ 68, 71, 74, 77.  Their skills in developing the factual and expert record and trying the

14   case were essential to achieving the Judgment.  Moreover, Class Counsel's history of aggressive,

15   successful prosecution of consumer class actions made credible their commitment to pursue this

16   litigation until it provided a fair result for the Class.  Through their skill, reputation, and ability,

17   Class Counsel were able to obtain a Judgment providing outstanding relief for the Class.

18       **B.      Class Counsel is Entitled to an Award of Attorneys' Fees, Pursuant to Section
19                 1021.5, For the "Significant Benefit" They Conferred on Consumers.**

20          Because of the valuable relief that Class Counsel conferred on the Class and many other

21   consumers through their efforts in this case, they are entitled to recover attorneys' fees—paid by

22   Wells Fargo in addition to the common restitution fund—under California's "private attorney

23   general" law, Cal. Code Civ. Pro. § 1021.5,[15] pursuant to which:

24                  a court may award attorneys' fees to a successful party against one
                    or more opposing parties in any action which has resulted in the
25                  enforcement of an important right affecting the public interest if: (a)
                    a significant benefit, whether pecuniary or nonpecuniary, has been
26                  conferred on the general public or a large class of persons, (b) the
                    necessity and financial burden of private enforcement, or of

27   _____
[15] A fee award under Section 1021.5 is calculated by starting with counsel's lodestar, and then
28   adjusting that number with a multiplier as appropriate, based on the same "enhancement" factors
     used in other cases.  *See Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 321-322 (1983).

898811.5                              - 22 -            CLASS COUNSEL'S MOTION FOR AN AWARD OF
                                                       ATTORNEYS' FEES AND COSTS; MPA
                                                       CASE NO. C 07-05923 WHA (JCSX)

1
2
enforcement by one public entity against another public entity, are
such as to make the award appropriate, and (c) such fees should not
in the interest of justice be paid out of the recovery, if any.

3   Plaintiffs here are unquestionably a "successful party," as they have obtained full restitution and

4   injunctive relief after prevailing at trial.  Moreover, the subject matter of this case addresses a

5   matter of important public interest, indeed one that the California legislature has specifically

6   codified (*i.e.*, that businesses not engage in unfair business practices).  *See Colgan v. Leatherman*

7   *Tool Group, Inc.*, 135 Cal.App.4th 663, 702-703 (2006) ("Plaintiffs' lawsuits concerned the

8   enforcement of the California consumer protection laws—an important right affecting the public

9   interest."); *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1418 (1991) ("consumer

10  protection action[s]….. have long been judicially recognized to be vital to the public interest.");

11  *cf. County of Colusa v. Cal. Wildlife Conservation Bd.*, 145 Cal.App.4th 637, 652 (2006)

12  (vindication of statutory rights is matter of important public interest).

13       The other criteria of Section 1021.5 are satisfied as well.  First, through their efforts in this

14  case, Class Counsel have conferred "significant benefits" on a large class of persons—*i.e.*, the

15  millions of Class members and other consumers who will benefit from the Judgment.  As the

16  California Supreme Court has held: "It is well settled that attorney fees under section 1021.5 may

17  be awarded for consumer class action suits benefiting a large number of people."  *Graham*, 34

18  Cal.4th at 578 & n.9 (finding party entitled to fees under Section 1021.5 where "the lawsuit itself

19  furthered the public interest by resulting in extensive consumer remedies, which served as a

20  deterrent to future [harmful] conduct"); *Colgan*, 135 Cal.App.4th at 702-703 (fee award proper

21  under Section 1021.5 where restitution award reversed but party obtained injunction under the

22  UCL to stop misleading advertisements); *Beasley*, 235 Cal.App.3d at 1417-18 (fee award on top

23  of common fund proper under Section 1021.5 where plaintiffs successfully challenged fees

24  imposed by Wells Fargo on customers who made late payments or exceeded credit limits).  As in

25  *Beasley*, Class Counsels' efforts here will benefit over a million Class members by compensating

26  them for improperly assessed bank fees.  Moreover, Class members and many other California

27  consumers will greatly benefit from the injunction obtained in this case, which required Wells

28  Fargo to cease its unfair practices.  *See Colgan*, 135 Cal.App.4th at 702-703 (affirming fee award

1   under Section 1021.5 because the case of the significant benefit of an injunction requiring

2   labeling and advertising changes); *County of Colusa*, 145 Cal.App.4th at 649 (fees awarded under

3   Section 1021.5 where party obtained injunction that served to enforce the spirit of statute).[16]

4       Second, the financial burden of private enforcement here make an award of fees under

5   Section 1021.5 appropriate.  *See Marini v. Municipal Court*, 99 Cal.App.3d 829, 836 (1979) (fee

6   award appropriate under Section 1021.5 "when the necessity for pursuing the lawsuit placed a

7   burden on the plaintiff out of proportion to his individual stake in the matter.") (citation omitted).

8       Third, a fee award under Section 1021.5 would serve the interest of justice.  This would

9   properly place the financial burden on the wrongdoer, and allow Class Counsel to be fairly

10  compensated for their successful efforts in creating excellent relief while minimizing the

11  reduction of the Class members' recovery.  While the Court may order that all of Class Counsels'

12  fee be paid by Wells Fargo pursuant to Section 1021.5, an award on top of the common fund is

13  particularly appropriate to compensate Class Counsel for the injunctive relief achieved, because

14  such relief benefits other customers in addition to the Class members and, while very valuable,

15  does not increase the size of the common fund itself.

