Richard M. Heimann (State Bar No. 063607)
*E-mail: rheimann@lchb.com*
Michael W. Sobol (State Bar No. 194857)
*E-mail: msobol@lchb.com*
Roger Heller (State Bar No. 215348)
*E-mail: rheller@lchb.com*
Mikaela Bernstein (State Bar No. 261301)
*E-mail: mbernstein@lchb.com*
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
*E-mail: rdm@mccunewright.com*
Jae (Eddie) K. Kim (State Bar No. 236805)
*E-mail: jkk@mccunewright.com*
McCUNEWRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER, and WILLIAM SMITH, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A,<br><br>Defendant. | Case No. C 07-05923-WHA (JCSx)<br><br>**DECLARATION OF MICHAEL W. SOBOL IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Courtroom:        9<br>Judge Assigned:   Hon. William H. Alsup |

1    I, Michael W. Sobol, hereby declare and state:

2        1.    I am a member in good standing of the California State Bar and a partner in

3    the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), Class Counsel in this

4    case.  I am admitted to practice before this Court.  I have personal knowledge of the matters set

5    forth herein, and could and would testify competently thereto if called upon to do so.

6        2.    Pursuant to Civil Local Rule 54-5(b)(1), this confirms that the parties have

7    met and conferred regarding Class Counsels' attorneys' fees and costs.

8                    **BACKGROUND AND EXPERIENCE**

9        3.    I am a 1989 graduate of Boston University School of Law.  I practiced law

10   in Massachusetts from 1989 to 1997.  From 1995 through 1997, I was a Lecturer in Law at

11   Boston University School of Law.  In 1997, I left my position as partner in the Boston firm of

12   Shafner, Gilleran & Mortensen, P.C. to move to San Francisco, where I joined LCHB.  Since

13   joining LCHB in 1997, I have almost exclusively represented plaintiffs in consumer protection

14   class actions.  I have been a partner with LCHB since 1999, and am currently the chair of

15   LCHB's consumer practice group.  I have served as plaintiffs' class counsel in numerous

16   nationwide consumer class action cases.

17   **LCHB'S PRIOR REPRESENTATION OF CONSUMERS IN OVERDRAFT FEE CASES**

18       4.    For many years, LCHB has been a leader in the fight to protect the rights

19   and interests of consumers, recovering hundreds of millions of dollars for consumers through

20   class action litigation.  A sample of the consumer class actions that LCHB has litigated is

21   included in the firm resume that is attached to the declaration of Richard M. Heimann, which is

22   submitted herewith.

23       5.    Among other areas, LCHB was one of the few class action firms willing to

24   represent consumers in litigation regarding bank overdraft fees and the reordering of transactions

25   for many years.  This litigation has proven to be both difficult and risky, and at times, the cases

26   that LCHB pursued resulted in dismissals of plaintiffs' claims.  *See Sturm v. Wells Fargo Bank,*

27   *N.A.*, S.F. Superior. Ct. Case No. 996873; *Snow v. Compass Bancshares, Inc.*, Alab. Cir. Ct,

28   Mobil County, Case No. CV-98-2384.  Nevertheless, LCHB agreed to represent consumers in

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1   cases regarding debit card transactions and overdraft charges again, beginning in late 2008.  In

2   early 2009, LCHB filed a class action against Bank of America, challenging its re-ordering

3   practices.  *Yourke , et al, v. Bank of America, NA*, S.F. Superior Ct., Case No. CGC-09-4871000

4   (subsequently removed to federal court).

**LCHB JOINS AS CLASS COUNSEL IN THIS CASE**

6          6.      On May 3, 2009, LCHB was approached by Richard D. McCune of

7   McCune & Wright ("M&W"), then serving as Class Counsel in this matter, about the possibility

8   of LCHB joining as co-counsel and lead trial counsel in this action.  At the time, the trial in this

9   case was scheduled to commence in approximately one month, meaning that LCHB would have

10  to get up to speed very quickly regarding, among other things, the evidentiary record and posture

11  and history of the case, in order to sufficiently prepare for trial.

