Richard M. Heimann (State Bar No. 063607)
*E-mail: rheimann@lchb.com*
Michael W. Sobol (State Bar No. 194857)
*E-mail: msobol@lchb.com*
Roger Heller (State Bar No. 215348)
*E-mail: rheller@lchb.com*
Jordan Elias (State Bar No. 228731)
*E-mail: jelias@lchb.com*
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
*E-mail: rdm@mwtriallawyers.com*
Jae (Eddie) K. Kim (State Bar No. 236805)
*E-mail: jkk@mwtriallawyers.com*
McCuneWright, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA GUTIERREZ, ERIN WALKER, and WILLIAM SMITH, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. C 07-05923-WHA (JCSx)<br><br>**PLAINTIFFS' MOTION FOR JUDGMENT FOLLOWING REMAND**<br><br>The Honorable William H. Alsup<br><br>Date:  May 2, 2013<br>Time:  8:00 a.m.<br>Courtroom:  8, 19th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................................

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 2

III.  ARGUMENT .................................................................................................. 5

    A.   The Court Should Re-Enter The $203 Million Restitution Judgment At This Time. ........................................................................................ 5

        1.   The October 2010 Final Judgment Independently Premised the Full Restitution Award on the Claims That Were Affirmed on Appeal. ................................................................... 5

        2.   The Existing Record and the Court's Findings Fully Support a $203 Million Restitution Award for the Claims Affirmed on Appeal. ...................................................................... 7

    B.   Post-Judgment Interest Should Run From The Date On Which The Original Judgment Was Entered. ..................................................... 11

    C.   Plaintiffs Have Consistently Pursued Restitution for The Affirmed Claims. ............................................................................... 12

    D.   There is No Need To Re-Litigate The Numerous Issues That Have Already Been Fully Tried. ........................................................ 15

    E.   The Court Should Award Pre-Judgment Interest. .................................. 16

IV.   CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Bingham v. Zolt,*
   66 F.3d 553 (2d Cir. 1995) .................................................................................... 6

*Bott v. American Hydrocarbon Corp.,*
   458 F.2d 229 (5th Cir. 1972) .............................................................................. 17

*Coleman v. Tennessee,*
   998 F. Supp. 840 (W.D. Tenn. 1998) .................................................................. 6

*Committee on Children's Television, Inc. v. General Foods Corp.,*
   35 Cal.3d 197 (1983) .......................................................................................... 7

*Concepcion v. AT&T Mobility LLC* ............................................................................ 4

*Cortez v. Purolator Air Filtration Prods. Co.,*
   999 23 Cal. 4th 163 (2000) ................................................................................. 8

*Dalgarn v. Robbins, Dalgarn, Berliner & Carson,*
   2003 WL 22511462 (Cal. App. Nov. 6, 2003) .................................................. 17

*Exxon Shipping Co. v. Baker,*
   554 U.S. 471 (2008) ........................................................................................... 12

*Exxon Valdez v. Exxon Mobil Corp.,*
   568 F.3d 1077 (9th Cir. 2009) ...................................................................... 11, 12

*Faircloth v. Finesod,*
   938 F.2d 513 (4th Cir. 1991) ............................................................................... 6

*Guam Soc'y of Obstetricians & Gynecologists v. Ada,*
   100 F.3d 691 (9th Cir. 1996) ........................................................................ 11, 12

*Gutierrez v. Wells Fargo Bank, N.A.,*
   704 F.3d 712 (9th Cir. 2012) ...................................................................... passim

*Handgards, Inc. v. Ethicon, Inc.,*
   743 F.2d 1282 (9th Cir. 1984) ...................................................................... 11, 12

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ........................................................................................ 7

*Kaiser Aluminum & Chem. Corp. v. Bonjorno,*
   494 U.S. 827 (1990) ........................................................................................... 11

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,*
   104 Cal. App. 4th 508 (2002) ........................................................................... 7, 9

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life,*
   518 F.3d 1013 (9th Cir. 2008) ........................................................................... 12

*Reedy v. Bussell*,
  2009 WL 884606 (Cal. App. Apr. 2, 2009) ............................................................... 17

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
  676 F.2d 1291 (9th Cir. 1982)...................................................................... 11, 12

*Utility Audit Co., Inc. v. City of Los Angeles*,
  112 Cal. App. 4th 950 (2003) ............................................................................ 15

## STATUTES

Cal. Bus. & Prof. Code §§ 17200 .................................................................................. 1

Cal. Bus. & Prof. Code §§ 17203 .................................................................................. 8

Cal. Bus. & Prof. Code §§ 17500 .................................................................................. 1

Cal. Bus. & Prof. Code §§ 17535 .................................................................................. 8

Cal. Civ. Code § 3287(a) .............................................................................................. 17

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 2, 2013, at 8:00 a.m., or as soon as it may be heard, in Courtroom 8 of the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs, on behalf of themselves and the Class, will move, and hereby do move, for: (a) re-entry of judgment, as to the "fraudulent" prong and False Advertising Law claims for which class-wide liability was affirmed by the Ninth Circuit, for restitution in the amount of $202,994,035.46; (b) an order that post-judgment interest accrue from the date of the entry of the original Judgment, *i.e.*, from October 25, 2010; (c) an injunction enjoining Wells Fargo from making false and misleading representations about its posting order; and (d) an award of pre-judgment interest in an amount to be calculated by Plaintiffs' using the transactional data for the class.

This motion is based upon this Notice of Motion and Motion, the accompanying memorandum, any further pleadings and evidence filed in connection with this motion, any argument made in connection with this motion, and the pleadings, trial record, and other record in this action.

