1   Richard M. Heimann (State Bar No. 063607)
    *E-mail: rheimann@lchb.com*
2   Michael W. Sobol (State Bar No. 194857)
    *E-mail: msobol@lchb.com*
3   Roger Heller (State Bar No. 215348)
    *E-mail: rheller@lchb.com*
4   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
5   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
6   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
7
    Richard D. McCune (State Bar No. 132124)
8   *rdm@mccunewright.com*
    Jae (Eddie) K. Kim (State Bar No. 236805)
9   *jkk@mccunewright.com*
    MCCUNEWRIGHT, LLP
10  2068 Orange Tree Lane, Suite 216
    Redlands, CA 92374
11  Telephone: (909) 557-1250
    Facsimile: (909) 557-1275
12
    *Attorneys for Plaintiffs and the Class*
13

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17  VERONICA GUTIERREZ, ERIN              Case No. C 07-05923-WHA
    WALKER, and WILLIAM SMITH, as
18  individuals and on behalf of all others   **CLASS COUNSEL'S NOTICE OF**
    similarly situated,                    **MOTION AND MOTION FOR AN**
19                                         **AWARD OF ATTORNEYS' FEES AND**
                  Plaintiffs,              **COSTS; MEMORANDUM OF POINTS**
20                                         **AND AUTHORITIES**

21                v.
                                           Date:        May 21, 2015
22  WELLS FARGO BANK, N.A.,                Time:        2:00 p.m.
                                           Judge:       Hon. William H. Alsup
23                Defendant.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................................. I

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 2

    A.   Class Counsel Agrees To Represent Plaintiffs In Risky, Uncertain Litigation. ............................................................................................... 3

    B.   The Risky Nature Of The Litigation Remained Evident Through Pretrial Litigation, Trial, And Post-Trial Proceedings. ............................. 6

    C.   The Judgment Was Attacked Twice On Appeal. ....................................... 7

    D.   Class Counsel's Continuing Responsibilities to the Class. ....................... 8

III.    ARGUMENT ..................................................................................................... 8

    A.   The Requested Fee is Reasonable and Appropriate. ................................. 8

        1.   Applicable Law ............................................................................. 9

        2.   Class Counsel Are Entitled to a Fee Under the Common Fund Doctrine. ...................................................................................... 9

        3.   The Court Should Calculate Class Counsel's Fee As a Percentage of the Restitution Judgment. ......................................... 10

        4.   A Fee Equal to the 25 Percent "Benchmark" is Reasonable. ........ 11

            a.   Class Counsel Achieved Full Restitution for the Class. ................................................................................. 12

            b.   Successfully Prosecuting This Case Through Trial and Two Appeals Required Extraordinary Effort and Skill. ................................................................................. 13

            c.   A Comparison to Awards in Other Cases Demonstrates the Reasonableness of the Fee Requested. ......................................................................... 14

            d.   Class Counsel Achieved Valuable Injunctive Relief Beyond the Restitution Judgment. ..................................... 16

            e.   The Contingent Nature of the Fee Here Further Supports the Fee Requested. ........................................... 16

        5.   A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of the Fee Requested. ......................................... 17

            a.   Class Counsel's Lodestar Reflects Their Reasonable Rates and Their Very Efficient Prosecution of this Case. ................................................................................. 18

            b.   A Cross-Check Confirms That Class Counsel Performed Substantial Work in Securing An Excellent Result for the Class. ........................................... 19

        6.   The Court May Order Wells Fargo to Bear a Portion of Class Counsel's Fee Pursuant to Section 1021.5. ........................ 23

B.     Class Counsel's Litigation Costs are Reasonable and Should Be Reimbursed. .......................................................................................... 24

C.     The Requested Service Awards Are Reasonable and Appropriate. .......... 24

D.     Wells Fargo Should Pay For the Remaining Costs of Class Administration. ........................................................................................ 25

IV.     CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adderley v. NFL Players Ass'n*,
2009 U.S. Dist. LEXIS 115742 (N.D. Cal. Nov. 23, 2009) .......................................... 24

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) .......................................................................... 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 321 (2011) ......................................................................................................... 7

*Beasley v. Wells Fargo Bank*,
235 Cal.App.3d 1407 (1991) ......................................................................................... 23

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 20, 21

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................. 10, 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ......................................................................................................... 9

*Cabrales v. County of Los Angeles*,
935 F.2d 1050 (9th Cir. 1991) ....................................................................................... 19

*Castaneda v. Burger King Corp.*,
2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010) .............................................. 11

*Chavez v. Netflix, Inc.*
162 Cal. App. 4th 43 (2008) ................................................................................... passim

*Compass Bank v. Snow*,
823 So. 2d 667 (2001) ...................................................................................................... 4

*Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ........................................................................................ 12

*Corriea, et al., v. Wells Fargo & Co. et al.*,
Case No. GCG 04-436819 .......................................................................................... 3, 4

*Create-a-Card, Inc.*,
2009 U.S. Dist. LEXIS 133446 (N.D. Cal. Sept. 29, 2009) .......................................... 21

*Cruz v. Sky Chefs, Inc.*,
2014 U.S. Dist. LEXIS 176393 (N.D. Cal. Dec. 19, 2014) ........................................... 17

*Daniels v. PNC Bank*,
137 Ohio App. 3d 247 (2000) .......................................................................................... 3

*Dyer v. Wells Fargo Bank, N.A.*,
2014 U.S. Dist. LEXIS 150129 (N.D. Cal. Oct. 22, 2014) ............................................ 11

*Fetter v. Wells Fargo Bank Tex.*,
110 S.W.3d 683 (Tex. Ct. App. 2003) ............................................................................. 3

*Garner v. State Farm Mut. Auto. Ins. Co.*
2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ............................................................... 11

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004) .................................................................................................. 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Gutierrez v. Wells Fargo Bank, N.A.*
  704 F.3d 712 (9th Cir. 2012)...................................................................... 7

*Gutierrez v. Wells Fargo Bank, N.A.,*
  2014 U.S. App. LEXIS 20892 (9th Cir. Oct. 29, 2014)................................ 8

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)................................................................................. 12

*Hernandez v. Wells Fargo Bank N.M.,*
  139 N.M. 68 (Ct. App. 2005)..................................................................... 3

*Hill v. St. Paul Fed. Bank for Savings,*
  329 Ill. App. 3d 705 (2002)....................................................................... 3

*Hunt v. Imperial Merch. Servs., Inc.,*
  560 F.3d 1137 (9th Cir. 2009).................................................................. 25

*In re Activision Sec. Litig.*
  723 F.Supp. 1373 (N.D. Cal. 1989) ......................................................... 11

*In re Apple iPhone/iPod Warranty Litig.,*
  2014 U.S. Dist. LEXIS 52050 (N.D. Cal. Apr. 14, 2014) ......................... 11

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011).................................................................... 11

*In re Cardinal Health Inc. Sec. Litig.,*
  528 F. Supp. 2d 7528 (S.D. Ohio 2007) .................................................. 21

*In re Checking Account Overdraft Litigation*
  (MDL 2036) ............................................................................................ 14

*In re Connecticut General Life Ins. Co.,*
  1997 WL 910387 (C.D. Cal. Feb. 13, 1997)............................................. 24

*In re Continental Ill. Secs. Litig.,*
  962 F.2d 566 (7th Cir. 1992)............................................................. 20, 22

*In re Corel Corp. Inc. Sec. Litig.,*
  293 F.Supp.2d 484 (E.D. Pa. 2003) ......................................................... 12

*In re Crazy Eddie Sec. Litig.,*
  824 F.Supp. 320 (E.D.N.Y. 1993) ............................................................ 12

*In re Gen. Instruments Sec. Litig.,*
  209 F.Supp.2d 423 (E.D. Pa. 2001) ......................................................... 12

*In re LDK Solar Securities Litig.,*
  2010 U.S. Dist. LEXIS 73530 (N.D. Cal. Jun. 21, 2010).......................... 24

*In re Linerboard Antitrust Litig.,*
  2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) ............................. 14

*In re Media Vision Tech. Sec. Litig.,*
  913 F. Supp. 1362 (N.D. Cal. 1995) ........................................................ 24

*In re Medical X-Ray Film Antitrust Litig.,*
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .............................................. 12

*In re Omnivision Techs., Inc.,*
  2007 WL 4293467 (N.D. Cal. Dec. 6, 2007).............................................. 11

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Relafen Antitrust Litig.*,
2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ........................................................ 14

4

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................................................ 14, 21

5

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ...................................................... 21

6

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................................................................... 14

7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 U.S. Dist. LEXIS 6607 (N.D. Cal. Jan. 14, 2013) ........................................................ 11

8

9

*In re Thornburg Mortg., Inc.*,
912 F. Supp. 2d 1178 (D.N.M. 2012) ..................................................................................... 23

10

*In re Vitamins Antitrust Litig.*,
2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ........................................................... 14

11

*In re Washington Public Power Supply System Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................... 9, 16, 18

12

*Knight v. Red Door Salons, Inc.*
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................................................ 12

13

*Kramer v. Autobytel, Inc.*,
2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ..................................................... 11

14

15

*Kurzweil v. Philip Morris Cos.*,
1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) ...................................................... 14

16

*Laffitte v. Robert Half Int'l Inc.*,
231 Cal. App. 4th 860 (2014) ........................................................................................ passim

17

*Larsen v. Trader Joe's Co.*,
2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ....................................................... 11

