1  Richard M. Heimann (State Bar No. 063607)
   *E-mail: rheimann@lchb.com*
2  Michael W. Sobol (State Bar No. 194857)
   *E-mail: msobol@lchb.com*
3  Roger Heller (State Bar No. 215348)
   *E-mail: rheller@lchb.com*
4  LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
6  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
7
   Richard D. McCune (State Bar No. 132124)
8  *rdm@mccunewright.com*
   Jae (Eddie) K. Kim (State Bar No. 236805)
9  *jkk@mccunewright.com*
   MCCUNEWRIGHT, LLP
10 2068 Orange Tree Lane, Suite 216
   Redlands, CA 92374
11 Telephone: (909) 557-1250
   Facsimile: (909) 557-1275
12
13 *Attorneys for Plaintiffs and the Class*

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

17 VERONICA GUTIERREZ, ERIN          Case No. C 07-05923-WHA
18 WALKER, and WILLIAM SMITH, as
   individuals and on behalf of all others   **DECLARATION OF RICHARD M.**
19 similarly situated,                        **HEIMANN IN SUPPORT OF MOTION**
                                              **FOR ATTORNEYS' FEES AND COSTS**
20              Plaintiffs,
                                       Date:     May 21, 2015
21 v.                                  Time:     2:00 p.m.
                                       Judge:    Hon. William H. Alsup
22 WELLS FARGO BANK, N.A.,

23              Defendant.

24

25

26

27

28

I, Richard M. Heimann, hereby declare and state:

1.      I served as Plaintiffs' lead trial counsel in this action.  I am a member in good standing of the State Bar of California, admitted to practice in this Court, and since 1986 have been a partner of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB").  I base this declaration on my own personal knowledge, and if called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2.      I make this declaration in support of Class Counsel's Motion Attorneys' Fees and Costs.  I have over 40 years of experience in trial courts in the area of complex litigation, including class action litigation, and have tried over 30 class and complex civil cases.  Based on my experience, I respectfully submit that Class Counsel's request for an award of attorneys' fees in an amount equal to 25% of the $203 million judgment we obtained for the Class is reasonable and warranted given the totality of the circumstances of this case.

3.      Pursuant to the Court's Order re Attorney's Fees and Expenses dated January 30, 2015 (Doc. No. 619), detailed descriptions of counsel's time and efforts are being submitted in support of the present motion.  For LCHB, the detailed time submission is included as part of the accompanying declaration of Roger N. Heller.  I have set forth below an overview of LCHB's efforts in this litigation.

### BACKGROUND OF LCHB'S REPESENTATION OF THE CLASS

4.      On May 3, 2009, LCHB was approached by Richard D. McCune of McCuneWright ("M&W"), then serving as Class Counsel in this matter, about the possibility of LCHB joining as co-counsel and lead trial counsel in this action.  At the time, the trial in this case was scheduled to commence in approximately one month, meaning that LCHB would have to get up to speed very quickly regarding, among other things, the evidentiary record and posture and history of the case, in order to sufficiently prepare for trial.

5.      At that time, for many years LCHB was one of the few class action firms willing to represent consumers in litigation regarding bank overdraft fees and the reordering of transactions.  This litigation has proven to be both difficult and risky, and at times, the cases that LCHB pursued were dismissed on early defendants' motions.  *See Sturm v. Wells Fargo Bank,*

1  N.A., S.F. Superior. Ct. Case No. 996873; *Snow v. Compass Bancshares, Inc.*, Alab. Cir. Ct,

2  Mobil County, Case No. CV-98-2384.  In the face of this risk, beginning in late 2008, LCHB

3  nevertheless undertook the representation of consumers in cases regarding overdraft charges with

4  respect to debit card transactions.  In early 2009, LCHB filed a class action against Bank of

5  America, challenging its re-ordering practices.  *Yourke , et al, v. Bank of America*, NA, S.F.

6  Superior Ct., Case No. CGC-09-4871000 (subsequently removed to federal court).

7       6.     With respect to Wells Fargo California, we recognized that there was a danger that

8  some or all of the claims could be found to have been released by the settlement in another class

9  action against Wells Fargo, *Smith v. Wells Fargo Bank, N.A*, (S.D. Superior Court Case No. GIC

10  802664).  While the claims in *Smith* were limited to Wells Fargo's failure to adequately disclose

11  its "shadow line" practice, the release language in the *Smith* settlement agreement was extremely

12  broad and, if enforced according to its literal terms, would likely have covered the claims raised

13  in this action.

