IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VERONICA GUTIERREZ, ERIN WALKER
and WILLIAM SMITH, as individuals and
on behalf of all others similarly situated,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

    Defendant.

No. C 07-05923 WHA

**ORDER AWARDING FEES, EXPENSES, AND INCENTIVE AWARDS**

## INTRODUCTION

Although the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP performed at a superior level as class trial counsel and this order will award them a handsome fee, the Court will not award the enormous fee requested. For the reasons stated herein, the fee request is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Prior orders recounted the history of this action so it will not be repeated herein (Dkt. Nos. 98, 245, 338, 477, 586). In short, McCune Wright, LLP, a law firm, commenced this class action on behalf of plaintiffs against Wells Fargo Bank, N.A. in 2007. A September 2008 order certified two classes — a "re-sequencing" class and an "including and deleting" class (Dkt. No. 98).

Even though McCune Wright sought to capture a 43-month class period, counsel commissioned a damage study covering only *one month*. When faced with a decertification motion, McCune Wright then cited a decision which had been reversed. A May 2009 order rejected the shoddy damage study and decertified the "including and deleting" class (Dkt. No. 245).

A week later, McCune Wright tried to extinguish the rights of one million class members to the tune of twenty million dollars (with four million dollars earmarked for fees) in a proposed class settlement, which the Court promptly rejected. This was a little disguised attempt to sell out the class and extract a large attorney's fee.

In fairness to the absent class members, the Court allowed plaintiffs an opportunity to redo their damage study, granted an eleven-month continuance of the trial date, and appointed Lieff, Cabraser as co-class counsel. Once Lieff, Cabraser entered as counsel, the prospects for the class brightened.

A March 2010 order then denied a motion to decertify the "re-sequencing class" but granted in part a *Daubert* challenge to one of plaintiffs' three sequencing theories (Dkt. No. 338).

Trial began in April 2010. Attorney Richard Heimann of Lieff, Cabraser performed as lead counsel at the highest level of the profession (as did Attorney Sonya Winner representing the bank).

Ninety-page findings of fact and conclusions of law following a two-week bench trial issued in August 2010. In brief, the Court ruled that Wells Fargo's decision to post debit-card transactions in high-to-low order was unfair and fraudulent under California's Unfair Competition Law, California Business & Professions Code Section 17200, *et al*. Full restitution of $203 million and injunctive relief followed (Dkt. No. 477).

Class counsel next filed a fee petition and Wells Fargo filed a motion for reimbursement. A January 2011 order postponed ruling on the fee petition but reimbursed Wells Fargo $90,000 (paid by McCune Wright) for fees and expenses unnecessarily incurred for the original inadequate damage study (Dkt. No. 558).

In December 2012, our court of appeals affirmed in part and reversed in part. *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 730 (9th Cir. 2012). The decision held, in relevant part, that "federal law preempts state regulation of the posting order as well as any obligation to make specific, affirmative disclosures to bank customers" but does not preempt California consumer law with respect to "fraudulent or misleading representations concerning posting."

2

On remand, a May 2013 order reinstated the injunction and restitution order under the fraudulent or misleading alternative. An order stayed execution of the money judgment pending appeal (Dkt. Nos. 586, 603).

In October 2014, our court of appeals affirmed the $203 million restitution award but vacated in part the injunction. *Gutierrez v. Wells Fargo Bank, N.A.*, 589 Fed. App'x. 824, 827 (9th Cir. 2014).

On remand the second time, Wells Fargo was "permanently enjoined from making or disseminating, or permitting to be made or disseminated, any false or misleading representations relating to the posting order of debit-card purchases in its customer bank accounts" (Dkt. No. 615). After considering seven applications, an order appointed KCC Class Action Services LLC as the class administrator (Dkt. No. 651). The class administrator disseminated email notice of class counsel's fee petition and published notice in the San Francisco Chronicle, Los Angeles Times, Sacramento Bee, and San Diego Union Tribune (Jolley Decl. ¶ 3; Cooper Decl. ¶ 5). The class website contained pertinent fee information as well.

*Twelve class members objected to class counsel's fee petition*. They called it "absurd," "extremely ridiculous," "outlandish," "outrageous," and an "insult," among other things (Cooper Exh. A). The class administrator also received letters with comments about the class action. Meanwhile, Wells Fargo's petition for certiorari to the United States Supreme Court is pending.