16      **C.**    **Class Counsel are Entitled to Reimbursement for Their Out-of-Pocket Nontaxable Costs.**

17

18      Attorneys of prevailing parties may recover reasonable out-of-pocket expenses that would

    normally be charged to a fee paying client.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994);

19
    *HCL Partners v. Leap Wireless Intern, Inc.*, 2010 WL 4156342, at * 2 (S.D. Cal., Oct. 15, 2010).
20
        In addition to the fees they incurred litigating this case for nearly three years, Class
21
    Counsel incurred approximately $728,847.94 in necessary out-of-pocket costs.  Sobol Decl., ¶ 29-
22
    30, Ex. B; McCune Decl., ¶ 81.[17]  This includes costs associated with trial presentation,
23

24  _____

25  [16]Wells Fargo represents that it will change its posting system in California in a manner consistent with the Court's Findings, notwithstanding its pending appeal.  *See* Doc. No. 488.  This benefit alone would justify the award of a fee under Section 1021.5, regardless of the result of Wells

26  Fargo's appeal.  *See Graham*, 34 Cal.4th at 565-66 (California law recognizes "catalyst theory," pursuant to which a party that confers a substantial benefit through legal action may recover fees

27  even in the absence of victory in court).

28  [17] Class Counsel is also submitting herewith a Bill of Costs pursuant to Fed. R. Civ. P. 54(d). Those costs are not are not included in the cost figures referenced herein.

- 24 -

1  discovery, retention of experts, computer research, distribution of Class notice, photocopies,

2  faxes, postage and telephone charges.  These costs incurred by Class Counsel benefited the Class

3  and are appropriate for reimbursement from the common fund.  *Wininger v. SI Mgmt. L.P.*, 301

4  F.3d 1115, 1120-21 (9th Cir. 2002); *Leonard v. Baumer*, 1989 WL 73211 at *6 (C.D. Cal. Mar. 9,

5  1989) (*citing* Newberg, *Attorney Fee Awards* § 2.19 (1987)).

6     **D.    The Class Representatives Are Entitled to Participation Awards For Their
          Considerable Efforts and Demonstrated Commitment to the Class.**

7     The Class Representatives in this case are entitled to "participation" awards for their

8  contributions to the Class.  *Rodriguez v. West Pub'g. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

9  Such awards are "intended to compensate class representatives for work done on behalf of the

10 class [and] make up for financial or reputational risk undertaken in bringing the action."  *Id.*; *Van

11 Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

12    Class Counsel request $10,000 awards for each Class Representative.  This is within the

13 range that Ninth Circuit courts have found reasonable,[18] and is well justified under the

14 circumstances.  The Class Representatives devoted considerable time and attention to this case for

15 the benefit of the Class.[19]  Their commitment is all the more remarkable given the relatively

16 modest size of their personal financial stakes in this case.  *Van Vranken*, 901 F.Supp. at 299.

17 **IV.    CONCLUSION**

18    For the foregoing reasons, Class Counsel respectfully request that the Court award

19 attorneys' fees and non-taxable expenses, under the common fund doctrine and under Cal. Code

20 Civ. P. § 1021.5, and participation awards for each Class Representatives, as requested herein.

21

22

23

24 [18] *See, e.g., Adderley v. Nat'l Football League Players Ass'n*, 2009 U.S. Dist. LEXIS 115742
   (N.D. Cal. Nov. 23, 2009) (Alsup, J.) ($10,000 award where case settled after trial); *In re LDK
25 Solar Sec. Litig.*, 2010 U.S. Dist. LEXIS 73530, *10 (N.D. Cal. Jun. 21, 2010) (Alsup, J.)
   ($10,000 award); *In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997)
26 ($25,000 awards); *Van Vranken.*, 901 F.Supp. at 299-300 ($50,000 award).
27 [19] Among other things, they met with counsel, gathered/reviewed documents, reviewed pleadings,
   responded to numerous sets of discovery, provided declarations, were deposed, traveled to San
28 Francisco to participate in mediation, and spent four days away from home for trial.  McCune
   Decl., ¶¶  82-83; Gutierrez Decl., ¶¶  1-7; Walker Decl., ¶¶  1-7.

1

2      Dated: November 8, 2010                    Respectfully submitted,

3                                                 LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4

5                                                 By:              /s/  Michael W. Sobol

6                                                 Richard M. Heimann (State Bar No. 063607)
                                                  Michael W. Sobol (State Bar No. 194857)
7                                                 Roger N. Heller (State Bar No. 215348)
                                                  Mikaela Bernstein (State Bar No. 261301)
8                                                 275 Battery Street, 29th Floor
                                                  San Francisco, CA  94111-3339
9                                                 Telephone:  (415) 956-1000
                                                  Facsimile:  (415) 956-1008
10
                                                  Richard D. McCune (State Bar No. 132124)
11                                                *E-mail:  rdm@mwtriallawyers.com*
                                                  Jae (Eddie) K. Kim (State Bar No. 236805)
12                                                *E-mail:  jkk@mwtriallawyers.com*
                                                  McCUNE & WRIGHT, LLP
13                                                2068 Orange Tree Lane, Suite 216
                                                  Redlands, CA  92374
14                                                Telephone:  (909) 557-1250
                                                  Facsimile:  (909) 557-1275
15
                                                  *Attorneys for Plaintiffs and the Class*
16

17

18

19

20

21

22

23

24

25

26

27

28