12         7.      Shortly thereafter, LCHB and M&W reached an agreement in principal to

13  co-counsel in this action.  LCHB agreed to appear for the Class, take on the role of lead trial

14  counsel, advance all litigation expenses (including assuming responsibility for significant

15  expenses outstanding at that time), and co-represent the Class for all purposes.  This agreement

16  was reached prior to the May 13, 2009 Case Management Conference in this case, during which

17  the Court rejected the parties' proposed settlement and suggested to Mr. McCune that he retain a

18  firm such as LCHB for this case, and prior to the parties' mediation with Magistrate Judge Spero

19  that led to the proposed settlement at that time.  LCHB and M&W agreed that if a settlement was

20  reached at such mediation and eventually approved, LCHB would not appear or serve as co-

21  counsel.

22         8.      LCHB agreed to represent the Class in this case and advance considerable

23  out-of-pocket litigation costs, despite the considerable challenges remaining in the case (including

24  proving Wells Fargo's liability and class damages), and despite the fact that a fair assessment of

25  the record indicated that achieving a positive result for the Class would require a full trial on the

26  merits, and would require representation of the Class through the inevitable appeal of any

27  judgment entered in favor of the Class.  LCHB knowingly took on the representation of the Class

28  despite the risks inherent in a trial of complex class-wide issues, and the risks inherent in class-

- 2 -

1    wide rulings (*e.g.*, preemption, standing, class certification) and a class-wide judgment being

2    upheld on appeal.  Despite these risks, LCHB accepted the responsibilities of representing the

3    Class, and from that moment forward has committed all resources necessary to litigate this case to

4    a successful result.

5                                **PRE-TRIAL PROCEEDINGS**

6              9.        This case has been vigorously litigated throughout.  A description of Class

7    Counsel's considerable efforts in successfully litigating this action through the pleading and class

8    certification stage, and in overcoming Wells Fargo's numerous dispositive and other pre-trial

9    motions, is set forth in the Declaration of Richard D. McCune, submitted herewith.  Likewise,

10   Class Counsel worked extremely hard, and was required to expend considerable resources, in

11   order to prevail at trial and obtain excellent relief for the Class.

12             10.       Class Counsel from LCHB and M&W spent significant time and resources

13   in connection with Plaintiffs' expert, Art Olsen's, restitution analysis, including negotiating

14   access to the necessary Wells Fargo data, working to coordinate Plaintiffs' restitution theories

15   with Mr. Olsen's analysis of the data, helping with the preparation Mr. Olsen's expert reports and

16   to prepare him for trial, taking and defending the depositions of both parties' damages experts,

17   and overcoming Wells Fargo's multiple attempts to exclude and/or discredit Mr. Olsen's analysis.

18             11.       Moreover, as the Court is well aware, the trial and related proceedings in

19   this case were hard fought and required extensive efforts from Class Counsel.  During the time

20   leading up to trial, Wells Fargo filed a motion, styled as a motion for summary judgment and/or

21   class decertification, based on Wells Fargo's argument that Plaintiffs' expert, Art Olsen's,

22   damages analysis and testimony should be excluded.  Litigating Wells Fargo's motion required

23   Class Counsel to take the depositions of Wells Fargo's two damages experts, extensive briefing,

24   and a hearing on such motion.  Wells Fargo's motion was denied.

25             12.       In addition, the parties filed several motions *in limine*, which were heard at

26   the Pre-Trial Conference on April 19, 2010.  These motions included attempts to exclude

27   documentary evidence and witness testimony, as well as Wells Fargo's unsuccessful attempt to

28   exclude all evidence relating to "shadow line" based on the *Smith* settlement.  Researching,

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1   briefing, and arguing these motions required the hard work of multiple attorneys and other staff at

2   both LCHB and M&W.

3          13.     Moreover, the parties engaged in extensive meet and confer regarding their

4   respective objections to the designated trial exhibits and deposition testimony and, when Wells

5   Fargo insisted on maintaining "authenticity" objections to dozens of documents *which Wells*

6   *Fargo itself produced from its own records*, litigated a motion concerning such objections.