Dated: March 14, 2013                    Respectfully submitted,

                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                         By: _____ /s/ *Richard M. Heimann* _____
                                                      Richard M. Heimann

                                         Richard M. Heimann (State Bar No. 063607)
                                         Michael W. Sobol (State Bar No. 194857)
                                         Roger Heller (State Bar No. 215348)
                                         Jordan Elias (State Bar No. 228731)
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA 94111-3339
                                         Telephone: (415) 956-1000
                                         Facsimile: (415) 956-1008

                                         *Attorneys for Plaintiffs and the Class*

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3         The Ninth Circuit has affirmed in part and reversed in part this Court's findings after trial,

4    vacating the Judgment and remanding for a determination of the amount of the restitution to be

5    awarded on the claims affirmed on appeal. *See Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d

6    712 (9th Cir. 2012). Plaintiffs respectfully submit that the Court should, consistent with the Ninth

7    Circuit's decision, re-enter Judgment in the amount previously awarded because: (a) the Court's

8    October 2010 Final Judgment ("Judgment") awarding restitution was already, by its express

9    terms, entered on the claims affirmed on appeal; and (b) the Court's earlier findings and the

10   existing trial record demonstrate, in any event, that the affirmed claims completely support the

11   full amount of the previous restitution award.

12        Defendant Wells Fargo Bank, N.A. ("Wells Fargo") appealed every conceivable aspect of

13   this Court's findings, even arguing that this Court abused its discretion when it concluded from

14   the full trial record that Wells Fargo's conduct deceived the named plaintiffs and was likely to

15   deceive the class of its customers. However, the Ninth Circuit affirmed the core of the Court's

16   findings. It affirmed the certification of the class, upheld the findings concerning Wells Fargo's

17   deceitful, classwide conduct, and ruled that the statutory affirmative fraud claims were not

18   preempted under the National Bank Act ("NBA"). In so doing, the Ninth Circuit affirmed Wells

19   Fargo's liability to the certified class under the "fraudulent" prong of California's Unfair

20   Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). Plaintiffs' claim under the

21   "unfair" prong of the UCL was the only claim reversed on appeal for being preempted under the

22   NBA. On remand, the Court has been tasked with determining the proper relief for the claims

23   affirmed by the Ninth Circuit.[1]

24        By its express terms, the Judgment applies to *all claims* upon which Plaintiffs prevailed at

25   trial—including the claims for which this Court's determinations of class-wide liability have now

26   _____

27   [1] The Ninth Circuit's opinion does not address, and thus does not preempt, this Court's separate
     finding of liability under California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et
     seq.* ("FAL"). However, its affirmance of class-wide liability under the "fraudulent" prong

28   applies equally to the FAL claim which is premised on the same deceptive conduct.

1    been affirmed on appeal.  *See* Judgment, Dkt. No. 498.  Each of Plaintiffs' claims sought relief

2    for the same wrong—*i.e.*, the assessment of excess overdraft fees—and they supported the same

3    quantification of restitution to address that wrong.  Affirmance of any one of the claims for which

4    the Judgment was entered, entitles the class to the full amount of restitution previously ordered.

5          Independent of the literal interpretation of the Judgment, the Court should re-enter the

6    same restitution award at this time, without the need for any further proceedings, because the

7    existing record and the Court's extensive findings demonstrate that the full award is appropriate

8    for the affirmed claims, independent of any other claims. This Court's underlying Findings of

9    Fact and Conclusions of Law After Bench Trial ("Findings") found that Wells Fargo's affirmative

10   misrepresentations fostered reasonable expectations among class members that their transactions

11   would be deducted chronologically.  Not only did these particular findings, affirmed on appeal,

12   form the basis for liability under the "fraudulent" prong of the UCL, they provided the grounds

13   upon which this Court determined the amount of the restitution award.  *See* Findings (Docket No.

14   476) at 86.  The Court's measurement of restitution following trial, and the underlying

15   assumptions and determinations made in reaching that figure, were well supported by the trial

16   record, were proper as to *each* of the categories of misconduct the Court found actionable

17   following trial, and were the most appropriate measure for the claims affirmed on appeal.

18         Plaintiffs respectfully submit that the Court should re-enter judgment for restitution on the

19   claims affirmed on appeal in the amount it previously entered, with post-judgment interest

20   accruing as of the date of the original Judgment.  Additionally, the Court should award pre-

21   judgment interest as part of a new judgment because Wells Fargo has had the benefit of its ill-

22   gotten gains for nearly 9 years.  Finally, the Court should enter an injunction precisely as

23   prescribed by the Ninth Circuit.

24   **II.      BACKGROUND**

25         On October 25, 2010, after a two week trial, the Court entered the Judgment, expressly

26   awarding restitution on *all* claims on which Plaintiffs prevailed at trial, including Plaintiffs'

27   claims under the "fraudulent" prong of the UCL and the FAL that were affirmed on appeal:

28         **FINAL JUDGMENT IS HEREBY ENTERED** in favor of plaintiffs and against

defendant Wells Fargo Bank, N.A., *for all claims on which plaintiffs prevailed* and liability was established in the August 2010 findings….The details of this judgment are set forth below:

    1.     Members of the certified [class] shall recover from defendant Wells Fargo Bank, N.A. restitution in the amount of $202,994,035.46….

Docket No. 498 at 1 (emphasis added).

In its 90-page Findings, the Court held Wells Fargo liable, on a class-wide basis, under: (1) the "unfair" prong of the UCL; (2) the "fraudulent" prong of the UCL; and (3) the FAL. Specifically, the Court found that Wells Fargo employed a "bookkeeping device" of re-sequencing customers' debit card transactions for the sole purpose of manufacturing additional instances of overdraft fees.  The Court specifically found that Wells Fargo violated the "fraudulent" prong of the UCL and the FAL by broadly disseminating misleading marketing materials and other representations that "promoted a false perception that debit card purchases would be deducted from their accounts in the order transacted" rather than being re-sequenced in high-to-low order as was the bank's practice.  *See* Findings at 54-56, 71-73.