18

19

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) ......................................................................................... 10, 18, 20

20

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010) .................................................................................................... 10

21

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970) ................................................................................................................ 24

22

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) ......................................................... 21

23

24

*Rieckborn v. Velti PLC*,
2015 U.S. Dist. LEXIS 13542 (N.D. Cal. Feb. 3, 2015) ......................................................... 17

25

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................................................. 24

26

*Saunders v. Mich. Ave. Nat'l Bank*,
278 Ill. App. 3d 307 (1996) ...................................................................................................... 3

27

*Seebrook v. Children's Place Retail Stores, Inc.*,
2013 U.S. Dist. LEXIS 171864 (N.D. Cal. Dec. 4, 2013) ...................................................... 23

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ............................................................................................. 9

4

*Shelley v. AmSouth Bank*,
  2000 U.S. Dist. LEXIS 11428 (S.D. Ala. July 24, 2000) ....................................... 4

5

*Singer v. Becton Dickinson & Co.*,
  2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ......................................... 12

6

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .......................................................................... 10, 25

7

*Smith v. First Union Nat'l Bank of Tenn.*,
  958 S.W.2d 113 (Tenn. Ct. App. 1997) .................................................................. 3

8

*Smith v. Wells Fargo Bank, N.A*,
  (S.D. Superior Court Case No. GIC 802664) ...................................................... 4, 7

9

10

*Steiner v. Am. Broad. Co.*,
  248 F. App'x. 780 (9th Cir. 2007) ......................................................................... 20

11

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*,
  2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 19, 2005) ......................................... 21

12

*Sullivan v. Kelly Servs., Inc.*,
  2011 U.S. Dist. LEXIS 2189 (N.D. Cal. Jan. 5, 2011) .......................................... 25

13

*Thayer v. Wells Fargo Bank*,
  92 Cal. App. 4th 819 ............................................................................................. 21

14

15

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................... 24

16

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
  2013 U.S. Dist. LEXIS 100796 (N.D. Cal. July 18, 2013) .................................... 11

17

*Video Traks v. Nations Bank*,
  33 F. Supp. 2d 1041 (S.D. Fla. 1998) ..................................................................... 3

18

19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................... passim

20

*Wallace v. Nat'l Bank of Commerce*,
  938 S.W.2d 684 (1996) ........................................................................................... 3

21

*Wallace v. Powell*,
  301 F.R.D. 144 (E.D. Pa. 2014) ............................................................................ 23

22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................... 10

23

24

*Wershba v. Apple Computer*,
  91 Cal. App. 4th 224 (2001) .................................................................................. 17

25

## STATUTES

26

Cal. Code Civ. Proc. § 1021.5 ....................................................................... 2, 23, 24

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**OTHER AUTHORITIES**

4

Fed. Judicial Ctr., Awarding Attorneys' Fees & Managing Fee Litig. at 73 (2005) ..................... 10

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004)
5       § 27.71........................................................................................................................... 12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on May 21, 2015, at 2:00 p.m., or as soon as it may be heard, in Courtroom 8 of the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, Class Counsel in this case will move, and hereby does move, for an Order:

(a)     Awarding Class Counsel a reasonable attorneys' fee of $50,748,508.86;

(b)     Ordering that pursuant to Cal. Code Civ. Proc. § 1021.5, Wells Fargo shall partially pay Class Counsel's reasonable attorneys' fee award in the amount $4,904,213.85, exclusive from the funds paid in satisfaction of the restitution judgment, and that the balance of Class Counsel's reasonable attorneys' fee award ($45,844,295.01) shall be paid from the restitution judgment;

(c)     Awarding Class Counsel reimbursement of their reasonable expenses in the amount of $558,378.92, to be paid from the restitution judgment;

(d)     Awarding class representatives Veronica Gutierrez and Erin Walker service awards in the amount of $10,000 each, for their commitment and efforts on behalf of the Class in this case, to be paid from the restitution judgment; and

(e)     Ordering Wells Fargo to pay, in addition to the restitution judgment, the remaining costs of class administration, including the costs of: administering Rule 23(h) notice, distributing judgment proceeds to the Class, and other administrative tasks directed by the Court's Second Case Management Order Following Remand (Doc. No. 616).

The Court's Second Case Management Order Following Remand (Doc. No. 616) directed Class Counsel to provide an estimate of how each class member's *pro rata* share of the judgment proceeds would be reduced by the requested fees, costs, and service awards.  Based on the current value of the judgment, including the post-judgment interest that has accrued to date (approximately $2 million in interest), the average class member's restitution is approximately $179.00 before any payment of fees, costs, or service awards.  If the Court were to award attorneys' fees, costs, and service awards in the amounts requested, and order Wells Fargo to bear $4,904,213.85 of the fee awarded as a partial fee-shift under Cal. Code Civ. Pro. 1021.5, then the

average class member's *pro rata* share of the remaining judgment proceeds would be approximately $138.50. If the Court were to award attorneys' fees, costs, and service awards in the amounts requested, and ordered the full amount of the fee to be paid from the restitution judgment (*i.e.*, with no partial fee-shift under Section 1021.5), then the average class member's *pro rata* share of the remaining judgment proceeds would be approximately $134.00.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Richard M. Heimann, Roger N. Heller, Richard D. McCune, and Richard M. Pearl; the declarations of Plaintiffs Veronica Gutierrez and Erin Walker previously submitted in this case (Doc. Nos. 512, 513), any further pleadings and evidence filed in connection with this motion, any argument made in connection with this motion, and the pleadings, files, and evidentiary record in this case.

Dated: February 17, 2015                    Respectfully submitted,

                                            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                            By:_____/s/ *Richard M. Heimann*_____


                                            Richard M. Heimann (State Bar No. 063607)
                                            Michael W. Sobol (State Bar No. 194857)
                                            Roger N. Heller (State Bar No. 215348)
                                            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                            275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339
                                            Telephone:  (415) 956-1000
                                            Facsimile:  (415) 956-1008

                                            Richard D. McCune (State Bar No. 132124)
                                            *rdm@mccunewright.com*
                                            Jae (Eddie) K. Kim (State Bar No. 236805)
                                            *jkk@mccunewright.com*
                                            MCCUNEWRIGHT, LLP
                                            2068 Orange Tree Lane, Suite 216
                                            Redlands, CA 92374
                                            Telephone: (909) 557-1250
                                            Facsimile: (909) 557-1275


                                            *Attorneys for Plaintiffs and the Class*

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      <u>INTRODUCTION</u>**

3

Class Counsel Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and McCuneWright,

4

LLP ("M&W") (collectively, "Class Counsel") respectfully submit that an award of attorneys'

5

fees in amount representing twenty-five percent (25%) of the $203 million recovery obtained for

6

the Class, plus reimbursement of their costs, is reasonable and justified in this case.  Class

7

Counsel's requested fee award of approximately $50.75 million[1] falls squarely within permissible

8

fee awards under applicable state and federal law, and therefore such an award is well within the

9

proper discretion of this Court.  The percentage of recovery method is generally preferred because

10

it aligns the interests of counsel and the class by incentivizing counsel to maximize the result for

11

the class.  Where, as here, Class Counsel has represented the Class on a contingent basis,

12

successfully tried the case to produce a 100 percent recovery for the Class, and successfully

13

defended that result after two appeals, state and federal policies dictate application of the

14

percentage of recovery method.  A fee award based on 25% of the recovery is no more than the

15

Ninth Circuit's "benchmark" for fees based on a percentage of recovery, and is well within

16

percentages allowed under California state law as it represents less than the typical contingency

17

rates.

18

Review of Class Counsel's lodestar demonstrates that a fee of 25% of the recovery is

19

reasonable.  Class Counsel's lodestar reports submitted herewith reflect their efficient and

20

effective representation of the Class.  Class Counsel's lodestar submitted herewith ($4,904,213.85

21

at historical rates; $5,526,061.34 at current rates) would result in multiplier of about 10.3

22

(historical rates) and 9.2 (current rates), without accounting for the time spent on this motion or

23

the significant time Class Counsel will have to spend going forward.  This is deserved here given

24

the extraordinary efforts and the results achieved.  Similar, and even higher, multipliers have been

25

awarded in cases where the results achieved were far less than a 100 percent recovery.  Indeed,

26

the extraordinary results here make comparison to prior cases difficult, where multipliers may be

27

28

---

[1] Judgment for restitution was entered in the amount $202,994,035.46, twenty-five percent of which is $50,748,508.86.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA

1   lower because only partial recovery was obtained.  The resulting multiplier here is a function of

2   Class Counsel's efficient prosecution and having obtained a maximum recovery.  Under these

3   circumstances, departing from the benchmark of 25% of the recovery, even if it results in a

4   multiplier that is somewhat higher than usual, would create precedent that would discourage

5   lawyers from striving for a full recovery, decouple the interests of class and counsel, and thereby

6   undermine the policies which encourage lawyers to take, on contingency, risky and costly cases

7   to prosecute important rights that would otherwise not be vindicated.

8        Class Counsel respectfully submit that under Cal. Code Civ. Proc. § 1021.5, the Court can

9   shift payment for a portion Class Counsel's reasonable fee award to Wells Fargo.  While there is

10  limited authority directly addressing Section 1021.5's applicability in this context, Class Counsel

11  believe that they are duty bound to pursue a fee-shift, to the extent available here, in order to

12  preserve more judgment funds for the Class. Accordingly, Class Counsel asks the Court to award

13  a portion of their fee—in the amount of Class Counsel's lodestar—under Section 1021.5, on top

14  of the judgment.