14       7.     Shortly after M&W approached LCHB, we reached an agreement in principal to

15  co-counsel in this action.  LCHB agreed to appear for the Class, take on the role of lead trial

16  counsel, advance all litigation expenses (including assuming the responsibility for significant

17  expenses outstanding at that time), and co-represent the Class for all purposes.  This agreement

18  was reached prior to the May 13, 2009 Case Management Conference in this case, during which

19  the Court rejected the parties' proposed settlement and suggested to Mr. McCune that he retain a

20  firm such as LCHB for this case, and prior to the parties' mediation with Magistrate Judge Spero

21  that led to the settlement that this Court rejected.  (LCHB and M&W had agreed that if a

22  settlement was reached at such mediation and eventually approved, LCHB would not appear or

23  serve as co-counsel.)

24       8.     LCHB agreed to represent the Class and advance considerable out-of-pocket

25  litigation costs, despite the significant challenges remaining in the case (including proving Wells

26  Fargo's liability and class damages), and despite the fact that a fair assessment of the record at

27  that time indicated that achieving a positive result for the Class would require a full trial on the

28  merits, and the inevitable appeal of any judgment entered in favor of the Class.  LCHB knowingly

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

took on the representation of the Class despite the well-known risks inherent in a trial of complex class-wide issues.  Despite these risks, LCHB accepted the responsibilities of representing the Class, and from that moment forward has committed all resources necessary to litigate this case to a successful result.

**PRETRIAL PROCEEDINGS**

9.     The background of the pretrial proceedings prior to LCHB's involvement, including considerable efforts in successfully litigating this action through the pleading and class certification stage, and in overcoming Wells Fargo's numerous dispositive and other pre-trial motions, is set forth in the Declaration of Richard D. McCune, submitted with the present motion.

10.     At the time LCHB became involved in this matter, a trial was scheduled for about a month later.  However, the trial did not commence until about 11 months later.  Prior to the trial, LCHB and M&W spent significant time and resources regarding the restitution analysis essential to proof of class harm.   Among other things, this included negotiating access to the necessary Wells Fargo data, working to coordinate Plaintiffs' restitution theories with Mr. Olsen's analysis of the data, helping with the preparation of Mr. Olsen's expert reports and to prepare him to testify at trial, taking and defending the depositions of both parties' damages experts, and overcoming Wells Fargo's multiple attempts to exclude and/or discredit Mr. Olsen's analysis.

11.     During the time leading up to trial, Wells Fargo moved for summary judgment and/or class decertification, premised on the assertion that Plaintiffs' expert's damages analysis and testimony should be excluded.  Litigating Wells Fargo's motion required Class Counsel to take the depositions of Wells Fargo's two damages experts, extensive briefing, and a hearing on the motion.  Wells Fargo's motion was denied.

12.     The parties filed several motions *in limine*, which were heard at the Pre-Trial Conference on April 19, 2010.  These motions included attempts to exclude both documentary evidence and testimony, as well as Wells Fargo's unsuccessful attempt to exclude all evidence relating to "shadow line" based on the *Smith* settlement.  Researching, briefing, and arguing these motions required the hard work of multiple attorneys and other staff at both LCHB and M&W.

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

13.     The parties engaged in extensive meetings and conferences regarding their respective objections to the designated trial exhibits and deposition testimony. Additionally, Wells Fargo insistence on maintaining "authenticity" objections to dozens of documents *which Wells Fargo itself produced from its own records*, necessitated a motion concerning those objections.

14.     Pursuant to the Court's guidelines governing civil trials, the parties filed a joint Proposed Pre-Trial Order on April 12, 2010, which included information such as a statement of Plaintiffs' claims and relief sought and a list of stipulated facts. Preparing this filing required considerable effort from Class Counsel, including multiple meetings and conferences with counsel for Wells Fargo. Additionally, also pursuant to the Court's pre-trial guidelines, Class Counsel prepared and filed pre-trial Proposed Findings of Fact and Conclusions of Law, which required skillful effort from multiple attorneys. Class Counsel also briefed several additional pre-trial issues, including Wells Fargo's effort to prevent Plaintiffs from introducing Wells Fargo's "Hands on Banking" educational materials (which contained misrepresentations) at trial.

**THE TRIAL**

15.     Preparing for trial and successfully trying this case required significant effort from Class Counsel. Given the complexity of the case, the scope of the evidentiary record, and the vigorous defense by Wells Fargo, Class Counsel required the contributions from numerous attorneys, paralegals, and other staff. Considerable work was performed during the time leading up to trial (*e.g.*, preparing for direct testimony and cross-examination, analysis of the exhibits and other evidence, preparing trial strategy) and during the trial itself, both inside and outside the courtroom. Attorneys and paralegals from both LCHB and M&W worked tirelessly during the weeks leading up to trial, and during the two week trial itself. Those efforts were absolutely critical to the finished product that the Court saw and to Plaintiffs' ultimate success at trial.