This order follows full briefing on the fee petition and oral argument. Class counsel previously stated that, amongst themselves, they had informally agreed to a "sliding scale ranging from 50/50 to 70/30," giving Lieff, Cabraser a greater share of the fee award (Heimann Decl. ¶ 56). According to the later written agreement, dated February 4, 2015, if the total fee award was less than twenty million dollars, McCune Wright and Lieff, Cabraser would split it fifty-fifty. If the total fee award was between forty million dollars and fifty million dollars, McCune Wright would receive fifteen percent and Lieff, Cabraser would receive 85 percent (Jolley Exh. A). This private agreement amongst class counsel will not be enforced as stated at the end of this order.

3

**ANALYSIS**

**1. SECTION 1021.5.**

In total, class counsel demand $50.7 million in fees. Of that excessive sum, they seek a portion of it directly from Wells Fargo on top of the $203 million judgment. Under class counsel's scheme, Wells Fargo would pay $4.89 million and the class would pay $45.81 million.

Contrary to class counsel, no fees pursuant to California's private attorney general fee statute are appropriate. California Code of Civil Procedure Section 1021.5 states in pertinent part that (emphasis added):

> Upon motion, *a court may award attorneys' fees* to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:
>
>   (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons,
>
>   *(b) the necessity and financial burden of private enforcement*, or of enforcement by one public entity against another public entity, *are such as to make the award appropriate, and*
>
>   *(c) such fees should not in the interest of justice be paid out of the recovery, if any.*

The movant for fees shoulders the burden of establishing each of the criteria under Section 1021.5. *Bui v. Nguyen*, 230 Cal. App. 4th 1357, 1377 (Cal. Ct. App. 2014).

Here, class counsel's entire Section 1021.5 argument spanned but two brief paragraphs in their motion (Br. 23–24). On reply, however, they submitted two reply briefs, collectively totaling 22 pages. The first reply brief (seven pages) supported their fee petition. The second reply brief (fifteen pages) argued for fee-shifting under Section 1021.5. Appended to the second reply brief was a four-page reply declaration by damage expert Art Olsen.

Wells Fargo objects, arguing that (1) class counsel failed to seek permission to file *two* reply briefs; (2) class counsel never sought permission to exceed the fifteen-page reply brief limit provided by Civil Local Rule 7-3(c); (3) class counsel sandbagged defense counsel by waiting until the reply brief to explain their request for fees under Section 1021.5; and (4) Olsen

improperly submitted a reply declaration in a belated attempt to support fees for the original improper damage study.

In response, class counsel argue, among other things, that even if they "inadvertently" violated the page limits, they did so in response to defense counsel's 39-page declaration detailing specific objections to class counsel's calculated lodestar.

The undersigned judge has read both reply briefs as well as the Olsen reply declaration and concludes that while it was not necessarily *per se* improper for class counsel to file two items, where class counsel fell short were the page limit and reply declaration. Defense counsel filed their declaration in March 2015, so class counsel had ample time before May 2015, to seek a page extension and to file the reply declaration before the opposition deadline. To that extent, Wells Fargo's objections are **SUSTAINED**. The Olsen reply declaration and docket number 675, pages nine through fifteen (of the second reply brief), are hereby **STRICKEN**.

Turning now to the substance of class counsel's Section 1021.5 argument, it fails because factors (b) and (c) are not met. In this $203 million megafund action, the financial burden of private enforcement is not such as to make an award appropriate. If the estimated value of the case at the time of vital litigation decisions is "substantially more" than the actual litigation costs, there should be no award under Section 1021.5 unless the public benefits are "very significant." *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1414–17 (Cal. Ct. App. 1991), *disapproved on other grounds by Olson v. Automobile Club of Southern California*, 42 Cal. 4th 1142, 1151–56 (Cal. 2008). The focus is on whether plaintiffs had sufficient incentives to litigate absent a statutory fee award, *Collins v. City of Los Angeles*, 205 Cal. App. 4th 140, 154 (Cal. Ct. App. 2012), an inquiry which district courts have discretion to decide, *Satrap v. Pacific Gas and Electric Company*, 42 Cal. App. 4th 72, 78, 80 (Cal. Ct. App. 1996).