7          14.     Pursuant to the Court's guidelines governing civil trials, the parties filed a

8   joint Proposed Pre-Trial Order on April 12, 2010, which included information such as a statement

9   of Plaintiffs' claims and relief sought and a list of stipulated facts.  Preparing this filing required

10  considerable effort from Class Counsel, and required Class Counsel to meet and confer with

11  counsel from Wells Fargo.  Additionally, also pursuant to the Court's pre-trial guidelines, Class

12  Counsel filed pre-trial Proposed Findings of Fact and Conclusions of Law, which required

13  considerable effort from multiple attorneys to draft.  Class Counsel also had to brief several

14  additional pre-trial issues, including Wells Fargo's motion to prevent Plaintiffs from using Wells

15  Fargo's "Hands on Banking" educational materials (which contained misrepresentations) at trial.

16                                    **THE TRIAL**

17         15.     Preparing for trial and successfully trying this case required an enormous

18  effort from Class Counsel.  Given the complexity of the case, the scope of the evidentiary record,

19  and the vigorous defense put forward by Wells Fargo, Class Counsel depended on contributions

20  from numerous attorneys, paralegals, and other staff in order to be prepared for trial.

21  Considerable efforts were required both in the time leading up to trial (*e.g.*, preparing for direct

22  testimony and cross-examination, analysis of the exhibits and other evidence, preparing trial

23  strategy) and during the trial itself, both inside and outside the courtroom.  Attorneys and

24  paralegals from both LCHB and M&W worked tirelessly during the weeks leading up to trial, and

25  during the two week trial itself, and their efforts were absolutely critical to both the finished

26  product that the Court saw and to Plaintiffs' ultimate success at trial.

27         16.     Notably, the motions practice and other litigation activity remained intense

28  even during the course of trial.  Among other mid-trial issues, Class Counsel had to: litigate Wells

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1   Fargo's Rule 52(c) Motion for Judgment on Partial Findings, litigate Wells Fargo's motion to

2   exclude the testimony of one of Plaintiffs' experts, depose (one evening in the middle of trial) a

3   Wells Fargo percipient witnesses, and spend considerable attorney resources addressing issues

4   related to, among other things, the settlement in the *Smith* matter, Wells Fargo's redaction of

5   several key documents during discovery, Wells Fargo's changing recollection of how it posted

6   check transactions prior to adopting high-to-low posting, and the review and flagging of customer

7   complaints concerning Wells Fargo's overdraft fee practices.  Litigating these many issues mid-

8   trial required the hard work of numerous attorneys and staff outside of the courtroom and, further,

9   because of the relation of these issues to the substance of the trial itself, reasonably required the

10  participation and appearance of additional attorneys at trial.

11              17.      After the evidentiary portion of trial concluded on May 7, 2010, the parties

12  filed their Proposed Findings of Fact and Conclusions of Law on May 19, 2010, and their

13  responses thereto on May 26, 2010.  Preparing these submissions required a significant effort on

14  the part of Class Counsel to review the extensive testimony and documentary evidence, research

15  the relevant case law, and craft proposed findings and responses thereto.  Subsequently, at the

16  Court's request, Class Counsel submitted briefing regarding the effect of the release in the *Smith*

17  case, and further responded to Wells Fargo's "Notice of Potential Jurisdictional Defect."   Class

18  Counsel, of course, also prepared for and presented closing argument to the Court on July 9,

19  2010.

20                              **POST-TRIAL PROCEEDINGS**

21              18.      The Court issued its Findings of Fact and Conclusions of Law After Bench

22  Trial on August 10, 2010.  Class Counsels' responsibilities to the Class have continued since that

23  time.  Five months after the trial concluded, Wells Fargo moved to amend the Court's Findings,

24  based on its purported "late discovery" of the so-called "Norwest study," which Wells Fargo had

25  relied upon for years in this case but which never materialized prior to the close of evidence, and

26  which, in fact, *supported* the Court's Findings.  Class Counsel successfully opposed Wells

27  Fargo's motion.  Moreover, Class Counsel worked hard to prepare their portions of the Joint

28

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1    Recommendation and their proposed forms of Judgment, as ordered by the Court, meeting and

2    conferring with Wells Fargo's counsel in the process as necessary.