Having found class-wide liability under these three claims, the Court turned to the issue of restitution.  The Court found that Plaintiffs' expert, Mr. Olsen, was able to reliably measure, on an account-by-account basis using the bank's class-wide transactional data, the "differentials" between the overdraft fees Wells Fargo assessed on customers' accounts and what it would have assessed under various alternative posting "scenarios."  Presented with multiple alternative "scenarios," the Court determined that restitution in the amount of approximately $203 million (the amount measured under the "2A" scenario) was most appropriate.  *Id*. at 85-89.  In making this determination, the Court carefully considered the record and the various assumptions underlying each of the alternatives.  In choosing the measurement of restitution, the Court expressly grounded its choice on the expectations among class members fostered by Wells Fargo's affirmative misrepresentations.   The Court stated, "[a] main theme of plaintiffs' case…is that the bank promoted the expectation that debit-card transactions would post *chronologically*. As such, restitution based on chronological posting of these transactions will most closely track depositors' expectations." *See id*. at 86 (emphasis original).

1    Following entry of the Judgment, Wells Fargo appealed to the Ninth Circuit.[2]  On appeal,

2    Wells Fargo advanced every conceivable argument as to why each of this Court's factual and

3    legal findings should be reversed.  With respect to the affirmed claims, Wells Fargo disputed

4    virtually every aspect of this Court's findings.  Among other things, Wells Fargo argued that: (a)

5    this Court lacked a sufficient basis for certifying the claims for class treatment; (b) this Court's

6    factual findings regarding Wells Fargo's dissemination of the misrepresentations and the

7    misleading nature of those materials constituted an abuse of discretion and were unsupported by

8    the record; (c) this Court erred in finding that the named Plaintiffs had standing to pursue these

9    claims; and (d) Plaintiffs' claims on these issues were preempted by federal law.[3]

10    On December 26, 2012, the Ninth Circuit issued its opinion.  Rejecting Wells Fargo's

11    arguments, the Court of Appeals held that Plaintiffs' "fraudulent" prong claims challenging Wells

12    Fargo's pervasive misrepresentations were not preempted.  Further, it affirmed this Court's

13    finding of class-wide liability with respect to those claims, as well as this Court's related findings

14    regarding the standing of the named plaintiffs to pursue the claims and the propriety of class

15    certification of the claims.  *See Gutierrez*, 704 F.3d at 726-730.[4]  The Ninth Circuit agreed with

16    this Court that "[t]he pervasive nature of Wells Fargo's misleading marketing materials amply

17    demonstrates that class members, like the named plaintiffs, were exposed to the materials and

18    likely relied on them."  *Id.* at 729.  Moreover, the Ninth Circuit held that this Court's findings

19    that Wells Fargo's representations at issue were in fact "misleading" and "likely to deceive its

20    customers" were "amply supported" by the factual record.  *Id.* at 729-30.

21

22    [2] Plaintiffs cross-appealed on limited issues such as the Court's denial of pre-judgment interest.

23    [3] While its appeal was pending, and after the U.S. Supreme Court's decision in *Concepcion v. AT&T Mobility LLC*, 131 S. Ct. 1740 (2011), Wells Fargo asked the Ninth Circuit to vacate this Court's Judgment and remand the case back to this Court so that Wells Fargo could belatedly

24    move to compel arbitration as to all claims, notwithstanding the fact that the claims had already

25    been fully tried.  It was the first time during the entire history of the litigation that Wells Fargo ever showed any interest in arbitration.

26    [4] Again, though the Ninth Circuit did not expressly address this Court's separate finding of liability under the FAL, its holdings regarding the "fraudulent" prong apply equally to the FAL claims.  *See* Findings at 73 ("As for plaintiffs' false advertising claim, since liability under the

27    'fraudulent' restriction of Section 17200 has been established, liability for plaintiffs' false advertising claim under Section 17500—which is based upon the same deceptive conduct—has

28    also been proven.").

The Ninth Circuit held, however, that the National Bank Act and corresponding regulations preempted Plaintiffs' claims under the "unfair" prong of the UCL and for Wells Fargo's fraudulent omissions.  The Ninth Circuit then vacated the $203 million restitution award after mistakenly (in Plaintiffs' view) concluding that the award was "premised…only on a violation of the 'unfair' business practices prong of the [UCL]."  *Id.*  at 725.[5]  Due to that mistake, the Ninth Circuit unnecessarily ordered that the case be remanded to this Court to determine the proper restitution for the claims affirmed on appeal.  *Id.*  at 730.

The Ninth Circuit also vacated the injunction regarding Wells Fargo's posting order as preempted under the National Bank Act.  However, in doing so, it described the nature of an injunction that would be permissible under the National Bank Act:

> Although the court cannot issue an injunction requiring the bank to use a particular system of posting or requiring the bank to make specific disclosures, it can enjoin the bank from making fraudulent or misleading representations about its system of posting in the future.

*Id*. at 728.

## III.   ARGUMENT

### A.   The Court Should Re-Enter The $203 Million Restitution Judgment At This Time.

The Court should re-enter the $203 million restitution award at this time, without the need for any further evidentiary or other proceedings.

#### 1.   The October 2010 Final Judgment Independently Premised the Full Restitution Award on the Claims That Were Affirmed on Appeal.

The Judgment entered by the Court provides in pertinent part:

**FINAL JUDGMENT IS HEREBY ENTERED** in favor of plaintiffs and against defendant Wells Fargo Bank, N.A., for *all claims on which plaintiffs prevailed* and liability was established in the August 2010 findings. ….The details of this judgment are set forth below:

1.   Members of the certified [class] shall recover from defendant Wells Fargo Bank, N.A. restitution in the amount of $202,994,035.46….

---

[5] Plaintiffs brought this mistake to the attention of the Ninth Circuit in a Motion for Rehearing that was denied.

1   Docket No. 498 at 1 (emphasis added).  The Findings, of course, concluded that Wells Fargo was

2   liable to the class under both the "unfair" and "fraudulent" prongs of the UCL and under the FAL.

3   *See* Findings at 60-73.

4        As the Findings make clear, although each claim presents a distinct *theory* of liability,

5   each claim addresses the same wrongful conduct of imposing excessive overdraft fees, and

6   therefore seeks to redress the same resulting harm, that is, by return of the excess overdraft fees.