15       Therefore, Class Counsel respectfully request that the Court award them a reasonable

16  attorney fee of 25% of the restitution judgment of $202,994,035.46, *i.e.*, in the amount of

17  $50,748,508.86, plus reimbursement of $558,378.92 in costs.  Class Counsel further request that

18  pursuant to Cal. Code Civ. Proc. § 1021.5, the Court order that payment of a portion of the

19  reasonable attorney fee award, in the amount of $4,904,213.85, be shifted to Wells Fargo, and to

20  the extent the Court does not shift payment of the reasonable attorney fee award to Wells Fargo,

21  that the payment of the fee and cost award come from the restitution judgment.

22  **II.    BACKGROUND**

23       As the Court is thoroughly familiar with the background of this case, Class Counsel do not

24  repeat here the entire litigation history, but instead refer the Court to the accompanying

25  declarations of counsel which present that history.[2]  Class Counsel focuses here on aspects of the

26  risks and uncertainty they took on for the benefit of the Class.

27

28  _____

[2] *See* Declaration of Richard D. McCune In Support of Class Counsel's Motion for Attorneys'
Fee and Costs ("McCune Decl.") and Declaration of Richard M. Heimann In Support of Class
Counsel's Motion for Attorneys' Fee and Costs ("Heimann Decl.").

A.   **Class Counsel Agrees To Represent Plaintiffs In Risky, Uncertain Litigation.**

When this case was filed in November 2007, the legal landscape facing Class Counsel was extremely precarious.  Previous challenges to the re-ordering and related practices of Wells Fargo and other banks had proven unsuccessful.  That was true whether the challenge related to checks or debit cards, and whether the challenge was based on sufficient funds, usury, breach of good-faith and fair dealing, breach of contract, failure to disclose, unfair business practices, unconscionability, or conversion.[3]

This was not only true generally, but specifically in filings against Well Fargo.  *See e.g.*, *Hernandez v. Wells Fargo Bank N.M.*, 139 N.M. 68, 68, 71 (Ct. App. 2005) (finding that overdraft fees were not grossly disproportionate to the value received and finding there was no distinction between check and debit card transactions); *Fetter v. Wells Fargo Bank Tex.*, 110 S.W.3d 683, 690-91 (Tex. Ct. App. 2003) (holding that account agreement language and UCC section 4.303(b) precluded claim about practice of posting checks in high to low order).  In *Corriea v. Wells Fargo & Co.*, Case No. CGC 04-436819 (S.F. Super Ct.), on the banks' demurrers, the court indicated that the plaintiffs' claims regarding the banks' re-ordering practices

---

[3]  From the mid-to-late 1990s through the filing of *Gutierrez*, numerous cases were filed challenging the manner in which banks posted both check and debit card transactions, specifically as the posting order related to the assessment of overdraft fees.  These challenges were consistently and uniformly rejected by state and federal courts throughout the country.  *See e.g., Saunders v. Mich. Ave. Nat'l Bank,* 278 Ill. App. 3d 307, 312-13 (1996) (holding that the bank had no duty to define the posting order as part of the bank's assessment of overdraft charges); *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (1996) (holding as a matter of law that the bank did not breach the duty of good faith and fair dealing in increasing overdraft fees); *Smith v. First Union Nat'l Bank of Tenn.*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997) (dismissing claims of breach of contract and unfair, deceptive, and unlawful practices regarding the order in which the bank posted transactions in order to maximize the assessment of overdraft fees on the basis that "the bank had the discretion to pay items in a manner convenient to it); *Video Traks v. Nations Bank*, 33 F. Supp. 2d 1041, 1055 (S.D. Fla. 1998) (holding that overdraft fees are not interest and, therefore not usurious and that the defendant bank was entitled to compensation for the service of processing overdraft checks and that there was no evidence that such overdraft charges were unfair or unreasonable); *Daniels v. PNC Bank*, 137 Ohio App. 3d 247, 250 (2000) (holding that posting checks in high to low order for the purpose of calculating overdraft fees did not breach the bank's duty of good fair and fair dealing and that the resulting overdraft fees were not unconscionable); *Hill v. St. Paul Fed. Bank for Savings*, 329 Ill. App. 3d 705, 711-12 (2002) (holding that the practice of posting overdrawn checks in high to low order did not violate the bank's duty of good faith and fear dealing and that the bank's failure to disclose such practice did not violate Illinois's Consumer Fraud and Deceptive Business Practices Act).

1   would be pre-empted by federal law.  McCune Decl., ¶ 7.  Misrepresentation-based claims in

2   *Corriea* were eventually dismissed as well.  *Id.*

3        Further, courts were denying class certification, citing a lack of predominance and issues

4   of manageability.  *See Shelley v. AmSouth Bank*, 2000 U.S. Dist. LEXIS 11428 (S.D. Ala. July

5   24, 2000) (denying certification in a case challenging high to low posting); *Compass Bank v.*

6   *Snow*, 823 So. 2d 667 (2001) (overturning certification of class of bank customers challenging

7   bank's posting order).

8        In addition, Class Counsel also faced the considerable challenge of having to prove

9   liability.  While always a challenge in any case (especially against a defendant as large and well-

10   funded as Wells Fargo), this one presented several unique challenges to proving liability.  First,

11   Wells Fargo's account agreements referred to the possibility that Wells Fargo "may" post debit

12   transactions in high-to-low order, giving Wells Fargo a potential defense.  Second, federal

13   authorities regarding banks' rights to post checks high-to-low could have been extended

14   (improperly from Plaintiffs' perspective) to debit card transactions.  Third, high-to-low reordering

15   was extensively employed throughout the industry, making it potentially harder for a court to find

16   the practice illegal, particularly absent precedent holding these practices illegal.  McCune Decl.,

17   ¶¶ 35-36.

18        In addition, there was the danger that some or all of the claims could be found to be

19   released by the May 2007 settlement in *Smith v. Wells Fargo Bank, N.A*, No. GIC 802664 (S.D.

20   Super. Court).  While the claims in *Smith* were limited to Wells Fargo's failure to adequately

21   disclose its "shadow line" practice, the release language in the settlement agreement was

22   extremely broad and Wells Fargo asserted that ". . . if Plaintiff Sanchez is unsuccessful in

23   vacating the *Smith* settlement, the judgment in *Smith* approving the settlement agreement (and its

24   accompanying release of claims) bars Plaintiff Sanchez, Walker, and Smith from pursuing their

25   claims here."  Doc. No. 3; McCune Decl., ¶¶ 8-9.

26        The magnitude of the risks and uncertainty associated with prosecuting the claims here is

27   exemplified by the fact that few other class action lawyers were willing to accept these cases,

28   despite the potential recovery.  Despite these risks and the fact that pursuing this action would

1   require committing an enormous portion of its resources, Class Counsel M&W commenced this

2   action and agreed to vigorously prosecute it on behalf of the Class.  McCune Decl., ¶¶ 30-41.

3        Class Counsel LCHB is one of the few plaintiffs firms that had agreed to represent

4   consumers against banks in litigation concerning overdraft fee practices for many years.  That

5   litigation was likewise risky, and at times resulted in dismissals of plaintiffs' claims.  Heimann

6   Decl., ¶ 5.  Despite these experiences in prior litigation and the numerous risks described above,

7   LCHB again agreed to represent consumers in debit-card overdraft litigation in late 2008, filing a

8   class action against Bank of America in early 2009.  *Id.*

9        On May 3, 2009, LCHB was approached by Mr. McCune, then serving as Class Counsel

10  in this matter, about the possibility of LCHB joining as co-counsel and lead trial counsel in this

11  action.  *Id.*, ¶ 4; McCune Decl., ¶ 26.  At the time, the trial in this case was set to begin in

12  approximately one month.  While Plaintiffs had overcome significant hurdles up to that point, it

13  was clear that considerable challenges and risks remained.  Thereafter, the Court issued a series of

14  orders on Wells Fargo's pending motions for summary judgment and class decertification.  Doc.

15  Nos. 245-247.  Among other things, the Court decertified the class claims concerning Wells

16  Fargo's "including and deleting" practices, and indicated it was disinclined to accept an aggregate

17  damage model based on extrapolating from a sample population.  Doc. No. 245 at 10.

18       Notwithstanding that either alternative involved significant risk, the likelihood of

19  substantial costs, and an almost certain trial, LCHB agreed to serve as lead counsel and trial

20  counsel if the matter did not settle at an imminent Court-ordered settlement conference.  Heimann

21  Decl., ¶¶ 6-8.  On May 13, 2009, the Court indicated that it would reject the proposed settlement

22  and postpone the trial to allow Plaintiffs to perform a damages study using comprehensive data

23  for the entire class period.  Doc. No. 262.  The Court also recommended that M&W associate in

24  experienced class counsel like LCHB to assist in the prosecution of the case through trial.  M&W

25  advised the Court that it already had a relationship with LCHB in place.  Doc. 263 at 3, 20;

26  Heimann Decl., ¶ 7.

27       At the time of LCHB's commitment, and even after the May 13, 2009 hearing, a fair

28  assessment of the record indicated that achieving a positive recovery for the Class would require a

- 5 -

1     trial and preserving any judgment in the Class' favor through an inevitable appeal (as it turned

2     out, there were two appeals).  LCHB knowingly agreed to appear for the Class, take on the role of

3     lead trial counsel, and advance all litigation expenses, while being fully aware of the risks

4     inherent in a trial of complex class-wide issues, the risks posed by class-wide rulings (*e.g.*,

5     preemption, standing, class certification), and the uncertainty of a class-wide judgment being

6     upheld on appeal.  Heimann Decl., ¶ 8.