16.     Notably, the motions practice and other litigation activity continued and remained intense throughout the course of trial. Those matters included Wells Fargo's Rule 52(c) Motion for Judgment on Partial Findings, Wells Fargo's motion to exclude the testimony of one of Plaintiffs' experts, the deposition (one evening in the middle of trial) of a Wells Fargo percipient

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

witness, and dealing with the matter of the settlement in the *Smith* case.  During the course of trial, we also wrestled with Wells Fargo's redaction of several key documents during discovery, Wells Fargo's changing story of how it posted check transactions prior to adopting high-to-low posting, and the review and flagging of customer complaints concerning Wells Fargo's overdraft fee practices.  Litigating these many issues mid-trial required the hard work of numerous attorneys and staff outside of the courtroom and, further, because of the relation of these issues to the substance of the trial itself, reasonably required the participation and appearance of additional attorneys at trial.

17.     After the evidentiary portion of trial concluded on May 7, 2010, the parties filed competing Proposed Findings of Fact and Conclusions of Law on May 19, 2010, and their responses to each other on May 26, 2010.  Preparing these submissions required a significant effort to review the extensive testimonial and documentary evidence, research the relevant case law, and craft proposed findings of fact and rulings of law, and the responses.  Subsequently, at the Court's request, Class Counsel submitted briefing regarding the effect of the release in the *Smith* case, and further responded to Wells Fargo's "Notice of Potential Jurisdictional Defect."  Class Counsel, of course, also prepared for and presented closing argument to the Court on July 9, 2010.

**POST-TRIAL PROCEEDINGS**

18.     The Court issued its Findings of Fact and Conclusions of Law After Bench Trial on August 10, 2010.  Class Counsel's responsibilities to the Class have continued since that time.  Five months after the trial concluded, Wells Fargo moved to amend the Court's Findings, based on its purported "late discovery" of the so-called "Norwest study," which Wells Fargo had relied upon for years in this case but which never materialized prior to the close of evidence, and which, Plaintiffs contested actually *supported* the Court's Findings.  Class Counsel successfully opposed Wells Fargo's motion.  Moreover, Class Counsel worked hard to prepare their portions of the Joint Recommendation and their proposed forms of Judgment, as ordered by the Court, meeting and conferring with Wells Fargo's counsel in the process as necessary.

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

19.     The Court entered final Judgment in this case on October 25, 2010.  Thereafter, in an effort to ensure that the Class would be able to recover the restitution ordered by the Court, Class Counsel opposed Wells Fargo's motion for a stay of execution pending appeal without the posting of a *supersedeas* bond.

**THE FIRST APPEAL AND ATTEMPT TO COMPEL ARBITRATION ON APPEAL**

20.     Wells Fargo appealed the original Judgment in late 2010.  LCHB took the lead in litigating the appeal and presented the oral argument before our Court of Appeals.

21.     During 2011, Class Counsel worked diligently on reviewing the trial record and opposing the first appeal.  Among the substantive and complex issues that were addressed on the first appeal were:  (a) federal preemption under the National Bank Act (which Wells Fargo continued to pursue with respect to both the "unfair" prong claim and the statutory deception claims); (b) liability under both prongs of the UCL and under the FAL; (c) standing of the named Plaintiffs; (d) class certification; (e) the proper measurement of restitution; and (f) the appropriateness of the injunctive relief.  Plaintiffs also pursued a cross-appeal regarding the denial of pre-judgment interest.

22.     The first appeal also required that Class Counsel address the issues raised by the American Bankers Association and the California Bankers Association in their amicus brief filed in support of Wells Fargo's appeal, and consider the issues addressed by amicus Center for Responsible Lending, which filed a brief in support of the Class.

23.     Properly analyzing and briefing the multitude of issues raised on the appeal to judgment required substantial time commitments and hard work by several attorneys and staff, as directed by lead trial counsel to ensure maximum efficiency.

24.     In addition, while the first appeal was pending, after the Supreme Court entered its decision in *AT&T Mobility LLC v. Concepcion*, Wells Fargo filed a motion to vacate and remand, arguing that it should be permitted to compel arbitration of Plaintiffs' claims (even though Wells Fargo had made no mention of arbitration previously and the case had already been tried, judgment entered, and its opening brief filed on appeal).  Class Counsel briefed this issue twice,

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1   once in opposing Wells Fargo's motion to vacate and again after the Court of Appeals ordered the

2   issue to be folded into the remaining briefing on the first appeal.