Here, our $203 million judgment is ample enough to cover a reasonable fee award without undue injury to the class recovery. Even if we were to say that the estimated value of the case was $67 million because class counsel had a one-in-three chance of winning the $203 million judgment at the time vital litigation decisions were being made, that would still be substantially more than counsel's calculated lodestar of $5.5 million. The twenty million dollar settlement deal

5

1 McCune Wright struck also shows that class counsel's valuation of the case far exceeded their
2 actual litigation costs. Invocation of the private attorney general statute is not needed to pad the
3 incentives to sue Wells Fargo regarding overdraft fees.

4 Furthermore, "a court may deny or limit an attorney fee award under [S]ection 1021.5
5 pursuant to the 'interest of justice' requirement if it determines based on the amount of the actual
6 recovery and other circumstances that the fees should be paid in whole or in part from the
7 recovery." *Collins*, 205 Cal. App. 4th at 156. Here, the amount of actual recovery is $203
8 million — a sum adequate enough to cover class restitution and all reasonable attorney's fees.
9 The public benefit in our action is not so "very significant" as to justify a fee award on top of the
10 already substantial judgment.

11 In short, neither factors (b) nor (c) is met. Class counsel's request for fees under
12 Section 1021.5 is **DENIED**.

### 2. ATTORNEY'S FEES.

14 District courts have discretion to set the fee award. *Hensley v. Eckerhart*, 461 U.S. 424,
15 437 (1983). Fee petitions should not result in a "second major litigation." In common-fund
16 actions, district courts have discretion to use either a percentage or lodestar method. Under the
17 percentage method, the benchmark award is 25 percent of the recovery, *Vizcaino v. Microsoft
18 Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), but "that rate may be unreasonable in some cases."
19 *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997, 1007
20 (9th Cir. 2002). "[W]here awarding 25% of a 'megafund' would yield windfall profits for class
21 counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or
22 employ the lodestar method instead." *In re Bluetooth Headset Products Liability Litigation*,
23 654 F.3d 935, 941–42 (9th Cir. 2011). Under the lodestar method, the number of hours
24 reasonably expended on the litigation (as supported by adequate documentation) is multiplied by
25 a reasonable hourly rate for the region and for the experience of the lawyers. The district court
26 may adjust the lodestar figure "upward or downward by an appropriate positive or negative
27 multiplier" to reflect a host of "reasonableness" factors, "including the quality of representation,
28 the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk

6

of nonpayment." One critical factor is the "results obtained," especially when the plaintiff succeeds on some but not all of his claims for relief. *Hensley*, 461 U.S. at 434. This order employs the lodestar method for three reasons.

*First*, contrary to class counsel, blindly adopting the 25-percent benchmark in this $203 million megafund action would lead to an unreasonable result. Applying that percentage in a "formulaic or mechanical fashion" would result in a windfall to class counsel utterly divorced from the realities of the case. Class counsel's request is "absurd," "extremely ridiculous," "extremely high," "inordinately excessive," "outlandish," "immoral," "outrageous," and "extravagant," said various class members (Cooper Exh. A). Indeed, to reach the $50.7 million sought by class counsel, we would need to apply a multiplier of 10.38 to their calculated lodestar under historical rates. Such an extraordinary multiplier is not justified, especially since counsel estimate that their full fee award would reduce the average class member's restitution from approximately $179 to $134.

*Second*, trying to craft an appropriate percentage for this megafund case without first reviewing counsel's actual timesheets would likely result in "picking a number out of the air." *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1297, 1303 (9th Cir. 1994). As one class member said in relevant part (Cooper Exh. A):

> The requested compensation is an insult to the members of the Class Action suit and an affront to the legal system. This outrageous fee application should not be based upon 25% of the settlement, but the actual cost of the work performed, inclusive of expenses! It should be reviewed for inflated billings.

Justice would be better served by tying the fee award to the actual hours class counsel reasonably expended on this litigation and then selecting a multiplier.

*Third*, the substantial monetary relief obtained in this action is partly attributable to the size of the class. In other words, the vast recovery is not entirely attributable to class counsel's skill but partly due to the sheer size of the class. When the large size of the recovery is due to the large size of the class rather than counsel's specialized skill and efforts, use of the lodestar method may be more appropriate.