3            19.     The Court entered final Judgment in this case on October 25, 2010.

4    Thereafter, in order to ensure that the Class will be able to recover the restitution ordered by the

5    Court, Class Counsel opposed Wells Fargo's motion for a stay of execution pending appeal

6    without the posting of a *supersedeas* bond.

7            20.     Wells Fargo has now appealed the Court's Judgment.  Class Counsel will

8    continue to represent the Class' interests throughout the full appellate process, and if the Class

9    prevails on appeal, Class Counsel's responsibilities to the Class will continue through the

10   distribution of restitution to Class members.

11                              **LCHB'S TIME AND EXPENSES**

12           21.     LCHB has spent considerable time on this litigation that could have been

13   spent on other matters.  At various times during the litigation, the active prosecution of the claims

14   has consumed a substantial percentage of my billable time that could otherwise have been spent

15   on other fee-generating work.  In addition to a substantial percentage of my time, this case has

16   also required significant time from other lawyers in my firm, as well as our law clerks, paralegals,

17   and computer database personnel, which could have been spent on other fee-generating work.

18           22.     The time my firm has spent on this case has been completely contingent on

19   the outcome of the action.  LCHB has not been paid for any of the time spent on the action, nor

20   has it been reimbursed for any of its out-of-pocket expenses.

21           23.     In connection with this litigation, the attorney and staff timekeepers at

22   LCHB have billed a total of approximately 3303.3 hours, for a total lodestar of approximately

23   $1,556,260.50.  This information is derived directly from LCHB's time records, which are

24   prepared contemporaneously and maintained by LCHB in the ordinary course of business.

25           24.     Attached hereto as **Exhibit A** is a summary listing each lawyer, paralegal,

26   and staff for which LCHB is seeking compensation for legal services in connection with this

27   action, the hours each individual expended, and the hourly rate at which compensation is sought

28

- 6 -

1    for each individual.  For any individuals who have left the employ of LCHB, the hourly rate at the

2    time when their employment concluded is used.

3            25.    Class Counsel made every reasonable effort to prevent the duplication of

4    work or inefficiencies that might have resulted from having two firms working on this case.  For

5    example, internal meetings among Class Counsel were kept to a minimum, and were generally

6    based on agendas prepared in advance.  Assignments were made for specific tasks and activities

7    so that it was clear which firm had primary responsibility over each task.  I believe that Class

8    Counsel did not overstaff hearings or the trial beyond what was reasonably necessary.

9            26.    Based upon my experience with other class action matters, I believe that

10    the time expended by LCHB in connection with this litigation is reasonable in amount and was

11    necessary to ensure the success of this case, particularly given the hard-fought nature of this case,

12    the complexity and novelty of the issues involved, and the excellent monetary and injunctive

13    relief obtained for the Class and other California consumers.

14            27.    LCHB's customary rates, which were used for purposes of calculating

15    lodestar here, are based on prevailing rates in this District and have been approved by federal

16    courts in this Circuit and other Circuits.  *See, e.g.*, *Fleming v. Kemper Nat. Services, Inc.*, 373 F.

17    Supp. 2d 1000, 1012 (N.D. Cal. 2005); *Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL

18    33292940, at *6 (N.D. Cal. Nov. 17, 1999); *Grays Harbor Adventist Church Sch. v. Carrier

19    Corp.*, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008); *Pelletz v. Weyerhaeuser Co.*, 2009

20    U.S. Dist. LEXIS 1803, at *7 (W.D. Wash. Jan. 9, 2009);  *Berger v. Property ID Corporation*,

21    CV 05-5373-GHK (Cwx) (C.D. Cal.); *Lonardo v. Travelers Indem. Co.*, -- F. Supp. 2d --, 2010

22    WL 1416698, at *22-23 (N.D. Ohio Mar. 31, 2010); *In re Diet Drugs (Phentermine,

23    Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ.A. 99-20593, MDL No. 1203, 2003