7   Thus, each claim upon which Plaintiffs prevailed at trail provided an independent basis for the

8   same restitution award.  That the Ninth Circuit expressly affirmed the UCL claim under the

9   "fraudulent" prong, means that the full amount of the previously ordered restitution remains the

10  proper amount to award after remand.  *See Bingham v. Zolt*, 66 F.3d 553, 564 (2d Cir. 1995)

11  (rejecting argument that damages award should be vacated where some claims were dismissed

12  post-verdict and single damages award was made, finding that remaining claims and dismissed

13  claims sought compensation for the same injury under different theories, and stating "the amount

14  of compensatory damages awarded is not dependent on the number of theories that plaintiff

15  alleges and under which it may recover. Rather, the amount of damages depends on the extent of

16  the injury suffered");  *Cf. Coleman v. Tennessee*, 998 F. Supp. 840, 846 & n.6 (W.D. Tenn. 1998)

17  ("As a practical matter, the damages award against Defendants will stand if the Court upholds the

18  jury verdict on *either* the hostile work environment claims or the quid pro quo claims. For both

19  Plaintiffs, the jury found that the same amount of damages should be awarded under either

20  claim.");  *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991) (damages award under one

21  claim affirmed where claim providing duplicative damages reversed).

22        Because the Judgment already answers the question posed by the Ninth Circuit regarding

23  restitution, Plaintiffs submit that the Court can complete its tasks on remand by entering

24  Judgment at this time: (a) confirming that the $203 million restitution award was entered as to the

25  "fraudulent" prong and FAL claims for which class-wide liability was affirmed by the Ninth

26  Circuit; and (b) enjoining Wells Fargo from making false and misleading representations about its

27  posting practices, consistent with the guidance provided by the Ninth Circuit.  *See Gutierrez*, 704

28  F.3d at 728.

2. **The Existing Record and the Court's Findings Fully Support a $203 Million Restitution Award for the Claims Affirmed on Appeal.**

Independent of the literal application of the Judgment, the current record firmly supports the class' continued entitlement to restitution.

The Ninth Circuit's decision in this case makes absolutely clear that the affirmed UCL and FAL claims here are exactly the type of claims for which class-wide restitution is appropriate without individualized proof of deception, reliance, or injury.[6] Among other things, the Ninth Circuit held that:

- This Court's findings that Wells Fargo's marketing materials and other representations were "misleading" and "likely to deceive" class members were "amply supported" by the record. *Gutierrez*, 704 F.3d at 729-30.

- "[T]the pervasive nature of Wells Fargo's misleading marketing materials and other misrepresentations amply demonstrates that class members, like the named plaintiffs, were exposed to the materials and likely relied on them." *Id.* at 729.

- This Court's determination that the named plaintiffs were injured and had standing to pursue these UCL and FAL claims on behalf of the class was "well supported by the record." *Id.* at 728.

Therefore, Wells Fargo cannot be heard to argue that determinations are still needed regarding what representations each of the class members saw and when, or whether they were deceived. Those issues have already been conclusively established, consistent with applicable law, on a class-wide basis. *See Fremont Life*, 104 Cal.App.4th at 531-32 (rejecting defendant's argument that "across the board" restitution was improper without an inquiry into class members' "knowledge," as well as its related argument that such class-wide relief would constitute an improper "windfall" to class members who had "knowledge").[7]

---

[6] The Ninth Circuit recognized that the California Supreme Court has long held that where, as here, a defendant broadly disseminates representations that are "likely to deceive," class restitution is available without individualized proof of deception, reliance or injury for the absent class members. *Gutierrez*, 704 F.3d at 729; s*ee also In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 211 (1983). This well-settled approach reflects the "concern that wrongdoers not retain the benefits of their misconduct" *Tobacco II*, 46 Cal.4th at 320 (citation omitted); *see also People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 532 (2002) (UCL and FAL "clearly authorize[] a trial court to order restitution in the absence of proof of lack of knowledge in order to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains.").

[7] Moreover, Wells Fargo had every opportunity at trial to prove that class members had actual,

*Footnote continued on next page*

1    As for the measurement of restitution, while an award may not be arbitrary or unsupported

2    by evidence, the Court remains broadly empowered to "make such orders or judgments… as may

3    be necessary to restore to any person in interest any money or property…which *may have been*

4    *acquired*" by Wells Fargo through its misconduct.  Cal. Bus. & Prof. Code §§ 17203, 17535

5    (emphasis added); *Cortez v. Purolator Air Filtration Prods. Co.*, 999 23 Cal. 4th 163, 180 (2000)

6    (court's discretion "very broad").  The affirmed claims fully support the full amount previously

7    awarded, under the very logic the Court applied in quantifying restitution in the first place.  The

8    $203 million amount awarded made sense then, and it continues to make sense now.

9    That the Court's restitution award properly follows from the affirmed claims is further

10   demonstrated by the fact that, in choosing the proper measure of restitution, the Court expressly

11   grounded its choice on its findings regarding Wells Fargo's fraudulent misrepresentations:

12       A main theme of plaintiffs' case, however, is that the bank promoted the
         expectation that debit-card transactions would post *chronologically*. As such,
13       restitution based on chronological posting of these transactions will most closely
         track depositors' expectations.
14

15   Findings at 86 (emphasis original).  This understanding regarding depositors' expectations, in

16   turn, was supported by the Court's extensive findings, now affirmed by the Ninth Circuit, that

17   Wells Fargo's affirmative misrepresentations promoted the false expectation that debit-card

18   transactions would be posted chronologically.  *See, e.g.*, Findings at 73 ("Wells Fargo

19   affirmatively reinforced the expectation that transactions were covered in the sequence made

20   while obfuscating its contrary practice of posting transactions in high-to-low order to maximize

21   the number of overdrafts assessed on customers), 71 ("Wells Fargo directed misleading

22   propaganda at the class that likely led class members to expect that the actual posting order of

23   their debit-card purchases would mirror the order in which they were transacted."); *see also id.*  at

24   *Footnote continued from previous page*
     full knowledge.  After considering all of the evidence, however, the Court properly concluded
25   that Wells Fargo's re-sequencing practice was not within the reasonable expectations of class
     members, and that for all but perhaps the "angry few" who exhaustively pursued complaints all
26   the way to the point that the bank would eventually—after the fact—explain its re-sequencing
     practice—no customers were told the truth.  *See, e.g.*, Findings at p.71, ¶¶ 217, 218, 226, 227; *see*
27   *also* Docket. No. 246 at 11-12 (rejecting wavier and voluntary payment argument on summary
     judgment motion, finding that "the current record does not support a finding that the plaintiffs
28   understood Wells Fargo's overdraft policies").