7          **B.      The Risky Nature Of The Litigation Remained Evident Through Pretrial
                     Litigation, Trial, And Post-Trial Proceedings.**

8

9          To get the case through the pleading stage M&W had to defeat multiple attempts by Wells

10    Fargo to argue preemption in this Court.  McCune Decl., ¶ 11.  M&W also successfully got the

11    Class certified in the face of many obstacles, not the least of which Wells Fargo's assertion (later

12    refuted) that its records could not identify overcharges or class members.  *Id.*, ¶¶ 12-13.  M&W

13    also prevailed on Wells Fargo's summary judgment motion challenging the class representatives'

14    standing.  *Id.*, ¶¶ 14-16.  M&W conducted all of the pre-trial fact discovery, uncovering key facts

15    in the case, and assembled the team of experts for the trial scheduled in early 2009.  *Id.*, ¶¶ 17-25.

16    On the eve of that initial trial date, M&W opposed multiple summary judgment motions, the

17    result of which was keeping the primary claims at issue for trial.  *Id.*, ¶ 16.

18         After LCHB entered the case, Class Counsel had to contend with Wells Fargo's continued

19    efforts to exclude plaintiffs' damages expert's testimony, its attempts to exclude documentary

20    evidence and witness testimony regarding the breadth of its representations, and its attempt to

21    exclude all evidence relating to "shadow line."  Heimann Decl., ¶¶ 10-14.

22         The two-week bench trial commenced on April 26, 2010.  Completing the numerous tasks

23    in the run-up to trial required Class Counsel to work very hard *and* very efficiently.  Heimann

24    Decl., ¶¶ 15, 34-36.  Throughout the trial, members of Plaintiffs' trial team were often juggling a

25    dozen or more projects in a given day.  Lead trial counsel and the other members of the team, in

26    addition to preparing to examine and defend trial witnesses, made sure task assignments were

27    clear and assigned to the appropriate personnel, and that the numerous projects remained on track,

28    even as new issues and tasks continued to arise daily.  Critical to keeping everything on track,

1   were periodic trial preparation meetings, which were focused and agenda-driven, and having

2   specific counsel dedicated to organizing and overseeing Class Counsel's efforts and interfacing

3   with the Court and Wells Fargo on scheduling and other important trial conduct issues.  *Id.*

4       After the evidentiary portion of trial concluded on May 7, 2010, the parties filed their

5   Proposed Findings of Fact and Conclusions of Law, and responses thereto.  Closing argument

6   was presented by counsel on July 9, 2010.  Subsequently, Class Counsel submitted briefing on the

7   effect of the release in the *Smith* case, and responded to Wells Fargo's "Notice of Potential

8   Jurisdictional Defect."  *Id.*, ¶ 17.  On August 10, 2010, the Court issued its post-trial findings

9   (Doc No. 477), ruling that Wells Fargo violated the UCL's "unfair" and "fraudulent" prongs as

10  well as the FAL.  Five months after the trial concluded, Wells Fargo moved to amend the Court's

11  findings, based on its purported "late discovery" of the "Norwest study," which Class Counsel

12  successfully opposed.  Heimann Decl., ¶ 18.  The Court entered Judgment on October 25, 2010.

13          **C.    The Judgment Was Attacked Twice On Appeal.**

14      Wells Fargo appealed the original Judgment in late 2010.   Among the attacks in Wells

15  Fargo's first appeal were federal preemption under the National Bank Act ("NBA"), liability

16  under both prongs of the UCL and the FAL, named plaintiff standing, class certification, the

17  proper measure of restitution, and Wells Fargo's challenges to the injunction.  *Id.*, ¶¶ 21-23.  In

18  addition, while the first appeal was pending, after the Supreme Court issued its decision in *AT&T*

19  *Mobility LLC v. Concepcion*, 563 U.S. 321 (2011), Wells Fargo moved to vacate and remand,

20  arguing that it should be permitted to compel arbitration of Plaintiffs' claims (even though the

21  claims had already been tried and Wells Fargo had never mentioned arbitration previously).

22  Heimann Decl., ¶ 24.

23      The Court of Appeals issued its Opinion on December 26, 2012.  The Court of Appeals

24  held that Plaintiffs' "unfair" prong claim was preempted, but agreed with Plaintiffs that the

25  statutory claims based on Wells Fargo's misrepresentations were not preempted.  The Court of

26  Appeals also affirmed this Court's findings on class certification, the named Plaintiffs' standing,

27  and class-wide liability for the statutory deception claims, and rejected Wells Fargo's belated

28  attempt to compel arbitration.  *Gutierrez v. Wells Fargo Bank, N.A.* 704 F.3d 712 (9th Cir. 2012).

1     Following remand from the Court of Appeals, Class Counsel promptly moved for re-entry

2     of the full $203 Class restitution judgment for the affirmed claims.  On May 14, 2013, over Wells

3     Fargo's opposition, the Court re-entered the full restitution judgment, ordered a new class-wide

4     injunction, and granted Class Counsel's request that post-judgment interest run from October

5     2010, the date of the original judgment.  Doc. No. 586.

6     After the full restitution judgment was reinstated, Wells Fargo filed its second appeal in

7     the Summer of 2013.  On October 29, 2014, the Court of Appeals issued its Opinion on the

8     second appeal, affirming the class restitution judgment and directing that a modified injunction be

9     entered.  *Gutierrez v. Wells Fargo Bank, N.A.*, 2014 U.S. App. LEXIS 20892 (9th Cir. Oct. 29,

10    2014).  After it unsuccessfully petitioned for rehearing, Wells Fargo moved the Court of Appeals

11    to stay the issuance of the mandate while Wells Fargo considered whether to file a petition for

12    writ of certiorari.  Class Counsel opposed this motion to prevent further delay in providing relief

13    to the Class.  The Court of Appeals denied Wells Fargo's motion to stay, and the mandate issued

14    on January 7, 2015.  Heimann Decl., ¶¶ 29-30.

15         **D.    Class Counsel's Continuing Responsibilities to the Class.**

16    Class Counsel has continued to diligently represent the Class, working hard on a new Joint

17    Recommendation regarding notice, distribution of judgment proceeds, and other issues, and

18    coordinating with potential class administrators regarding their submission of bids.  Class

19    Counsel's work on behalf of the Class will continue, including opposing Wells Fargo's

20    anticipated certiorari petition, and working to ensure that the restitution proceeds are distributed

21    to the Class pursuant to the Court's direction.  Heimann Decl., ¶ 31.

22    **III.   ARGUMENT**

23         **A.    The Requested Fee is Reasonable and Appropriate.**

24    This case is unlike most common fund cases.  In the overwhelming majority of such cases,

25    the fund achieved is the result of a settlement, and represents a fraction of the class's damages.

26    Here, by contrast, Class Counsel have litigated this case for more than seven years, prevailed at

27    trial and through two rounds of appeals, and secured a *full recovery* of $203 million in restitution

28

1  (plus interest)[4] for the Class.  Under these unique and compelling circumstances, it would be

2  reasonable and appropriate for the Court to award a fee significantly in excess of the 25 percent

3  "benchmark" applied in the Ninth Circuit and regularly awarded in settled cases in California and

4  elsewhere.  Nevertheless, Class Counsel is limiting their fee request to the benchmark 25 percent.

5       Class Counsel respectfully submit that an award of less than the benchmark here would be

6  unreasonable and antithetical to the principles underlying California and Ninth Circuit law

7  regarding attorneys' fees in class cases, which laws are designed to ensure that class counsel have

8  proper incentives to take on difficult cases and pursue class members' best interests.  Class

9  Counsel assumed substantial risks and devoted substantial resources in pursuing full recovery for

10  the Class, and they litigated this case *very* efficiently.  Class Counsel should be properly rewarded

11  for doing so and succeeding.

12      **1.**    **<u>Applicable Law</u>**

13       The Class here prevailed on claims asserted under California law, and California law thus

14  governs the fee award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

15  However, the Court may properly look to Ninth Circuit and other consistent federal precedent in

16  determining the appropriate fee here.  *See id.*

17      **2.**    **<u>Class Counsel Are Entitled to a Fee Under the Common Fund</u>**

18                **<u>Doctrine.</u>**

19       California and Ninth Circuit courts have long recognized the common fund doctrine.  *See*

20  *Serrano v. Priest*, 20 Cal. 3d 25, 35-38 (1977); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir.

21  2003).  Under the doctrine, counsel have an equitable right to be compensated for their successful

22  efforts in creating a common fund.  *Serrano*, 20 Cal. 3d at 35; *Staton*, 327 F.3d at 968; *Boeing*

23  *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (". . . a litigant or a lawyer who recovers a common

24  fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Wash. Pub.*

25  *Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (the class "should share the

26  wealth with the lawyers whose skill and effort helped create it").

27

28  ---

[4] As of the date of this filing, approximately $2 million of post-judgment interest has accrued on the restitution judgment amount.