3       25.   Oral Argument on the first appeal took place in May 2012, and was argued by

4   LCHB attorney Michael Sobol on behalf of the Class.  Mr. Sobol, with the assistance of his

5   colleagues at LCHB and M&W, prepared thoroughly for the numerous issues raised.

6       26.   The Court of Appeals issued its Opinion on December 26, 2012.  The Court of

7   Appeals held that Plaintiffs' "unfair" prong claim was preempted by the NBA, but agreed with

8   Plaintiffs that the statutory claims based on Wells Fargo's misrepresentations were not

9   preempted.  The Court of Appeals also affirmed this Court's findings on class certification, the

10  named Plaintiffs' standing, and class-wide liability for the statutory deception claims, and

11  rejected Wells Fargo's belated attempt to compel arbitration, agreeing with Plaintiffs that Wells

12  Fargo waived any arbitration right it may have had.  The case was remanded to this Court to

13  determine the proper relief for the affirmed claims.  *Gutierrez v. Wells Fargo Bank, N.A.* 704 F.3d

14  712 (9th Cir. 2012).

15      27.   After the Court of Appeal issued its Opinion, Class Counsel sought rehearing,

16  asserting that the Court of Appeals had misapplied federal preemption standards and that, in any

17  event, under the original judgment and reasoning of this Court's post-trial Findings, the full $203

18  million restitution amount remained appropriate for the affirmed claims.  The petition was denied.

19  **RE-ENTRY OF JUDGMENT AFTER THE FIRST REMAND**

20      28.   Following remand from the Court of Appeals, Class Counsel promptly moved for

21  re-entry of the full $203 class restitution judgment for the affirmed claims.  Class Counsel worked

22  hard on the briefing in support of this motion, and in preparing for the May 2, 2013 hearing,

23  including thoroughly reviewing the pertinent trial record.   On May 14, 2013, over Wells Fargo's

24  opposition, the Court re-entered the full restitution judgment, ordered a new class-wide

25  injunction, and granted Class Counsel's request that post-judgment interest run from October

26  2010, the date of the original judgment.  Doc. No. 586.

27

28

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1

**THE SECOND APPEAL**

2      29.      After the full restitution judgment was reinstated, Wells Fargo filed its second

3  appeal in the Summer of 2013.  Throughout late 2013 and early 2014, Class Counsel, with LCHB

4  taking the laboring oar, worked diligently researching and briefing the issues raised by the second

5  appeal, which included:  the proper measure of restitution under the UCL "fraud" prong and the

6  FAL, renewed attacks by Wells Fargo on class certification, Wells Fargo's attempt to extend the

7  Ninth Circuit's prior preemption ruling, and arguments based on the Rules Enabling Act and Due

8  Process Clause.  Plaintiffs again pursued a cross-appeal on pre-judgment interest.

9      30.      Oral Argument on the second appeal occurred in October 2014, and was again

10  argued by LCHB attorney Michael Sobol, who, with the help of his colleagues at LCHB and

11  M&W, prepared thoroughly for the argument.  On October 29, 2014, the Court of Appeals issued

12  its Opinion on the second appeal, affirming the class restitution judgment and directing that a

13  modified injunction be entered.  *Gutierrez v. Wells Fargo Bank, N.A.*, 2014 U.S. App. LEXIS

14  20892 (9th Cir. Oct. 29, 2014).  After it unsuccessfully petitioned for rehearing, Wells Fargo

15  moved the Court of Appeals to stay the issuance of the mandate while Wells Fargo considered

16  whether to file a petition for writ of certiorari.  Class Counsel opposed this motion to prevent

17  further delay in providing relief to the Class.  The Court of Appeals denied Wells Fargo's motion

18  to stay, and the mandate issued on January 7, 2015.

19      **CLASS COUNSEL'S CONTINUING EFFORTS ON BEHALF OF THE CLASS**

20      31.      Class Counsel continues to diligently represent the Class, working hard on a new

21  Joint Recommendation regarding notice, distribution of judgment proceeds, and other issues, and

22  coordinating with potential class administrators regarding their submission of bids.  Class

23  Counsel's work on behalf of the Class will continue.  Among other things, Wells Fargo has

24  indicated that it will likely file a petition for writ of certiorari with the Supreme Court, which

25  Class Counsel will oppose on behalf of the Class.  Moreover, Class Counsel will work to ensure

26  that the restitution proceeds are distributed to the Class pursuant to the Court's direction.