7

After considering all of the circumstances, this order determines that using the lodestar method with a percentage cross-check would achieve the fairest and most reasonable result.

### A. Billing Rate.

Even though some of class counsel's claimed billing rates appear extraordinary, this order does not reduce counsel's rates for two reasons. *First*, counsel waited patiently for payment for several years. On account of the seven-year delay, this order will allow their claimed billing rates. *Second*, many of the claimed rates were comparable to those in our geographic region for the skill and experience involved (Pearl Decl. ¶¶ 9, 11, 13). They were also commensurate with defense counsel's rates. According to class counsel, the partner-attorney rates were: Richard M. Heimann ($825–975); Michael W. Sobol ($700–850); Barry Himmelstein ($650–700); David C. Wright ($550–650); Richard D. McCune ($550–650); Elaine S. Kusel ($550–650); and Roger N. Heller ($475–625). The associate-attorney rates were: Roger N. Heller ($450–475); Jordan Elias ($410–490); Marc Pilotin ($395–435); Allison Elgart ($390–435); Nicole Diane Sugnet ($375–435); Alison Stocking ($370–465); Jae K. Kim ($350–425); Martin Quinones ($320–350); and Mikaela Bernstein Palmerton ($300–375). The paralegal rates were: Kirti Dugar ($335–430); Jennifer Rudnick ($215–325); Jack Sanford ($225); and Ann M. Smith ($150–225). The litigation support rates were: Arra Khararjian ($260–270); Anthony Grant ($260–340); Scott Alameda ($250–260); Major Mugrage ($250–320); and Sat Kriya Khasla ($250–285).

### B. Hours.

Class counsel claim a lodestar of $4.89 million under historical rates based on more than ten thousand hours of work over the course of seven years (Heller Exh. E). This work includes trying the case in a two-week bench trial, defending the class on two appeals, obtaining class certification, briefing three rounds of summary judgment, opposing decertification on two occasions, deposing sixteen Wells Fargo witnesses and five Wells Fargo experts, defending the class representatives in deposition, reviewing voluminous bank records, and responding to multiple sets of discovery requests. Class counsel say they removed more than one thousand hours from their timesheets for, among other things, time spent on the unsuccessful "including and deleting" class, miscellaneous tasks, duplication, and inefficiency (Heller Decl. ¶¶ 6, 8;

8

McCune Decl. ¶¶ 4, 74, 75). In addition, class counsel protest that Wells Fargo billed "more than double" they did because Wells Fargo's timesheets reflected more than $10.6 million in fees (Winner Exh. B).

In a voluminous response critique, Wells Fargo contends that only $2.6 million from class counsel's timesheets could possibly be compensable (Dkt. No. 654). (In most common-fund cases, defendants have little interest in challenging class counsel's timesheets. Here, however, class counsel demanded fees directly from Wells Fargo on top of the judgment.) There is merit to some of Wells Fargo's critique.

Specifically, this order finds McCune Wright's claimed lodestar of $1.9 million under historical rates (or $2.2 million under current rates) absurd. After Wells Fargo pointed out a number of outrageous line items, McCune Wright admitted a "clerical error" as well as wrote off more than $10,000 (Reply 5, n.6). Even so, having reviewed McCune Wright's bloated timesheets, this order finds that many of the claimed fees are still massively overstated, inadequately detailed, unrelated to productive efforts, and/or not compensable. McCune Wright exaggerated their contributions, especially when it came to tasks such as discovery, closing argument, and appeal.

Indeed, it is abundantly clear that McCune Wright padded their timesheets with projects reflecting overstaffing, duplication, inefficiency, lack of billing judgment, and too many teleconferences. It is also wrong to demand that the class pay for teams of bodies from both Lieff, Cabraser *and* McCune Wright doing the same or similar work, especially when one or two attorneys or paralegals would have sufficed.

This order also rejects McCune Wright's attempt to profit off of its mistakes. Even though McCune Wright took ten-to-fifty percent reductions on select line items on account of their original inadequate damage study, the decertified class, and other unproductive or wasted efforts, this order finds that McCune Wright's timesheets are still larded with excess. It is a close call whether to deny altogether McCune Wright's fee petition as a sanction for gross overreaching.