24    WL 21641958, at *9 (E.D. Pa. May 15, 2003); *In re Prudential-Bache Energy Income P'ships

25    Sec. Litig.*, No. 888, 1994 WL 202394, at *1-2 (E.D. La. May 18, 1994).

26            28.    LCHB sets its hourly rates according to prevailing market rates, bills its

27    hourly paying clients according to those rates, and is routinely awarded fees according to those

28    rates.  LCHB primarily represents clients on a contingent fee basis, both in class and individual

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1    cases.  However, LCHB also represents plaintiffs on an hourly basis and is paid according to its

2    then current hourly rates.  LCHB currently is retained by such clients who pay LCHB's current

3    hourly rates, the same rates used to calculate its lodestar in this matter.

4           29.    LCHB has expended a total of approximately $419,093.93 in un-

5    reimbursed non-taxable expenses that were necessarily incurred in connection with the

6    prosecution of this litigation.  A summary breakdown of LCHB's non-taxable litigation expenses

7    in this case is attached hereto as **Exhibit B**.  This amount does not include $41,650.88 in

8    expenses which are set forth and separately requested in the Bill of Costs submitted herewith.

9    Thus, including non-taxable expenses and expenses in the Bill of Costs, LCHB has expended a

10   total of $460,744.81 in out-of-pocket expenses that were necessarily incurred in connection with

11   the prosecution of this litigation.

12          30.    The foregoing expenses were incurred solely in connection with this

13   litigation and are reflected on LCHB's books and records as maintained in the ordinary course of

14   business.  These books and records are prepared from invoices, receipts, expense vouchers, check

15   records and other records, and are an accurate record of the expenses incurred in this case.  The

16   rates charged for all internal expenses incurred by my firm (e.g., photocopying) are the same

17   irrespective of whether the case is billable or contingent.  As a result, the rates charged are

18   necessarily market-sensitive and market-competitive since they are subject to and controlled by

19   an overriding "check" imposed by the firm's cost paying clients.

20   **LCHB ATTORNEYS AND OTHER PERSONNEL WORKING ON THIS CASE**

21          31.    Richard M. Heimann was Lead Trial Counsel in this case.  Mr. Heimann is

22   a partner at LCHB.  He received his law degree from Georgetown University Law Center in

23   1972.  He has over 30 years of civil trial experience, and has been repeatedly recognized as one of

24   the top trial lawyers in California.  His background and qualifications are set forth in more detail

25   in his declaration submitted herewith.  Mr. Heimann's responsibilities in this case have included

26   leading Class Counsels' trial efforts and overall litigation of this matter, developing Plaintiffs'

27   trial strategy, questioning key Wells Fargo witnesses at trial, and overseeing post-trial matters.

28

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

32.     My background and qualifications are set forth above.  My responsibilities in this case have included conducting and overseeing the day-to-day litigation of this matter, leading Plaintiffs' trial preparation efforts, working with Plaintiff' experts, assisting Mr. Heimann in the preparation of questioning hostile witnesses, developing Plaintiffs' litigation and trial strategy, preparing key pre-trial and post-trial pleadings and overseeing the same, and directing necessary legal research.

33.     Barry M. Himmelstein is a partner at LCHB.  He graduated *magna cum laude* from the University of California, Hastings College of the Law, in 1991.  Following graduation, Mr. Himmelstein clerked for the Hon. Charles A. Legge (Ret.) of the Northern District of California.  In 1993, he entered private practice at the San Francisco office of Morrison & Foerster, LLP.  He joined LCHB in 1997, and has been a partner at LCHB since 1999.  Since joining LCHB, Mr. Himmelstein has specialized in consumer fraud litigation.  Mr. Himmelstein's responsibilities in this case have included working with Plaintiffs' experts, overseeing Plaintiffs' damages analysis, taking and defending expert depositions, responding to Wells Fargo's attacks on Plaintiffs' damages analysis, briefing pre-trial motions, and questioning damages experts at trial.