1    ¶¶ 199, 222, 223, 225 & n.16, 226, 227, 229, pp. 71-73.

2         This reasoning, and these same underlying factual findings supporting the Court's prior

3    restitution award, continue to fit perfectly with the affirmed claims, which address the very

4    misrepresentations and resulting expectations that the Court considered in choosing its

5    measurement.  Indeed, it is difficult to imagine a better fit. Wells Fargo violated the "fraudulent"

6    prong of the UCL and the FAL by making pervasive misrepresentations that led class members to

7    reasonably expect debit card transactions would be posted one way—chronologically—when, in

8    fact, the bank was posting them an entirely different way for the very purpose of getting more of

9    the class members' money.  The proper restitution for this misconduct can therefore be

10   determined by comparing—as the Court did in awarding restitution previously—the fees Wells

11   Fargo charged under its actual practices with the fees it would have charged under an alternative

12   posting order that retains the unchallenged aspects of Wells Fargo's practices (such as nightly

13   batch processing, high-to-low posting for checks, and posting certain "priority debits" before

14   others) while tracking, to the extent feasible using the data, class members' expectations based on

15   the pervasive misrepresentations on which liability is premised.

16        The restitution awarded in *Fremont Life* is instructive.  In that case, defendant insurance

17   company violated the UCL and FAL when it subjected its policy holders to a "premium charge"

18   that was not adequately disclosed either in the policies or the insurer's marketing brochures.  The

19   court of appeals affirmed the trial court's restitution award, which was designed to restore to

20   policy holders charges that they would not have had to pay had the policies been as they were

21   reasonably expected to be based on the representations made.  *Freemont Life*, 104 Cal.App.4th at

22   530-32.  (restitution based on the premium charges paid and interest accrued thereon was

23   "carefully tailored to the harm perpetrated").  Here, too, restitution is still appropriately measured

24   by reference to class members' reasonable expectations based on the bank's representations.

25        Moreover, the various other determinations and assumptions previously applied by the

26   Court in determining restitution—*e.g.*, in choosing the "2A" scenario over other "chronological"

27   alternatives, choosing the "30-day" refund methodology, and concluding that Plaintiffs' expert,

28   Mr. Olsen could reliably measure the "differentials"— continue to apply equally to the affirmed

1    claims.  *See* Findings at 86-88.  These determinations were, and continue to be, wholly consistent

2    with the principles applied by the Court previously.  None of those determinations need to be

3    revisited at this stage, because they remain appropriate as to the affirmed claims, just as they did

4    back in 2010.[8]

5           The previous restitution award continues to be the appropriate amount notwithstanding the

6    fact that the Ninth Circuit found that Plaintiffs were preempted from pursuing relief under their

7    separate fraudulent omissions theory.  While the Court found that those omissions *also*

8    constituted violations of the "fraudulent" prong and the FAL, it found that the bank's affirmative

9    misrepresentations violated the statutes as well, and the Ninth Circuit affirmed a finding of class-

10   wide liability without the omissions.  *Gutierrez*, 704 F.3d at 726-30 ("Accordingly, the district

11   court's holding that Wells Fargo violated the Unfair Competition Law by making misleading

12   statements likely to deceive its customers is affirmed").  Both of these theories, independently,

13   supported restitution in the amount previously awarded, and that amount remains appropriate

14   under the theory left standing.  Whether the issue is the bank's affirmative misrepresentations

15   which promoted the false expectation of chronological posting, or the bank's failure to make

16   affirmative disclosures to correct those deceptions, the appropriate measurement of restitution

17   under both theories would be based on a comparison to what class members reasonably

18   expected—which is the measure the Court previously ordered.

19

20

21   _____

22   [8] For example, the Court will recall that Wells Fargo argued for application of an alternative
     "scenario" whereby checks were posted before debit card transactions.  The Court rejected that
     approach (and similarly rejected an approach where credits were posted after some debits),
23   finding that that Bank had never applied these posting orders in California and that "[t]he only
     reason that Wells Fargo now suggests radical rearrangements and manipulations of credits,
24   checks, and ACH transactions is to artificially minimize the restitution awarded to the class."
     Indeed, at trial, Wells Fargo's Kenneth Zimmerman testified  on direct examination that a posting
25   order whereby all checks and ACH were posted before all debit cards was not "viable" because of
     the risk associated with the fact that all debit card transactions, once authorized, are "must pay"
26   from the bank's perspective.  Tr. at 1472-73.  These same findings and testimony continue to
     support the selection of the "2A" measurement over the "checks first" measures.  Moreover,
27   ordering debit cards before checks and ACH is more consistent with class members' expectations
     of chronological posting because all debit card transactions that post on a given day, by
28   definition, are authorized by the bank before any checks and ACH that post that same day.

1

**B.**   **Post-Judgment Interest Should Run From The Date On Which The Original Judgment Was Entered.**

2

3    Under established Ninth Circuit law, post-judgment interest on any post-remand judgment

4    should begin to accrue from the date on which the original Judgment was entered.  The Court

5    entered the Judgment on October 25, 2010.  The original Judgment and the Findings upon which

6    it was premised meaningfully ascertained Wells Fargo's liability for restitution and, thus, post-

7    judgment interest runs from the date of that Judgment.  Therefore, despite the Ninth Circuit

8    vacating the Judgment on appeal, should this Court enter a new judgment in 2013, the date from

9    which to start calculating post-judgment interest must be October 25, 2010.