### 3.     The Court Should Calculate Class Counsel's Fee As a Percentage of the Restitution Judgment.

The most appropriate way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund, is the percentage-of-the-fund method. *See Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 877-78 (2014); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"). The percentage method comports with the legal marketplace in other contingency fee cases, where counsel's fee is typically based upon a percentage of any recovery. *See* Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.* at 73 (2005) (percentage method "helps ensure that the fee award will simulate marketplace rates, since most common fund cases are the kinds of cases normally taken on a contingency fee basis, by which counsel is promised a percentage of any recovery").

The percentage-of-the-fund method aligns class counsel's interests with those of the class, and properly incentivizes capable counsel, not to only accept challenging cases, but to push for the best result that can be achieved for the class. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted). If the law would cap an attorneys' fee at some multiple of their lodestar in the event of achieving extraordinary results, then attorneys would not push for trial, because their fee would be only marginally affected by prevailing at trial. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010) (lodestar method can encourage "attorneys to settle before trial even when it is not in their clients' best interest," noting that under it "lawyers share the 'downside' risk of trial (i.e., the possibility of an adverse judgment, and hence no fee)" but "do not share in the potential economic 'upside' (i.e., fees as a percentage of a large common fund)"). Moreover, the percentage-of-the-fund method encourages efficiency and

- 10 -

1    discourages waste. The lodestar method, by contrast, encourages counsel to bill time and to

2    create opportunities to bill time.[5]

3          Calculating the fee here as a percentage-of-the-fund, rather than merely as a function of

4    counsel's billed time, not only rewards Class Counsel for assuming the risks of this case, and

5    efficiently prosecuting it through trial and two appeals, it would also incentivize other counsel to

6    pursue *full* relief in other cases.

7             **4.**      <u>**A Fee Equal to the 25 Percent "Benchmark" is Reasonable.**</u>

8          In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund

9    created. *Vizcaino*, 290 F.3d at 1047. A court should depart from the benchmark only if there are

10    "special circumstances" justifying the departure. *In re Bluetooth Headset Prods. Liab. Litig.*, 654

11    F.3d 935, 942 (9th Cir. 2011) (citations omitted). Courts in the Ninth Circuit often award fees

12    that are in excess of the 25 percent benchmark. *See, e.g., Vizcaino*, 290 F.3d at 1050 (affirming

13    28 percent award); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)

14    ("[I]n most common fund cases, the award exceeds that [25%] benchmark.").[6]

15    _____

[5] This lodestar method's emphasis on time has drawn substantial criticism. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 28 (2000) (noting "criticism of the lodestar method" and a Third Circuit task force finding that it "was seriously deficient and subject to abuse when applied in cases resulting in the creation of a fund"); *In re Apple iPhone/iPod Warranty Litig.*, 2014 U.S. Dist. LEXIS 52050, at *8 (N.D. Cal. Apr. 14, 2014) ("Whatever merits the lodestar method might have, particularly outside the context of a common fund case, it has also been subject to heavy criticism by commentators and in the courts.") (citation omitted). Among other things, awarding fees based on the lodestar method "does not encourage efficiency." *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Instead, as the Ninth Circuit observed, "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee." *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re Activision*, 723 F. Supp. at 1378 (noting that lodestar approach "encourages abuses such as unjustified work and protracting the litigation").

[6] *See also, e.g., Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010) (33%); *Dyer v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 150129, at *14-17 (N.D. Cal. Oct. 22, 2014) (25%); *Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at *31-32 (N.D. Cal. July 11, 2014) (28%); *Vedachalam v. Tata Consultancy Servs., Ltd.*, 2013 U.S. Dist. LEXIS 100796, at *4-5 (N.D. Cal. July 18, 2013) (awarding 30% and citing cases where 30% awarded); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607, at *47 (N.D. Cal. Jan. 14, 2013) (30%); *Kramer v. Autobytel, Inc.*, 2012 U.S. Dist. LEXIS 185800, at *13 (N.D. Cal. Jan. 27, 2012) (25%); *Garner v. State Farm*, 2010 U.S. Dist. LEXIS 49482, at *6 (N.D. Cal. Apr. 22, 2010) (30%); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) (30%); *In re Omnivision*, 559 F. Supp. 2d at 1048 (28%); *In re Activision*, 723 F. Supp. at 1377 (30%).

Similarly, a 25 percent fee is at the lower end of the range typically awarded by California state courts. *See Laffitte*, 231 Cal. App. 4th at 878 (affirming award of 1/3 fee, finding it was "in the range of . . . awards in other class action lawsuits"); *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 66 n.11 (2008) (affirming 27.9 percent fee and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (citation and internal quotation marks omitted); *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009).

Courts in the Ninth Circuit consider a number of factors in determining whether there is any basis to stray from the benchmark, including: (1) the results achieved; (2) the complexities of the case and skill and effort required of counsel; (3) awards in similar cases; (4) whether there are benefits to the class beyond the immediate generation of a cash fund; and (5) the contingent nature of the fee. *Vizcaino*, 290 F.3d at 1048-50. Consideration of these factors here confirms that there is no basis for any downward departure from the benchmark.

### a. <u>Class Counsel Achieved Full Restitution for the Class.</u>

The results obtained for the class are generally considered the most important factor in determining the appropriate fee in a common fund case. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Vizcaino*, 290 F.3d at 1049; *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Fed. Judicial Ctr., *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members"). The outstanding monetary result that Class Counsel achieved here—full restitution of approximately $203 million—militates strongly in favor of the requested fee. In fact, courts regularly award fees in excess of the benchmark when the proportional recovery for the class is nowhere near the full recovery achieved here.[7]

---

[7] *See, e.g., Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *13, *22-23 (S.D. Cal. June 1, 2010) (awarding one-third fee with 28.84% of damages recovered) ; *Knight*, 2009 U.S. Dist. LEXIS 11149, at *9 (N.D. Cal. Feb. 2, 2009) (30% fee where settlement fund equaled about half of alleged damages); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 490, 498 (E.D. Pa. 2003) (1/3 fee where settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee where settlement fund equaled 11% of estimated damages); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *15, *17 (E.D.N.Y. Aug. 7, 1998) (1/3 fee where recovery was 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 324, 326 (E.D.N.Y. 1993) (33.8 percent fee where recovery was 10% of damages).

b.   **Successfully Prosecuting This Case Through Trial and Two Appeals Required Extraordinary Effort and Skill.**

The effort and skill displayed by counsel and the complexity of the issues involved are additional factors used in determining a proper fee. *Vizcaino*, 290 F.3d at 1048; *Omnivision*, 559 F. Supp. 2d at 1046-47.  These factors strongly support the reasonableness of the fee requested here.  This case is truly an outlier in the class action field.  Not only was it successfully tried to a Plaintiffs' verdict (itself, very rare for class actions), but securing relief for the Class also required Class Counsel to litigate two complex and risky appeals by Wells Fargo.

Wells Fargo aggressively litigated this case throughout.  Class Counsel had to contend with numerous complex issues at every stage, and faced a litany of challenges, many of which could have sunk the case entirely.  Class Counsel's job was made all the more difficult by having to contend with highly capable opposing counsel and a defendant with abundant resources that vigorously litigated and contested all issues.  The extent of the litigation and the devotion and skill required of Class Counsel here have exceeded by a significant margin what is typically required even in a complex class case like this.  Among other things, Class Counsel have:

- Conducted factual investigation and legal research throughout the case.
- Discovery practice, including: deposing 16 current and former Wells Fargo executives and employees and an employee of Visa; written discovery on merits and damages issues; reviewing thousands of documents produced by Wells Fargo, discovery motions, and defending Plaintiffs' depositions.
- Expert practice, including: deposing Wells Fargo's experts, helping to develop Plaintiffs' damages methodology and securing the data necessary for same, defending the depositions of Plaintiffs' experts, preparing experts for deposition and trial, and cross-examining Wells Fargo's trial experts.
- Obtained class certification and litigated numerous other motions, including: Wells Fargo's motion to dismiss, motion for summary judgment, motion for partial summary judgment, motion for reconsideration regarding preemption, and motion to exclude Plaintiff's damages expert;
- Prepared for trial, including:  briefing motions *in limine*, designating deposition testimony and trial exhibits, preparing witnesses for trial and preparing for examination of Wells Fargo's trial witnesses, preparing proposed findings and other pre-trial filings, and negotiating and litigating objections to the trial exhibits.
- Tried the case to a Plaintiffs' verdict.  In addition to witness examination, motions practice and other litigation remained intense during the trial, including Wells Fargo's Rule 52(c) motion, Wells Fargo's motion to exclude one of Plaintiff's experts, taking a mid-trial deposition of a Wells Fargo's percipient witnesses, and reviewing and flagging voluminous complaint records.
- Prepared Plaintiffs' post-trial proposed findings and the response to Wells Fargo's corresponding submission, including detailed review of the record and law.

1

- Closing argument and preparation, post-trial briefing on the *Smith* release and other issues, and opposing Wells Fargo's post-trial motion to amend the Findings.

2

3

- Litigated Wells Fargo's first appeal in the Ninth Circuit, and opposed Wells Fargo's motion to vacate and remand based on arbitration.

- Successfully moved to reinstate the full judgment following the first remand.

4

5

- Litigated Wells Fargo's second appeal in the Ninth Circuit, and opposed Wells Fargo's motion to stay the mandate.