27

28

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1

**LCHB'S SUBMITTED TIME AND EXPENSES**

2      32.     Pursuant to the Court's Order re Attorney's Fees and Expenses dated January 30,

3    2015 (Doc. No. 619) (the "Fee Order"), the accompanying Declaration of Roger N. Heller sets

4    forth the detailed descriptions and breakdown of LCHB's time by "project."  Therein, the

5    inclusion of the time and descriptions reflect LCHB's "billing judgment" for each project, *i.e.*,

6    they reflect write-offs for unnecessary or duplicative time.  As set forth in Mr. Heller's

7    declaration, additional time, not reflected in the project breakdown, was written off as well.

8      33.     The Fee Order requires that, after exercising billing judgment, for each "project,"

9    counsel state the percentage of the project directed at issues for which fees are awardable,

10   justifying the percentage.  There are a handful of projects for which LCHB seeks no

11   compensation, not reflected in the project breakdown as the Fee Order requires that only entries

12   for which compensation is sought be submitted.  For all the project entries submitted by LCHB, I

13   respectfully submit that one-hundred percent of the time on those projects is compensable.  Each

14   of those projects was required as part of LCHB's proper representation of the class.

15     34.     The Fee Order states that counsel must provide detailed descriptions of the task for

16   each work entry, and expressly cites examples of "trial preparation," and "attend trial," as being

17   too generalized.  As the Court will observe, LCHB timekeepers, including myself, have a

18   substantial number of entries and a substantial amount of time bearing exactly those descriptions,

19   without any further detail.  In my 40 years of trial practice, this is typical.  I am not aware of any

20   precedent requiring more detailed descriptions of those tasks, and neither I or my colleagues have

21   been able to identify any order of this Court in this case, or any applicable general standing order,

22   containing such a requirement extant at the time those entries were contemporaneously made.   If

23   at the time we had been under an obligation to so report our trial preparation and trial time more

24   specifically, we of course would have done so.  But it is not now possible to reconstruct that time

25   with more precision, having been asked to do so for the first time almost five years after trial.

26     35.     Further, in the run-up to trial and during the conduct of trial, I respectfully submit

27   that it is not reasonable to require from trial counsel descriptions of time with greater detail than

28   "trial preparation" and "attend trial."  Adhering to such a requirement would be an unproductive

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1    expenditure of precious time at a crucial juncture of the case.  Moreover, in the whirlwind of trial

2    preparation, several tasks are often proceeding simultaneously, and separate "projects" often

3    bleed into one another.  For example, witness preparation often cannot be meaningfully separated

4    from documentary foundation issues, certain *in limine* issues, or briefing on evidentiary issues,

5    and *vice versa*.  Counsel also often held team meetings in preparation for trial where in some

6    instances a dozen or more issues would be addressed within a short space of time.  Separating

7    those tasks from one another would to some degree be arbitrary and unduly time-consuming.

8         36.    I also respectfully submit that greater descriptions of "trial preparation" and

9    "attend trial" would be of little value.  The assessment of whether the time engaged in preparing

10   for trial was well spent is not a function of the minute-by-minute accounting of daily time, but

11   rather the results obtained at trial.  There is, of course, no doubt that LCHB prepared for and

12   attended trial.  I have reviewed the amount of time expended by LCHB timekeepers in the run-up

13   to trial, and I believe that given the complexity of the case, the scope of the rights and interests at

14   stake, and the results achieved, that LCHB's trial time was economical and reasonable.

15        37.    LCHB made every reasonable effort to prevent the duplication of work or

16   inefficiencies that might have resulted from having two firms working on this case.  For example,

17   internal meetings among Class Counsel were kept to a minimum, and were generally based on

18   agendas prepared in advance.  Assignments were made for specific tasks and activities so that it

19   was clear which firm had primary responsibility over each task.  I believe we did not overstaff

20   hearings or the trial beyond what was reasonably necessary.

21        38.    Based upon my experience with other class action matters, I believe that the time

22   expended by LCHB in connection with this litigation is reasonable in amount and was necessary

23   to ensure the success of this case, particularly given the hard-fought nature of this case, the

24   complexity and novelty of the issues involved, and the excellent monetary and injunctive relief

25   obtained for the Class and other California consumers.

26        **LCHB ATTORNEYS AND OTHER PERSONNEL SUBMITTING TIME**

27        39.    I was lead trial counsel in this case.  I received my law degree from Georgetown

28   University Law Center in 1972.  I have over 40 years of civil trial experience, and have been

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1    repeatedly recognized as one of the top trial lawyers in California. In addition to this case, I have

2    tried over 35 civil cases, including complex cases such as In re FPI/Agretech Securities

3    Litigation, MDL No. 763 (D.Haw.), a class action on behalf of investors where the jury returned a

4    $25 million verdict, and Claghorn v. Edsaco Ltd., C-98-3039-SI, where the jury returned a $170.7

5    million verdict against Edsaco Ltd. My responsibilities in this case have included leading Class

6    Counsels' trial efforts and overall litigation of this matter, developing Plaintiffs' trial strategy,

7    examining key Wells Fargo witnesses at trial, and overseeing the appeals and post-trial matters.