9

This order allows McCune Wright's fee petition to proceed but must make reductions to protect absent class members from excess. After making the appropriate reductions, this order holds that McCune Wright's lodestar under historical rates is **$1,131,735.75**.[1] On the other hand, this order fully credits Lieff, Cabraser's calculated lodestar under historical rates of **$2,956,906.50**, recognizing that while reductions could be made to their timesheets as well, this order declines to do so on account of their acceptance of this case after McCune Wright's

---

[1] That is, $32,362.50 (85.75 hours) for opposing the *Smith* release; $3,525 (7.5 hours) for case management conference; $1,400 (4 hours) for discovery protective order; $111,600 (328 hours) for review of Wells Fargo's documents; $15,075 (48 hours) for first amended complaint; $37,975 (74.5 hours) for Expert Lewis Mandell; $16,875 (59 hours) for motion to amend the complaint; $10,251 (48 hours) for class representatives' set one discovery responses; $9,742.50 (25.5 hours) for Mark Lentz's FRCP 30(b)(6) deposition; $11,600 (28 hours) for Veronica Gutierrez deposition; $975 (3.5 hours) for further responses to set one of the class representatives' discovery; $6,875 (12.5 hours) for Julie Gray's FRCP 30(b)(6) deposition; $11,891.25 (26.75 hours) for Karen Moore FRCP 30(b)(6) deposition; $6,851.25 (14.75 hours) for Ed Kadletz FRCP 30(b)(6) deposition; $6,750 (15 hours) for Erin Walker's deposition; $3,633.75 (8.25 hours) for Williard's deposition; $2,475 (5 hours) for Debbie Chacon's FRCP 30(b)(6) deposition; $79,621.88 (263.75 hours) for class certification motion; $7,650 (18 hours) for Karen Moore's second deposition; $550 (2 hours) for John Ahrendt's deposition; $1,834.13 (10.25 hours) for responses to set two of the class representatives' discovery; $8,112.50 (14.75 hours) for Dawn Avrech-Williamson FRCP 30(b)(6) deposition; $57,496.88 (193.75 hours) for motion for summary judgment; $14,375 (30.5 hours) for all settlement conferences; $26,915.63 (47.75 hours) for working with expert Art Olsen; $13,575 (36 hours) for class notice; $6,015.63 (11.25 hours) for strategy planning; $7,662.50 (15.75 hours) for second case management conference; $5,325 (11.5 hours) for Wells Fargo's motion for clarification of class certification; $6,773.35 (18.7 hours) for responses to set four of the class representatives' discovery; $3,093.75 (6.25 hours) for discovery requests set two; $17,718.75 (39.25 hours) for Kenneth Zimmerman deposition; $5,376.75 (17.5 hours) for responses to set three of the class representatives' discovery; $1,431.25 (7.75 hours) for VISA's person most knowledgeable deposition; $5,500 (10 hours) for plaintiffs' motion to compel regarding redacted documents; $6,435 (13 hours) for Wells Fargo's deposition of Brenda Yost; $8,786.25 (17.75 hours) for Wells Fargo's deposition of Raber Luna; $6,806.25 (13.75 hours) for Wells Fargo's deposition of Carrie Tolsedt; $5,535 (13 hours) for Wells Fargo's deposition of Leslie Biller; $8,512.50 (18.75 hours) for Wells Fargo's deposition of Pamela Irwin; $7,605 (17 hours) for Wells Fargo's deposition of Leslie Altick; $16,830 (34 hours) for Wells Fargo's deposition of Christopher James; $5,287.50 (12.5 hours) for Wells Fargo's deposition of Itamar Simonson; $11,012.50 (32.75 hours) for deposition of class members; $4,212.50 (8.75 hours) for research regarding potential disqualification; $3,868.75 (8 hours) for client communication; $5,900 (14 hours) for supplemental FRCP 26 disclosures; $22,662.50 (43.75 hours) for working with Expert Marshall Schminke; $2,864.25 (10.5 hours) for responses to set five of the class representatives' discovery; $70,275 (154.5 hours) for Wells Fargo's second motion for summary judgment; $60,193.75 (275.3 hours) for Wells Fargo's third motion for summary judgment; $251.25 (2.5 hours) for responses to set six of the class representatives' discovery; $9,618.75 (23.25 hours) for deposition of Wells Fargo's expert David Vogel; $1,443.75 (3.5 hours) for deposition of Wells Fargo's expert Steven Visser; $5,525 (8.5 hours) for deposition of Wells Fargo's expert Alan Cox; $1,950 (3 hours) for deposition of Wells Fargo's expert David McGoveran; $6,737.50 (40.5 hours) for Wells Fargo's motion to decertify; $8,375 (21 hours) for exhibits and witness lists; $15,650 (39 hours) for motions *in limine*; $2,750 (5 hours) for MDL; $76,912.50 (139.25 hours) for final trial preparation; $6,825 (10.5 hours) for final pre-trial conference; $168,475 (396 hours) for trial; $4,550 (7 hours) for findings of fact and conclusions of law; $2,275 (3.5 hours) for closing arguments; $12,775 (24.5 hours) for judgment; $975 (1.5 hours) for opposition to motion to amend findings; and $975 (1.5 hours) for injunction. No other projects (*i.e.*, cross-appeal, miscellaneous, related cases, and so forth) on McCune Wright's timesheets are compensable.