34.     Roger N. Heller is an associate at LCHB.  Mr. Heller received his law degree from Columbia University School of Law in 2001, where he was a Senior Editor for the *Columbia Law Review*.  From 2001 through 2005, he worked as a Litigation Associate at O'Melveny & Myers LLP's San Francisco office.  From 2005 through 2008, he was Senior Staff Attorney at Disability Rights Advocates in Berkeley, California, specializing in class action litigation under federal and state anti-discrimination laws.  He joined LCHB in 2008, and since that time has worked exclusively on consumer protection class actions.  Mr. Heller has been the primary LCHB associate working on this matter from the time leading up to trial through the present.  His responsibilities in this case have included preparing pre-trial, mid-trial, and post-trial pleadings, coordinating Plaintiffs' trial preparation efforts, arguing a motion *in limine*, meeting and conferring with opposing counsel, preparing for witness examinations at trial, analyzing and

1   organizing evidence for trial, drafting pre-trial and post-trial proposed findings, and legal

2   research.

3          35.    Mikaela Bernstein is an associate at LCHB.  She received her law degree in

4   2008 from the University of San Francisco School of Law, and joined LCHB in 2008.  She was

5   an extern for the Honorable Stuart Pollak at the California Court of Appeal, First District.  Her

6   responsibilities in this case have included preparing pleadings, conducting extensive legal

7   research, arguing a motion *in limine*, coordinating Plaintiffs' trial preparation efforts, and drafting

8   post-trial proposed findings.

9          36.    Jordan Elias is an associate at LCHB.  He received his law degree from

10  Stanford Law School in 2003.  After graduation, he served as a law clerk for the Honorable

11  Cynthia Holcomb Hall of the U.S. Court of Appeals for the Ninth Circuit, and then worked as

12  Associate at Wilson Sonsini Goodrich & Rosati, where he was awarded the John Wilson Award

13  for outstanding representation of Wilson Sonsini's pro bono clients.  Since joining LCHB in

14  2008, Mr. Elias has focused on representing clients in consumer and antitrust cases.  His

15  responsibilities in this case have included preparing mid-trial and post-trial pleadings, litigating

16  preemption issues, and conducting extensive legal research.

17         37.    Allison Elgart is an associate at LCHB.  She graduated *magna cum laude*

18  from Brown University in 2000, and from Harvard Law School in 2005, where she was Editor-in-

19  Chief of the *Harvard Civil Rights-Civil Liberties Law Review* and a practicing member of the

20  Harvard Legal Aid Bureau.  Immediately after graduating from law school, Ms. Elgart clerked for

21  the Honorable Robert P. Patterson, Jr. of the United States District Court for the Southern District

22  of New York.  At LCHB, she has focused on representing plaintiffs in employment

23  discrimination litigation and consumer protection class action cases.  Ms. Elgart's responsibilities

24  in this case have included researching complex legal issues.

25         38.    Allison Stocking is an associate at LCHB.  She received her law degree in

26  2006 from Yale Law School, she was an editor of the Yale Human Rights and Development Law

27  Journal.  After graduation, she worked as a law clerk for the Honorable Barrington D. Parker, Jr.

28  of the United States Court of Appeals for the Second Circuit, and for the Honorable John Gleeson

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

1   of the United States District Court for the Eastern District of New York.  Ms. Stocking joined

2   LCHB in 2009.  Her responsibilities in this case have included researching post-trial issues.

3             39.     Jennifer Rudnick is a paralegal at LCHB, and has been the primary LCHB

4   paralegal working on this matter.  Her responsibilities have included organizing exhibits and

5   other materials, preparing documents and witness binders for trial, and coordinating filings.  Jack

6   Sanford, a former LCHB paralegal, also contributed significantly to Plaintiffs' trial preparation

7   and presentation efforts.  His responsibilities included preparing witness binders and exhibits for

8   trial, and identifying and tracking down key information and documents before and during trial.

9             40.     Kirti Dugar is the director of LCHB's Litigation Support department.  In

10   that role, he oversees and directs an experienced team of LCHB employees responsible for

11   maintaining and developing LCHB's information databases and applying the technology required

12   for trial presentation.  Mr. Dugar and his department's responsibilities in this case have included

13   electronically organizing documents and other evidence, preparing exhibits and demonstratives

14   for trial, and preparing and presenting exhibits and deposition excerpts for presentation at trial.