10    The "purpose of post-judgment interest is to compensate the successful plaintiff for being

11    deprived of compensation for the loss from the time between the ascertainment of the damage and

12    the payment by the defendant."  *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827,

13    835-36 (1990) (citation and internal quotation marks omitted); *see also Exxon Valdez v. Exxon*

14    *Mobil Corp.*, 568 F.3d 1077, 1080 (9th Cir. 2009).  The Ninth Circuit has "rejected the idea that

15    'post-judgment interest should apply only from the date of the second judgment whenever the

16    first judgment is reversed and remanded.'"  *Guam Soc'y of Obstetricians & Gynecologists v. Ada*,

17    100 F.3d 691, 702 (9th Cir. 1996) (quoting *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1298

18    (9th Cir. 1984)).  Thus, even if an earlier judgment has been vacated, that judgment may

19    nevertheless trigger the accrual of post-judgment interest if the "second judgment remains the

20    same – in the same amount, for the same damages incurred during the same period."  *Handgards*,

21    743 F.2d at 1299  (citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291,

22    1311 (9th Cir. 1982)).

23    To determine which judgment triggers the accrual of post-judgment interest, courts must

24    consider "the nature of the initial judgment, the action of the appellate court, the subsequent

25    events upon remand, and the relationship between the first judgment and the modified

26    judgment.'"  *Guam Soc'y*, 100 F.3d at 702.  "[I]nterest ordinarily should be computed from the

27    date of the original judgment's initial entry when the evidentiary and legal bases for an award

28    were sound."  *Exxon*, 568 F.3d at 1080 (citing *Planned Parenthood of Columbia/Willamette Inc.*

1    *v. Am. Coal. of Life*, 518 F.3d 1013, 1017-18 (9th Cir. 2008)).  In *Exxon Shipping Co. v. Baker*,

2    the Supreme Court vacated the original judgment for punitive damages against defendants and

3    remanded for the Ninth Circuit to remit the award.  *See* 554 U.S. 471, 515 (2008).  Subsequently,

4    the Ninth Circuit decided whether post-judgment interest would run from September 24, 1996,

5    the date of the district court's original judgment, or the Ninth Circuit's judgment on remand in

6    2008.  568 F.3d at 1079.  Concluding that "plaintiffs' entitlement to punitive damages was

7    'meaningfully ascertained' when the original district court judgment was entered in 1996," the

8    court held that post-judgment interest began to accrue based on that judgment.  *Id.* at 1080.  The

9    court explained that the first judgment controlled because "[n]either the evidentiary basis for the

10   award nor the legal foundation for an award has been disturbed after nearly a dozen years of

11   subsequent litigation."  *Id.*[9]

12      Here, the legal and evidentiary bases of liability underlying the original Judgment were

13   affirmed on appeal.  Therefore, post-judgment interest should accrue as of the date of the entry of

14   the original Judgment.

15      **C.    Plaintiffs Have Consistently Pursued Restitution for The Affirmed Claims.**

16      Plaintiffs have consistently pursued class restitution for their "fraudulent" prong and FAL

17   claims—before, during, and after trial.   Nonetheless, in its recent Notice of Intent to Oppose,

18   Wells Fargo indicated that it will argue Plaintiffs have waived their right to *any* restitution for

19   their UCL and FAL claims, citing as the purported sources of the waiver a February 2010 email

20   and subsequent filing.  *See* Docket No. 572.  Notably, Wells Fargo has never before made this

21   argument, before this Court or on appeal, and in any event it lacks merit.

22      In the operative complaint, Plaintiffs asserted claims under both the "unfair" and

23   "fraudulent" prongs of the UCL and under the FAL, as well as claims for common law fraud and

24   negligent misrepresentation.  Docket No. 30 ("Complaint").  Plaintiffs sought restitution,

25   damages, punitive damages, prejudgment and postjudgment interest, and injunctive relief.

26   _____

27   [9] *Exxon Valdez* follows a long line of Ninth Circuit cases in which the court affirmed awards of
     post-judgment interest based on the date of a reversed or vacated a judgment or award.  *See Guam
     Soc'y*, 100 F.3d 691,703 (9th Cir. 1996); *Handgards*, 743 F.2d at 1298-99; *Twin City*, 676 F.2d at

28   1311.

1    Complaint at 15-20.

2         In May 2009, as part of a series of orders, the Court: (a) granted in part and denied in part

3    Wells Fargo's motion for partial summary judgment, permitting the named plaintiffs to pursue

4    individual claims with respect to certain of Wells Fargo's affirmative representations; (b) granted

5    summary judgment as to some claims; and (c) upheld Plaintiffs' class claims under the "unfair"

6    and "fraudulent" prongs of the UCL, the FAL, and for common law fraud and negligent

7    misrepresentation.  *See* Docket Nos. 245-247.  Plaintiffs thereafter continued to pursue their

8    statutory claims on a class-wide basis, and Plaintiffs' expert conducted data analyses for use in

9    measuring class restitution.

10        In February 2010, after Plaintiffs' expert, Mr. Olsen, completed his analysis, Wells Fargo

11   filed what was essentially a motion to exclude Mr. Olsen's expert testimony.  The day before

12   Wells Fargo filed its motion, in response to an inquiry from Wells Fargo's counsel, Plaintiffs'

13   counsel sent an email indicating that Plaintiffs had "not attempted to quantify the amount of

14   damages or restitution resulting from any classwide misrepresentation-based claims, and we do

15   not intend to seek such *damages* at the upcoming trial.  Accordingly, it is not necessary for your

16   motion to seek to preclude the recovery of classwide misrepresentation-based *damages*…."