6

Class Counsel's responsibilities to the Class continue, including opposing Wells Fargo's

7

anticipated certiorari petition, and working to ensure the Class members receive their payments.

8

Heimann Decl., ¶¶ 10-31; McCune Decl., ¶¶ 29, 81-181.

9

10

### c.   A Comparison to Awards in Other Cases Demonstrates the Reasonableness of the Fee Requested.

11

A review of fee awards in other common fund cases underscores the reasonableness of the

12

fee requested here.  Fee awards of 25% or even higher are common in cases resolved through

13

*settlement*—often where there was limited litigation and when the class receives a fraction of

14

their potential damages.[8]  It stands to reason that if a 25% fee or more is awarded in those cases,

15

the fee requested here is very reasonable, given that Class Counsel obtained full recovery for the

16

Class after prevailing at trial, and secured that recovery through two difficult appeals.

17

The most direct comparison to this case is the multi-district litigation, *In re Checking*

18

*Account Overdraft Litigation* (MDL 2036), where similar challenges were made to the practices

19

of dozens of banks throughout the country.  (The Court may recall that Class Counsel

20

successfully opposed transfer of this case to the MDL on the grounds that trial in this case should

21

22

[8] *See, supra*, note 6; *see also Laffitte*, 231 Cal. App. 4th at 865 (affirming 1/3 award); *Vizcaino*,

23

290 F.3d at 1052 & n.9 (survey of awards in cases with class settlements between $50-200 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)

24

(31⅓% fee for settlement fund of over $1 billion); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *1-2 (E.D. Pa. Jun. 2, 2004) (30% fee; $202 million fund); *In re Relafen*

25

*Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801, at *20-21 (D. Mass. Apr. 9, 2004) (33⅓% fee; $175 million fund); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067,at *57-58

26

(D.D.C. July 16, 2001) (34.06% fee; $359 million fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) (27.5% fee; $116 million fund); *Kurzweil v. Philip Morris*

27

*Cos.*, 1999 U.S. Dist. LEXIS 18378, at *2 (S.D.N.Y. Nov. 30, 1999) (30% fee; $123 million fund); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (fee awards in the 25-

28

30% range were "fairly standard" in class action settlements between $100-200 million).

proceed apace.)  In virtually all of the settled cases in the Overdraft MDL, the court has awarded a fee of thirty-percent (30%) of the settlement fund.

Here, Class Counsel seek a smaller percentage of the recovery (25%) than the 30% that has been routinely awarded in the Overdraft MDL, even though none of the settled cases in the Overdraft MDL went to trial, and most were settled prior to class certification.  Further, all of the Overdraft MDL settlements came after Class Counsel successfully tried this case to judgment, and thus, the results reached in this case came at a time when the risk in these cases was at its highest.  Unlike this case, where Class Counsel achieved 100% recovery for the class, the settlements in the Overdraft MDL have not approached a full recovery for the class, as this chart shows:[9]

|  | Settlement Amount | Est. Damages | % of Damages | Stage of Lit | Attorney Fee |
|---|---|---|---|---|---|
| **Great Western** | $2,200,000 | $4,392,192 | 50% | Pre- Cert | 30% |
| **Iberiabank** | $2,500,000 | Unknown | Unknown | Pre- Cert | 27.5% |
| **Susquehanna Bank** | $3,680,000 | $9,200,000 | 40% | Pre- Cert | 30% |
| **M & I Bank** | $4,000,000 | $15,422,808 | 26% | Pre-Cert | 30% |
| **Harris Bank** | $9,400,000 | $14,523,320 | 65% | Pre-Cert | 30% |
| **Compass Bank** | $11,500,000 | $70,270,354 | 16% | Pre-Cert | 30% |
| **Associated Bank** | $13,000,000 | $25,508,775 | 51% | Pre-Cert | 30% |
| **Comerica Bank** | $14,580,000 | $41,324,779 | 35% | Certified | 30% |
| **Bank of the West** | $18,000,000 | $34,843,001 | 52% | Pre-Cert | 30% |
| **Commerce Bank** | $18,300,000 | $40,400,000 | 45% | Pre-Cert | 30% |
| **Bank of Oklahoma** | $19,000,000 | Not available | 46% | Pre-Cert | 30% |
| **Union Bank** | $35,000,000 | $55,851,755 | 63% | Certified | 30% |
| **US Bank** | $55,000,000 | $423,927,151 | 13% | Pre-Cert | 30% |
| **TD Bank** | $62,000,000 | $146,724,032 | 42% | Certified | 30% |
| **PNC Bank** | $90,000,000 | $194,447,283 | 46% | Certified | 30% |

[9] Class Counsel created this chart based on the publicly available information in the MDL Litigation, and it is not a complete list of settlements in the Overdraft MDL.  The estimated damages were calculated, as in this case, by comparing the overdraft fees incurred through the bank's high-to-low posting, with those fees that would have been incurred in chronological-based posting.  Each of the cases against the various banks in the Overdraft MDL presented unique circumstances and risks to obtaining judgment, not considered here.  *See, e.g.*, S.D. Fla. Case No. 1:09-md-02036-JLK, Doc. Nos. 3572 (Great Western); 2657 (Iberiabank); 3818 (Susquehanna Bank); 3570 (M&I Bank); 3578 (Harris Bank); 3585 (Compass Bank); 3576 (Associated Bank); 3894 (Comerica Bank); 3128 (Bank of the West); 3574 (Commerce Bank); 2949 (Bank of Oklahoma); 2986 (Union Bank); 3753 (US Bank,); 3339 (TD Bank); 3580 (PNC Bank); 3134 (J.P. Morgan Chase); 3331 (Citizens Bank); 2150 (Bank of America).

|  | Settlement Amount | Est. Damages | % of Damages | Stage of Lit | Attorney Fee |
|---|---|---|---|---|---|
| **Chase Bank** | $110,000,000 | $780,755,841 | 20% | Pre-Cert | 30% |
| **Citizens Bank** | $137,500,000 | $328,929,406 | 42% | Pre-Cert | 30% |
| **Bank of America** | $410,000,000 | Not available | 9% | Pre- Cert | 30% |

### d.    Class Counsel Achieved Valuable Injunctive Relief Beyond the Restitution Judgment.

Where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the monetary fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive." *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"). Thus, for example, in *Castaneda*, this Court awarded a fee of 33% of the settlement fund, finding that additional injunctive relief obtained for the class justified an upward departure from the benchmark. *Castaneda*, 2010 U.S. Dist. LEXIS at * 9-10.

Here, Class Counsel achieved significant changes that have benefited and will continue to benefit the Class and other customers. Wells Fargo is permanently enjoined from making misrepresentations about its posting order for debit card transactions, which will save customers from incurring unexpected fees. Doc. No. 615. Moreover, after the Court entered the original injunction, Wells Fargo modified its posting order to comply, benefiting customers in the form of significantly reduced fees. Doc. No. 488. All told, these changes will no doubt save Class members and other customers millions of dollars. The valuable additional relief achieved by Class Counsel here, on top of the restitution judgment, would likely support an enhanced fee, and at a minimum underscores the reasonableness of the fee requested.

### e.    The Contingent Nature of the Fee Here Further Supports the Fee Requested.

Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See In re Wash.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-

- 16 -

1   contingent basis are accepted in the legal profession as a legitimate way of assuring competent

2   representation for plaintiffs who could not afford to pay on an hourly basis regardless whether

3   they win or lose."); *Vizcaino*, 290 F.3d at 1051.

4       Class Counsel prosecuted this case on a purely contingent basis, agreeing to advance all

5   necessary expenses and that they would only receive a fee if there was a recovery.[10]  Class

6   Counsel's outlay of time and money has been considerable; in all, Class Counsel and their staffs

7   have already spent more than 10,346.45 hours working on this case,[11] and have advanced more

8   than $558,378.92 in necessary litigation costs.[12]   Class Counsel expended these resources despite

9   the considerably magnified risk in this case that they may receive no fee at all.  *See supra* section

10  II.A.[13]

11          **5.**      **A Lodestar-Multiplier "Cross-Check" Further Confirms the**
                         **Reasonableness of the Fee Requested.**
12

13      The Court may engage in a lodestar "cross-check" when awarding a fee as a percentage of

14  a common fund.  *See Laffitte*, 231 Cal. App. 4th at 879; *Vizcaino*, 290 F.3d at 1050-51.  The

15  purpose of a cross-check is *not* to engage in a wholesale re-calculation of the fee from scratch.

16  Rather, the cross-check is one of the tools used to ensure a reasonable fee.  The cross-check is

17  sometimes seen as guarding against disproportionate percentage fee awards where counsel's

18  "investment is minimal, as in the case of an early settlement."  *Vizcaino*, 290 F.3d at 1051.  As

19  "merely a cross-check on the reasonableness of a percentage figure," *id.* at 1050 n.5, "[t]he

20  lodestar crosscheck need not entail either mathematical precision or bean counting." *Rieckborn v.*

21  *Velti PLC*, 2015 U.S. Dist. LEXIS 13542, at *71 (N.D. Cal. Feb. 3, 2015) (citation and internal

22  quotation and editing marks omitted); *see also Cruz v. Sky Chefs, Inc.*, 2014 U.S. Dist. LEXIS

23

24  [10] *See* Heller Decl., ¶ 21; McCune Decl., ¶ 30.
    [11] Heller Decl., ¶ 16. Exs. F-G; McCune Decl., ¶¶ 70, 74-75.  This number does not include
25  significant time that Class Counsel have written-off in the exercise of billing judgment.  Nor does
    it include the additional time that Class Counsel will spend going forward, including in opposing
26  Wells Fargo's anticipated certiorari petition, continuing to communicate with class members, and
    ensuring that restitution payments are distributed to the Class.
27  [12] Heller Decl., ¶ 22, Ex. H-I; McCune Decl., ¶¶ 52-53.
    [13] Class Counsel's devotion to this case in lieu of other opportunities further supports the
28  requested fee award here.  *Vizcaino*, 290 F.3d at 1050; Heller Decl., ¶ 20; McCune Decl., ¶ 42.