8        40.    Michael W. Sobol is a 1989 graduate of Boston University School of Law, and

9    practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer

10   in Law at Boston University School of Law. In 1997, he left his position as partner in the Boston

11   firm of Shafner, Gilleran & Mortensen, P.C. to join LCHB where he has almost exclusively

12   represented plaintiffs in consumer protection class actions. He has been a partner with LCHB

13   since 1999, and since 2002 has been the chair of LCHB's consumer protection practice group.

14   He has served as plaintiffs' class counsel in numerous nationwide consumer class action cases.

15   Mr. Sobol's responsibilities in this case have included conducting and overseeing the day-to-day

16   litigation of this matter, leading Plaintiffs' trial preparation efforts, working with Plaintiffs'

17   experts, assisting me and others in the preparation of questioning hostile witnesses, developing

18   Plaintiffs' litigation and trial strategy, preparing key pre-trial, mid-trial, post-trial, and post-

19   remand pleadings and overseeing the same, and directing necessary legal research. Mr. Sobol

20   served as the lead lawyer for the Plaintiffs in the two appeals in this case, presenting both oral

21   arguments.

22       41.    Roger N. Heller has been a partner at LCHB since 2011, and was an associate

23   from 2008 until 2011. Mr. Heller received his law degree from Columbia University School of

24   Law in 2001, where he was a Senior Editor for the *Columbia Law Review*. From 2001 through

25   2005, he worked as a Litigation Associate at O'Melveny & Myers LLP's San Francisco office.

26   From 2005 through 2008, he was Senior Staff Attorney at Disability Rights Advocates in

27   Berkeley, California, specializing in class action litigation under federal and state anti-

28   discrimination laws. He joined LCHB in 2008, and since that time has worked exclusively on

consumer protection class actions.  Mr. Heller's responsibilities in this case have included preparing key pre-trial, mid-trial, post-trial, and post-remand briefs and pleadings, coordinating Plaintiffs' trial preparation efforts, arguing a motion *in limine*, meeting and conferring with opposing counsel, preparing for witness examinations at trial, preparing witness outlines and analyzing and organizing evidence for trial, overseeing LCHB's paralegals and staff assisting with the trial, drafting pre-trial and post-trial proposed findings, assisting with the briefing on the two appeals, and conducting legal research.

42.     Barry M. Himmelstein was a partner at LCHB from 1999 until 2011.  He graduated *magna cum laude* from the University of California, Hastings College of the Law, in 1991.  Following graduation, Mr. Himmelstein clerked for the Hon. Charles A. Legge (Ret.) of the Northern District of California.  In 1993, he entered private practice at the San Francisco office of Morrison & Foerster, LLP.  At LCHB, Mr. Himmelstein specialized in consumer fraud litigation.  Mr. Himmelstein's responsibilities in this case included working with Plaintiffs' experts, overseeing Plaintiffs' damages analysis, taking and defending expert depositions, responding to Wells Fargo's attacks on Plaintiffs' damages analysis, briefing pre-trial motions, and questioning damages experts at trial.

43.     Mikaela Bernstein Palmerton was an associate at LCHB.  She received her law degree in 2008 from the University of San Francisco School of Law, and joined LCHB in 2008.  She was an extern for the Honorable Stuart Pollak at the California Court of Appeal, First District.  Her responsibilities in this case included preparing pleadings and pre-trial submissions, conducting extensive legal research, arguing a motion *in limine*, coordinating Plaintiffs' trial preparation efforts, and drafting post-trial proposed findings.

44.     Jordan Elias was an associate at LCHB and is now currently of-counsel to LCHB.  He received his law degree from Stanford Law School in 2003.  After graduation, he served as a law clerk for the Honorable Cynthia Holcomb Hall of the U.S. Court of Appeals for the Ninth Circuit, and then worked as an associate at Wilson Sonsini Goodrich & Rosati, where he was awarded the John Wilson Award for outstanding representation of Wilson Sonsini's pro bono clients.  Since joining LCHB in 2008, Mr. Elias has focused on representing clients in consumer,

- 13 -

1    antitrust, and product liability cases.  His responsibilities in this case have included preparing

2    mid-trial and post-trial pleadings, litigating preemption issues, assisting with the appeals, and

3    conducting legal research.