10

blunders, the full $203 million restitution won for the class at trial, the incidental benefits from the injunction, and their superior efforts on appeal.

### C. Multiplier.

Now, we turn to what type of multiplier, if any, to award. "A 'multiplier' is a number, such as 1.5 or 2, by which the base lodestar figure is multiplied in order to increase (or decrease) the award of attorneys' fees on the basis of such factors as the risk involved and the length of the proceedings." *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001). Other factors include the complexity of the case, risk of non-payment, contingency nature of the case, results obtained, percentage of recovery obtained, quality of representation, skill and labor required, benefits to the class, novelty of the issues presented, and level of success. *In re Bluetooth*, 654 F.3d at 942; *Vizcaino*, 290 F.3d at 1051.[2] It would be unusual not to apply a risk multiplier when (1) the attorneys reasonably take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rates do not reflect that risk, and (3) there is evidence that the case was indeed risky. *Fischel*, 307 F.3d at 1008.

Considering all of the facts and circumstances, the Court, in its discretion, concludes that McCune Wright deserves a **MULTIPLIER OF 2** and Lieff, Cabraser deserves a **MULTIPLIER OF 5.5**.

It is a close call whether to award McCune Wright any multiplier at all because of the many blunders they made in prosecuting this class action. McCune Wright did a slapdash job on the original damage study, tried to extinguish the rights of one million class members to the tune of twenty million dollars, and failed to deliver on their promises to the decertified class. McCune Wright tried to litigate this case on the cheap, in part, because they had never tried a case in this

---

[2] To be thoroughly comprehensive, this order has generally considered, where appropriate, other factors including any expectation of a risk enhancement, the delay in payment, the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, the preclusion of other employment opportunities due to acceptance of this case, the customary fee in such cases, the limitations imposed by the clients and the case schedule, the amount involved, the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature of the professional relationship with the clients, and the awards in similar cases. *Hensley*, 461 U.S. at 430, n.3. Of course, many of these factors are baked into the lodestar.

11

district. Their lack of experience and crude effort nearly wrecked this class action. McCune Wright's mistakes were so severe that they set the entire case back by eleven months. Nevertheless, this order allows a multiplier of 2 mainly because they ended up taking on a seven-year risk of non-payment and delay in fees by commencing this lawsuit.

Lieff, Cabraser, on the other hand, entered as class counsel and pulled victory from the jaws of defeat. They bravely confronted several obstacles including the possibility of claim preclusion based on a class release entered in state court (by other counsel), federal preemption, hard-fought dispositive motions, and voluminous discovery. They rescued the case McCune Wright had botched and secured a full recovery of $203 million in restitution plus injunctive relief. Notably, Attorney Richard Heimann's trial performance ranks as one of the best this judge has seen in sixteen years on the bench. Lieff, Cabraser then twice defended the class on appeal. At oral argument on the present motion, in addition to the cash restitution, Wells Fargo acknowledged that since 2010, its posting practices changed nationwide, in part, because of the injunction. Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment.