15   The Litigation Support team members who assisted Mr. Dugar in this case included LCHB

16   employees Scott Alameda, Arra Khararjian, Major Mugarage, Anthony Grant, and Sat Kriya

17   Khalsa.

18             I declare under penalty of perjury that the foregoing is true and correct.  Executed

19   at San Francisco, California this 8th day of November, 2010.

20

21                                  */s/ Michael W. Sobol*

22                                  Michael W. Sobol

900485.1

23

24

25

26

27

28

DECLARATION OF MICHAEL W. SOBOL
CASE NO. C 07-05923 WHA (JCSX)

# EXHIBIT A

## LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

| Report created on 11/05/2010 03:30:10 PM | From | Inception |
|---|---|---|
| | To | Present |

**Matter Number: 3380-0001**   GUTIERREZ V. WELLS FARGO - General Matters

### PARTNER

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| RICHARD HEIMANN | 196.20 | 850.00 | 166,770.00 |
| BARRY HIMMELSTEIN | 258.50 | 675.00 | 174,487.50 |
| MICHAEL SOBOL | 608.00 | 725.00 | 440,800.00 |
| | 1,062.70 | | 782,057.50 |

### ASSOCIATE

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| MIKAELA BERNSTEIN | 476.70 | 325.00 | 154,927.50 |
| ALLISON ELGART | 48.30 | 390.00 | 18,837.00 |
| JORDAN ELIAS | 102.80 | 430.00 | 44,204.00 |
| ROGER HELLER | 707.10 | 450.00 | 318,195.00 |
| ALISON STOCKING | 11.00 | 370.00 | 4,070.00 |
| | 1,345.90 | | 540,233.50 |

### PARALEGAL/CLERK

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| JENNIFER RUDNICK | 352.20 | 235.00 | 82,767.00 |
| JACK SANFORD | 120.80 | 225.00 | 27,180.00 |
| KIRTI DUGAR | 166.50 | 345.00 | 57,442.50 |
| | 639.50 | | 167,389.50 |

### OTHER

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| SCOTT ALAMEDA | 39.00 | 260.00 | 10,140.00 |
| ARRA KHARARJIAN | 22.80 | 270.00 | 6,156.00 |
| MAJOR MUGRAGE | 92.60 | 260.00 | 24,076.00 |
| ANTHONY GRANT | 75.00 | 260.00 | 19,500.00 |
| SAT KRIYA KHALSA | 25.80 | 260.00 | 6,708.00 |
| | 255.20 | | 66,580.00 |

| | MATTER TOTALS | 3,303.30 | | 1,556,260.50 |
|---|---|---|---|---|

# EXHIBIT B

**LCHB EXPENSES**
*Gutierrez v. Wells Fargo*

**Non-Taxable Costs Incurred**

| | |
|---|---:|
| Books/Subscriptions | $35.00 |
| Computer Research | $38,737.70 |
| Electronic Databases | $23,838.35 |
| Experts/Consultants | $282,612.28 |
| Fax | $140.00 |
| Federal Express/Messenger | $3,135.10 |
| In-House Copies | $9,305.80 |
| Notices/Publications/Bonds | $10,881.46 |
| Other Charges | $1,274.37 |
| Outside Copy Service | $7,462.09 |
| Postage | $547.24 |
| Print | $18,849.40 |
| Process Service | $260.00 |
| Telephone | $2,279.05 |
| Travel and Meals | $12,632.27 |
| Trial Expenses | $7,103.82 |
| | |
| Total Non-Taxable Costs: | $419,093.93 |

**Costs Requested Pursuant to Bill of Costs**

| | |
|---|---:|
| Trial and Deposition Transcripts | $37,485.21 |
| Printing | $4,165.67 |
| | |
| Total Bill of Costs: | $41,650.88 |

| | |
|---|---:|
| **Total of Expenses for LCHB** | $460,744.81 |

900540.1