17   Docket No. 293-11 (emphasis added).  While Wells Fargo now apparently will attempt to argue

18   otherwise, this statement, limited to "damages," was intended to apply to Plaintiffs' common law

19   fraud and negligent misrepresentation claims only, and was not intended to apply to restitution

20   under the UCL or FAL. [10]  (After the Court subsequently offered a *sua sponte* clarification that

21   Plaintiffs had a live class common law fraud claim, Plaintiffs pursued damages and punitive

22   damages on those claims.  *See* Docket No. 338 at 19-20.)

23        In addition, subsequently Plaintiffs made abundantly clear on several occasions that they

24   were in fact seeking restitution under the "fraudulent" prong of the UCL.  On April 13, 2010,

25   when Plaintiffs filed their pre-trial Proposed Findings of Fact and Conclusions of Law (Docket

26   No. 375), Plaintiffs stated, for example:

27   [10] On March 4, 2010, Plaintiffs re-stated their position in opposing the motion to exclude expert
     testimony. Docket No. 316 at 14 (emphasis added).  Again, this statement was intended to apply
28   only to class *damages* for the common law misrepresentation claims.

o   Wells Fargo deliberately fostered [the belief that debit card transactions would be debited chronologically] in widely-disseminated educational and promotional materials, informing the public that money is deducted "immediately" or "automatically" from their account at the time the merchant obtains authorization. Docket No. 375 at 6.

o   Plaintiffs and the Class were likely to be deceived about Wells Fargo's manner of grouping and posting debit card transactions, given Wells Fargo's widely-disseminated representations that when customers make debit card purchases the funds are deducted from their accounts "immediately" or "automatically." *Id*. at 7-8.

o   As a result of Wells Fargo's unfair and deceptive reordering practices, its failure to disclose such practices…*and its misrepresentations related to such practices*, Plaintiffs and the Class paid Wells Fargo $214,379,710.68 more in overdraft charges than they would have paid had Wells Fargo posted their debit transactions that posted on each calendar day chronologically, based on the date and time that Wells Fargo authorized the transactions. *Id*. at 8 (emphasis added).

o   **Restitution**  Under the UCL, once liability is established, Plaintiffs and the class are entitled to restitution of "any money…which may have been acquired by means of such unfair competition." *Id*. at 22 (quoting Cal. Bus. & Prof. Code 17203). *Id*. at 22.

o   **Class Claim for False Advertising**. *As restitution is being awarded pursuant to the UCL, there is no need to separately calculate the amount to which the class is entitled pursuant to its companion statute, the False Advertising Law. Id*. at 23 (emphasis added).

On May 3, 2010, following the close of Plaintiffs' case-in-chief, Wells Fargo filed a Motion for Judgment on Partial Findings on the common law claims and the "fraudulent" prong and FAL claims.  Docket No. 417.  Far from asserting that Plaintiffs had waived any right, prior to trial, to class restitution under the "fraudulent" prong and FAL, Wells Fargo argued in its motion, incorrectly, that Plaintiffs had failed to present evidence at trial that class members were harmed by the bank's misrepresentations. *Id*. at 14.

On May 19, 2010, Plaintiffs filed their post-trial Proposed Findings of Fact and Conclusions of Law.  Consistent with their pre-trial filing, Plaintiffs again specifically requested class-wide restitution for their "fraudulent" prong and FAL claims. *See, e.g.,* Docket No. 453 at 16-20, ¶¶ 173-174, 196, 213, 216, 223, 232-236.

On May 25, 2010, Wells Fargo filed its response to Plaintiffs' post-trial Proposed Findings of Fact and Conclusions of Law.  Docket No. 454.  While Wells Fargo took the position that Plaintiffs were foreclosed from pursuing *damages* for their common law claims, it did not

assert that *any* claims for *restitution* under the UCL or FAL had been waived.  To the contrary,

Wells Fargo expressly recognized the distinction between damages for the common law claims

and restitution for the statutory claims in its response:

> There can be no class damages in this case, for multiple reasons.  Indeed, plaintiffs conceded before trial that no award of class damages (in contrast to restitution) would or could be sought.  Nor could class damages be awarded, given the absence of class-wide proof of actual injury from any alleged misrepresentation. For a non-UCL claim—damages may not be recovered under the UCL—any such showing must include, *inter alia*, proof of class-wide dissemination of the same or similar misrepresentations, as well as class-wide proof of actual reliance *and* resulting causation of injury."

*Id*. at 67, ¶ 231 (citations omitted); *see also id*. at 60, ¶ 216.  It is apparent from this passage that

Wells Fargo fully comprehended that Plaintiffs' February 17, 2010 email and subsequent

statement in the March 4, 2010 filing referred only to the *damages* for the common law claims.

"The waiver of a legal right cannot be established without a *clear showing of intent* to

give up such right….The burden is on the party claiming the waiver to prove it by clear and

convincing evidence that does not leave the matter doubtful or uncertain."  *Utility Audit Co., Inc.

v. City of Los Angeles*, 112 Cal. App. 4th 950, 959 (2003) (citations omitted).  Wells Fargo cannot

satisfy this significant burden.  To the contrary, the record affirmatively demonstrates that there

has been no waiver.  Plaintiffs pursued class restitution from the start of this litigation, and

specifically pursued such relief on their "fraudulent" prong and FAL claims before, during, and

after trial.  Indeed, the fact that the Court entered Judgment awarding restitution on *all claims* on

which Plaintiffs prevailed at trial, conclusively establishes that the Court has effectively held that

Plaintiffs did *not* waiver their right to restitution under the "fraudulent" prong or FAL.

The Court should reject this latest effort by Wells Fargo to seek complete impunity.