1   176393, *19 (N.D. Cal. Dec. 19, 2014) (same); *Chavez*, 162 Cal. App. 4th at 64 (citing *Wershba*

2   *v. Apple Computer*, 91 Cal. App. 4th 224, 254-55 (2001)).

3      California law differs somewhat from Ninth Circuit precedent with respect to the factors

4   that may be considered in performing a cross-check. *Lealao*, 82 Cal. App. 4th at 42. Notable

5   here is that California law requires a court performing a cross-check to consider "what the market

6   would pay for comparable litigation services pursuant to a fee agreement." *Chavez*, 162 Cal. App.

7   4th at 65 (citing *Lealao*, 82 Cal. App. 4th at 47-50). As part of this analysis, a court may consider

8   the percentages in "contingency fee contracts found in the marketplace." *Id.*

9                    a.      **Class Counsel's Lodestar Reflects Their Reasonable Rates and
                            Their Very Efficient Prosecution of this Case.**

10

11     Class Counsel's combined lodestar to date, exclusive of time written off, is $4,904,213.85

12   using historical billing rates and $5,526,061.34 using current billing rates. *See In re Wash.*, 19

13   F.3d at 1305 (courts apply each biller's current rates for all hours of work performed, regardless

14   of when the work was performed, as a means of compensating for the "delay in payment.").

15     The hourly billing rates used in calculating these figures are Class Counsel's customary

16   rates,[14] and they have been approved by numerous courts in this District and elsewhere,[15] and are

17   "in line with those [rates] prevailing in the community for similar services by lawyers of

18   reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895-96 n.11;

19   Declaration of Richard M. Pearl, submitted herewith.

20     The hours that Class Counsel have billed reflects their extremely hard work *and* the very

21   efficient manner in which they prosecuted this case. Given the extensive and hard-fought nature

22   of the litigation, the number of hours Class Counsel billed demonstrates that their efforts were

23   extremely focused and organized, a conclusion also supported by the excellent results achieved.

24     Class Counsel also took appropriate steps to avoid duplication of effort. Heimann Decl.,

25   ¶¶ 37, 57. The lean staffing of this case is the primary reason the submitted lodestar is so modest

26   under the circumstances. For the majority of the pre-trial phase, M&W was the only firm on the

27

28   [14] Heller Decl., ¶ 17, 19; McCune Decl., ¶¶ 58, 61, 64, 67, 69.
     [15] Heller Decl., ¶ 17; McCune Decl., ¶¶ 58, 61, 64.

1   case.  After LCHB was associated in, in 2009, LCHB and M&W worked cooperatively and

2   efficiently in preparing the case for trial and trying the case.  During this period, assignments

3   were made for specific tasks so it was clear which firm and which personnel had primary

4   responsibility over each task.  Heimann Decl., ¶¶ 57-58.  With respect to the post-trial phase and

5   the appeals, LCHB has taken the lead with contributions from M&W.  *Id.*, ¶¶ 20, 25, 29-30.

6          While Plaintiffs did not win every battle in this case, they have won the war, and Class

7   Counsel respectfully submit that all of the hours that they have spent on this case were reasonable

8   and necessarily incurred as part of Class Counsel's zealous and vigorous representation of the

9   Class.  As the Ninth Circuit stated:

> 10          Rare, indeed, is the litigant who doesn't lose some skirmishes on
> the way to winning the war.  Lawsuits usually involve many
> 11          reasonably disputed issues and a lawyer who takes on only those
> battles he is certain of winning is probably not serving his client
> 12          vigorously enough; losing is part of winning.

13   *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991).  Nevertheless, there are certain

14   projects for which the Class Counsel firms do not seek compensation or seek only partial

15   compensation for their time.[16]  Moreover, as detailed in the accompanying declarations, Class

16   Counsel have exercised billing judgment in writing-off considerable time related to other projects

17   and tasks in this case.[17]  Class Counsel respectfully submit that all of their time submitted is

18   reasonable and compensable.

19               **b.      A Cross-Check Confirms That Class Counsel Performed
                           Substantial Work in Securing An Excellent Result for the Class.**

20

21          A primary function of the lodestar cross-check is to guard against a large fee award where

22   counsel has settled early and done only a minimal amount of work.  *Vizcaino*, 290 F.3d at 1050.

23   That concern is clearly not an issue here.  Class Counsel has aggressively litigated the case for

24   more than seven years, brought the case to trial, prevailed at trial, secured a $203 million

25   judgment, and maintained it through two appeals.  Class Counsel's lodestar, backed-up by the

26   descriptions of their time submitted herewith, confirms their very substantial efforts.

27

28   [16] Heller Decl., ¶¶ 7-8; McCune Decl., ¶¶ 74-75.
     [17] Heller Decl., ¶¶ 6-8; McCune Decl., ¶¶ 74-79.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

A fee in the amount of 25% of the $203 Class restitution judgment represents an effective multiplier on Class Counsel's submitted lodestar of approximately 10.3 (using historical billing rates) or 9.2 (using current billing rates).[18]  A multiplier in that range, while higher than the multiplier in the average case, is well-justified under the uniquely compelling circumstances here.

California law embodies a "relatively permissive attitude on the use of multipliers" and permits a court to evaluate the multiplier in light of a broader set of factors available under federal law.  *Lealao*, 82 Cal. App. 4th at 42-43.  Among the factors considered are (1) the novelty and difficulty of the questions involved, (2) the skill displayed, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award.  *Laffitte*, 231 Cal. App. 4th at 876 n.7.  Moreover, under California law, a multiplier should be used "where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation."[19]  *Lealao*, 82 Cal. App. 4th at 50; *see also Laffitte*, 231 Cal. App. 4th at 876 n.7 (noting that multiplier should be used to "to fix a fee at the fair market value" and "'approximate the fair market rate for'" a counsel's services) (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004)).  To that end, in considering the reasonableness of a multiplier, it is appropriate under California law to consider the percentage recovery provided in "contingency fee contracts found in the marketplace."  *Chavez*, 162 Cal. App. 4th at 65; *see also In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

Even before applying this principle of California law, the multiplier here, while certainly higher than multipliers found in many less compelling circumstances, is within the range of multipliers in comparable cases.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.")  The following federal cases support that conclusion:

---

[18] The multipliers would be lower if Class Counsel's time in connection with the present motion, and the considerable time that Class Counsel will need to spend going forward, are considered.

[19] The Ninth Circuit does not follow that approach.  *Vizcaino*, 290 F.3d at 1049 (citing *In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)).

| Case | Percentage of Settlement | Multiplier |
|------|--------------------------|------------|
| *Steiner v. Am. Broad. Co.*, 248 F. App'x. 780, 783 (9th Cir. 2007) | 25% of $25.4 million | 6.85 |
| *Vizcaino*, 290 F.3d at 1051 n.6 | n/a | Noting maximum multiplier of up to 19.6 |
| *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) | 33% of $4.9 million | 6.3 |
| *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009) | 20% of $350 million | 8.3 |
| *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) | 18% of $600 million | 6 |
| *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp 2d 587, 589 (E.D. Pa. 2005) | 25% of $127 million | 6.96 |
| *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at *60 (E.D. Pa. May 19, 2005) | 20% of $100 million | 15.6 |
| *In re RJR Nabisco, Inc. Secs. Litig.*, 88 Civ. 7905 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) | 25% of $72.5 million | 6 |

Underlying the awards in each of the above cases are findings that the benefits obtained for the class were superb and that class counsel's work was exceptional.[20]  The same is true here.

First, Class Counsel obtained extraordinary results for the class, including *full* restitution of the amounts that Wells Fargo may have acquired by means of its deceptive conduct.  *See, e.g.*, *Create-A-Card, Inc. v. Intuit, Inc*, 2009 U.S. Dist. LEXIS 133446, at *8 (N.D. Cal. Sept. 29, 2009) (noting that, in enhancing a lodestar, "[t]he determinative factor . . . is the benefit to the class"); *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 ("The 'results obtained' factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit.").  Class Counsel's recovery of complete relief, after trial and two appeals,

---

[20] *See, e.g.*, *New England Carpenters*, 2009 U.S. Dist. LEXIS 68419, at *9 (finding 8.3 multiplier justified where counsel "successfully achieved a mega-amount of $ 350,000,000 plus future injunctive relief"); *Beckman*, 293 F.R.D. at 482 (noting "the settlement amount is substantial"); *In re Cardinal Health*, 528 F. Supp. 2d at 770 (finding 6 multiplier justified by "excellent recovery, considerable effort and time, and high quality of lawyering"); *In re Rite Aid Corp.*, 362 F. Supp. 2d at 590 ("Suffice it to say that, through the exercise of their considerable skill, plaintiffs' counsel obtained a historic recovery for the class in a rare and complex kind of case where victory at trial would have been, at best, remote and uncertain.").

elevates this case above those identified above involving high multipliers, all of which involved class settlements.  Insofar as those cases found high multipliers justified based on an incomplete recovery, the justifying factors there are only amplified here based on the Class's *full* recovery. Moreover, Class Counsel obtained valuable injunctive relief further protecting the Class and other consumers from further deceptions going forward and saving them millions of dollars.  Such exceptional monetary and injunctive relief, far greater than what could have been obtained in settlement, justify the resulting lodestar multiplier.