4           45.     Allison Elgart was an associate at LCHB.  She graduated *magna cum laude* from

5    Brown University in 2000, and from Harvard Law School in 2005, where she was Editor-in-Chief

6    of the *Harvard Civil Rights-Civil Liberties Law Review* and a practicing member of the Harvard

7    Legal Aid Bureau.  Immediately after graduating from law school, Ms. Elgart clerked for the

8    Honorable Robert P. Patterson, Jr. of the United States District Court for the Southern District of

9    New York.  At LCHB, she focused on representing plaintiffs in employment discrimination

10   litigation and consumer protection class action cases.  Ms. Elgart's responsibilities in this case

11   included researching complex legal issues.

12          46.     Allison Stocking was an associate at LCHB.  She received her law degree in 2006

13   from Yale Law School, where she was an editor of the Yale Human Rights and Development

14   Law Journal.  After graduation, she worked as a law clerk for the Honorable Barrington D.

15   Parker, Jr. of the United States Court of Appeals for the Second Circuit, and for the Honorable

16   John Gleeson of the United States District Court for the Eastern District of New York.  Her

17   responsibilities in this case included researching post-trial issues, assisting with the briefing on

18   the first appeal including with respect to the amicus brief filed by the American Bankers

19   Association in support of Wells Fargo's appeal, and conducting extensive legal research on

20   preemption and other issues.

21          47.     Nicole D. Sugnet (formerly Nicole D. Reynolds) became a partner at LCHB in

22   2015, and prior to that was an LCHB associate.  She graduated from the University of California,

23   Hastings College of the Law in 2006.  Since graduating from law school, Ms. Sugnet has focused

24   her practice exclusively on consumer class action litigation, and has litigated several cases

25   involving the banking and financial industries.  She is the co-author of "Consumer Protection and

26   Employment Cases after Concepcion," published in the ABA Section of Litigation, Class Action

27   & Derivative Suits Committee Newsletter (Summer 2011).  Her responsibilities in this case have

28   included work on post-trial and post-remand briefing and assisting with the second appeal.

48.     Marc Pilotin is an associate at LCHB.  He graduated from Boalt Hall School of Law, University of California, Berkeley, in 2009, where he was Supervising Editor of the *California Law Review*.  After graduating from law school, he was a law clerk to the Honorable Claudia Wilken (N.D. Cal.) from 2009 through 2011.  While at LCHB, his practice has been focused on prosecuting consumer, antitrust, and other class actions.  His responsibilities in this case have included conducting legal research and assisting with the second appeal.

49.     Martin Quinones is an associate at LCHB.  He graduated from the Berkeley School of Law, University of California, Berkeley, in 2013.  His responsibilities in this case have included assisting with the second appeal and conducting legal research.

50.     Jennifer Rudnick is a senior paralegal at LCHB, and has been the primary LCHB paralegal working on this matter since 2009.  Her responsibilities in this case have included preparing and organizing trial exhibits and other materials, preparing documents and witness binders for trial, preparing materials for use in briefing and at hearings, assisting with other trial preparation efforts, assisting at trial, coordinating filings in the District Court and the Court of Appeals, preparing excerpts of records for both appeals, and communicating with class members.

51.     Jack Sanford was a paralegal at LCHB who worked on this case during the period leading up to and including the trial, when the increased need for paralegal support and tight time deadlines required the help of an additional LCHB paralegal to assist Ms. Rudnick and the rest of the trial team.  His responsibilities in this case included helping to prepare witness binders for trial, preparing and organizing trial exhibits and other materials for trial, assisting at trial, and communicating with class members.

52.     LCHB's Litigation Support group consists of an experienced team of litigation support specialists responsible primarily for: (a) preparing and conducting trial presentations and similar in-court technical productions; (b) creating, managing, and searching case-specific document and information databases (e.g., Summation); and (c) performing certain case-specific data analyses (*e.g.*, for use in evaluating damages).  Because the personnel who make up LCHB's Litigation Support group have extensive training and experience performing these specific, technical tasks, it is more efficient and cost-effective, and in my judgment ultimately results in

1   better work product, for this sort of work to be assigned to these personnel as opposed to

2   paralegals with other areas of specialization and/or who normally perform less technical work.

3   Other firms might contract this work out to third parties, or assign a more general paralegal to

4   perform these sorts of tasks, and that would be perfectly reasonable.  However, in my judgment,

5   the fact that LCHB has in-house personnel who specifically focus on these tasks represents a

6   significant benefit and value to the clients and class members that LCHB represents.

7          53.     In this matter, LCHB's Litigation Support group played a critical role in trial

8   preparation, the trial, and other aspects of the litigation.  Among other things, LCHB litigation

9   support specialists prepared synched video deposition excerpts, trial exhibits, demonstratives, and

10  other materials for presentation during the trial; conducted the technical aspects of Plaintiffs' trial

11  presentation, including the presentation of deposition excerpts and exhibits at trial; managed a

12  database of trial materials and other materials used by Class Counsel in this matter; and assisted

13  in the analysis of data used in measuring class damages.