In sum, this order concludes that class counsel are entitled to **$18,526,457.25** in attorney's fees.[3]

\* \* \*

---

[3] This fee award effectively amounts to 4.53 times the total lodestar of $4.09 million. (That is, if we multiply McCune Wright's lodestar of $1,131,735.75 by 2, we get $2,263,471.50. If we multiply Lieff, Cabraser's lodestar of $2,956,906.50 by 5.5, we get $16,262,985.75. The total lodestar with multipliers is thus $18,526,457.25. The sum of class counsel's lodestar before applying multipliers is $4,088,642.25. If we divide $18.53 million by $4.09 million, the result is 4.53. As explained at the end of this order, the fee award will not be split fifty-fifty.) This is an exceptional fee award compared to multipliers used in other comparable actions. In *Vizcaino*, for example, which involved a bitterly-contested and "extremely risky" litigation spanning eleven years, our court of appeals affirmed an award amounting to a multiplier of 3.65. *Vizcaino*, 290 F.3d at 1046, 1048. Similarly, in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 943, 955 (9th Cir. 2015), our court of appeals affirmed an award of $6.8 million in fees, which was only a fraction of the claimed twenty million dollar lodestar. Our multiplier is certainly within the range of reasonable multipliers awarded in other megafund actions.

**United States District Court**
For the Northern District of California

Turning to the percentage cross-check, this fee award is *nine percent* of the $203 million judgment. Class counsel stubbornly insist that failure to deliver them the 25-percent benchmark "could be regarded as an abuse of discretion" (Reply 1). Counsel are wrong.

"Special circumstances" justify a downward departure from the 25-percent benchmark. *In re Bluetooth*, 654 F.3d at 942. That is, awarding 25 percent of the $203 million megafund would result in "windfall profits," defying reasonableness. As one class member put it, if we divide class counsel's total request for more than $50.7 million by the 10,346 hours claimed by class counsel, that would translate to more than $4,900 per hour. Such compensation is "ridiculous" (Cooper Exh. A).

Nine percent of our megafund, on the other hand, is reasonable. *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 (listing percentages between 2.8 percent to forty percent); *In re Citigroup Inc. Bond Litigation*, 988 F. Supp. 2d 371, 375 (S.D.N.Y. 2013) (Judge Sidney Stein) (awarding sixteen percent of $730 million common fund); *In re LDK Solar Securities Litigation*, No. C 07-5182, 2010 WL 3001384, at *4 (N.D. Cal. July 29, 2010) (awarding 13.75 percent of sixteen million dollar settlement); *In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 503 (Cal. Ct. App. 2009) (affirming award of 1.4 percent of $276 million settlement); *In re Bristol-Myers Squibb Securities Litigation*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005) (Judge Loretta Preska) (awarding 3.9 percent of three hundred million dollar settlement); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (Judge Thomas Samuel Zilly) (awarding 11.48 percent of $34.4 million settlement); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) (Judge Robert Sweet) (awarding fourteen percent of $1.027 billion settlement); *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 529 (D. Nev. 1987) (Judge Louis Bechtle) (awarding seven percent of $205 million settlement).

Class counsel's chart (Br. 15–16) regarding fee awards in *In re Checking Account Overdraft Litigation*, 1:09-MDL-02036 (S.D. Fla. 2009) (Judge James Lawrence King), is unpersuasive. Class counsel contend that virtually all of the settled actions in the MDL involved fee awards of thirty percent of the settlement fund. For example, Bank of America settled for

13

$410 million, which was nine percent of the estimated damages, and Judge King awarded class counsel thirty percent of the settlement fund. That MDL, however, involved more than thirteen million class members and a huge team of attorneys taking on the "American banking industry." We aren't dealing with an MDL, but rather Wells Fargo only.

Nor is this order persuaded by class counsel's reliance on *Castaneda v. Burger King Corp.*, No. C 08-04262, 2010 WL 2735091, at *3–4 (N.D. Cal. July 12, 2010), where the undersigned judge granted an *unopposed* request for $2.5 million in fees from defendant on top of the five million dollar damage fund. That request was nowhere near the whopper insisted upon here.

### 3. EXPENSES.

Class counsel seek $558,378.92 in expenses for, among other things, costs associated with experts, filing fees, copying, postage, legal research, and so forth (Heller Decl. ¶¶ 22-24; McCune Decl. ¶ 52). These are reasonable.