### D.        There is No Need To Re-Litigate The Numerous Issues That Have Already Been Fully Tried.

Wells Fargo has not clearly articulated to Plaintiffs what it believes should happen next, in

the event the Court does not agree either with Plaintiffs' threshold argument that the Judgment

already applies by its literal terms or Wells Fargo's threshold waiver argument.  As best as

Plaintiffs can tell, Wells Fargo's position will be that there is no record supporting the proper

1    measurement of restitution for the affirmed claims.  Thus, before this Court could enter a

2    restitution award on those claims, Wells Fargo would apparently have the parties start from

3    square one, re-opening discovery, conducting new data analyses, submitting challenges to the

4    analyses, and re-litigating any number of issues that have already been fully tried and decided by

5    this Court.  That is completely unnecessary.  This Court has made numerous determinations, on a

6    full record, that are wholly applicable to (in fact, in Plaintiffs' view, fully determinative of) the

7    issue of restitution on the affirmed claims.  These determinations were made after extensive

8    litigation, where the parties had the opportunity to present evidence, test the other party's

9    evidence, and provide whatever argument they wanted to provide for or against any position.  The

10   Court should resist any attempt by Wells Fargo to re-litigate issues that have already been tried

11   and decided.[11]

12           **E.        The Court Should Award Pre-Judgment Interest.**

13           The Court previously denied Plaintiffs' initial request for pre-judgment interest.  *See*

14   Docket No. 497.[12]  It should reconsider its previous ruling, and order pre-judgment interest at this

15   time.

16           The equitable case for awarding pre-judgment interest has become significantly stronger

17   since the Court last considered the issue.  Nearly three additional years have passed with the more

18   than 1 million class members still being denied relief, meaning that some class members have

19   now been denied relief for as long as *eight or nine* years since the excessive fees were assessed.

20   During this time, Wells Fargo has had exclusive use and benefit of its ill-gotten gains.  If Wells

21   Fargo successfully drags this litigation out for several more years, it may earn more in interest (at

22   the statutory pre-judgment interest rate) than the amount of the Judgment.  Such a result would

23   defeat the very purpose of the UCL to deter wrongful conduct.  This is particularly true now that

24   the Ninth Circuit has affirmed that Wells Fargo committed fraudulent business practices.  As a

25   _____

26   [11] To the extent the Court finds it cannot determine the proper restitution amount on the current
     record, Plaintiffs should be given the opportunity to supplement the record as may be necessary.

27   [12] The Ninth Circuit declined to reach the issue of pre-judgment interest in light of its decision
     vacating the restitution award and its remand regarding the same.  *See Gutierrez*, 704 F.3d at 730

28   n.10.

1   matter of equity, Wells Fargo should not be permitted to retain its considerable ill-gotten gains

2   without paying interest to the class members from whom those funds were taken.

3   Moreover, pre-judgment interest should be awarded under the mandatory provision of Cal.

4   Civ. Code § 3287(a).  The restitution here is a function of specific instances of overdraft charges,

5   the individual dollar amounts of which were never in dispute, incurred on specific days.  *See Bott*

6   *v. American Hydrocarbon Corp.*, 458 F.2d 229, 232 (5th Cir. 1972) (awarding pre-judgment

7   interest under section 3287(a) where "[t]he jury was not called upon to calculate a disputed wage

8   rate but to decide how many payments at the predetermined rate were not made."); *Dalgarn v.*

9   *Robbins, Dalgarn, Berliner & Carson*, 2003 WL 22511462, *8 (Cal. App. Nov. 6, 2003) ("Nor

10  does it matter that, at trial, defendants may have presented more than one way of calculating

11  damages, with differing results."); *Reedy v. Bussell*, 2009 WL 884606, * 18 (Cal. App. Apr. 2,

12  2009) ("the expert's calculation of two different amounts does not render either calculation

13  'uncertain;' instead, it reflects two 'certain' alternatives-one or the other of which the court can

14  apply….").

15  Should the Court find the award of prejudgment interest is appropriate, Plaintiffs will need

16  Wells Fargo to again provide Plaintiffs' expert access to the transactional data for the class so that

17  he can perform the necessary calculations.  Plaintiffs would then promptly submit a supporting

18  brief showing the calculations.[13]

19  **IV.    CONCLUSION**

20  Accordingly, Plaintiffs respectfully request that the Court: (a) re-enter judgment, as to the

21  "fraudulent" prong and False Advertising Law claims for which class-wide liability was affirmed

22  by the Ninth Circuit, for restitution in the amount of $202,994,035.46; (b) order that post-

23  judgment interest accrue from the date of the entry of the original Judgment, *i.e.*, from October

24  25, 2010; (c) enjoin Wells Fargo from making false and misleading representations about its

---

25  [13] As an example of how pre-judgment interest would be calculated:  If  class member John Doe
    incurred two excess overdraft fees (as calculated under the 2A scenario) totaling $70 on January
26  1, 2006, interest on that $70 amount would run beginning January 1, 2006 through the entry of
    Judgment.  If John Doe also incurred three excess overdraft fees totaling $105 on July 15, 2007,
27  interest on that $105 amount would run, separately, beginning July 15, 2007 through the entry of
    Judgment, and so on.  These calculations can be performed class-wide as a matter of simple
28  programing once Plaintiffs are given access again to the class data.

1  posting order; and (d) award pre-judgment interest in an amount to be calculated by Plaintiffs'

2  using the transactional data for the class.

3

4  Dated: March 14, 2013                    Respectfully submitted,

5                                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

6

7                                           By:_____/s/ *Richard M. Heimann*_____
                                                        Richard M. Heimann

8                                           Richard M. Heimann (State Bar No. 063607)
                                            Michael W. Sobol (State Bar No. 194857)
9                                           Roger Heller (State Bar No. 215348)
                                            Jordan Elias (State Bar No. 228731)
10                                          275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339
11                                          Telephone:  (415) 956-1000
                                            Facsimile:  (415) 956-1008
12
                                            Richard D. McCune (State Bar No. 132124)
13                                          Jae (Eddie) K. Kim (State Bar No. 236805)
                                            McCuneWright, LLP
14                                          2068 Orange Tree Lane, Suite 216
                                            Redlands, CA  92374
15                                          Telephone:  (909) 557-1250
                                            Facsimile:  (909) 557-1275
16
                                            *Attorneys for Plaintiffs and the Class*
17

18

19

20

21

22

23

24

25

26

27

28