*Second*, from the very beginning and all the way through the second appeal, this case has posed numerous novel and complex questions, including regarding federal preemption, standing, and liability and relief under the UCL and FAL.  *See Vizcaino*, 290 F.3d at 1048 (affirming enhanced fee where counsel "pursued this case in the absence of supporting precedents").

*Third*, Class Counsel's reputation, experience, and ability were essential to obtaining the $203 million restitution award.  Class Counsel have extensive experience in consumer class action and other complex litigation.  Heimann Decl. ¶¶ 39-54; McCune Decl. ¶¶ 55-56.  Their skills in developing the factual and expert record, trying the case before this Court, and presenting successful arguments on two appeals were essential to the result for the Class.

*Fourth*, the fee is completely justified here given what Class Counsel would have obtained under a contingency fee contract found in the marketplace.  *Chavez*, 162 Cal. App. 4th at 65 (affirming fee award based on "contingency fee contracts found in the marketplace"); *see also In re Continental Ill.*, 962 F.2d at 568 ("[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").  In *Chavez*, the court affirmed a fee award based in part on an enhanced lodestar figure because it was "equivalent to a contingency fee percentage that might be specified in the typical contingent fee contract."  162 Cal. App. 4th at 65, 66 ("the method chosen is applied consistently using percentage figures that accurately reflect the marketplace.").

Courts recognize that attorney's fees percentages in contingency fee arrangements generally range between 20 and 40 percent of any recovery.[21]  Here, Class Counsel request a fee equal to 25% of the restitution judgment, which is well within that range.

### 6.   The Court May Order Wells Fargo to Bear a Portion of Class Counsel's Fee Pursuant to Section 1021.5.

While it would be appropriate, under the common fund doctrine, to award the full amount of the fee requested from the restitution judgment, Class Counsel believe there is a way for the Court to shift some of the responsibility to Wells Fargo, and thus preserve more of the judgment funds for the Class.  While there is limited authority directly addressing the statute's applicability in this context, Class Counsel believe that Section 1021.5 vests the Court with discretion to require Wells Fargo to bear a portion of the fee in this case.  Section 1021.5 provides:

> [A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

The only element of Section 1021.5 potentially subject to dispute is subpart (b), the "financial burden" element.[22]  Class Counsel respectfully submit that, based on the risks and legal landscape that Plaintiffs faced early in the litigation, this element is satisfied here.  *See Beasley v. Wells*

---

[21] *See, e.g.*, *Laffitte*, 231 Cal. App. 4th at 869 (repeating trial court's finding that the requested fee "amounts to 33 1/3[] percent of the gross settlement amount, and is not an atypical contingency agreement in a class action"); *Chavez*, 162 Cal. App. 4th at 65 (noting "the 20 to 40 percent range of contingency fee contracts found in the marketplace"); *Wallace v. Powell*, 301 F.R.D. 144, 167 (E.D. Pa. 2014) ("In private contingency fee cases, attorneys routinely negotiate agreements for between thirty percent (30%) and forty percent (40%) of the recovery."); *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1253 (D.N.M. 2012) ("[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis") (citation omitted).

[22] The other elements are satisfied.  Plaintiffs are a "successful party."  Moreover, this case enforced an important right affecting the public interest—consumers' right to be protected from deceptive conduct.  Further, Plaintiffs and Class Counsel have conferred "significant benefits," pecuniary and non-pecuniary, on a large class and other consumers.  And, requiring Wells Fargo to pay part of Class Counsel's fee would serve the interests of justice by allowing Class members to retain more of their restitution while still ensuring Class Counsel is fairly compensated.

*Fargo Bank*, 235 Cal. App. 3d 1407, 1414 (1991) (the financial burden "inquiry looks forward from the outset of class counsel's vital litigation decisions, rather than backward after judgment").

In terms of what portion Wells Fargo should bear, Class Counsel submit that the proper portion is the amount of Class Counsel's lodestar in the case, because "[f]ees awarded pursuant to § 1021.5 are determined under the lodestar method." *Seebrook v. Children's Place Retail Stores, Inc.*, 2013 U.S. Dist. LEXIS 171864, *7 (N.D. Cal. Dec. 4, 2013). Accordingly, Class Counsel respectfully request that pursuant to Section 1021.5, the Court order that payment of a portion of the reasonable attorney fee award, in the amount of $4,904,213.85, be shifted to Wells Fargo, and that to the extent the Court does not shift payment of the reasonable attorney fee award to Wells Fargo, payment of the fee and cost award come from the restitution judgment.

### B.   Class Counsel's Litigation Costs are Reasonable and Should Be Reimbursed.

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). In prosecuting this case over seven years, Class Counsel have incurred over $558,378.92 in necessary litigation expenses. These expenses, which are detailed in the accompanying declarations, were advanced for the benefit of the Class, and should be reimbursed in full. [23]

### C.   The Requested Service Awards Are Reasonable and Appropriate.

Class Counsel asks the Court to award service awards of $10,000 each for the two class representatives, Veronica Gutierrez and Erin Walker. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id.*

The requested $10,000 awards are at the low end of the range awarded in cases where

---

[23] Heller Decl., ¶¶ 22-24, Ex. H-I; McCune Decl., ¶¶ 48, 49, 52. These expenses do *not* include the taxable costs that were included in the Bill of Costs filed in 2010 (*See* Doc. Nos. 514, 538, 553), nor do they include additional costs which were reasonably incurred by Class Counsel in this case but for which reimbursement is not sought.

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)

1   representatives did comparable work,[24] and are well justified here.  Both class representatives

2   devoted substantial time and attention to this case for the benefit of the Class, including having

3   their depositions taken, traveling to and testifying at trial (requiring them to be away from home

4   for four days), responding to discovery, reviewing personal records and pleadings, meeting with

5   counsel, and participating in mediation.[25]  Their commitment is all the more remarkable given the

6   relatively modest size of their personal financial stakes.  *Van Vranken*, 901 F. Supp. at 299.

7           **D.      Wells Fargo Should Pay For the Remaining Costs of Class Administration.**

8           As Wells Fargo's liability has been established, applicable law requires that it must pay

9   the remaining costs of administration. (*See* Second Case Management Order Following Remand,

10  Doc. No. 616, requiring, *e.g.*, Rule 23(h) notice and distribution of judgment proceeds.).[26]

11  Indeed, "[i]f this Court directed that these costs are to be paid from the [restitution] awarded. . .

12  the plaintiffs essentially would be bearing these costs." *Six Mexican Workers v. Ariz. Citrus*

13  *Growers*, 641 F. Supp. 259, 264 (D. Ariz. 1986) (ordering defendant to pay for administration

14  costs after liability determined at trial, and expressly distinguishing it from settlement context);

15  *see also Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143-44 (9th Cir. 2009)

16  (appropriate for defendant to pay notice costs after defendant's liability has been established)

17  (citing cases); *Sullivan v. Kelly Servs., Inc.*, 2011 U.S. Dist. LEXIS 2189, *2-3 (N.D. Cal. Jan. 5,

18  2011) (same; liability determined on summary judgment).  Having the Class pay for

19  administration out of the judgment would be inequitable, inconsistent with the law of this Circuit,

20  and antithetical to the remedial purposes of the UCL, the FAL.

21  **IV.     CONCLUSION**

22          For the foregoing reasons, the Court should award attorneys' fees and expenses, and

23  service awards, as requested, and order Wells Fargo to pay the remaining costs of administration.

---

24  [24] *See, e.g., Adderley v. NFL Players Ass'n*, 2009 U.S. Dist. LEXIS 115742, at *24 (N.D. Cal.

25  Nov. 23, 2009) ($10,000 award; case settled after trial); *In re LDK Solar Sec. Litig.*, 2010 U.S. Dist. LEXIS 73530, *10 (N.D. Cal. Jun. 21, 2010) ($10,000 award); *In re Conn. Gen. Life Ins.*

26  *Co.*, No. 1997 U.S. Dist. LEXIS 23955, at *42-43 (C.D. Cal. Feb. 13, 1997) ($25,000 awards); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 award).

27  [25] Doc No. 512 (Gutierrez Decl.), ¶¶ 1-7; Doc No. 513 (Walker Decl.), ¶¶ 1-7.

28  [26] As a practical matter Class Counsel may have to front payment for some of these costs given the timing of administrative events and a ruling on this motion.

Dated: February 17, 2015

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:_____/s/ *Richard M. Heimann*_____

Richard M. Heimann (State Bar No. 063607)
Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Richard D. McCune (State Bar No. 132124)
*rdm@mccunewright.com*
Jae (Eddie) K. Kim (State Bar No. 236805)
*jkk@mccunewright.com*
MCCUNEWRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs and the Class*

1216660.10

CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS; MPA
CASE NO. C 07-05923 WHA (JCSX)