14         54.     Kirti Dugar is the Director of LCHB's Litigation Support group.  Mr. Dugar has

15  decades of experience regarding all technical aspects of litigation and trials.  Mr. Dugar's primary

16  responsibilities in this case have included managing Plaintiffs' trial presentation efforts, assisting

17  at trial, overseeing and coordinating the trial preparation efforts of LCHB's Litigation Support

18  group, preparing demonstratives and other materials for presentation at trial, and helping with

19  Plaintiffs' analysis of data in connection with analyzing class damages.  The Litigation Support

20  team members who assisted Mr. Dugar in this case included LCHB employees Scott Alameda,

21  Arra Khararjian, Major Mugarage, Anthony Grant, and Sat Kriya Khalsa.

22                          **LCHB'S CO-COUNSEL**

23         55.     I had the opportunity to work at counsel table during the trial with Richard

24  McCune, M&W's lead lawyer on this case, and believe that he has significantly and positively

25  contributed to the litigation of this case.  LCHB entered this case after the close of discovery, and

26  therefore had to rely on much of the pre-trial work done by Mr. McCune and his firm.  All the

27  pre-trial, non-expert, deposition testimony was taken by Mr. McCune or at his direction.  In

28  preparing for witness examinations at trial, I reviewed hundreds if not thousands of pages of

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1   testimony that Mr. McCune elicited at various depositions and found it to be very useful and

2   effective.  Needless to say, by the time LCHB appeared in the case, many pre-trial hurdles, such

3   as preemption, class certification, and a round of summary judgment, had been overcome.

4          56.     LCHB has an agreement with M&W regarding the allocation of fees.  (Mr.

5   McCune informs us that M&W has an agreement with counsel that assisted him earlier on in the

6   case, Brian Panish and Mitchell Breit, and that these lawyers and their firms will be paid from

7   M&W's portion of the fee award.)  At the beginning of LCHB's involvement in May 2009, with

8   trial scheduled about one month away, the agreement between LCHB and M&W called for an

9   allocation of 60% to M&W and 40% to LCHB, reflecting their good faith estimate of their

10  anticipated respective contributions.  After nearly six years of litigation and two appeals later,

11  both LCHB and M&W recognized that their original agreement no longer applied.  Presently,

12  LCHB and M&W have agreed to a sliding scale ranging from 50/50 to 70/30, giving LCHB a

13  greater share the larger the fee award.  I believe LCHB's present agreement with M&W is fair.

## CONCLUSION

15         57.     Based on my experience, the amount of time and resources that Class Counsel and

16  their staffs have committed to this case is quite reasonable, particularly in light of the extremely

17  hard-fought nature of the case, the novelty and complexity of the issues raised, and the magnitude

18  of the damages at issue.  The work performed by Class Counsel was necessary and essential to

19  the success of this case, and is reflected in the outstanding monetary and non-monetary result

20  achieved for the Class.  Moreover, Class Counsel worked efficiently in prosecuting this action,

21  and took appropriate steps to avoid duplication of efforts and other inefficiencies that may

22  otherwise have come from having two law firms representing the Class.

23         58.     As Lead Trial Counsel, it was my responsibility to, among other things, direct and

24  oversee Class Counsels' trial preparation and trial presentation efforts.  Based on my trial

25  experience, Class Counsel tried this action in a very efficient manner, particularly in light of the

26  complexity and importance of the trial and the creation of a record at trial.  Responsibilities were

27  assigned in a clear manner, so as to avoid inefficiencies, and were assigned appropriately based

28  on each team member's respective experience and skills.  Moreover, the trial itself was

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA

1    appropriately staffed.  While not every attorney present at trial had a speaking role each day, it

2    was necessary to have additional attorneys and staff present as resources of information, in order

3    to assist with the preparation and presentation of the evidence, and to be adequately prepared for

4    subsequent trial days and to address the numerous side issues and motions that arose during the

5    course of trial.  The contributions of the numerous attorneys and staff from both Class Counsel

6    firms—both in the courtroom and outside the courtroom—were absolutely critical to Plaintiffs'

7    success at trial.

8

9        I declare under penalty of perjury that the foregoing is true and correct.  Executed at San

10   Francisco, California this 17th day of February 2015.

11

12                                                    */s/ Richard M. Heimann*
                                                      Richard M. Heimann

13

14

15

16

17   1218054.3

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RICHARD M. HEIMANN;
CASE NO. C 07-05923 WHA