### 4. INCENTIVE AWARDS.

Class representatives Veronica Gutierrez and Erin Walker each seek incentive awards of $10,000, which is 55.9 times the average class member's *pro rata* share of the money judgment (before payment of fees and expenses). Incentive awards are intended to compensate class representatives for work undertaken on behalf of the class. *In re Online DVD-Rental*, 779 F.3d at 943. Generally, however, additional benefits to named plaintiffs beyond those received by the rest of the class are disfavored. Here, Gutierrez and Walker will receive their portion of the full restitution award. Nevertheless, in recognition of their additional efforts in deposition, discovery, and trial, this order awards them **$2,000 EACH**.

### 5. CLASS ADMINISTRATION.

Our class administrator agreed to cap costs at $525,000. District courts have discretion to order a class action defendant to pay the costs of class notification after a determination that the defendant is liable on the merits. *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009). Here, class counsel contend that Wells Fargo should pay for the remaining costs of class administration because taking it out of the judgment would be "inequitable."

This order disagrees. The costs of circulating notice of counsel's fee petition and of distributing the money judgment shall be borne by the class members. Wells Fargo is already shouldering some of the responsibility by crediting class members in Groups 1 and 2 (those with active Wells Fargo accounts), subject to spot-checking by the class administrator. The request to require Wells Fargo to pay all remaining class administration costs is **DENIED**.

## CONCLUSION

1. For the reasons stated herein, class counsel's motion is **GRANTED IN PART AND DENIED IN PART**. Lieff, Cabraser is awarded **$16,262,985.75** in fees and **$449,859.85** in expenses. McCune Wright is awarded **$2,263,471.50** in fees and **$108,519.07** in expenses. Veronica Gutierrez and Erin Walker shall each receive **$2,000** as an incentive award. All class members shall bear a *pro rata* share of the attorney's fees, expenses, class administrator costs, and incentive awards.

2. This order prohibits the two law firms serving as class counsel from sharing their awards with each other. McCune Wright does not deserve any of Lieff, Cabraser's fee. McCune Wright did not "own" the case and did not own the class recovery. The large eventual recovery and attendant fees were not McCune Wright's to leverage as fee insurance.

3. The class administrator estimated the cost of class administration to be $492,617, with a cap of $525,000. They understand that one-half of their fees would be paid only after more than one-half of the work had been performed (Dkt. No. 651). The total sum of $525,000 shall be held in trust for the class administrator. Once the class administrator has completed more than one-half of the work, the class administrator shall file a declaration so stating and one-half of their fees will be paid. Once all class administration is complete, the class administrator shall file a declaration so stating and the second half — up to the ceiling of $525,000 — shall be paid.

4. Paragraph 10 of the January 2015 order (Dkt. No. 616) requires the parties to file a joint statement summarizing the allocation of funds (amongst Groups 1, 2, and 3) and proposed order authorizing the plan of distribution. Please include in that joint statement a specific breakdown of fees, expenses, class administrator costs, and incentive awards coming from the payments to Groups 1, 2, and 3.

5. Paragraphs 11 and 13 state that once approval to proceed is granted and all orders of the district court are final and not subject to review or any appeal that could affect the *pro rata* share of any class member, within **28 CALENDAR DAYS**, Wells Fargo shall credit the accounts for class members in Groups 1 and 2.  The class administrator shall then mail checks to class members in Group 3.  To be clear, both Wells Fargo and the class administrator shall hold back the *pro rata* portion of money earmarked for fees, expenses, class administrator costs, and incentive awards for each class member and shall only pay out or credit each class member's final take-home amount.  Half of that held-back fee amount and all expenses shall be paid to class counsel when the class distribution is made.  Once all class members are paid and we resolve how to handle any unclaimed amount (Dkt. No. 616 at 5), class counsel shall please file a declaration so stating and a proposed order for payment of the other half of their fee award.

6. If there are any problems with the distribution to individual class members due to insufficient funds, we may need to dip into the second half of class counsel's award and/or the class administrator's fees.  The Court is counting on class counsel and the class administrator to ensure that there are no problems.

**IT IS SO ORDERED.**

Dated: May 21, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE